1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHAIM KOWALSKY, on Behalf of Himself and All Others Similarly Situated, ) ) | Case No.: 10-CV-02176-LHK |
| Plaintiff, ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |
| v. ) | |
| HEWLETT-PACKARD COMPANY and DOES 1 Through 100, inclusive, ) ) ) | |
| Defendants. ) ) | |

Defendant Hewlett-Packard Company ("HP") moves to dismiss Plaintiff Chaim Kowalsky's First Amended Class Action Complaint ("FAC") for failure to state a claim pursuant to Rules 12(b)(6) and 9(b). The Court heard oral argument on November 23, 2010. Having considered the parties' submissions and arguments, the Court grants in part and denies in part Defendant's motion to dismiss.

**I. Background**

This case arises out of the marketing and sale of allegedly defective HP Office Jet Pro All-in-One printers of the 8500 series ("HP 8500 Printer"). According to Plaintiff, HP marketed its 8500 Printer as a premier all-in-one fax, copier, and scanner with a 50-sheet automatic document feeder ("ADF"). FAC ¶ 4. Plaintiff claims that HP also represented, on its website and on the product's packaging, that the 8500 Printer is capable of scanning and copying documents fed through the 50-sheet ADF at speeds of 34 pages per minute in color and 35 pages per minute in

1

1   black and white.  FAC ¶ 31.  Plaintiff alleges that, contrary to these representations, the HP 8500

2   Printer has a design defect that causes the printer to randomly skip pages when copying, scanning,

3   and faxing, and that this defect renders the 50-sheet ADF useable for only two to three sheets at a

4   time.  Comp. ¶4.

5        Plaintiff purchased an HP 8500 Printer directly from HP's website on or around July 2,

6   2009.  FAC ¶ 29.  Prior to purchasing the printer, he researched its specifications on the HP

7   website and other third-party sites.  FAC ¶¶ 29-30.  Plaintiff claims that he relied on the description

8   and specifications on HP's website and purchased the 8500 Printer specifically because he needed

9   a printer with an ADF capable of printing, scanning, and faxing multi-page documents.  FAC ¶ 31.

10  Once Plaintiff began using the printer, however, it began to randomly skip pages while copying,

11  scanning, and faxing multi-page documents.  Over the course of a few months, the problem grew

12  progressively worse, and Plaintiff claims that eventually "the printer reached a point where it

13  would always miss random pages when copying, scanning or faxing, rendering it totally unreliable

14  and useless."  FAC ¶ 34.  Plaintiff contacted HP customer care and received a replacement printer.

15  FAC ¶ 35.  Within a few days, however, Plaintiff noticed the same problem in the new printer.  *Id*.

16  He therefore contacted HP customer care again and received a second replacement printer, which

17  also exhibited the same problem within a few days of use.  FAC ¶ 36.  At this point, "in need of a

18  multi-function printer that would be reliable and seeing that three printers in a row from HP were

19  all defective," Plaintiff purchased a new printer from another manufacturer.  *Id.*

20       Plaintiff alleges that HP knew of the defect in the 8500 Printers, but misrepresented and

21  concealed this information in the marketing, advertising, sale, and servicing of the 8500 Printers.

22  FAC ¶ 4.  Plaintiff claims, further, that HP has manufactured and sold tens of thousands of

23  defective HP 8500 Printers to consumers throughout the United States.  FAC ¶ 27.  Accordingly,

24  on March 30, 2010, Plaintiff filed a Class Action Complaint against HP in the Santa Clara County

25  Superior Court, seeking damages, restitution, disgorgement, and injunctive relief on behalf of a

26  nationwide class of consumers who purchased 8500 Printers.  On May 20, 2010, Defendant

27  removed the action to federal court pursuant to the removal provisions of the Class Action Fairness

28  Act, 28 U.S.C. §§ 1332(d), 1453.  Defendant then moved to dismiss Plaintiff's Complaint.   Rather

2

United States District Court
For the Northern District of California

than oppose the motion, Plaintiff filed a First Amended Complaint ("FAC").  The FAC asserts five causes of action: (1) unlawful, unfair, and deceptive business practices in violation of California Business & Professions Code § 17200, et seq.; (2) untrue and misleading advertising in violation of California Business & Professions Code § 17500, et seq.; (3) violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.; (4) breach of express warranty; and (5) breach of implied warranty of merchantability.  Defendant now moves to dismiss the entire FAC for failure to state a claim under Federal Rules 12(b)(6) and 9(b).

## II.  Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In considering whether the complaint is sufficient to state a claim, the court must accept as true all of the factual allegations contained in the complaint.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008).  While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949.

Additionally, claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. Pro. 9(b).  To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the

3

1   misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In contrast, the

2   heightened pleading requirement of Rule 9(b) does not apply to allegations regarding the

3   defendant's state of mind. Thus, knowledge and intent need only be alleged generally to state a

4   valid claim for fraud. *See* Fed. R. Civ. Pro. 9(b) ("Malice, intent, knowledge, and other conditions

5   of a person's mind may be alleged generally."); *Swingless Golf Club Corp. v. Taylor*, 679 F. Supp.

6   2d 1060, 1067 (N.D. Cal. 2009).

7        If a court grants a motion to dismiss, leave to amend should be granted unless the pleading

8   could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1130

9   (9th Cir. 2000).

10  **III. Discussion**

11       **A.  UCL, FAL, and CLRA Claims**

12       Plaintiff's first three causes of action assert claims under the California Unfair Competition

13  Law ("UCL"), Cal. Bus. & Profs. Code § 17200, et seq.; the California False Advertising Law

14  ("FAL"), Cal. Bus. & Profs. Code § 17500, et seq.; and the California Consumers Legal Remedies

15  Act, Cal. Civ. Code § 1750, et seq.  Plaintiff advances a number of theories in support of these

16  claims, many of which depend upon allegations concerning HP's misrepresentations, concealment,

17  and knowledge of the design defect in the 8500 Printer.  Because Defendant alleges a number of

18  common deficiencies in these claims, the Court will first consider these common issues and then

19  turn to the individual UCL, FAL, and CLRA claims.

20            **1.   Rule 9(b) Pleading Requirements**

21       As an initial matter, the parties disagree as to whether the heightened pleading requirements

22  of Rule 9(b) apply to Plaintiff's UCL, FAL, and CLRA claims, and, if so, whether Plaintiff has

23  pled his claims with the requisite particularity.  It is well-settled that Rule 9(b) applies to state law

24  claims sounding in fraud that are brought in a federal action, regardless of the basis of federal

25  jurisdiction.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-03 (9th Cir. 2003).  In addition,

26  while fraud is not an essential element of claims under the UCL, FAL, and CLRA, if such claims

27  sound in fraud, the heightened pleading standard applies.  *Id.* at 1103.

