UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHAIM KOWALSKY, on Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> HEWLETT-PACKARD COMPANY and DOES 1 Through 100, inclusive, <br><br> Defendants. | Case No.: 10-CV-02176-LHK <br><br> ORDER GRANTING MOTION FOR RECONSIDERATION |

This matter comes before the Court on Defendant Hewlett-Packard Company's ("HP") motion for reconsideration of the Court's order granting in part and denying in part HP's motion to dismiss the First Amended Complaint. In particular, HP moves for reconsideration of the portion of the Court's order denying its motion to dismiss Plaintiff's Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA") claims. The Court heard oral argument on April 14, 2011. For the reasons discussed below, the Court GRANTS HP's motion for reconsideration. Accordingly, the Court VACATES the portion of its earlier order denying the motion to dismiss Plaintiff's UCL and CLRA claims, and DISMISSES Plaintiff's First Amended Complaint with leave to amend. Plaintiff shall file a Second Amended Complaint within 30 days of this Order.

**I. Background**

In its Order Granting in Part and Denying in Part Motion to Dismiss, dated December 13, 2010, the Court provided a detailed factual background to this action and provided legal analysis of

1

1   each of Plaintiff's claims. *See* Order Granting in Part and Denying in Part Motion to Dismiss, ECF

2   No. 35. Rather than repeat that factual and legal analysis here, the Court will simply provide a

3   brief factual and procedural background and then consider the issues raised in HP's Motion for

4   Reconsideration. The Court assumes that the parties and readers of this Order have read the

5   Court's December 13, 2010 order on HP's motion to dismiss.

6   As described in the Court's prior order, this class action lawsuit arises out of the marketing

7   and sale of allegedly defective HP Office Jet Pro All-in-One printers of the 8500 series ("8500

8   Printer"). Plaintiff alleges that HP marketed the 8500 Printer as a premier all-in-one fax, copier,

9   and scanner, FAC ¶ 4, and represented that the 8500 Printer was capable of scanning and copying

10  documents fed through its 50-sheet automatic document feeder ("ADF") at speeds of 34-35 pages

11  per minute. FAC ¶ 31. Plaintiff alleges that, contrary to these representations, the HP 8500 Printer

12  has a design defect that causes the printer to randomly skip pages when copying, scanning, and

13  faxing, and that this defect renders the 50-sheet ADF useable for only two to three sheets at a time.

14  Comp. ¶ 4. Based on these allegations, among others, Plaintiff's First Amended Complaint asserts

15  five causes of action: (1) unlawful, unfair, and deceptive business practices in violation of the

16  California Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code § 17200 *et seq.*; (2) untrue

17  and misleading advertising in violation of the California False Advertising Law ("FAL"), Cal. Bus.

18  & Profs. Code § 17500 *et seq.*; (3) violations of the Consumers Legal Remedies Act ("CLRA"),

19  Cal. Civ. Code § 1750, et seq.; (4) breach of express warranty; and (5) breach of implied warranty

20  of merchantability.

21  On December 13, 2010, the Court issued an order granting in part and denying in part HP's

22  motion to dismiss the First Amended Complaint. As to Plaintiff's first three causes of action under

23  California consumer protection statutes, the Court found that Plaintiff's allegations were

24  sufficiently particularized to satisfy the heightened pleading requirement of Rule 9(b), but

25  concluded that Plaintiff had not plausibly alleged the HP knew, or should have known, of the

26  alleged defect at the time that Plaintiff purchased his printer. Based on this conclusion, the Court

27  dismissed Plaintiff's FAL claim and portions of his UCL and CLRA claims. However, the Court

28  denied HP's motions to dismiss Plaintiff's claims under the fraudulent and unlawful prongs of the

United States District Court
For the Northern District of California

UCL and Section 1770(a)(5) of the CLRA. Relying in part on statements by California courts that the UCL imposes strict liability, the Court found that Plaintiff could state a claim for affirmative misrepresentations under the UCL and CLRA without necessarily establishing HP's prior knowledge of the defect. The Court also granted HP's motion to dismiss Plaintiff's claims for breach of express and implied warranties.