28

United States District Court
For the Northern District of California

Fraud may be alleged explicitly or "by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Id.* at 1105. Here, Plaintiff's claims are premised on allegations that HP knew of an inherent design defect in its product, falsely advertised the product, and actively concealed the defect, thereby inducing Plaintiff and thousands of putative class members to purchase a defective product. FAC ¶¶ 4, 7, 31, 33, 64, 66. Plaintiff further alleges that HP has attempted to "'run out the clock' on the warranties" by "allow[ing] consumers to continue buying this defective product, notwithstanding HP's knowledge that it would malfunction." FAC ¶ 5. These allegations describe a unified course of fraudulent conduct, and the claims predicated on this conduct are therefore subject to the heightened pleading requirements of Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009) (applying Rule 9(b) to UCL and CLRA claims based on misrepresentations and non-disclosures).

The Court agrees with Plaintiff, however, that the FAC describes "the circumstances constituting fraud or mistake" with sufficient particularity to satisfy the heightened pleading standard of Rule 9(b). Fed. R. Civ. Pro. 9(b). In the FAC, Plaintiff states that he researched the 8500 Printer "over a span of 2-3 days at the end of June 2009." FAC ¶ 29. His research consisted of reading the printer's specifications and reviews on HP's website, using the "Help Me Choose" section of HP's website to identify a printer recommended for his needs and budget, and reading reviews on third-party websites. FAC ¶¶ 29-30. Plaintiff specifies that in purchasing his printer he relied on the description and specifications of the 8500 Printer on HP's website, including, in particular, "HP's representations that the HP 8500 Printer was able to scan and copy at speeds of up to 34 pages per minute in color, and 35 pages per minute in black and white via the 50-page capacity ADF." FAC ¶ 31. Plaintiff also claims that many of the same or substantially similar representations appear on the packaging of the product, although it does not appear that Plaintiff relied on these. *Id.*

Defendant objects that Plaintiff fails to provide quotations of actual statements he read or to provide sufficient context for those statements. HP's Mot. to Dismiss Pl.'s FAC ("HP's Mot.") 11, ECF No. 23. The Court acknowledges that Plaintiff could have provided greater specificity. He could have provided quotes, described more precisely where on HP's website he read the

5

1    statements, or even provided a URL address at which those statements may be found (if they are

2    still available on HP's website).  Nonetheless, the FAC sufficiently alleges "an account of the time,

3    place, and specific content of the false representations as well as the identities of the parties to the

4    misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  In particular, the

5    FAC alleges that Plaintiff was exposed to the allegedly false representations at the end of June

6    2009; that he read these representations in the description and specifications of the 8500 Printer on

7    HP's website; that the representations contained statements regarding the specific page-capacity

8    and copying/scanning speed of the printer; and that the representations were made by HP on its

9    website.  FAC ¶¶ 29, 31.  In contrast, the cases on which Defendant relies involved vague

10   allegations that failed to specify the statements relied on, the timing of those statements, or the

11   identity of the person alleged to have made specific statements.  *See Kearns*, 567 F.3d at 1125-26;

12   *Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 5069144, at *3 (N.D. Cal. Dec, 17, 2009).

13   Unlike the complaints in those cases, Plaintiff's FAC allows HP to pinpoint the timing, location,

14   and contents of the alleged misrepresentations with enough specificity to defend against the fraud

15   charged.  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Accordingly, Rule 9(b) does not

16   provide grounds for dismissal.

17                          **2.   HP's Knowledge of the Defect**

18           Defendant argues that even if Plaintiff has sufficiently pled "the circumstances constituting

19   fraud," Fed. R. Civ. Pro. 9(b), Plaintiff has not sufficiently alleged Defendant's knowledge of the

20   design defect.  The parties appear to agree that to prevail on at least some of his theories under the

21   UCL, FAL, and CLRA, Plaintiff must establish that Defendant knew, or should have known, of the

22   alleged defect before Plaintiff relied on HP's representations and purchased the 8500 Printer.  They

23   disagree on whether Plaintiff's allegations of knowledge are sufficient to survive a motion to

24   dismiss.

25           Plaintiff is correct that the heightened pleading requirements of Rule 9(b) do not apply to

26   allegations of knowledge, intent, or "other conditions of a person's mind."  Fed. R. Civ. Pro. 9(b).

27   Rule 9(b) explicitly states that scienter "may be alleged generally."  *Id.*  This does not mean,

28   however, that conclusory allegations of knowledge or intent suffice.  *Iqbal*, 129 S.Ct. at 1954.

6

Case No.: 10-CV-02176-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    Rather, Rule 9(b) merely excuses a party from pleading scienter under an elevated pleading

2    standard; the "less rigid – though still operative – strictures of Rule 8" must be satisfied.  *Id.*  Thus,

3    as Defendant points out, Plaintiff's generalized claims that HP knew or should have known of the

4    defect, without more, are not sufficient to establish HP's knowledge for the purposes of a motion to

5    dismiss.

6        But Plaintiff does not make only generalized claims of knowledge "devoid of further

7    factual enhancement." *Id.* at 1949.  Rather, Plaintiff attempts to construct a factual context in which

8    Defendant's prior knowledge of the defect is plausible.  To do so, Plaintiff relies primarily on a

9    "sampling" of consumer complaints posted on HP's own support website that describe and request

10   assistance with the same problem that Plaintiff identifies.  FAC ¶¶ 37-49.  Two of the complaints

11   Plaintiff quotes were posted before Plaintiff purchased his printer – on April 13, 2009, and June 15,

12   2009, FAC ¶¶ 37-40 – while the remainder were posted between August and December of 2009,

13   after Plaintiff's purchase.   Plaintiff also quotes from a review by OnlineTechTips.com, which

14   specifically describes the page-skipping problem, but he does not allege when this review was

15   published or any facts demonstrating that this review should have put HP on notice.  FAC ¶ 50.

16   More importantly, Plaintiff alleges that HP has acknowledged the problem on its own website and

17   quotes language from an HP webpage that describes the problem, admits there is no solution to the

18   problem, and suggests a "workaround."  FAC ¶ 52.  Although Plaintiff does not allege a specific

19   date on which this was posted, he indicates that he accessed the page on December 8, 2009.  *Id.*

20       These facts, taken as true, clearly demonstrate that by December 2009, at the latest, HP was

21   aware of the alleged design defect.  The question, however, is whether the facts alleged allow the

22   Court to draw a reasonable inference that HP knew of the defect prior to July 2, 2009, when

23   Plaintiff purchased his printer.  Defendant argues that "a few comments supposedly left on

24   websites, most of which were posted *after* Plaintiff claims he purchased his printer" are not

25   sufficient to establish, with the plausibility required, that it had prior knowledge of the defect.

26   HP's Mot. 8.  In support of this argument, Defendant cites decisions from this District that have

27

28

7

United States District Court
For the Northern District of California

1   found such complaints insufficient to establish knowledge of a defect.[1]  *See Berenblat v. Apple,*

2   *Inc.*, Nos. 08-4969, 09-1649, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) (finding that "the

3   complaints posted on Apple's consumer website merely establish the fact that some consumers

4   were complaining" and do not establish knowledge or intent to conceal on the part of defendant).