HP subsequently sought leave to move for reconsideration of the portion of the Court's order denying its motion to dismiss Plaintiff's UCL and CLRA claims. Mot. for Leave to Seek Reconsideration, ECF No. 38. HP sought reconsideration based on preexisting and new authority that was not previously brought to the Court's attention, and on grounds that the parties did not have an opportunity to fully brief the issues raised in those authorities at the time of the Court's prior order. The Court agreed with HP's reasoning and granted leave to move for reconsideration. The motion for reconsideration is now fully briefed, and the Court has carefully considered the arguments and relevant legal authority raised by both parties. The Court now exercises its discretion to revise its prior order, *see* Fed. R. Civ. Pro. 54(b), and grants HP's motion for reconsideration for the reasons discussed below.

## II. Discussion

### A. Fraudulent Prong of the UCL

To state a claim under the fraudulent prong of the UCL, "it is necessary only to show that members of the public are likely to be deceived" by the business practice or advertising at issue. *In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 207 P. 3d 20 (2009) (quotation marks and citation omitted). California case law clearly establishes that a UCL violation for fraudulent business practices is distinct from common law fraud and does not require a plaintiff to plead and prove the elements of a tort.[1] *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838, 51

---

[1] Traditionally, a plaintiff could state a viable UCL claim even without allegations of actual deception, reasonable reliance, and damage. *Daugherty*, 144 Cal. App. 4th at 838. However, Proposition 64, approved by California voters in 2004, imposed new standing requirements on UCL plaintiffs. *See In re Tobacco II Cases*, 46 Cal. 4th at 314. Thus, as the class representative in this action, Plaintiff must plead actual reliance, *id.* at 328, and demonstrate that he "has suffered injury in fact and has lost money or property as a result of the unfair competition" in order to establish standing under the UCL. Cal. Bus. & Profs. Code § 17204; *see also id.* § 17203 (requiring persons pursuing representative claims to meet the standing requirements of § 17204); *In re Tobacco II Cases*, 46 Cal. 4th at 315-24 (holding that class representative, but not class members,

3

Case No.: 10-CV-02176-LHK
ORDER GRANTING MOTION FOR RECONSIDERATION

1   Cal. Rptr. 3d 118 (Cal. Ct. App. 2006); *Paduano v. American Honda Motor Co., Inc.*, 169 Cal.

2   App. 4th 1453, 1468-69, 88 Cal. Rptr. 3d 90 (Cal. Ct. App. 2009).  The coverage of the UCL has

3   been described as "sweeping," *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006),

4   and California courts have made rather sweeping statements regarding its application.  Both the

5   California Supreme Court and appellate courts have stated that the UCL "imposes strict liability."

6   *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 181, 999 P.2d 706 (2000);

7   *Paduano*, 169 Cal. App. 4th at 1468; *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72

8   Cal. App. 4th 861, 877, 85 Cal. Rptr. 2d 301 (Cal. Ct. App. 1999).  California courts have also

9   suggested that while claims of common law fraud require a deception "known to be false by the

10  perpetrator," this element is not required to state a claim under the fraudulent prong of the UCL.  *In

11  re Tobacco II Cases*, 46 Cal. 4th at 312 (quoting *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 332,

12  74 Cal. Rptr. 2d 55 (Cal. Ct. App. 1998)).

13  In denying HP's motion to dismiss Plaintiff's claim under the fraudulent prong, the Court

14  relied on these general statements by the California courts and concluded that Plaintiff could state a

15  claim under the fraudulent prong without necessarily establishing that HP had prior knowledge of

16  the printer defect.  As HP points out, however, while the language of strict liability is frequently

17  repeated in descriptions of the UCL generally, California courts have not applied the language of

18  strict liability to product defect claims like the one presented here.  Indeed, when federal district

19  courts have considered fraudulent prong claims based on representations about defective products,

20  they have generally required a plausible showing that the defendant knew of the alleged defect

21  when it made the representations alleged to be deceptive.[2]  *See, e.g.*, *In re Sony Grand Wega KDF-*

---

must satisfy UCL standing requirements).  In its motion, HP argues that Plaintiff cannot meet this standing requirement because he alleges a latent defect that arose only after HP made the representations at issue.  HP reasons that its representations did not become false or misleading until the latent defect manifested, and therefore Plaintiff cannot be said to have relied on false or misleading statements when he purchased the printer.  Here, however, Plaintiff appears to allege a defect that manifested fairly quickly after he began using the printer.  In such a case, it is not clear that a statement made prior to the manifestation of the defect could not be considered false when made, particularly if the defect were regularly occurring and predictable.  The Court need not resolve this issue in order to resolve the motion for reconsideration, however.