5   Plaintiff counters that at least one other Northern District decision has found that allegations of

6   such complaints are sufficient.[2]  *See Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1096

7   (N.D. Cal. 2007) ("The record of [Internet] complaints to GM between 2003 and 2007 show that

8   GM was clearly aware of a problem with its speedometers.").

9           The Court agrees that, in some cases, allegations of consumer complaints posted on a

10  defendant's own customer support website may be sufficient to raise a reasonable inference that the

11  defendant knew of a product defect.  As Plaintiff points out, it is reasonable to infer that a company

12  monitors the complaints it receives on its website, and without the benefit of formal discovery, it is

13  difficult to imagine what other publically available facts a plaintiff may rely on.  In this case,

14  however, the Court does not believe that Plaintiff's allegations are sufficient to raise a reasonable

15

---

16  [1] Some of the decisions Defendant cites dealt with complaints that were deficient in other ways and
    therefore did not analyze the issue of knowledge in a way that speaks directly to the facts of this

17  case.  In *Oestreicher v. Alienware Corp.*, for instance, the court dismissed a fraudulent
    concealment claim because the complaint failed to specify any factual basis for the elements of the

18  claim. 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008).  The court merely noted in a footnote that
    "[r]andom anecdotal examples of disgruntled customers posting their views on websites at an

19  unknown time is not enough to impute knowledge upon defendants." *Id.* at 974 n.9. Similarly, in
    *Kent v. Hewlett-Packard Co.*, although plaintiffs pointed to messages on "an internet message

20  board," they did not allege that the defendant knew of these complaints at the time it sold the
    computers to the plaintiffs. No. 09-5341, 2010 WL 2681767, at *2, *8 (N.D. Cal. July 6, 2010).

21  Here, Plaintiff does not point to "random anecdotal" complaints posted on "an internet message
    board" at an unknown time, but rather to complaints posted at specified times on HP's customer

22  support website.  In addition, the language from *Sunstar, Inc. v. Alberto-Culver Co., Inc.*, which
    Defendant quotes in both its opening brief and its reply, relates to the admissibility of a web page

23  about "Japanese Attitudes Toward Contracts" that was offered as evidence of "the state of mind of
    a Japanese lawyer representing Japanese clients." Nos. 01 C 0736, 01 C 5825, 2004 WL 1899927,

24  at *27 (N.D. Ill. 2004).  Defendant does not explain how this case supports its argument.

25  [2] Defendant argues that *Falk* is "totally inapposite" because it deals with safety-related product
    defects.  HP's Reply in Supp. of Mot. to Dismiss Pl.'s FAC 3, ECF No. 31.  The Court agrees that

26  insofar as *Falk* found a duty to disclose post-warranty defects in the absence of prior, misleading
    representations related to those defects, its holding is limited to the context of safety-related

27  product defects.  *Falk*, 496 F. Supp. 2d at 1094; *Oestreicher*, 544 F. Supp. 2d at 971.  However, the
    finding in *Falk* that a record of Internet complaints sufficiently demonstrated defendant's

28  knowledge of the defect is not dependent on safety concerns, and thus the Court does not find it
    inapposite.

8

1   inference that HP had prior knowledge of the design defect.  Although Plaintiff points to two

2   complaints posted on HP's website prior to his purchase, he also alleges that he spent 5-10 hours

3   researching the 8500 Printer on HP's website and reputable third-party websites, and that he read

4   both editor and user reviews of the product, before making a purchase.  FAC ¶ 29-30.  Considering

5   that Plaintiff would not have purchased the printer had he known about the defect, FAC ¶ 33,

6   Plaintiff must not have come across complaints about the defect despite his thorough research.

7   This suggests that, unlike in *Falk*, where consumers had been posting complaints about a defect for

8   several years, consumer complaints about the HP 8500 Printer were just beginning to surface at the

9   time Plaintiff purchased his printer.  Moreover, the plaintiffs in *Falk* alleged that the defendant also

10  had knowledge of the defect based on "aggregate data from its dealers" and "pre-release testing

11  data," 496 F. Supp. 2d at 1096, an additional basis for defendant's knowledge that is not alleged in

12  this case.[3]  The Court is sensitive to the fact that Plaintiff is unlikely to have access to the details of

13  HP's product testing process without discovery.  Nonetheless, the FAC does not allege, even on

14  information and belief, that HP tests its products before advertising them or attempt to show, based

15  on the timing and regularity of defect experienced by Plaintiff and other putative class members,

16  that such testing would likely have revealed the defect.

17      Thus, the Court finds that although the two complaints posted in April and June of 2009

18  may have alerted HP that some printers were experiencing problems, the allegations are not

19  sufficient to suggest that HP knew, or should have known, of an inherent design defect affecting

20  most or all of the 8500 Printers.  The Court therefore agrees with Defendant that the overall factual

21  context described by Plaintiff  does not allow a reasonable inference that HP knew of the defect at

22  the time Plaintiff purchased his printer.  The Court also agrees that Plaintiff's failure to sufficiently

23  allege prior knowledge of the defect is fatal to some, but not all, of Plaintiff's theories under the

24  UCL, FAL, and CLRA and will address each of these claims in turn.

25

26

27  [3] Plaintiff's class action allegations indicate that a common question will be "[w]hether Defendant failed to properly inspect the HP 8500 Printers and its component parts, before commencing sales to the public."  FAC ¶ 19(c).  However, the FAC makes no other reference to HP's testing or inspection process.

28

9

United States District Court
For the Northern District of California

### 3. Individual UCL, FAL, and CLRA Claims

#### a. UCL Claim

The UCL creates a cause of action for business practices that are 1) unlawful, 2) unfair, or 3) fraudulent. Cal. Bus. & Profs. Code § 17200. Its coverage has been described as "sweeping," and its standard for wrongful business conduct is "intentionally broad." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006). Each "prong" of the UCL provides a separate and distinct theory of liability, *Lozano v. AT & T Wireless Services, Inc.*, 504 F.3d 718, 731 (9th Cir. 2007), and Plaintiff asserts claims under all three prongs. As discussed below, the Court finds Plaintiff's allegations under the unlawful and fraudulent prongs sufficient to state a claim under the UCL.

#### i. Unlawful Prong

The unlawful prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548 (1999) (quotation marks and citations omitted). By proscribing "any unlawful" business practice, Cal. Bus. & Profs. Code § 17200, the UCL permits injured consumers to "borrow" violations of other laws and treat them as unfair competition that is independently actionable. *Cel-Tech*, 20 Cal. 4th at 180. Plaintiff's claims under the unlawful prong are premised on statutory claims of actual fraud, Cal. Civ. Code § 1572; fraudulent deceit, *id.* § 1709; deceit, *id.* § 1710; violations of the CLRA and FAL; and breach of express warranty pursuant to Cal. Com. Code § 2313. FAC ¶ 74.