[2] Plaintiff notes that the cases HP relies on dealt primarily with allegations of concealment and omissions rather than active misrepresentations.  Courts have generally found a broader duty to disclose in cases where the defendant made affirmative representations that are contrary to the

United States District Court
For the Northern District of California

*E A10/A20 Series Rear Projection HDTV Television*, --- F.Supp.2d ----, Nos. 08-CV-2276-IEG (WVG), 09-CV-0620-IEG (WVG), 09-CV-0736-IEG (WVG), 09-CV-2703-IEG (WVG), 2010 WL 4892114, at *6 (S.D. Cal. Nov. 30, 2010) ("Plaintiffs have failed to offer sufficiently particularized allegations showing that Sony was aware of the defect when Plaintiffs purchased the televisions"); *Neu v. Terminix Intern., Inc.*, No. C 07-6472 CW, 2008 WL 2951390, at *3 (N.D. Cal. July 24, 2008) (dismissing UCL claim on grounds that plaintiff "fail[ed] sufficiently to allege that Defendants knew their termite prevention plan to be faulty at the time the statements were made"); *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *7 (N.D. Cal. June 16, 2010) (dismissing UCL claim in part because plaintiffs did not sufficiently allege knowledge of the alleged defects).

In light of these cases, the Court is persuaded that the coverage of the fraudulent prong is more limited than the California courts' broad statements regarding "strict liability" might suggest. In its motion, HP makes the convincing argument that in the California cases relied upon by the Court, the defendants had knowledge of the basic facts that rendered their statements misleading at the time the statements were made. Mot. for Reconsideration at 6. In *Paduano*, for instance, the plaintiffs claimed that Honda's advertisements were misleading because they suggested that a driver could achieve a high gas mileage by driving the Civic Hybrid just as one would drive a conventional car. *Paduano*, 169 Cal. App. 4th at 1470-71. In that case, Honda may not have intended to deceive consumers, and it may not have known that its advertisements would have a deceptive effect, but it knew that drivers could not achieve the gas mileage advertised without driving the Hybrid in a special manner. *Id.* at 1471. The Ninth Circuit case *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), is similar. There, the plaintiffs claimed that Gerber's use of the words "fruit juice" juxtaposed alongside images of oranges, peaches, strawberries, and cherries falsely suggested that its product contained those fruits or their juices. *Id.* at 939. Again,

---

undisclosed defect or characteristic. *See, e.g.*, *Daugherty v. American Honda Motor Co.*, Inc., 144 Cal. App. 4th 824, 834-37, 51 Cal. Rptr. 3d 118 (Cal. Ct. App. 2006) (discussing limited duty to disclose in the absence of affirmative misrepresentations). This suggests that HP may have had a duty to correct its representations about the 8500 Printer's capacity once it learned of the alleged defect or at the time it should have learned of the defect. However, it does not follow that HP can be held liable for affirmative representations that were made and relied upon before it knew or had reason to know of the defect that may have rendered those representations misleading.

5

Case No.: 10-CV-02176-LHK
ORDER GRANTING MOTION FOR RECONSIDERATION

1   while Gerber may not have intended to deceive consumers or known that its packaging would be

2   misleading, it was aware of basic facts that rendered its advertisement deceptive – that its product

3   did not contain the fruits depicted on the packaging.  Thus, in *Paduano* and *Gerber*, because the

4   defendants were aware of the facts that rendered their representations misleading at the time they

5   made those representations, they could be held liable under the UCL regardless of their motivations

6   or their subjective assessment of the deceptive nature of their statements.  It is in this sense that the

7   UCL imposes strict liability.

8   　　　　In contrast, where a defendant lacked knowledge of the facts that rendered its

9   representations misleading at the time it made the representations, courts have been unwilling to

10  impose liability under the fraudulent prong of the UCL.  Thus, as the Court acknowledged in its

11  prior order, in *Klein v. Earth Elements, Inc.*, the California Court of Appeal found that the

12  "unwitting" and "unintentional" distribution of contaminated dog food did not constitute a

13  deceptive practice under the fraudulent prong of the UCL.  59 Cal. App. 4th 965, 970, 69 Cal. Rptr.