The Court finds that Plaintiff's "unlawful" claim predicated on violations of the CLRA states a plausible claim for relief. Plaintiff asserts violations of the CLRA as an independent cause of action, and the Court discusses this claim below, concluding that it sufficiently alleges misrepresentations regarding the characteristics and benefits of the 8500 Printer, in violation of Cal. Civ. Code § 1770(a)(5). Under the unlawful prong, Plaintiff may "borrow" this CLRA violation and treat it as unfair competition that is independently actionable. *Cel-Tech*, 20 Cal. 4th at 180. Accordingly, to the extent that Plaintiff's UCL claim is predicated on violations of the CLRA, Plaintiff states a valid claim for relief.

1   Plaintiff's remaining theories under the unlawful prong do not provide a basis for relief.

2   Plaintiff's failure to sufficiently plead Defendant's prior knowledge of the defect, or to allege facts

3   suggesting that HP lacked reasonable grounds for its representations, bars a UCL claim premised

4   on actual fraud, deceit, fraudulent deceit, or violations of the FAL.  *See* Cal. Civ. Code §§ 1572,

5   1710 (defining actual fraud and deceit to include the misrepresentation and concealment of facts by

6   those with knowledge of the true facts, as well as the assertion of a fact that is not true by one who

7   has no reasonable ground for believing it to be true); Cal. Civ. Code § 1709 (requiring willful

8   deception); Cal. Bus. & Profs. Code § 17500 (prohibiting any statement "which is known, or which

9   by the exercise of reasonable care should be known, to be untrue or misleading").  In addition,

10  because the Court concludes below that Plaintiff fails to state an independent claim for breach of

11  warranty, his UCL claim based on breach of warranty must also fail.  Plaintiff need not prevail on

12  these theories, however, for his allegations premised on violations of the CLRA are sufficient to

13  sustain a claim under the unlawful prong of the UCL.  The Court thus finds that Plaintiff has stated

14  a valid claim under the unlawful prong.

15              **ii.  Fraudulent Prong**

16  Plaintiff's claim under the UCL's fraudulent prong is predicated on allegations that

17  Defendant made affirmative misrepresentations about its printers and concealed a material defect,

18  thereby deceiving consumers, including Plaintiff.  FAC ¶¶ 73.  To state a claim under the

19  fraudulent prong, a plaintiff must show that members of the public are likely to be deceived by the

20  business practice or advertising at issue.  *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995);

21  *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 630, 105 Cal. Rptr. 3d 795 (Cal. Ct. App.

22  2010).  A UCL violation for fraudulent business practices is distinct from common law fraud and

23  does not require allegations of actual deception, reasonable reliance, and damage.[4]  *Daugherty v.*

24  *American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838, 51 Cal. Rptr. 3d 118 (Cal. Ct. App.

25  _____

26  [4] As the class representative, however, Plaintiff must demonstrate that he "has suffered injury in
    fact and has lost money or property as a result of the unfair competition" in order to establish

27  standing under the UCL. Cal. Bus. & Profs. Code § 17204; *see also id.* § 17203 (requiring persons
    pursuing representative claims to meet the standing requirements of § 17204); *In re Tobacco II*

28  *Cases*, 46 Cal. 4th 298, 315-24, 207 P.3d 20 (2009) (holding that class representative, but not class
    members, must satisfy UCL standing requirements).

Case No.: 10-CV-02176-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1    2006).  A plaintiff normally "need not show that a UCL defendant intended to injure anyone" in

2    order to succeed on a UCL claim, *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163,

3    181, 999 P.2d 706 (2000), and both the California Supreme Court and appellate courts have stated

4    that the statute "imposes strict liability."  *Id.*; *Paduano v. American Honda Motor Co., Inc.*, 169

5    Cal. App. 4th 1453, 1468, 88 Cal. Rptr. 3d 90 (Cal. Ct. App. 2009); *Paulus v. Bob Lynch Ford,*

6    *Inc.*, 139 Cal. App. 4th 659, 678, 43 Cal. Rptr. 3d 148 (Cal. Ct. App. 2006); *South Bay Chevrolet v.*

7    *General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 877, 85 Cal. Rptr. 2d 301 (Cal. Ct. App.

8    1999).

9            Despite these repeated suggestions that the UCL imposes strict liability for statements

10   likely to deceive the public, Defendant argues that it cannot be held liable under the fraudulent

11   prong absent a showing that it knew of the defect and intended to deceive consumers.  In support of

12   this claim, Defendant relies upon *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 970, 69 Cal.

13   Rptr. 2d 623 (Cal. Ct. App. 1997), which found that the unintentional distribution of contaminated

14   pet food marketed as "good for your dog" did not violate the UCL.[5]  *Klein* suggests that a

15   manufacturer does not necessarily violate the fraudulent prong every time it makes a representation

16   that turns out to be untrue.  The Court notes, however, that the factual circumstances in *Klein* were

17   somewhat exceptional and distinct from those presented here.  In *Klein*, Defendant Earth Elements,

18   Inc., distributed pet food that was manufactured and tested for quality by a different corporation.

19   *Id.* at 967.  In June 1995, it learned through customer complaints that some of its pet food was

20   contaminated with a difficult-to-detect mold toxin that caused dogs to vomit or refuse the pet food.

21   *Id.* at 967-68.  After Earth Elements confirmed the presence of the toxin, it issued an extensive and

22   "intentionally overinclusive" recall campaign, "gave credit to all distributors and retailers for

23   returned product, paid them for all documented expenses related to the recall, refunded or replaced

---

24   [5] Defendant also cites a few district court cases that appear to impose a knowledge requirement for

25   claims under the fraudulent prong.  However, most of these cases were based not on affirmative
     misrepresentations, but on a theory of concealment.  *See Berenblat*, 2010 WL 1460297, at *9;

26   *Hovsepian*, 2009 WL 5069144, at *3.  The Court agrees that it is difficult for a defendant to
     conceal what it does not know.  Here, however, in addition to concealment, Plaintiff also alleges

27   specific affirmative representations made by HP that he relied on and which appear to have
     misrepresented the capabilities of its printer.  Additionally, the language that Defendant relies on in

28   *Oestreicher*, 544 F. Supp. 2d at 974 n.9, relates to a common law fraudulent concealment claim;
     the UCL and CLRA claims were dismissed on other grounds.  *Id.* at 969-74.

12

1    product for all consumers upon request but without proof of purchase, and reimbursed consumers

2    for verifiable veterinary expenses and property damage claims." *Id.* at 968.  It also issued press

3    releases to print and broadcast media and established a toll-free number for customer inquiries. *Id.*

4    Although the complaint survived a demurrer, the trial court subsequently granted summary

5    judgment in favor of Defendant Earth Elements. *Id.*  In affirming the grant of summary judgment,

6    the California Court of Appeal emphasized both that the contamination was unwitting and

7    accidental and that Earth Elements instituted a "speedy and extensive recall effort" in order to

8    inform the public of the contamination and remedy any harm. *Id.* at 970.