14  2d 623 (Cal. Ct. App. 1997).  Although the facts in *Klein* were somewhat extraordinary,[3] California

15  district courts have been similarly unwilling to impose liability in cases where the defendant was

16  unaware of critical facts at the time that allegedly misleading or deceptive statements were made.

17  In *Neu v. Terminix International, Inc.*, for example, the plaintiff claimed that defendants violated

18  the UCL by falsely advertising their "baiting system" as the best defense against termites.  2008

19  WL 2951390, at *3.  The plaintiff argued that the defendants knew, or should have known, that

20  such statements were false based on research studies showing that baiting systems are ineffective

21  for controlling termite infestations.  *Id.*  The court rejected this contention, however, because the

22  studies cited by plaintiff were published only *after* the defendant made the statements at issue.  *Id.*

23  Accordingly, the plaintiff had not plausibly alleged that the defendant knew, or had reason to

---

[3] In *Klein*, the defendant distributed pet food that was manufactured and tested for quality by a different corporation.  *Klein*, 59 Cal. App. 4th at 967.  The mold toxin that contaminated the pet food was difficult to detect because it was unevenly distributed in the grain.  *Id.* at 968.  Moreover, the court in *Klein* appeared to base its decision in part on the extensive measures the defendant took to recall the contaminated pet food and reimburse consumers for any damages once it learned of the contamination.  *Id.* at 968, 970.

6

Case No.: 10-CV-02176-LHK
ORDER GRANTING MOTION FOR RECONSIDERATION

know, that its termite prevention plan was faulty at the time the statements were made, and the court therefore dismissed her UCL claim. *Id.* at *3-4.

In this case, the Court has found that Plaintiff did not adequately allege that HP knew, or through the exercise of reasonable care should have known, of the printer defect at the time it marketed and advertised the printer's capabilities. *See* Order Granting in Part and Denying in Part Motion to Dismiss at 9. Without knowledge of the defect, HP lacked awareness of the basic fact that allegedly rendered its representations about the printer misleading or deceptive. Accordingly, this case is less like *Paduano* and *Williams*, and more like *Klein* and *Neu*. Here, as in *Neu*, it seems that HP eventually became aware of the alleged problems with the 8500 Printer, but Plaintiff has not pled sufficient facts to suggest that HP had knowledge of that basic fact at the time that it marketed, and Plaintiff purchased, the printer. The Court is now persuaded that without knowledge, or reason to know, of the alleged printer defect, HP cannot be held liable under the fraudulent prong of the UCL. For this reason, the Court agrees with HP that Plaintiff's claim under the fraudulent prong of the UCL must be dismissed. However, as Plaintiff may be able to allege additional facts raising a plausible inference that HP knew, or by the exercise of reasonable care should have known,[4] of the defect, the Court grants Plaintiff leave to amend his fraudulent prong claim.

### B.  CLRA and Unlawful Prong of the UCL

HP also seeks reconsideration of the denial of its motion to dismiss Plaintiff's claim under the CLRA and the unlawful prong of the UCL. Because the Court found that Plaintiff stated a UCL claim under the unlawful prong only based upon violations of the CLRA, *see* Order Granting in Part and Denying in Part Motion to Dismiss at 10-11, Plaintiff's unlawful prong claim depends upon his ability to state a claim under the CLRA.

---

[4] The California False Advertising Law ("FAL") prohibits any statement in advertising "which is untrue or misleading, and which is known, *or which by the exercise of reasonable care should be known*, to be untrue or misleading." Cal. Bus. & Profs. Code § 17500 (emphasis added). Generally, a violation of the FAL is also a violation of the fraudulent prong of the UCL. *In re Tobacco II Cases*, 46 Cal. 4th at 312 n.8. For that reason, the Court borrows the "exercise of reasonable care" language from the FAL.