9         Here, the Court has found that Plaintiff's allegations do not give rise to a reasonable

10   inference that Defendant knew or should have known of the defect at the time that Plaintiff

11   researched and purchased his printer.  Thus, as in *Klein*, HP's distribution of the defective printers

12   appears, based on the facts alleged, to be unintentional.  Unlike in *Klein*, however, it does not

13   appear that the alleged defect was particularly difficult to detect or that HP took comprehensive

14   steps to inform the public and remedy the problem after it learned of the defect.  The Court

15   recognizes that a non-dangerous printer defect does not necessarily demand the extensive recall

16   and informational campaign employed by Earth Elements.  Nonetheless, Plaintiff alleges that in the

17   time since HP acknowledged the problem, it has only offered a "workaround" that does not resolve

18   the issue and has continued to replace purchased printers with equally defective products.  FAC

19   ¶¶ 52-54, 65.  Thus, although the facts may ultimately prove otherwise, at this stage the plausible

20   factual allegations in Plaintiff's complaint do not suggest the "exemplary" conduct that informed

21   the court's decision, on summary judgment, in *Klein*.  For this reason, the Court does not believe

22   that this case should be exempt from the weight of California authority, which states that the UCL

23   imposes strict liability for statements that are likely to deceive the public.

24         The question, then, is whether Defendant's representations were likely to deceive the

25   public.  The UCL prohibits "not only advertising which is false, but also advertising which[,]

26   although true, is either actually misleading or which has a capacity, likelihood or tendency to

27   deceive or confuse the public." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir.

28   2008) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951, 119 Cal. Rptr. 2d 296, 45 P.3d 243

1   (2002)).  Allegations of deceptive or misleading representations under the UCL are evaluated under

2   a reasonable consumer standard.  *Williams*, 552 F.3d at 938; *Lavie v. Procter & Gamble Co*., 105

3   Cal. App. 4th 496, 504-513, 129 Cal. Rptr. 2d 486 (Cal. Ct. App. 2003).  Under this standard, a

4   plaintiff must show that "it is probable that a significant portion of the general consuming public or

5   of targeted consumers, acting reasonably in the circumstances, could be misled."  *Lavie*, 105 Cal.

6   App. 4th at 508.

7          As Defendant notes, subjective representations of product superiority, such as the "premier"

8   quality of the 8500 Printer, constitute non-actionable puffery and cannot serve as a basis for

9   Plaintiff's claim under the fraudulent prong.  *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964,

10  973 (N.D. Cal. 2008).  In contrast, however, HP's alleged representations regarding the speed and

11  capacity of the document feeder describe "specific" characteristics and may provide an actionable

12  basis for Plaintiff's claims.  *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th

13  Cir. 1997) ("While product superiority claims that are vague or highly subjective often amount to

14  nonactionable puffery, misdescriptions of specific or absolute characteristics of a product are

15  actionable." (internal quotation marks and citations omitted)).

16         The Court agrees, moreover, that Plaintiff has stated a plausible claim that these

17  representations are likely to mislead a reasonable consumer.  Although it may be literally true that

18  the 8500 Printer has an automatic document feeder that holds 50 pages and that the printer can

19  copy and scan from this feeder at a rate of 34 or 35 pages per minute, it appears that the Printer is

20  not capable of copying and scanning at such speeds in a reliable manner.  While a reasonable

21  consumer would expect the occasional printer jam or skipped page, it is plausible that the general

22  consuming public would expect the 8500 Printer to achieve the advertised speed and page capacity

23  without the regularly recurring problems that Plaintiff alleges.  Where a defendant's

24  representations generate reasonable expectations that a product will have qualities or capabilities it

25  does not have, courts have found that those representations may be likely to deceive.  *See*

26  *Consumer Advocates*, 113 Cal. App. 4th at 1362 (finding triable issue of fact as to whether

27  statement that consumer would receive 50 channels was deceptive where all 50 channels were not

28  available at all times, contrary to consumer's expectations); *Williams*, 552 F.3d at 939 (finding that

**United States District Court**
For the Northern District of California

packaging juxtaposing the words "fruit juice" alongside images of different kinds of fruits could

deceive a reasonable consumer where product actually contained only white grape juice from

concentrate).  It also appears plausible, based on Plaintiff's own experience and the complaints

posted on HP's website, that consumers actually relied on and were misled by these

representations.  HP's representations speak directly to the capacity of the printer to quickly handle

multi-page copying and scanning, the very capacity Plaintiff sought and has found lacking in his

printer.  Plaintiff also quotes numerous consumer complaints expressing frustration with the

Printer's failure to reliably scan multi-page documents and indicating that the problem was

material enough to cause consumers to return the product or buy a new one.  FAC ¶¶ 56-62.  For

purposes of a motion to dismiss, these allegations are sufficient to state a plausible claim that HP's

representations were likely to deceive the public.  *See Consumer Advocates*, 113 Cal. App. 4th at

1362 (noting that "anecdotal evidence" may be used to establish that the public is likely to be

deceived).  Accordingly, the Court finds that Plaintiff has stated a viable claim under the fraudulent

prong of the UCL.

### iii.  Unfair Prong

Plaintiff also attempts to state a claim under the unfair prong of the UCL.  "A business

practice is unfair within the meaning of the UCL if it violates established public policy or if it is

immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs

its benefits."[6] *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473, 49 Cal. Rptr. 3d 227 (Cal.

Ct. App. 2006).  In determining whether a practice is unfair, courts examine the practice's impact

on its alleged victim and balance that impact against the reasons, justifications, and motives of the

---

[6] California law is currently unsettled with regard to the standard applied to consumer claims under
the unfair prong of the UCL. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735-36 (9th
Cir. 2007).  The California Supreme Court has rejected the traditional balancing test for UCL
claims between business competitors and instead requires that claims under the unfair prong be
"tethered to some legislatively declared policy."  *See Cel-Tech Communications, Inc. v. Los
Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 186, 83 Cal. Rptr. 2d 548 (1999).  However, the
*Cel-Tech* court explicitly limited its holding to claims alleging unfairness to business competitors,
and California courts are divided as to the correct test to apply to consumer actions. *Lozano*, 504
F.3d at 735-36. Pending resolution of this issue by the California Supreme Court, the Ninth Circuit
has approved the use of either the balancing or the tethering tests in consumer actions.  *Id.*  In this
case, because Plaintiff does not identify any specific legislative policy to which his claims might be
tethered, *see* FAC ¶ 75, the Court will apply only the traditional balancing test.