7

Case No.: 10-CV-02176-LHK
ORDER GRANTING MOTION FOR RECONSIDERATION

1        The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or
2   practices undertaken by any person in a transaction intended to result or which results in the sale or
3   lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Generally, the standard for
4   deceptive practices under the fraudulent prong of the UCL applies equally to claims for
5   misrepresentation under the CLRA. *See Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal.
6   App. 4th 1351, 1360, 8 Cal. Rptr. 3d 22 (Cal. Ct. App. 2003). For this reason, courts often analyze
7   the two statutes together. *See, e.g.*, *Paduano*, 169 Cal. App. 4th at 1468-73 (analyzing UCL and
8   CLRA claims together); *Neu*, 2008 WL 2951390, at *3-4 (analyzing UCL, FAL, and CLRA claims
9   together); *Chacanaca v. Quaker Oats Co.*, No. C 10-0502 RS, 2010 WL 4055954, at *11-12 (N.D.
10  Cal. Oct. 14, 2010) (analyzing UCL, FAL, and CLRA claims together). This suggests that the
11  Court's above analysis of the fraudulent prong of the UCL applies equally to claims brought under
12  the CLRA, and that a representation will not violate the CLRA if the defendant did not know, or
13  have reason to know, of the facts that rendered the representation misleading at the time it was
14  made. *See Neu*, 2008 WL 2951390, at *3-4 (dismissing CLRA and UCL claims because plaintiff
15  did not sufficiently allege that defendant knew its statements were false or misleading at the time
16  they were made).
17       Moreover, as HP points out, federal district court decisions suggest that a manufacturer's
18  representations about a product should not be considered deceptive under the CLRA merely
19  because the product manifests a defect of which the manufacturer had no prior knowledge or of
20  which it had no reason to know. *See Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL
21  2486353, at *4 (N.D. Cal. June 16, 2010) (dismissing CLRA claim because plaintiff failed
22  sufficiently to allege that HP knew of the alleged defects in its computers at the time of sale);
23  *Cirulli v. Hyundai Motor Co.*, No. SACV 08-0854 AG (MLGx), 2009 WL 5788762, at *3-4 (C.D.
24  Cal. June 12, 2009) (denying motion to dismiss CLRA claim because plaintiff sufficiently alleged
25  facts showing that defendant should have known of the alleged defect when plaintiff purchased the
26  product). In *Baba*, the court reasoned that while a product defect may give rise to breach of
27  warranty claims, the presence of a defect is not actionable under the CLRA "without proof of more,
28  such as the fact that the defendant sold a product it was aware was defective." *Baba*, 2010 WL

8
Case No.: 10-CV-02176-LHK
ORDER GRANTING MOTION FOR RECONSIDERATION

2486353, at *4.  This reasoning appears to serve the purpose of the CLRA, which is to protect consumers from "unfair or deceptive" business practices.  With the benefit of full briefing of the issue, the Court agrees with these decisions and finds that a representation is not "deceptive" under the UCL or the CLRA simply because an unanticipated product defect calls the prior representation into question.

Based on this analysis, the Court finds that HP cannot be liable under the CLRA for representations about the 8500 Printer's characteristics that are rendered misleading due to a defect of which HP did not know, or of which it did not have reason to know, at the time HP made the representations.  As discussed above, the Court previously found that Plaintiff did not sufficiently allege facts raising a plausible inference that HP knew, or by the exercise of reasonable care should have known, of the alleged defect in the 8500 Printer.  Accordingly, Plaintiff's CLRA claim must be dismissed.  In addition, because the Court previously sustained Plaintiff's claim under the unlawful prong of the UCL based solely on violations of the CLRA, Plaintiff's claim under the unlawful prong of the UCL must also be dismissed.  However, as Plaintiff may be able to allege additional facts raising a plausible inference that HP knew, or by the exercise of reasonable care should have known, of the defect, the Court grants Plaintiff leave to amend these claims.

### III. Conclusion

For the foregoing reasons, the Court GRANTS Defendant's motion for reconsideration and VACATES the portion of the December 13, 2010 order which denied Defendant's motion to dismiss Plaintiff's UCL and CLRA claims.  In accordance with the above analysis, Plaintiff's First Amended Complaint is DISMISSED with leave to amend.  Plaintiff shall file a Second Amended Complaint within 30 days of this Order.

**IT IS SO ORDERED.**

Dated: April 15, 2011

_____
LUCY H. KOH
United States District Judge

9
Case No.: 10-CV-02176-LHK
ORDER GRANTING MOTION FOR RECONSIDERATION