United States District Court
For the Northern District of California

1    alleged wrongdoer.  *Id.*  Plaintiff alleges that HP violated the unfair prong of the UCL by selling

2    Plaintiff and other class members "printers with a common design defect that was known by HP

3    and has no known solution" and leading them to believe that the printers have qualities and benefits

4    they do not have.  FAC ¶ 75.  The Court acknowledges that Plaintiff appears to have suffered some

5    injury due to his reliance on HP's representations.  It is difficult for the Court to evaluate Plaintiff's

6    unfair claim, however, because it is premised on allegations that HP *knowingly* marketed defective

7    printers and could easily have avoided injury to consumers simply by disclosing the defect.  While

8    the Court agrees that such conduct may violate the unfair prong, it has already found Plaintiff's

9    allegations insufficient to establish that HP knew or had reason to know of the defect when

10   Plaintiff purchased his printer.  Plaintiff has not offered arguments or allegations suggesting that an

11   unknowing distribution of defective products should be considered "immoral, unethical, oppressive

12   or unscrupulous."  Accordingly, the Court finds Plaintiff's allegations insufficient to support a

13   claim under the unfair prong.

14           If Plaintiff wishes to amend his unfair claim, he may do so.  However, Plaintiff has stated a

15   plausible claim for relief under both the unlawful and fraudulent prongs, and Defendant's motion

16   to dismiss the UCL claim is therefore DENIED.

17                                      **b.  FAL Claim**

18           Plaintiff's second cause of action alleges untrue and misleading advertising in violation of

19   California's False Advertising Law ("FAL"), Cal. Bus. & Profs. Code § 17500, et seq.  The FAL

20   prohibits the dissemination of any statement concerning property or services "which is untrue or

21   misleading, and which is known, or which by the exercise of reasonable care should be known, to

22   be untrue or misleading."  Cal. Bus. & Profs. Code § 17500.  In this case, because Plaintiff has

23   failed to sufficiently allege that HP knew, or by the exercise of reasonable care should have known,

24   that its representations were untrue or misleading, Plaintiff cannot state a claim under the FAL.

25   Accordingly, the Court GRANTS Defendant's motion to dismiss the FAL claim with leave to

26   amend.

27

28

Case No.: 10-CV-02176-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

### c. CLRA Claim

Plaintiff's third cause of action alleges violations of the Consumer Legal Remedies Act ("CLRA"). The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Any consumer who suffers damage as a result of a practice declared unlawful by the CLRA may bring an action for actual damages, injunctive relief, restitution of property, punitive damages, and any other relief the court deems proper. Cal. Civ. Code. § 1780(a). The CLRA is intended to protect consumers and must be liberally construed to promote that purpose. Cal. Civ. Code § 1760; *Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983, 1021, 112 Cal. Rptr. 3d 607 (Cal. Ct. App. 2010).

As a threshold matter, Defendant argues that all of Plaintiff's claims under the CLRA fail as a matter of law because the CLRA requires Plaintiff to establish that HP knew of the alleged defects and intended to deceive consumers. Defendant does not cite any case holding that a plaintiff must prove prior knowledge or intent to deceive in order to prevail on a CLRA claim.[7] Instead, Defendant points to statutory language that makes unlawful "deceptive acts or practices undertaken by any person in a transaction *intended* to result or which results in the sale or lease of goods or services." Cal. Civ. Code § 1770(a) (emphasis added). While certain of the practices prohibited by the CLRA explicitly require intent, *see* Cal. Civ. Code §§ 1770(a)(9), (10), the language Defendant quotes does not establish that knowledge or intent to deceive is a required element in every CLRA claim. Rather, the language in § 1770(a) merely limits the type of transactions to which the CLRA applies – that is, to transactions resulting, or intended to result, in the sale of goods or services, but not, for instance, to transactions for the sale of real property. *See McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1488, 49 Cal. Rptr. 3d 227 (Cal. Ct. App. 2006) (construing § 1770(a) to exclude transactions resulting in the sale of real property);

---

[7] Defendant cites two cases which found that representations made after the time of sale cannot establish a violation of the CLRA. *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 n.6, 51 Cal. Rptr. 3d 118 (Cal. Ct. App. 2006); *Harlan v. Roadtrek Motorhomes, Inc.*, No. 07-CV-0686, 2009 WL 928309, at *17 (S.D. Cal. Apr. 2, 2009). The Court agrees that a misrepresentation made by HP after Plaintiff purchased his printer would not support liability under the CLRA, at least for Plaintiff's individual claims. Here, however, Plaintiff alleges that he relied on representations made by HP before he purchased his printer.

17

*Berryman v. Merit Property Management, Inc.*, 152 Cal. App. 4th 1544, 1557, 62 Cal. Rptr. 3d 177 (Cal. Ct. App. 2007) (construing § 1770(a) to exclude transactions "such as obtaining documents and transferring title" that do not result in the sale or lease of goods or services).

Indeed, the CLRA specifically contemplates that claims may be brought against persons who acted without intent and provides a limited defense in such cases.  Section 1784 of the CLRA, entitled "Damages, defense," prohibits the award of damages in cases where the defendant "(a) proves that such violation was not intentional and resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid any such error and (b) makes an appropriate correction, repair or replacement or other remedy of the goods and services."  Cal. Civ. Code § 1784.  This section does not, however, preclude the award of injunctive relief or restitution for unintentional violations.  Accordingly, while Defendant may be able to assert its lack of knowledge and intent as a defense to Plaintiff's claim for damages, the Court cannot agree that Plaintiff's failure to allege HP's prior knowledge of the defect necessarily defeats his CLRA claim.  *See Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005) (rejecting argument that plaintiff must prove intent to deceive under the CLRA).

Plaintiff alleges violations of five specific provisions of the CLRA: representing that the 8500 Printers have characteristics and benefits which they do not have, Cal. Civ. Code § 1770(a)(5); representing that the 8500 Printers are of a particular standard when they are not, § 1770(a)(7); advertising the 8500 Printers with intent not to sell them as advertised, § 1770(a)(9); representing that its warranty confers rights it does not confer (that is, the right to a refund if HP cannot repair or replace a defective product), § 1770(a)(14); and representing that the 8500 Printers have been supplied in accordance with a previous representation when they have not, § 1770(a)(16).

The Court finds that Plaintiff has stated a claim with respect to his allegations under § 1770(a)(5) based on representations that the 8500 Printers have characteristics and benefits which they do not have.  The "likely to be deceived" standard for deceptive practices under the fraudulent prong of the UCL applies equally to claims for misrepresentation under the CLRA. *Williams*, 552 F.3d at 939; *Consumer Advocates*, 113 Cal. App. 4th at 1360.  Accordingly, for the same reasons

18

United States District Court
For the Northern District of California

1    that Plaintiff states a claim under the fraudulent prong of the UCL, the Court finds it plausible that

2    a reasonable consumer would be deceived by HP's representations that its 8500 printer has

3    qualities and benefits – the capacity to scan and copy multi-page documents from a 50-page ADF

4    with reasonable reliability – that it does not have.  Plaintiff has also adequately alleged that he

5    relied on HP's representations about the printer's multi-page copying, scanning, and faxing

6    capacity, FAC ¶¶ 31, 33, 35-36, and that he suffered damage as a result.  FAC ¶¶ 9, 63, 87.

7    Accordingly, Plaintiff has stated a valid claim for relief for violations of § 1770(a)(5) of the CLRA.

8             Although a violation of one section of the statute is sufficient to sustain Plaintiff's CLRA

9    claim, the Court notes that the remainder of Plaintiff's allegations under the CLRA do not support

10   a plausible claim.  Plaintiff's claim that Defendant violated § 1770(a)(7) fails because Plaintiff

11   does not allege that Defendant represented the Printers as any "particular standard, quality, or

12   grade" or any "particular style or model" when in fact they were of another.  Cal. Civ. Code

13   § 1770(a)(7).  Plaintiff's claim that Defendant violated § 1770(a)(9) fails because Plaintiff has not

14   sufficiently alleged that Defendant advertised the 8500 Printer "with *intent* not to sell them as

15   advertised."  *Id.* § 1770(a)(9) (emphasis added).  As to the alleged violation of § 1770(a)(14),

16   Plaintiff claims that Defendant misrepresented the rights conferred in its one-year warranty because

17   it has refused to refund the purchase price for defective printers that cannot be fixed or replaced.

18   FAC ¶ 101(d).  As discussed below, however, Plaintiff's failure to allege that he requested a refund

19   from Defendant forecloses this claim.  Finally, Plaintiff's fifth CLRA claim alleges that Defendant

20   violated § 1770(a)(16) by representing that the HP 8500 Printers were supplied in accordance with

21   previous representations when they were not.  To the extent that this section forms a basis for

22   liability separate from that in § 1770(a)(5), it appears to require an independent statement by HP

23   that its printers were supplied in accordance with earlier statements.  Plaintiff does not identify any

24   such representation.

25             Nonetheless, as indicated above, Plaintiff's allegations are sufficient to state a valid claim

26   for violations of § 1770(a)(5) of the CLRA.  Accordingly, the Court DENIES Defendant's motion

27   to dismiss Plaintiff's CLRA claim.

28

Case No.: 10-CV-02176-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

### B.  Breach of Express Warranty

Plaintiff's fourth cause of action alleges that HP breached the express warranties contained in the written warranty documents included with the HP 8500 Printer.  FAC ¶ 107.  Plaintiff claims that Defendant failed to honor these warranties by (1) continuing to offer customers defective printers as replacements for the purchased product, and (2) refusing to refund the purchase price when it is unable to repair or replace the purchased product.[8]  FAC ¶ 108.

HP's written Limited Warranty states that "HP products will be free from defects in material and workmanship" for the duration of the warranty.[9]  FAC ¶ 108; Decl. of Blaine H. Evanson In Supp. of Hewlett-Packard Company's Mot. to Dismiss Pl.'s FAC ("Evanson Decl."), Ex A.  Defendant argues that this warranty does not cover the design defects alleged by Plaintiff because it reaches only defects in material and workmanship, and not defects in design.  In support of its argument, HP cites *Brothers v. Hewlett-Packard Co.*, a case in this District which considered identical language in an HP Limited Warranty and found that it did not guarantee against design defects.  No. C-06-02254, 2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007).  The *Brothers* Court reasoned that "[u]nlike defects in materials or workmanship, a design defect is manufactured *in accordance with* the product's intended specifications."  *Id.* (citing *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120 (2002)).  It therefore found that while the HP warranty guaranteed a product free of defective materials or substandard workmanship in the construction of the printer, it did not warrant against inherent defects arising from the underlying design.  *Id.*  As Plaintiff points out, however, the Ninth Circuit has interpreted "workmanship" more broadly.  In the context of insurance policy exclusions, the Ninth Circuit has explicitly stated that "an

---

[8] The FAC also alleges that the one-year limit on HP's express warranty is unconscionable.  FAC ¶ 112.  However, Plaintiff's warranty period had not expired when he filed his Complaint, and Plaintiff did not address the unconscionability claim in his opposition brief.  Thus, Plaintiff has apparently conceded that the warranty's alleged unconscionability is not relevant to his breach of warranty claim.

[9] Defendant submitted a copy of its written Limited Warranty Statements in support of its Motion to Dismiss.  Decl. of Blaine H. Evanson In Supp. of HP's Mot. to Dismiss Pl.'s FAC, Ex. A.  Because Plaintiff refers to the Limited Warranty in the FAC and has not disputed the authenticity of the Limited Warranty provided by Defendant, the Court may consider Defendant's submission in ruling on this motion. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir.1998) (internal quotation marks omitted), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

20

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   unstrained interpretation" of an "exclusion for 'faulty workmanship' includes losses caused by

2   defects in the design and construction of a building." *Tzung v. State Farm Fire and Cas. Co.*, 873

3   F.2d 1338, 1341 (9th Cir. 1989).  The *Brothers* court did not address this decision, and it is not

4   clear whether the Ninth Circuit's construction of an "all risk" apartment building insurance policy

5   would have changed its analysis.

6          The Court need not resolve the issue at this time, however, for the Court agrees with

7   Defendant that, even if design defects are covered by the warranty, Plaintiff cannot state a claim for

8   breach of express warranty because he never requested a refund.  *See Stearns v. Select Comfort*

9   *Retail Corp.*, No. No. 08-2746, 2010 WL 2898284, at *16 (N.D. Cal. July 21, 2010) (declining to

10  decide whether "workmanship" includes design defects where claim failed on other grounds).

11  HP's Limited Warranty provides that "[i]f HP receives, during the applicable warranty period,

12  notice of a defect in any product which is covered by HP's warranty, HP shall either repair or

13  replace the product, at HP's option."  Evanson Decl. Ex. A.  It provides further that if HP is unable

14  to repair or replace the product, "HP shall, within a reasonable time after being notified of the

15  defect, refund the purchase price of the product."  *Id.*  In this case, Plaintiff notified HP of the

16  defect in the printer he purchased, as well as the first replacement printer he received.  FAC ¶¶ 35-

17  36.  Each time HP was notified of the defect, it provided Plaintiff with a replacement printer.  *Id.*

18  When Plaintiff's second replacement printer exhibited the same defect, however, Plaintiff

19  apparently did not notify HP or request a refund, but instead bought a new printer from another

20  manufacturer.  FAC ¶ 36.

21          Plaintiff claims that the warranty "does not grant Defendant infinite opportunities to replace

22  the printer with an equally defective machine," and argues that a consumer is only required to give

23  the manufacturer a reasonable opportunity to repair.  Pl.'s Opp'n to Def.'s Mot. to Dismiss the

24  FAC ("Pl.'s Opp'n") 16, ECF No. 27.  While this may be true,[10] it does not necessarily follow that

25  _____

26  [10] The cases Plaintiff cites for the "reasonable opportunity to repair" requirement rely on a section
    of the Song-Beverly Consumer Warranty Act, which provides that "if the manufacturer or its
    representative in this state does not service or repair the goods to conform to the applicable express
27  warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or
    reimburse the buyer."  Cal. Civ. Code § 1793.2(d)(1).  However, this section of the Song-Beverly
28  Act only applies to "goods sold in this state" – that is, California.  Cal. Civ. Code § 1793(a).  As
    discussed below, such provisions do not appear to apply to Plaintiff.

Case No.: 10-CV-02176-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1   Plaintiff may accept a replacement product, without notifying Defendant that the replacement

2   product is also defective or requesting a refund, and then prevail on a breach of warranty claim on

3   grounds that Defendant "refused" to provide a refund.  Indeed, in the cases Plaintiff cites, the

4   consumers notified defendants that repeated attempts at repair had failed and demanded a refund or

5   repurchase.  *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785,

6   792, 50 Cal. Rptr. 3d 731 (Cal. Ct. App. 2006); *Oregel v. American Isuzu Motors, Inc.*, 90 Cal.

7   App. 4th 1094, 1099, 109 Cal. Rptr. 2d 583 (Cal. Ct. App. 2001); *Krotin v. Porsche Cars North*

8   *America, Inc.*, 38 Cal. App. 4th 294, 298, 45 Cal. Rptr. 2d 10 (Cal. Ct. App. 1995).  In this case, in

9   contrast, it appears that Plaintiff never notified HP that the second replacement was defective and

10   never sought a refund.  Plaintiff therefore cannot state a claim for breach of warranty on grounds

11   that HP refused to provide a refund.

12          Nor can Plaintiff state a claim under the theory that Defendant breached its express

13   warranties by continuing to offer replacement printers that it knew to be defective.  The Court does

14   not rule out the possibility that replacing defective printers with printers *known* to contain the same

15   defect may constitute a breach of HP's Limited Warranty.  As discussed above, however, the FAC

16   does not plausibly allege that HP had prior knowledge of a widespread design defect.  Moreover,

17   even if HP later learned of the defect, as appears to be the case, Plaintiff has not alleged the date on

18   which he received his second replacement printer or pled facts sufficient to infer that HP knew of

19   the defect at that time.  *See* FAC ¶¶ 34-36.  Accordingly, Plaintiff has failed to state a claim for

20   breach of express warranty, and the Court therefore GRANTS Defendant's motion to dismiss this

21   claim with leave to amend.

22                        **C.  Breach of Implied Warranty of Merchantability**

23          In his final cause of action, Plaintiff alleges that Defendant breached the warranty of

24   merchantability implied under the California Commercial Code, Cal. Com. Code § 2314, and the

25   Song-Berly Consumer Warranty Act, Cal. Civ. Code § 1792.  Defendant argues this claim must

26   be dismissed because Defendant properly disclaimed the implied warranty of merchantability in its

27   Limited Warranty.  The Court agrees.

28

**United States District Court**
For the Northern District of California

Case No.: 10-CV-02176-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    Plaintiff argues that the Beverly-Song Act bars Defendant from disclaiming implied

2   warranties.  Plaintiff is correct that the Beverly-Song Act prohibits manufacturers and sellers from

3   disclaiming the implied warranties guaranteed by the Act in any sale in which express warranties

4   are given.  Cal. Civ. Code § 1793.  However, the implied warranties guaranteed by the Beverly-

5   Song Act apply only to consumer goods sold at retail in California.  Cal. Civ. Code § 1792 ("every

6   sale of consumer goods that are sold at retail *in this state* shall be accompanied by . . . [an] implied

7   warranty that the goods are merchantable") (emphasis added).  Plaintiff alleges that he was, at all

8   material times, a resident of Passaic County, New Jersey, FAC ¶ 9, and that he purchased the

9   printer online.  FAC ¶ 29.  Nothing in the FAC suggests that Plaintiff was in California when he

10   made the purchase.

11    At oral argument, Plaintiff argued that the Court should treat the online sale as having

12   occurred in California because his order was processed and shipped from California.  However, the

13   FAC only alleges Defendant is a California corporation with its principal place of business in Palo

14   Alto.  FAC ¶ 10.  The geographic limitations of the Beverly-Song Act are not based on the

15   manufacturer's place of business, *see Cummins, Inc. v. Superior Court*, 36 Cal. 4th 478, 489 n.8,

16   115 P.3d 98 (2005), and Plaintiff does not allege other facts that might allow the Court to conclude

17   that his purchase should be considered a sale "in this state."  Accordingly, Plaintiff has not

18   plausibly alleged that he is entitled to the protections of the Beverly-Song Act, and Defendant is

19   not barred from disclaiming the implied warranty of merchantability on that ground.  *Anunziato v.*

20   *eMachines, Inc.*, 402 F. Supp. 2d 1133, 1142 (C.D. Cal. 2005) (dismissing breach of implied

21   warranty claim under the Beverly Song Act because plaintiff who resided in Massachusetts and

22   purchased product over the Internet could not plead an in-state purchase); *see also Cummins*, 36

23   Cal. 4th at 486-93 (holding that the refund-or-replace provisions of the Beverly Song Act apply

24   only to vehicles purchased in California).

25    The California Commercial Code also implies a warranty of merchantability in every

26   contract for a sale of goods, provided that the seller is a merchant with respect to the goods sold.

27   Cal. Com. Code. § 2314.  However, the Commercial Code permits sellers to modify or exclude the

28   implied warranty, subject to certain requirements.  *Id.* § 2316; *see also Mocek v. Alfa Leisure, Inc.*,

23

114 Cal. App. 4th 402, 7 Cal. Rptr. 3d 546 (Cal. Ct. App. 2003) (comparing implied warranty provisions of the Beverly-Song Act and the Commercial Code). Specifically, to exclude the implied warranty of merchantability, the disclaimer must mention merchantability and must be conspicuous. Cal. Com. Code § 2316(2). Plaintiff does not argue that the disclaimer in HP's Limited Warranty failed to mention merchantability or was insufficiently conspicuous. Rather, Plaintiff argues that the disclaimer is not effective because it was not disclosed as part of the purchase transaction, but as a separate document that may or may not be read prior to purchase. Pl.'s Opp'n 17. It is true that California courts traditionally required that the buyer have knowledge or be chargeable with notice of the disclaimer "before the bargain is complete." *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 693, 268 P.2d 1041 (1954). Here, however, Plaintiff acknowledges that the Limited Warranty, which contains the disclaimer, is available on HP's website, Pl.'s Opp'n 15, and there are no allegations that Plaintiff was barred from returning the printer within a reasonable period after receiving the product and reading the warranty documents included with the printer. Such circumstances constitute sufficient notice of the disclaimer. *Berenblat*, 2010 WL 1460297, at *3-4. Accordingly, the Court finds that HP properly disclaimed the warranty of merchantability implied by the California Commercial Code. The Court therefore GRANTS Defendant's motion to dismiss Plaintiff's claim for breach of implied warranty with leave to amend.

### IV. Conclusion

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss Plaintiff's claims under the UCL and CLRA, and GRANTS, with leave to amend, Defendant's motion to dismiss Plaintiff's claims for violations of the FAL, breach of express warranty, and breach of implied warranty. Plaintiff shall file a Second Amended Complaint, if any, within 30 days of this Order.

**IT IS SO ORDERED.**

Dated: December 13, 2010

*Lucy H. Koh*

LUCY H. KOH
United States District Judge

24