1   SAMUEL G. LIVERSIDGE, SBN 180578
    sliversidge@gibsondunn.com
2   AUSTIN V. SCHWING, SBN 211696
    aschwing@gibsondunn.com
3   BLAINE H. EVANSON, SBN 254338
    bevanson@gibsondunn.com
4   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
5   Los Angeles, California  90071-3197
    Telephone: (213) 229-7000
6   Facsimile: (213) 229-7520

7   Attorneys for Defendant,
    HEWLETT-PACKARD COMPANY

8

9                   UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                       SAN JOSE DIVISION

12

13   CHAIM KOWALSKY, on Behalf of Himself      CASE NO. 10-CV-02176 LHK
     and All Others Similarly Situated,
14                                             HEWLETT-PACKARD COMPANY'S
               Plaintiff,                      MEMORANDUM OF POINTS AND
15                                             AUTHORITIES IN OPPOSITION TO
          v.                                   PLAINTIFF'S MOTION FOR CLASS
16                                             CERTIFICATION
     HEWLETT-PACKARD COMPANY and DOES
17   1 Through 100, inclusive,                 [Fed. R. Civ. P. 23]

18             Defendant.                      Date:    March 15, 2012
                                               Time:    1:30 pm
19                                             Place:   Courtroom 8
                                               Before:  Judge Lucy H. Koh
20

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................. 1

II.    SUMMARY OF KEY FACTS AND EVIDENCE .................................................. 4

       A.    The 8500 Printer............................................................................................. 5

       B.    The Named Plaintiff's Allegations And Testimony....................................... 5

       C.    The Evidence Regarding The Alleged Page-Skipping Issue ......................... 8

             1.    Less Than One Tenth Of One Percent Of The Proposed Class Ever
                   Complained To HP About A Page-Skipping Issue .............................. 8

             2.    HP's Rigorous Testing Did Not Reveal An Issue, And Its Engineers
                   Were Able To Replicate The Problem Only On A Few Printers, And
                   Only In Limited, Unique Circumstances ............................................. 9

             3.    Plaintiff Has Offered No Evidence Of A Common, Class-Wide Page-
                   Skipping Issue ................................................................................... 10

       D.    HP Provided A Firmware Update That Resolved The Page-Skipping Issue For
             The Small Number Of Printers Affected ...................................................... 12

III.   ARGUMENT.................................................................................................... 13

       A.    Plaintiff's Burden At The Class-Certification Stage.................................... 13

       B.    Plaintiff Cannot Satisfy The Requirements Of Rule 23 .............................. 13

             1.    Plaintiff Cannot Base A Class Action On Statements That He Now
                   Admits Are Accurate.......................................................................... 14

             2.    Plaintiff Cannot Demonstrate Commonality Or Predominance Of
                   Common Issues ................................................................................. 15

                   a.    Plaintiff Cannot Demonstrate Commonality Or Predominance
                         Because He Has Not Produced Evidence That The Page-
                         Skipping Issue Impacted Everyone Who Bought An 8500
                         Printer................................................................................ 16

                   b.    Plaintiff Cannot Demonstrate Commonality Or Predominance
                         Because Of Individualized Questions Regarding Which Class
                         Members Updated Their Firmware ..................................... 17

                   c.    Individualized Questions Regarding Putative Class Members'
                         Reliance Would Predominate.............................................. 18

                   d.    Individualized Inquiries Would Be Needed To Determine
                         Which Customers Are "Consumers" Under The CLRA ................. 20

i

**TABLE OF CONTENTS** *(continued)*

Page

3. Plaintiff's Class Is Overbroad Because It Includes The Base-Model Printer For Which There Is No Evidence Of Page Skipping ........................ 21

4. Plaintiff's Proposed Nationwide Class Is Improper And Would Not Be Manageable .................................................................................................. 22

    a. Plaintiff's Proposed Nationwide Class Is Improper Due To The Individual Choice-of-Law Issues For Each Purchaser ...................... 22

        (i) California's UCL And CLRA Cannot Constitutionally Apply To The Claims Of Every Class Member ..................... 22

        (ii) Irreconcilable Conflicts Among States' Consumer Protection Laws Preclude Certification Of A Nationwide Class Based On Claims Under The UCL And CLRA .......... 23

        (1) California's Consumer Protection Laws Conflict In Material Ways With The Applicable Laws Of Other States ................................................................................ 23

        (2) Each State Has A Strong Interest In Applying Its Own Laws To The Claims Of Consumers In Its State ................... 24

        (3) Applying California Law To A Nationwide Class Would Impermissibly Impair Other States' Interests In Their Ability To Foster Commerce ................................................. 24

    b. Manageability Issues And Plaintiff's Failure To Offer A Trial Plan Preclude Certification ................................................................. 25

5. Plaintiff Has Failed Rule 23(a)'s Typicality And Adequacy Requirements ............................................................................................. 25

IV. CONCLUSION ...................................................................................................... 27

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ........................................................................................ 16

*Arabian v. Sony Electronics Inc.,*
   2007 WL 627977 (S.D. Cal. Feb. 22, 2007) ................................. 16, 21, 22, 26

*Avritt v. ReliaStar Life Ins. Co.,*
   615 F.3d 1023 (8th Cir. 2010) ........................................................................ 19

*Bates v. UPS, Inc.,*
   511 F.3d 974 (9th Cir. 2007) .......................................................................... 14

*Birdsong v. Apple, Inc.,*
   590 F.3d 955 (9th Cir. 2009) ................................................................... 17, 18

*Buckland v. Threshold Enters., Ltd.,*
   155 Cal. App. 4th 798 (2007) ................................................................... 18, 23

*Dabush v. Mercedes Benz USA, LLC,*
   874 A.2d 1110 (N.J. Super. App. 2005) ......................................................... 23

*Debbs v. Chrysler Corp.,*
   810 A.2d 137 (Pa. Super. Ct. 2002) ............................................................... 23

*Denney v. Deutsche Bank AG,*
   443 F.3d 253 (2d Cir. 2006) ........................................................................... 20

*Egwuatu v. S. Lubes, Inc.,*
   976 So. 2d 50 (Fla. Dist. Ct. App. 2008) ....................................................... 23

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011) .......................................................................... 13

*Estrella v. Freedom Financial Network, LLC,*
   2010 WL 2231790 (N.D. Cal. Oct. 31, 2010) ................................................ 25

*Ewert v. eBay, Inc.,*
   2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) ................................................ 21

*Feinstein v. Firestone Tire & Rubber Co.,*
   535 F. Supp. 595 (S.D.N.Y. 1982) ................................................................ 16

*Freeman v. Time, Inc.,*
   68 F.3d 285 (9th Cir. 1995) ........................................................................... 26

*Gen. Tel. Co. of the Sw. v. Falcon,*
   457 U.S. 147 (1982) ........................................................................................ 13

*Gonzales v. Comcast Corp.,*
   2012 WL 10621 (E.D. Cal. Jan. 3, 2012) ................................................ 17, 18

*Guth v. Allied Home Mtg. Capital Corp.,*
   2008 WL 2635521 (Ohio App. July 7, 2008) ................................................ 23

*Hanon v. Dataprods. Corp.,*
   976 F.2d 497 (9th Cir. 1992) ................................................................... 13, 26

*Hoey v. Sony Elecs., Inc.,*
   515 F. Supp. 2d 1099 (N.D. Cal. 2007) ......................................................... 15

iii

# TABLE OF AUTHORITIES  *(continued)*

Page(s)

*In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.,*
  2011 WL 4809846 (S.D. Cal. Oct. 11, 2011) .................... 19

*In re Hydrogen Peroxide Antitrust Litig.,*
  552 F.3d 305 (3d Cir. 2008) .................................. 13

*In re Paxil Litig.,*
  212 F.R.D. 539 (C.D. Cal. 2003) ............................. 25

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,*
  214 F.R.D. 614 (W.D. Wash. 2003) ........................... 18

*In re Sony Grand WEGA Litig.,*
  758 F. Supp. 2d 1077 (S.D. Cal. 2010) ...................... 26

*In re Tobacco II Cases,*
  46 Cal. 4th 298 (2009) ..................................... 19

*Klein v. Earth Elements, Inc.,*
  59 Cal. App. 4th 965 (1997) ................................ 18

*Mazur v. eBay Inc.,*
  257 F.R.D. 563 (N.D. Cal. 2009) ............................ 26

*Mazza v. Am. Honda Motor Co.,*
  No. 09-55376 (9th Cir. Jan. 12, 2012) ......... 1, 18, 19, 20, 22, 23, 24, 25

*McCann v. Foster Wheeler LLC,*
  48 Cal. 4th 68 (2010) ............................. 23, 24, 25

*Meyer v. Sprint Spectrum L.P.,*
  45 Cal. 4th 634 (2009) ..................................... 18

*Norwest Mortg., Inc. v. Superior Court,*
  72 Cal. App. 4th 214 (1999) ................................ 22

*Puentes v. Wells Fargo Home Mortg., Inc.,*
  160 Cal. App. 4th 638 (2008) ............................... 15

*Saulic v. Symantec Corp.,*
  596 F. Supp. 2d 1323 (C.D. Cal. 2009) ...................... 14

*Sebago, Inc. v. Beazer East, Inc.,*
  18 F. Supp. 2d 70 (D. Mass. 1998) .......................... 23

*Shein v. Canon USA, Inc.,*
  2010 WL 3170788 (C.D. Cal. Aug. 10, 2010) .................. 16

*State Farm Mut. Auto Ins. Co. v. Campbell,*
  538 U.S. 408 (2003) ........................................ 24

*Stutman v. Chem. Bank,*
  731 N.E.2d 608 (N.Y. 2000) ................................. 23

*Valentino v. Carter-Wallace, Inc.,*
  97 F.3d 1227 (9th Cir. 1996) ............................... 25

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (2011) ................................. 13, 15

*Walter v. Hughes Commc'ns, Inc.,*
  2011 WL 2650711 (N.D. Cal. July 6, 2011) ................... 26

iv

## TABLE OF AUTHORITIES  *(continued)*

Page(s)

*Wash. Mut. Bank v. Superior Court,*
   24 Cal. 4th 906 (2001) ................................................................................ 22, 23

*Webb v. Carter's Inc.,*
   272 F.R.D. 489 (C.D. Cal. 2011) ...................................................................... 18

*Wiener v. Dannon Co.,*
   255 F.R.D. 658 (C.D. Cal. 2009) ...................................................................... 22

*Zinser v. Accufix Research Inst., Inc.,*
   253 F.3d 1180 (9th Cir. 2001) ........................................................................... 25

### Statutes

Cal. Civ. Code § 1761(d) ................................................................................... 4, 20

Colo. Rev. Stat. § 6-1-105(1) ................................................................................ 23

N.J. Stat. Ann. § 56:8-2 ......................................................................................... 23

### Rules

Fed. R. Civ. P. 23(a) .............................................................................................. 14

Fed. R. Civ. P. 23(a)(3) .......................................................................................... 26

Fed. R. Civ. P. 23(a)(4) .......................................................................................... 26

Fed. R. Civ. P. 23(b)(3) .................................................................................... 14, 16

## I.    INTRODUCTION

Plaintiff Chaim Kowalsky has moved to certify a sprawling, nationwide class of hundreds of thousands of people who purchased HP's 8500 Series printers ("8500 printers"). He purports to apply California's Unfair Competition Law ("UCL") and the Consumers Legal Remedies Act ("CLRA") to everyone in the proposed class, regardless of their state of residency (Plaintiff is from New Jersey) or where they bought their printers. But, as Plaintiff's counsel informed the Court during the February 1, 2012 status conference, based on the Ninth Circuit's recent decision in *Mazza v. American Honda Motor Co.*, No. 09-55376 (9th Cir. Jan. 12, 2012), the Court has "no choice but to deny a nationwide class." (Evanson Decl., Ex. A at 16:22–23.) That case makes clear that California law does not apply to the entire purported class, and that the individual choice-of-law inquiries for each class member and application of numerous states' laws make class certification inappropriate. And even if the purported class could theoretically be narrowed to include only California residents, Plaintiff—a New Jersey resident—would not be a member of that class and therefore could not act as its representative. Plaintiff has already admitted that he cannot distinguish *Mazza*: "There's no way we could even distinguish this. It's not a distinguishable case. It's not even based on the facts. It's basically saying, under state law, you cannot have a nationwide class." (*Id.* at 16:25–17:4.) Indeed, Plaintiff's counsel informed this Court that, given *Mazza*, his motion is "a waste of everyone's time and effort" and "the court's going to deny it" (*id.* at 17:12–15), yet Plaintiff refuses to withdraw his baseless motion. Plaintiff is right; this Court should deny class certification.

Even beyond these fatal deficiencies, Plaintiff has fallen woefully short of meeting his burden to establish Rule 23's requirements. As an initial matter, HP did not, as Plaintiff incorrectly alleges, make any misrepresentations regarding the 8500 printer's speed while using the ADF or the ADF's capacity. Plaintiff has failed to identify *any* representations (false or otherwise) that HP actually made regarding the printer's speed while *using the ADF*—every specification he points to either relates to the speed of the 8500 printer in printing from the tray below the printer, or the copy speed of the 8500 printer using the flatbed scanner, *not the ADF*. Further, Plaintiff admitted in his deposition that HP made no false representations regarding the capacity of the printer's ADF. In

1

short, Plaintiff seeks to represent a nationwide class of hundreds of thousands of purchasers seeking hundreds of millions of dollars for statements that HP either never made or that Plaintiff now admits are true.

Because Plaintiff has admitted that these product specifications are true, he has resorted to arguing that they suddenly *become false* if the 8500 printer's ADF skips pages. But even crediting this theory as valid (which HP does not)—that accurate product specifications can somehow be rendered fraudulent if the user has problems with the product—this claim presents the archetype of a claim that cannot possibly be resolved on a class basis on behalf of hundreds of thousands of class members. The statements at issue are not false on their face, or even alleged to be so. Under Plaintiff's theory, to determine whether HP's statement is false, each class member's post-purchase experience must be evaluated to ascertain whether he or she experienced a page-skipping problem. As a consequence, Plaintiff cannot possibly satisfy the commonality requirement of Rule 23(a) or the predominance requirement of Rule 23(b)(3), because each purchaser's claim would necessarily turn on highly individualized inquiries that make class certification entirely improper here.

First, it would be necessary to examine each of the hundreds of thousands of purported class members to determine whether he or she experienced a page-skipping issue. Plaintiff admits that people who did not experience the page-skipping issue have not been harmed. And the evidence shows that the page-skipping issue was an extremely rare occurrence, and affected only a miniscule fraction of the proposed class. Indeed, the number of complaints that HP received that might possibly relate to this page-skipping issue was less than 0.05% of the total printers shipped for sale in the North America region. Even when trying to replicate the page-skipping issue, HP engineers were able to do so only on some machines in very specific and unique circumstances. Thus, it would be necessary to examine each person's unique experience with his or her printer. But this simply would not be possible in a class action proceeding.

In contrast to HP's well-documented *evidence* that the page-skipping issue was limited to a small number of 8500 printers, which is presented in detail below and in its sworn declarations, Plaintiff has presented *no expert, no testing, no documents, no testimony, nothing* that supports his bald assertion that the page-skipping issue impacted all class members. This is not surprising given

2

1    that Plaintiff has taken only one deposition in this case, a 30(b)(6) deposition of an engineer who

2    correctly informed him that the page-skipping issue was an extremely rare event that impacted only a

3    small number of printers.  In an effort to side step reality, Plaintiff has cobbled together a handful of

4    quotes from emails that he takes out of context to show that his was not the only 8500 printer to

5    exhibit the page-skipping issue.  But Plaintiff falls woefully short of demonstrating that *all* or even a

6    substantial portion of the consumers he seeks to represent experienced the issue, and thus fails to

7    present evidence to satisfy Rule 23's commonality and predominance standards.

8         Second, there are highly individualized issues in this case because HP issued a firmware

9    update for the 8500 printer on April 28, 2010, to resolve the page-skipping issue and other minor

10   issues that some printers were experiencing.  This firmware update was not only rolled into the

11   production line but also made available for download on HP's website for those customers who had

12   already purchased 8500 printers.  In addition, customers were informed of the firmware update if they

13   called HP's customer support line.  Further, as HP obtained 8500 printers for refurbishing, it began

14   flashing the new firmware on those printers.  Customers who received these refurbished printers, for

15   example in connection with a product exchange, received an 8500 printer with the updated firmware.

16   This creates highly individualized issues regarding which of the class members received the firmware

17   update, which Plaintiff admits eliminated any potential harm.  (Evanson Decl., Ex. B at 67:17–23,

18   79:20–80:12.)  Plaintiff has not offered any manageable way for sorting through this important

19   individualized issue in a class proceeding.  There is none.

20        Third, Plaintiff's UCL and CLRA claims (which do not apply to him as a New Jersey resident

21   in any event) fundamentally turn on allegations of false statements, reliance, and harm, *Mazza*, slip

22   op. at 209, that cannot be shown on a class-wide basis in this case.  Even if one engages in the fiction

23   that HP's product specifications regarding the printer's printing and copy *speed* and the ADF's

24   *capacity* are really representations about the *reliability* of the printer's ADF, that would simply raise

25   additional individualized issues.  Specifically, it would still be necessary to examine each purchaser

26   to determine who saw which statements, when, and whether they relied on them, not to mention

27   whether a particular customer experienced a page-skipping issue at all (the underlying premise of the

28   supposed falsity), or had it fixed.  While Plaintiff suggests that this Court should simply presume

3

reliance on these supposedly false statements, that presumption of reliance does not apply in cases like this where there has not been a decades-long advertising campaign and the supposed falsity of the statement turns on whether a particular person experienced a problem with a particular product.

Plaintiff's proposed class is also grossly overbroad. Plaintiff has included all three models of the 8500 printer (base, mid, and high) in his class definition even though there is no evidence that the base model exhibited page skipping. The base model has a completely different ADF from the mid and high models, has a different capacity ADF (35 pages for the base and 50 pages for the mid and hi) and has different firmware. Accordingly, Plaintiff has no evidence supporting inclusion of the base model in the class definition. Indeed, Plaintiff's inclusion of the base model flies in the face of his own experience given that he testified in his deposition that although he never owned a base model, his father did and that printer's ADF *never skipped a page*.

Plaintiff also cannot meet Rule 23(a)'s requirements of typicality and adequacy. Plaintiff is subject to unique defenses, making him an atypical and inadequate class representative. Plaintiff is not a California resident and therefore cannot bring California claims; he does not meet the definition of "consumer" under the CLRA because he cannot show he primarily used his printer for "personal, family, or household purposes," Cal. Civ. Code § 1761(d); he purchased his printer *before* HP learned of the page-skipping issue (subjecting him to an important defense under the UCL and CLRA); and he testified in his deposition that he could not identify anything that HP told him that was false. Plaintiff's counsel fares no better. Plaintiff admitted in his deposition that his lawyers failed to communicate HP's offer of compromise in response to his CLRA letter, an offer which Plaintiff indicated he would have gladly accepted. Plaintiff's counsel's breach of their obligations to communicate this settlement offer makes them inadequate class counsel.

In the end, this case presents a kaleidoscopic array of individualized circumstances, multiplied over potentially hundreds of thousands of class members and numerous jurisdictions' laws, and a purported class representative and counsel who cannot satisfy their duties to the proposed class. Accordingly, class certification should be denied.

## II.     SUMMARY OF KEY FACTS AND EVIDENCE

The facts demonstrate that Plaintiff's claims cannot be resolved on a class-wide basis.

4

## A.    The 8500 Printer

In 2009 and 2010, HP sold the 8500 printer series ████████████████ which came in three models (base, mid, and high). (J. Chua Decl. ¶¶ 6–8.)  The 8500 printer is an "all-in-one" printer, capable of printing, scanning, faxing, and copying. (*Id.* ¶ 4.)  The 8500 printer has an ADF, which is a tray on top of the printer (and related components) that allows users to copy, scan, or fax multiple-page documents without using the flat-bed scanner for each page. (*Id.*)  The 8500 base printer has a 35-page ADF, ████████████████ (*Id.* ¶ 9.)  The mid- and high-level 8500 printers have a 50-page ADF, ████████ (*Id.*)  These three printers were designed and manufactured entirely in Asia. (Evanson Decl., Ex. C at 19:1–8, 21:24–22:11, 65:13, 95:9–25.)  The ADFs for these three printers were developed between 2007 and 2008 ████████████ in Malaysia, together with HP's engineering team in Singapore. (Shyh Chije Decl. ¶¶ 1–2.)  The 8500 series printers were initially manufactured for HP ████████████ (Leong Soon Decl. ¶ 4.)  In 2009, the manufacturing for the 8500 printer was moved to South China and ████ ████████████ (*Id.*)  HP shipped for sale in the North America region more than ████ ████ 8500 printers between January 2009 and April 2010. (J. Chua Decl., Ex. A.)

The 8500 printers were well-received by critics, who lauded them as "impressive" (Evanson Decl., Ex. D) and "adept at paper handling" (*id.*, Ex. E).  Reviewers praised the 8500 printers' scanning capabilities in particular. (*Id.*, Ex. F ("Scanning and copying are simple, fast, and trouble-free.").)  PC Magazine named the printers a 2009 Editors' Choice. (*Id.*, Ex. G.)  Many customers agreed, giving the printers solid reviews.  One customer review touted the printer's "[g]reat design, easy straight forward installation and rock solid performance!  An excellent all around printer for home, small business or departmental applications." (*Id.*, Ex. H at CK 56.)  Another raved, "[t]his printer is the tops!  So glad I bought it and I highly recommend it for office or home use." (*Id.*)  A third praised this "[g]reat product! ... This printer does all it advertises." (*Id.* at CK 55.)

## B.    The Named Plaintiff's Allegations And Testimony

Plaintiff Chaim Kowalsky is a New Jersey resident who bought a mid-level HP 8500 printer that allegedly skipped pages when using the ADF. (SAC ¶ 9.)  Plaintiff complained to HP that the ADF in his printer experienced page skipping. (SAC ¶¶ 36, 38; Evanson Decl., Ex. B at 27:16–28:8.)

5

1    Plaintiff's printer was covered under HP's warranty and HP exchanged his printer at his request.

2    (SAC ¶¶ 36, 38; Evanson Decl., Ex. B at 28:6–15.)  Plaintiff admits that he did not request a refund

3    for his printer, and that he was not entitled to such a refund under the warranty because he did not

4    return his printer to HP and request such a refund, as required by that agreement.  (Evanson Decl., Ex.

5    B at 100:9–15, 239:2–7.)  In April 2010, Plaintiff, through his attorneys, sent HP a demand letter

6    under the CLRA.  (*Id.*, Ex N.)  On May 27, 2010, HP responded to Plaintiff's counsel that it would

7    repair or replace Plaintiff's printer and, if it was unable to fix the issue, it would refund his money.

8    (*Id.*, Ex. O.)  Plaintiff testified that he would have been interested in taking this offer (*id.*, Ex. B at

9    72:9–23), but he never received the offer from his lawyers (*id.* at 96:24–97:11, 98:11–15, 225:11–

10   227:22).  Instead, his lawyers filed a nationwide class action lawsuit against HP.

11        Although Plaintiff is a New Jersey resident, and has not been to California since the 1990s, he

12   brought his claim in California court (HP removed to federal court) and purports to represent a

13   nationwide class of consumers suing under California's UCL and CLRA.  (SAC ¶¶ 78–79, 94–95.)

14   Plaintiff claims in his Complaint and his declaration in support of his motion that, before purchasing

15   an 8500 printer, he "spent approximately 5–10 hours researching the printer over a span of 2–3 days

16   at the end of June 2009."  (Kowalsky Decl. ¶ 2; SAC ¶ 30.)  But at his deposition, Plaintiff testified

17   that he spent "maybe a couple of hours at most" researching the 8500 series printer.  (Evanson Decl.,

18   Ex. B at 110:13–17, 130:7–15.)  Plaintiff also alleged in his Complaint that he relied on the "Help Me

19   Choose" function on HP's website in deciding to purchase the 8500 printer (SAC ¶¶ 31, 72), but he

20   testified in his deposition that he had no recollection of doing so (Evanson Decl., Ex. B at 129:9–25).

21        Plaintiff purports to base his UCL and CLRA claims on two allegations:  (1) HP

22   misrepresented the capacity of the ADF; and (2) HP misrepresented the speed of the printer's ADF.

23   First, Plaintiff claims that he specifically relied on HP's "express representations that the Printers had

24   a 35 or 50 page capacity automatic document feeder ('ADF') ...."  (Mot. at 2.)  But Plaintiff testified

25   at his deposition that HP did *not* misrepresent the capacity of the printer's ADF—it held the same

26   number of pages as advertised—and he has no problem with the ADF's capacity.  (Evanson Decl.,

27   Ex. B at 34:21–24 ("You don't have a problem with the capacity of the printer, the number of pages

28   that the ADF would hold; do you?  Answer:  No.").)

Second, Plaintiff alleged in his Complaint and his motion that HP misrepresented the speed of the printer when using the ADF to scan, fax, or copy documents. (SAC ¶ 67.) Plaintiff, however, has failed to identify any representations that HP actually made regarding the speed of the printer *using the ADF*. All of the documents that Plaintiff cites in his Motion relate to the copying and printing speed of the printer, *not the ADF*.[1] Indeed, HP's website specifies that "[c]opy speed tests are done without the use of an automatic document feeder, unless otherwise specified." (Evanson Decl., Ex. I.) Plaintiff's Complaint alleges that HP misrepresented that the 8500 printer met the "recognized ISO/IEC 24734 and 24735 standards" for printing speed. (SAC ¶ 69(d).) But printing speed has nothing to do with the printer's ADF, and in any event Plaintiff admitted in his deposition that he had no idea what the ISO/IEC 24734 test was, explaining, "Given that I don't know what it is, then I have not felt misled, not to the best of my knowledge."[2] (Evanson Decl., Ex. B at 242:5–11.) And the ISO/IEC 24735 test was not even used to test the 8500 printer, as HP's website makes clear. (*Id.*, Ex. L.) There simply is no false representation with respect to the printer's speed while using the ADF. Indeed, Plaintiff admitted that he could not remember if there was any misrepresentation regarding the speed of the printer while using the ADF (as opposed to the flat-bed glass) and that he could not say that he was misled by any such statement. (*Id.*, Ex. B at 134:8–139:16.) In short, Plaintiff is attempting to certify a class based, in part, on a supposedly false representation that does not exist, and he would like this Court to assume that everyone was misled by this phantom falsity.

When asked during his deposition to explain his false representation claims, Plaintiff admitted

---

[1] None of the documents Plaintiff cites regarding the printer's speed makes any representation regarding scanning speed, and certainly not with respect to the ADF. (*See* Mot. at 14 (citing Elkins Decl., Exs. D, F and T); *see also* Evanson Decl., Ex. J.) Moreover, three of the documents he relies on include only specifications for the base-model printer (Elkins Decl., Exs. D, F, and U), and a fourth refers only to the high-model printer (*id.*, Ex. T). But Plaintiff bought a mid-model printer, which he acknowledges has different specifications than the other models. (Mot. at 2 n.3; *see also* Evanson Decl., Ex. K at CK 61–62.) HP's product specifications said nothing about the "speed" of the ADF. (*Id.* at CK 61.) The 8500 series specified it was capable of "[s]peeds equivalent to a laser printer with up to 15 ppm black, 11 ppm color," and "[m]aximum speeds of 35 ppm black, 34 ppm color." (Evanson Decl., Ex. H at CK 53–54.) HP stated, however, that these specifications refer to printing speed, not scanning speed, and do not represent anything about the ADF. (*Id.*)

[2] ISO/IEC 24734 measures *printing* speed and does not use the ADF. (Evanson Decl., Ex. L.)

7

that HP did not make any representations that were false in and of themselves. Instead, Plaintiff indicated that he believed that HP's true statements regarding the *capacity* and *printing speed* of the printer become false if the printer's ADF skips pages. (Evanson Decl., Ex. B at 35:6–36:10, 134:8–135:13.) According to Plaintiff, this case all boils down to whether the 8500 printers skip pages. (*Id.* at 31:5–33:23.) He admits that HP made no false statements to a person who did not experience a page-skipping issue and such a person was not misled by HP and should not get their money back for his or her printer. (*Id.* at 49:18–51:23; 79:20–80:12.)

**C.     The Evidence Regarding The Alleged Page-Skipping Issue**

Plaintiff alleges that all of the 8500 printers have ADFs that skip pages such that everyone who bought a printer was harmed. Notably, Plaintiff offers no technical analysis or expert opinion to support this claim. This is not surprising given that all of the evidence in this case demonstrates that Plaintiff's allegations are incorrect and that class certification would be wholly improper in this case.

**1.     Less Than One Tenth Of One Percent Of The Proposed Class Ever Complained To HP About A Page-Skipping Issue**

Contrary to Plaintiff's bare *allegation* that all 8500 printers regularly skip pages when the ADF is utilized, the actual *evidence* demonstrates that only a small fraction of the printers have exhibited the issue. As an initial matter, HP's customer service records verify that the page-skipping issue with the 8500 printer was a rare occurrence that only impacted some machines. Of the ██████ HP 8500 series printers shipped for sale in the North America region between January 2009 and April 2010, it is estimated that HP's customer call center had logged a total of just ███ complaints regarding an issue that might possibly have been related to ADFs skipping pages. (Evanson Decl. ¶ 19; *see also* J. Chua Decl. ¶ 11; Elkins Decl., Ex. M ("[did] not see a big volume of calls on the issue").) Even among those calls, it is unclear whether they all related to the ADF because there are other reasons a printer might skip pages, including customer error, the printer's failure to "pick" a page, damage to the printer, or damaged paper. (J. Chua Decl. ¶ 11.) What is clear is that the overall number of calls that might relate to the page-skipping issue is miniscule compared to the ████████ printers shipped for sale in the North America region during the relevant period, indicating that

Plaintiff's allegation that all of the 8500 printers were affected and thereby "rendered … totally unreliable and useless" is incorrect.  (SAC ¶ 36.)

**2.    HP's Rigorous Testing Did Not Reveal An Issue, And Its Engineers Were Able To Replicate The Problem Only On A Few Printers, And Only In Limited, Unique Circumstances**

Before HP released the 8500 printers for sale, it rigorously tested them over several months. As described in great detail in the declaration of Shyh Chije Leong, there were ▆▆ rounds of testing done on the 8500's ADF, involving ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ several different testing protocols. (Shyh Chije Decl. ¶¶ 3–11.)  *None of that extensive testing suggested that some of the 8500 printers had a page-skipping issue.*  (*Id.* ¶ 14.)  Only after the completion of this extensive product testing did HP begin to manufacture the 8500 printers and market them for sale.  (*See id.*)

Around late October 2009, several months after rolling out the 8500 printer, HP was in the process of transferring the manufacturing of the 8500 printers ▆▆▆▆▆▆▆▆▆▆▆▆▆ During this process, ▆▆▆▆▆▆▆▆▆▆▆▆▆ noticed that four of the printers being examined during the qualification process skipped some pages during the testing process, but other printers did not.  (Leong Soon Decl. ¶ 4.)  An ADF has a sensor that tells the printer that one page has ended and another has begun.  (*Id.* ¶ 12.)  The four printers that skipped pages (which were mid and hi models, not the base) appeared to be exhibiting a "tailgating" issue, which means that the page gap was becoming narrower than usual and the sensor was not detecting that one page had ended and another had begun.  (*Id.* ¶¶ 4, 12.)

When ▆▆▆▆ reported this to HP's engineers in late 2009, they examined the issue and tried to replicate it in these four mid- and high-level printers.  (Leong Soon Decl. ¶¶ 6–7.)  HP's engineers were initially unable to replicate the page-skipping issue, but after further testing observed the issue on a few of the printers.  When they were able to replicate the problem, they could do so only when running 50-page stacks of A4 (longer, European-style) paper through the ADF; a page-skipping issue was not observed on any units when using standard, letter-sized paper.  (*Id.* ¶ 7.)  In the narrow circumstances in which the page-skipping issue did occur, the issue was only intermittent (the printer might skip a page during one test, but then not repeat the issue again), and the engineers saw the issue

9

only on certain printers (but not others). (*Id.*) When testing the few printers on which HP's engineers were able to replicate the issue, the page-skipping issue occurred less than 10 percent of the time even when they were trying to force the affected printers to skip pages. (*Id.* ¶ 7 & Ex. A.)

### 3. Plaintiff Has Offered No Evidence Of A Common, Class-Wide Page-Skipping Issue

Plaintiff offers no evidence that a page-skipping issue affected the putative class as a whole. He offers no expert report, testing, or empirical evidence of any kind to support his claims, and ignores the testimony of HP's engineer that the page-skipping issue was "an intermittent issue that only happened on some machines in certain conditions with ... certain work flows and ... with certain stack sizes in the ADF .... [I]t was found to be a fairly uncommon event." (Evanson Decl., Ex. C at 46:23–47:4.) In the absence of any class evidence, Plaintiff takes a smattering of HP documents out of context (and wholly ignores others) to suggest that the page-skipping issue was inherent in all 8500 printers. For example, Plaintiff quotes an email between HP engineers that refers to the ▮▮▮▮ [Officejet 8600] base"—an entirely different printer not at issue in this case. (Mot. at 5 (quoting Elkins Decl., Ex. X); *see* Evanson Decl., Ex. C at 45:17–46:22.)[3] Plaintiff then quotes another email that poses a *question* whether other, unspecified ADFs could exhibit a page-skipping issue, but gives no answer. (Mot. at 5 (quoting Elkins Decl., Ex. P).)[4]

None of the emails Plaintiff quotes comes close to establishing that there was an inherent page-skipping defect in the printers at issue. Indeed, the market reaction to these machines (with significantly less than 1% of users ever even raising the issue) shows otherwise. Plaintiff points to snippets of emails written at the time HP first discovered the issue during the ▮▮▮▮ qualification.[5] For example, Plaintiff quotes a December 2009 email for the proposition that "[t]otal 4 units send in

---

[3] Plaintiff's motion contains the bracketed text "[Officejet 8600]," but in fact the Lorentz printer was sold as the Officejet 8500A. In any event, it is an entirely different printer not at issue here.

[4] The same email is found in Exhibit K to the Elkins Declaration. There, an HP engineer responds, "I haven't heard Daimler base is seeing this issue ...." (Elkins Decl., Ex. K at 7.)

[5] Many of these emails were written by non-native English speakers located in Asia who have difficulty with the language, as apparent by reading their broken text. (J. Chua Decl. ¶ 2; Leong Soon Decl.¶ 2.)

10

1   for the qualification and all unit[s] can see[] the issue," from which he tries to infer that all of the

2   8500 printers must have skipped pages. (Mot. at 6 (quoting Elkins Decl., Ex I at 4).) As the author

3   of the email has explained, however, the "4 units" referred to in the email were the units from the

4   ████ qualification testing that had *already exhibited the page-skipping issue*; more units were

5   tested that did *not* exhibit the issue. (Leong Soon Decl. ¶ 8 & Ex. B.) Moreover, when HP's

6   engineers tried to replicate the issue on these units, they were only able to do so on one unit, and even

7   then, only when running a 50-page stack of longer, European-style (A4) paper. (*Id.* ¶ 7.) This

8   evidence supports HP's position, not Plaintiff's. Similarly misleading is Plaintiff's quotation from a

9   third email by the same author for the proposition that the page-skipping problem "[h]appen on all

10  units." (Mot. at 6 (quoting Elkins Decl., Ex. N).) Again, that email refers to the 4 units *that had*

11  *already exhibited page skipping during the qualification.* (Leong Soon Decl. ¶ 9.) At bottom,

12  Plaintiff has presented evidence that HP saw a page-skipping issue in four units during qualification

13  testing and was able to replicate that issue in one machine, under very unique circumstances. This is

14  not class evidence, or anything close to it.

15      Plaintiff also paraphrases a January 6, 2010 email in which "an HP employee noted that the

16  printer on his desk" experienced a page-skipping issue. (Mot. at 6.) But that email does not even

17  mention the printer model or remotely suggest that there was an inherent page-skipping issue in the

18  8500 series printer. (*Id.* (quoting Elkins Decl., Ex. K at 5).)[6] Of course, if Plaintiff wished to learn

19  these facts, he could have deposed these employees, but Plaintiff has completely bypassed any

20  percipient witness depositions.

21      Similarly meritless are Plaintiff's claims with regard to the base-model printer, which does not

22  have a page-skipping issue. Plaintiff has no evidence to the contrary. As noted above, *supra* p. 4, the

23  _____

24  [6]  Plaintiff quotes an email for the proposition that "I placed 3 pages on ADF and when I do scan to
     memory 2 pages are saved to thumb drive. Page 2 missed from storing." (Mot. at 6 (quoting

25  Elkins Decl., Ex. L at 1).) But this email refers to only one printer without any context
     whatsoever.  Plaintiff cites another email asserting that State Farm "reported a 'significant' call

26  rate on this very issue."  However, it is not even clear from the email what issue is being
     discussed (it refers to "sporadic reports" of a scanning issue), what printer model is at issue, what

27  information was received, and what actions were taken.  (Elkins Decl., Ex. W.)  And there is no
     testimony to provide any answers.  This type of speculation cannot take the place of credible

28  evidence.

1   base-level model has a completely different ADF than the mid- and high-level models and was

2   released with a different version of firmware.  The page-skipping issue has not been reported in the

3   base-level model.  (Leong Soon Decl. ¶ 5.)  HP engineers confirmed that "[b]ase units are not

4   affected" by the page-skipping issue.  (Elkins Decl., Ex. O; Leong Soon Decl. ¶ 5.)  And, in any

5   event, Plaintiff did not buy a base-level model and never experienced a page-skipping issue with a

6   base-level model.  (Evanson Decl., Ex. B at 74:4–19.)  Indeed, he testified that his father had a base-

7   level model at his business (where Plaintiff was employed) and the printer never had a page-skipping

8   issue.  (*Id.* at 73:20–74:19.)  In short, the handful of supposedly "representative complaints" that

9   Plaintiff excerpts (Mot. at 5–6) in no way show that the page-skipping issue affected the putative

10  class as a whole.   Nor does Plaintiff explain why only 0.05% of customers would complain to HP

11  about the page-skipping issue if it affected all printers and rendered them, according to Plaintiff,

12  useless.  There is simply no basis for Plaintiff's claim that "the ... defect is inherent in all 8500

13  printers."  (*Id.* at 3.)

**D.    HP Provided A Firmware Update That Resolved The Page-Skipping Issue For The Small Number Of Printers Affected**

16          On April 28, 2010, HP provided a firmware update that resolves the page-skipping issue in the

16  few mid- and high-model printers that might have one.  (J. Chua Decl. ¶¶ 13–14.)  This firmware

17  update was not limited to the page-skipping issue; it also addressed other minor issues with the 8500

18  printer to better optimize its performance.  (*Id.* ¶ 13.)  Nor was this firmware developed because of

19  this litigation; HP routinely releases such firmware updates to better optimize printer performance

20  and HP began working on this particular firmware update in the fall of 2009 (*id.*), several months

21  prior to Plaintiff's filing his complaint on March 30, 2010.  Plaintiff does not dispute that this

22  firmware update resolved the page-skipping issue for the few printers that have exhibited this issue.

23  Indeed, he has limited the class definition to people who purchased printers before April 28, 2010, the

24  date of the firmware release.  This firmware update was rolled into the production line for the 8500

25  printers and was made available to the public *regardless of when they purchased their 8500 printer*.

26  On April 28 2010, HP made the firmware available to the public on its website, where it remains to

27  this day.  (*Id.* ¶ 14.)  HP also made the firmware update available to customers who called HP's

28

1    support line for their 8500 printer. (*Id.*; Evanson Decl., Ex. M.) Further, as HP obtained 8500

2    printers for refurbishing, it began flashing the new firmware on those printers. (J. Chua Decl. ¶ 14.)

3    Customers who received these refurbished printers, for example in connection with a product

4    exchange, received an 8500 printer with the updated firmware. (*Id.*) Plaintiff's assertion that

5    everyone who purchased an 8500 printer before April 28, 2010 was harmed by the page-skipping

6    issue is therefore baseless. Indeed, Plaintiff testified in his deposition that a person who receives the

7    firmware update that fixes the page-skipping issue has not been harmed. (Evanson Decl., Ex. B at

8    54:5–17.) There would be highly individualized issues in this case to determine who received this

9    firmware update.

10    **III.   ARGUMENT**

11    **A.   Plaintiff's Burden At The Class-Certification Stage**

12        Rule 23 requires this Court to undertake a "rigorous analysis" of the facts and the law. *Gen.*

13    *Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). Plaintiff bears the burden of demonstrating

14    each of Rule 23's requirements by a "preponderance of the evidence." *In re Hydrogen Peroxide*

15    *Antitrust Litig.*, 552 F.3d 305, 320–22 (3d Cir. 2008); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S.

16    Ct. 2541, 2551 (2011); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

17    Throughout his motion, Plaintiff repeatedly relies on *allegations* in his complaint in purported

18    support of his motion. (*E.g.*, Mot. at 2). But mere allegations are insufficient. "Rule 23 does not set

19    forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his

20    compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently

21    numerous parties, common questions of law or fact, etc." *Wal-Mart*, 131 S. Ct. at 2551. The court

22    must "consider evidence which goes to the requirements of Rule 23 even though the evidence may

23    also relate to the underlying merits of the case." *Id.*; *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 509

24    (9th Cir. 1992).

25    **B.   Plaintiff Cannot Satisfy The Requirements Of Rule 23**

26        Plaintiff has failed to meet his burden to demonstrate Rule 23(a)'s requirements—numerosity,

27    commonality, typicality, and adequacy of representation—and Rule 23(b)(3)'s requirements—that

28    common issues predominate over individualized issues and that a class action is a superior vehicle for

13

adjudicating this case.  Fed. R. Civ. P. 23(a), (b)(3).

### 1.   Plaintiff Cannot Base A Class Action On Statements That He Now Admits Are Accurate

Plaintiff bases his UCL and CLRA claims on HP's alleged misrepresentations that the 8500 printer has a 50-page ADF and that the printer is capable of certain speeds when faxing, scanning, and copying from the ADF.[7]  As described in detail in Section II.B.2, however, (1) Plaintiff admitted in his deposition that HP's representations regarding the 50-page capacity of the ADF are accurate and he had no problem with the capacity of the printer; (2) the representations regarding the printer's speed have nothing to do with the ADF, but relate instead to the printer's printing speed from the tray underneath the printer and copying from the flatbed glass; and (3) Plaintiff cannot identify anything that HP said regarding the speed of the printer that was inaccurate.  Plaintiff has no standing to bring a claim based on these accurate (and, in one instance, nonexistent) statements and therefore he cannot bring a class action based on statements.  *See, e.g., Bates v. UPS, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc); *Saulic v. Symantec Corp.*, 596 F. Supp. 2d 1323, 1335–36 (C.D. Cal. 2009) (holding that class action cannot be based on baseless claim).

Nor can Plaintiff stretch HP's true statements regarding the 8500 printer's *capacity* and printing *speed* into false statements regarding the ADF's *accuracy*.  Plaintiff's claim and his proposed class action must be based in reality, not a fantastical game of connect the dots.  HP never warranted that the ADF would operate error-free; indeed, the warranty here indicates precisely the opposite, and provides customers with a remedy if the printer does not work properly (repair, replacement, or

---

[7]  While Plaintiff asserts a claim under the UCL's "unlawful" prong, that claim is entirely based on an alleged violation of the CLRA.  Plaintiff also asserts a claim under the UCL's "unfair" prong, but that claim is dependent on HP's supposed false representations.  (SAC ¶¶ 82–83.)  Previously, Plaintiff had argued that his UCL "unfair" claim was also based on HP's alleged conduct after Plaintiff's purchase of the printer because it allegedly did not replace his printer with one that worked.  (SAC ¶¶ 84–86.)  That claim would simply amount to a breach of warranty (a claim he no longer advances) because that is the agreement that governed his exchange.  In any event, Plaintiff has not raised this allegation as a basis for class certification, and therefore he has waived it.  Even if he did raise it, however, this argument would be inappropriate for class treatment for the same reason as his UCL "fraud" claim—it would require an individualized inquiry into which customers experienced a page-skipping issue (because they are the only ones who could have been treated "unfairly" after their purchase), as well as the individualized issues regarding how each customer was treated by HP.  Such a class could not be certified.

HEWLETT-PACKARD COMPANY'S OPPOSITION TO                    Case No. 10-CV-02176 LHK
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

refund).  (Evanson Decl., Ex. P.)  And, even if there were a breach of the warranty, which is not

alleged in this case (Plaintiff admits he did not meet the requirements of the warranty because he

never returned his machine and asked for a refund), a breach of contract claim does not amount to a

violation of the UCL or the CLRA.  *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th

638, 645 (2008) (holding that a breach of contract, standing alone, "may not be a predicate for a UCL

action as a matter of law"); *Hoey v. Sony Elecs., Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007)

(rejecting attempt "to bootstrap [the manufacturer's] express warranty into a representation" violating

the CLRA).  That should be the end of the inquiry here.

Plaintiff's theory makes no sense and cannot support a nationwide class; it is akin to arguing

that a car manufacturer has misrepresented a car's 0-60 speed and 20-gallon tank if the car breaks

down.  However, even if one were inclined to allow Plaintiff to twist HP's product specifications

about the capacity and speed of the printer into a representation that the printer's ADF would always

work perfectly and never skip pages, that would not save Plaintiff's proposed class action.  It would

still be necessary to examine each individual printer and each customer's experience to determine

whether a particular person had been misled or suffered any harm, making it impossible for Plaintiff

to satisfy the commonality or predominance requirements of Rule 23.

## 2.   Plaintiff Cannot Demonstrate Commonality Or Predominance Of Common Issues

The Supreme Court's *Wal-Mart* decision made clear that Rule 23(a)'s commonality

requirement requires a careful, rigorous analysis.  "What matters to class certification ... [is] the

capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the

litigation."  *Wal-Mart*, 131 S. Ct. at 2551.  Thus, Plaintiff's "claims must depend upon a common

contention ... of such a nature that it is capable of classwide resolution—which means that the

determination of its truth or falsity will resolve an issue that is central to the validity of each one of

the claims in one stroke."  *Id.*  In other words, "[c]ommonality requires the plaintiff to demonstrate

that the class members 'have suffered *the same injury*.'"  *Id.* (emphasis added).

Plaintiff must also demonstrate Rule 23(b)(3)'s heightened burden of showing that common

questions *predominate* over individual ones, and that a class action is the superior method of

1   adjudication.  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry is "far more demanding" than

2   commonality, as it "tests whether proposed classes are sufficiently cohesive to warrant adjudication

3   by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997).  Given the

4   overlap between the commonality and predominance requirements, they are discussed here together.

> a.   **Plaintiff Cannot Demonstrate Commonality Or Predominance**
> 5   **Because He Has Not Produced Evidence That The Page-Skipping**
> 6   **Issue Impacted Everyone Who Bought An 8500 Printer**

7          Plaintiff admits that his UCL and CLRA claims, as tortured as they may be, fail if a particular

8   customer's printer did not skip pages because in such a case HP did not say anything false to the

9   consumer and the consumer has not been harmed.  (Evanson Decl., Ex. B at 49:2–21, 51:11–23,

10   67:17–23.)  Thus, it would be necessary to examine each individual printer to determine whether it

11   had a page-skipping issue.  Plaintiff, however, has not submitted any evidence that indicates that the

12   defect exists in every printer and impacts all purchasers.  *See* Section II.B.1.A.

13          This case is strikingly similar to *Arabian v. Sony Electronics Inc.*, 2007 WL 627977 (S.D. Cal.

14   Feb. 22, 2007), in which class certification was denied.  In that case, plaintiffs brought UCL and

15   CLRA claims against Sony, alleging that Sony's laptops were defective because they had a defective

16   memory slot that made half of the advertised memory capacity unavailable.  *Id.* at *1. The plaintiffs

17   did not retain an expert to show that the alleged defect was present in all laptops.  *Id.* at *11–12.  The

18   plaintiffs instead relied on an "'extracted sampling' of Sony's repair and customer service records"

19   and internal Sony documents that they took out of context to try to support an inference of a common

20   defect.  *Id.*  The district court denied class certification, finding that plaintiffs had failed to put

21   forward sufficient evidence "to demonstrate that a fact-intensive inquiry will not be required of many,

22   if not all, of the members of the proposed Class."  *Id.* at *12.  *See also Shein v. Canon USA, Inc.*,

23   2010 WL 3170788, at *8 (C.D. Cal. Aug. 10, 2010) ("Because plaintiff fails to submit any evidence

24   or expert testimony to the contrary, it appears based on the record that whether a printer receives an

25   'ink out' message before, after, or at the same time that the ink in the cartridge has run out is an

26   individual issue of fact that must be determined for each printer."); *Feinstein v. Firestone Tire &*

27   *Rubber Co.*, 535 F. Supp. 595, 603 (S.D.N.Y. 1982) ("Since it appears that the majority of the

28   putative class members have no legally recognizable claim, the action necessarily metastasizes into

HEWLETT-PACKARD COMPANY'S OPPOSITION TO                    Case No. 10-CV-02176 LHK
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   millions of individual claims.")

2        Here, as in *Arabian*, Plaintiff has not offered any expert or other evidence that demonstrates

3   that all of HP's 8500 printers exhibit the page-skipping issue, instead relying on anecdotes that show

4   nothing more than that a few printers skipped pages, and taking documents out of context.  *See*

5   Section II.C.3, *supra*.  Plaintiff claims he has hired an expert to analyze the printers in this case

6   (Elkins Decl. ¶ 5), but he offers nothing from this supposed expert who is "hiding in the wings" that

7   could support his bald assertions.  Plaintiff's time to produce evidence of common injury and

8   predominance of common questions was *when he filed his class-certification motion*; his unsupported

9   assurances that everything will work out somehow because an unidentified expert has signed a

10  retention agreement is a far cry from what Rule 23 requires.

11       Of course, even if one were to look at each person to determine if he or she experienced a

12  page-skipping issue, which is a non-starter from a class perspective, that would only begin the

13  necessary inquiry.  There would still be individualized issues regarding why that printer skipped

14  pages.  Was it because of a manufacturing problem or because it was damaged, was operated

15  incorrectly (*e.g.*, the user forced the pages), or fed damaged or otherwise inappropriate paper?  (J.

16  Chua Decl. ¶ 11.)  Plaintiff has provided no way to deal with this individualized issue.  At bottom,

17  this would not be an appropriate issue for class treatment.

18       Of course, even if one were to, as Plaintiff has, jump to the unsupported conclusion that it is

19  *possible* that all of HP's 8500 printers could, at some point, skip pages, that still would not cure his

20  class-certification problem.  The Ninth Circuit held squarely in *Birdsong v. Apple, Inc.*, 590 F.3d 955

21  (9th Cir. 2009), that a purchaser of a product that *might* exhibit a defect, but which has not actually

22  done so, cannot maintain a claim under the UCL because the mere anticipation of a future harm is not

23  sufficient to state a claim.  *Id.* at 961; *see also Gonzales v. Comcast Corp.*, 2012 WL 10621, at *18

24  (E.D. Cal. Jan. 3, 2012).  Even Plaintiff admitted in his deposition that a person who has not

25  experienced a page-skipping issue with his or her 8500 printer has not suffered harm and should not

26  receive his or her money back.  (Evanson Decl., Ex. B at 67:17–23.)

27        **b.    Plaintiff Cannot Demonstrate Commonality Or Predominance
              Because Of Individualized Questions Regarding Which Class
28            Members Updated Their Firmware**

As discussed above in Section II.D., HP released a firmware update for the 8500 printer in April 2010 which was designed, in part, to eliminate the page-skipping issue that some printers experienced. Individualized inquiries would be necessary to determine which putative class members who purchased their printer before the firmware became available later downloaded the firmware update, as these consumers have no cognizable claim against HP. *See, e.g., In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 622 (W.D. Wash. 2003) ("It makes little sense to certify a class where a class mechanism is unnecessary to afford the class members redress"); *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 970 (1997) (no UCL liability where "by instituting a speedy and extensive recall effort, the company did what it could to inform the public of the problem"); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 504 (C.D. Cal. 2011) ("a class action is not superior because [the defendant] is already offering the very relief that Plaintiffs seek"). Indeed, as Plaintiff admitted in his deposition, if a person has downloaded firmware that fixed the page-skipping issue, he or she had not been harmed and would have no basis for a lawsuit. (Evanson Decl., Ex. B at 54:5–17.)[8] There would be a highly individualized inquiry necessary to determine who downloaded this firmware fix that simply would not be feasible in a class action.

### c.   Individualized Questions Regarding Putative Class Members' Reliance Would Predominate

Plaintiff asserts that HP's speed and ADF-capacity representations are false. As explained above, those statements are not false and therefore cannot form the basis of class certification. In any event, Plaintiff's argument only underscores the necessary individualized inquiry that would make class certification improper here. To state a claim under the UCL and CLRA for a misrepresentation, Plaintiff must demonstrate, among other things, that (1) a false or misleading statement (*Mazza*, slip op. at 209); (2) reliance on the false statement (*Id.*; *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 811 (2007)); and (3) injury as a result of the reliance on the false statement (*Birdsong*, 590 F.3d at 961; *Gonzales*, 2012 WL 10621, at *8; *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 643 (2009)).

---

[8] Plaintiff is not seeking any damages for frustration. He seeks only the cost of the printer. (Evanson Decl., Ex. B at 53:19–54:4.)

18

1        But proving *which* members of the putative class relied on the supposedly false product

2  specifications regarding the printers' ADF speed and capacity to their detriment would overwhelm

3  any common questions in the case. Indeed, even Plaintiff does not claim that he can show that each

4  class member relied on statements by HP. Instead, relying on *In re Tobacco II Cases*, 46 Cal. 4th 298

5  (2009), he argues that he need not establish reliance. (Mot. at 17–18.) Plaintiff is mistaken. As the

6  Ninth Circuit held recently in *Mazza*, unless a defendant has engaged in a decades-long advertising

7  campaign resulting in "little doubt that almost every class member had been exposed to defendants'

8  misleading statements" (as in *Tobacco II*), there is no basis for presuming class-wide reliance. Slip

9  op. at 209. Rather, a class "must be defined in such a way as to include only members who were

10  exposed to advertising that is alleged to be materially misleading" and "exclude those members who

11  learned" the truth behind the alleged misrepresentations "before they purchased [the product]." *Id.*;

12  *see also Avritt v. ReliaStar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010); *In re Countrywide Fin.*

13  *Corp. Mortg. Mktg. & Sales Practices Litig.*, 2011 WL 4809846, at *22 (S.D. Cal. Oct. 11, 2011)

14  ("Plaintiffs must show 'uniform conduct likely to mislead the entire class' to satisfy the

15  predominance requirement.").

16        Plaintiff baldly *alleges* that every purchaser was exposed to the same representations, but

17  provides no *evidence*,[9] and certainly not the kind of detailed evidence of persistent advertising over

18  numerous years as required by *Tobacco II*. Indeed, Plaintiff's own deposition testimony fatally

19  undercuts his argument that everyone was clearly misled by HP's advertisements and specifications.

20  He did not remember seeing any advertisements regarding the 8500 printer. (Evanson Decl., Ex. B at

21  122:7–10.) Further, he could not even remember if the printer had a 50-page or a 35-page ADF, but

22  he was sure that HP's representation of the printer's capacity was correct (*id.* at 31:15–32:5, 32:16–

---

[9] Plaintiff *argues* that "whether the consumer purchased an 8500 Printer directly from hp.com, from a brick-and-mortar store or a third-party website, each member of the Class was exposed to virtually identical representations" (Mot. at 14), but there is no *support* for this. Plaintiff cites a statement by HP's 30(b)(6) engineer witness, who was not designated to testify regarding product specifications, that "some specifications" are included "when HP ships products to retailers" (Evanson Decl., Ex. C at 28:13–17), and a few product advertisements by third parties, one of which does not even mention the ADF (Elkins Decl., Ex. U), and none of which refer to any representations about the speed or capacity of the ADF.

1   33:9), and he could not remember if the speed specifications related to the ADF or printing from the

2   scanner bed, let alone that he was misled by anything HP stated (*id.* at 136:4–17).

3         Also misguided is Plaintiff's argument that he does not need to show that each class member

4   was harmed, but instead only that "'members of the public are likely to be deceived' by defendant's

5   representations." (Mot. at 11, 18.) In *Tobacco II*, and the other cases Plaintiff cites, the *statement*

6   *itself* was false or misleading, such that every absent class member who viewed the statement likely

7   was injured. None of the cases on which Plaintiff relies involved a product specification that was

8   rendered false only in situations where the product failed to perform. As Plaintiff made clear in his

9   deposition, his position is that HP's product specifications were not false for everyone; they were

10  only allegedly false for those people who had a printer that skipped pages. (Evanson Decl., Ex. B at

11  49:18–21, 50:7–51:23.) Indeed, the Ninth Circuit recently held that *Tobacco II* did not absolve

12  plaintiffs of presenting individualized proof of deception and harm in class actions like this one.

13  *Mazza*, slip op. at 209. And class members who have not been harmed would lack standing to sue

14  under Article III. *Id.* at 207 ("No class may be certified that contains members lacking Article III

15  standing." (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)).[10]

16        Individualized inquiries of reliance and harm would dwarf any common questions in the case.

17  It would be necessary to ask each customer what he or she reviewed before buying the 8500 printer

18  and whether he or she relied on it. In sum, Plaintiff offers no basis for this Court to conclude that

19  every purchaser read false statements, let alone relied on them to his or her detriment. Because an

20  individualized inquiry would be necessary on this issue, class certification is inappropriate here.

21          **d.**    **Individualized Inquiries Would Be Needed To Determine Which**
                        **Customers Are "Consumers" Under The CLRA**

22

23        The CLRA only applies to "consumers," *i.e.*, people who acquired goods for "personal,

24  family, or household purposes." Cal. Civ. Code § 1761(d). The 8500 printer was marketed for both

25

26  [10]  While some courts have held that that a named plaintiff is not required to establish the standing of
       absent class members, *see, e.g., Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir.

27  2011), the issue is not whether Plaintiff must submit proof that the absent class members were
       injured, but whether he must define a class that includes only individuals who have suffered an

28  injury. *See Mazza*, slip op. at 207. Plaintiff plainly fails the latter requirement.

personal and business use. (*See, e.g.*, Evanson Decl., Ex. H at CK 56 ("An excellent all around printer for home, small business or departmental applications."); *id.* ("So glad I bought it and I highly recommend it for office or home use.").) There are individualized issues in this case regarding whether a purchaser bought it for business or personal use. Indeed, it appears that even Plaintiff was not a "consumer" under the CLRA; he purchased his printer with a business discount and was unable to testify that he predominantly used the printer for personal, household or family use because he often used the printer for his wife's business. (*See infra*, Section III.B.5.) Similarly, Plaintiff's father bought an 8500 printer for his business. (Evanson Decl., Ex. B at 22:23–25, 23:20–22, 75:8–76:16.) Where, as here, plaintiffs "fail[] to show how class members' consumer status can be determined without individualized inquiry, plaintiffs have failed to meet their burden of establishing that common questions of law and fact predominate over individual questions with respect to their CLRA claim." *Ewert v. eBay, Inc.*, 2010 WL 4269259, at *9 (N.D. Cal. Oct. 25, 2010); *see also Arabian*, 2007 WL 627977, at *14.

In sum, Plaintiff's claims would require wading into individualized issues regarding who had a printer that skipped pages, who has received the firmware fix, who supposedly was misled by HP's statements regarding the printing speed of the printer and the capacity of the ADF, and who is a "consumer" under the CLRA. Thus, this case would unravel into numerous mini-trials for each class member, making class certification inappropriate.

### 3. Plaintiff's Class Is Overbroad Because It Includes The Base-Model Printer For Which There Is No Evidence Of Page Skipping

While the class is not certifiable in any respect, Plaintiff's attempt to include the base-level model in the class definition is particularly egregious. The base-level model has a completely different ADF than the mid- and high-level models and different firmware. (J. Chua Decl. ¶ 9; *see supra*, Section II.A.) And the results of testing and analysis of HP's engineers show that base models did not experience page skipping. Lastly, Plaintiff did not buy a base-level model and he never experienced a page-skipping issue with a base-level model. (Evanson Decl., Ex. B at 73:20–74:7.) Indeed, he testified that his father had a base-level model at his business (where Plaintiff was employed) and the printer never had a page-skipping issue. (*Id.* at 73:23–74:19.) A plaintiff may not

21

1    stretch his class definition to include a product he did not buy and for which he has produced no

2    evidence of a defect. *See Wiener v. Dannon Co.*, 255 F.R.D. 658, 666 (C.D. Cal. 2009).

3          **4.**     **Plaintiff's Proposed Nationwide Class Is Improper And Would Not Be**
     **Manageable**

4              **a.**    **Plaintiff's Proposed Nationwide Class Is Improper Due To The**

5                   **Individual Choice-of-Law Issues For Each Purchaser**

6          As Plaintiff conceded during the February 1, 2012 status conference, there is no way to certify

7    a nationwide class in this case given the Ninth Circuit's decision in *Mazza v. American Honda Motor*

8    *Co., Inc.* (Evanson Decl., Ex. A at 16:22–23.)  As in *Mazza*, individualized choice-of-law analyses

9    would apply to each putative plaintiff, and the adjudication of those claims under each state's laws

10   predominate over any common questions in the case.  Slip op. at 210.

11             **(i)**    **California's UCL And CLRA Cannot Constitutionally**
     **Apply To The Claims Of Every Class Member**

12         Plaintiff "bears the initial burden to show that California has 'significant contact or significant

13   aggregation of contacts' to the claims of each class member." *Mazza*, slip op. at 198 (quoting *Wash.*

14   *Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 921 (2001)).  Plaintiff must do more than simply show

15   that the defendant is headquartered or does business in California.  *See, e.g., Norwest Mortg., Inc. v.*

16   *Superior Court*, 72 Cal. App. 4th 214, 226 (1999); *Arabian*, 2007 WL 627977, at \*9.  But here,

17   Plaintiff relies solely on HP's being headquartered in Palo Alto, California, and having a division that

18   generally "deals with all-in-one printers and scanners" in San Diego, California. (Mot. at 21.)  The

19   8500 printer, however, was conceptualized, designed, tested, and manufactured in Asia with no

20   significant participation from HP employees in California. (Evanson Decl., Ex. C at 15:21–16:5,

21   19:1–8, 20:19–20, 21:24–22:11, 25:6–9, 65:13, 95:9–25.)  The 8500 printer was designed and

22   developed by HP's Business Printing Division and Inkjet Business Products Group in Singapore (*id.*

23   at 14:7–14), and it was tested and manufactured in Singapore, Malaysia, and China (*id.* at 19:1–8,

24   21:24–22:11, 25:6–9).  Marketing decisions with respect to the 8500 printers were made in

25   Singapore. (J. Chua Decl. ¶ 5.)  Plaintiff has not shown that California has significant contacts to the

26   claims of each class member. *See Norwest*, 72 Cal. App. 4th at 227; *Arabian*, 2007 WL 627977, at

27   \*9.  Due process precludes the extraterritorial application of California law to this nationwide class.

28

(ii)   **Irreconcilable Conflicts Among States' Consumer Protection Laws Preclude Certification Of A Nationwide Class Based On Claims Under The UCL And CLRA**

Even if the UCL and CLRA could constitutionally apply to non-Californians here, that would be appropriate only if "the interests of other states are not found to outweigh California's interest in having its law applied." *Wash. Mut.*, 24 Cal. 4th at 921.  The three-step "governmental interest" test requires the court to (1) examine conflicts between jurisdictions' laws, (2) examine each jurisdiction's interest in the application of its own law, and (3) evaluate the comparative strength of each jurisdiction's interest in the application of its own law and apply the law of the jurisdiction whose interest would be most impaired if its law were not applied.  *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81–82 (2010).

(1)   **California's Consumer Protection Laws Conflict In Material Ways With The Applicable Laws Of Other States**

There are numerous material variations among the 50 states' consumer protection laws relating to such fundamental issues of scienter, reliance, and other essential elements.[11]  The remedies available for breach of consumer protection statutes also vary widely among the states.  *Mazza*, slip op. at 201 (comparing statutes).[12]  These and the several other meaningful differences among the various states' consumer protection laws are set forth in a chart attached to the Evanson

---

[11]  For example, scienter is not a required element for either a UCL or a CLRA claim, but some form of scienter is required under the consumer protection laws of many other states.  *Mazza*, slip op. at 200; *see* N.J. Stat. Ann. § 56:8-2 (knowledge and intent for omissions); Colo. Rev. Stat. § 6-1-105(1)(e), , (g), (u) (knowingly); *Debbs v. Chrysler Corp.*, 810 A.2d 137, 155 (Pa. Super. Ct. 2002) (knowledge or reckless disregard).  In addition, whereas California requires named class plaintiffs to demonstrate reliance in UCL and CLRA actions (*Mazza*, slip op. at 209; *Buckland*, 155 Cal. App. 4th at 811), the consumer protection statutes in many other states do not require such a showing (*Dabush v. Mercedes Benz USA, LLC*, 874 A.2d 1110, 1121 (N.J. Super. App. 2005); *Egwuatu v. S. Lubes, Inc.*, 976 So. 2d 50, 53 (Fla. Dist. Ct. App. 2008); *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 – 12 (N.Y. 2000); *Guth v. Allied Home Mtg. Capital Corp.*, 2008 WL 2635521, at *6–7 (Ohio App. July 7, 2008); *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 103 (D. Mass. 1998)).  *See* Evanson Decl., Ex. Q for other material differences.

[12]  *Compare, e.g.*, Cal. Bus. & Prof. Code § 17203 (restitution and injunctive relief only); Cal. Civ. Code § 1780(a) (actual or punitive damages, injunctive relief, restitution, and "[a]ny other relief that the court deems proper"); Mich. Comp. Laws Ann. § 445.911(6) (actual damages); N.J. Stat. Ann. § 56:8-19 (treble damages and attorney's fees); Ark. Code Ann. § 4-88-204 (punitive damages); Mass. Gen. Laws ch. 93A, § 9(3), (4) (double or treble damages and attorney's fees); Miss. Code Ann. § 75-24-19 ($10,000 civil penalty).

Declaration. (*See* Evanson Decl., Ex. Q.)  As a result, virtually every court to have compared states' consumer protection laws has found multiple differences among them.[13]  These "variances in state law overwhelm common issues and preclude predominance for a single nationwide class." *Mazza*, slip op. at 210.

### (2)    Each State Has A Strong Interest In Applying Its Own Laws To The Claims Of Consumers In Its State

"Consumer protection laws are a creature of the state in which they are fashioned." *Mazza*, slip op. at 201.  In writing and applying these laws, the legislatures and courts of each state balance the degree of protection accorded to consumers and the need to create favorable conditions to attract companies to the state. *Id.* at 202; *see also State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003).  After all, a favorable business climate can attract out-of-state companies to do business within a state. *McCann*, 48 Cal. 4th at 91–92.  The fact that every state has an interest in balancing "the range of products and prices offered to consumers with the legal protections afforded to them" "squarely implicate[s]" the second guidepost in California's choice-of-law analysis. *Mazza*, slip op. at 203.

### (3)    Applying California Law To A Nationwide Class Would Impermissibly Impair Other States' Interests In Their Ability To Foster Commerce

Applying California law to a nationwide class here would impermissibly impair other states' interests, because the ability to "calibrate liability to foster commerce" is paramount for every state. *Id.* at 204; *McCann*, 48 Cal. 4th at 96–97.  Each state must be able to provide reasonable assurances to businesses of potential liabilities they face for transacting within its borders. *Id.*  This state interest is most potent when the injured party is a resident of the state and the injury-producing transaction took place in that state. *Id.*

---

[13] *See, e.g., In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017–18 (7th Cir. 2002); *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005); *In re HP Inkjet Printer Litig.*, 2008 WL 2949265, at *7 (N.D. Cal. July 25, 2008); *In re Hitachi Television Optical Block Cases*, 2011 WL 9403, at *6–10 (S.D. Cal. Jan. 3, 2011); *In re Prempro*, 230 F.R.D. 555, 564 (E.D. Ark. 2005); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 219 (E.D. Pa. 2000); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 194 F.R.D. 484, 489 (D.N.J. 2000); *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 352–55 (Tex. App. 2003); *Fink v. Ricoh Corp.*, 839 A.2d 942, 974–82 (N.J. Super. Ct. 2003).

Plaintiff argues that California's interest in regulating those who do business in California overrides other states' consumer protection laws—even when the alleged injuries and transactions took place in other states. (Mot. at 21.)[14] But *Mazza* squarely rejected such an argument, holding that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." Slip op. at 206. After all, those residing in a state are within that state's "respective sphere of lawmaking influence." *McCann*, 48 Cal. 4th at 100. Accordingly, California law should not be applied to this purported nationwide class. Each state's law should apply, making Plaintiff's proposed class unmanageable and foreclosing Plaintiff's ability to demonstrate Rule 23(b)(3)'s predominance requirement.

### b.   Manageability Issues And Plaintiff's Failure To Offer A Trial Plan Preclude Certification

Also fatal to Plaintiff's bid to certify this nationwide class action is his total failure to offer a trial plan of any kind or give the court any indication of how this case could be tried on a class-wide basis. Rule 23(c)(1)(B) requires the certification order to specify the "claims, issues, and defenses" that will be tried on a class-wide basis, and it is plaintiff's burden to present a trial plan. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001). A complete and manageable trial plan—not simply the assurances of counsel—is required at the class-certification stage. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (abuse of discretion to certify class where "[t]here has been no showing by Plaintiffs of how the class trial could be conducted"); *In re Paxil Litig.*, 212 F.R.D. 539, 548 (C.D. Cal. 2003) ("the presentation of a preliminary, unworkable trial plan, does not suffice for class certification"). Plaintiff's bald assurances that trial would be manageable fall well short of Rule 23's requirement that they *show* how it would be manageable.

### 5.   Plaintiff Has Failed Rule 23(a)'s Typicality And Adequacy Requirements

A class cannot be certified unless the claims of the proposed class representative are typical of

---

[14] For the proposition that California has a "legitimate and compelling" interest in extraterritorial application of its law, Plaintiff relies on *Estrella v. Freedom Financial Network, LLC*, 2010 WL 2231790 (N.D. Cal. Oct. 31, 2010). The defendants in *Estrella* made no effort to assist the court in identifying state law differences. *Id.* at *6. The court did not even complete the three-step governmental interest analysis. *Id.* Here, unlike in *Estrella*, HP has presented a detailed analysis of the material state law variations. Further, *Estrella* pre-dates *Mazza*.

HEWLETT-PACKARD COMPANY'S OPPOSITION TO              Case No. 10-CV-02176 LHK
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1  the class and he and his counsel can adequately represent the class.  *See* Fed. R. Civ. P. 23(a)(3), (4).

2  Plaintiff cannot meet these requirements for several reasons:

3      First, he is a New Jersey resident and, as explained in Section III.B.3, *supra*, California law

4  does not apply to him.  Therefore, he cannot represent a class proposing to apply California law.  *Cf.*

5  *Walter v. Hughes Commc'ns, Inc.*, 2011 WL 2650711, at *9 (N.D. Cal. July 6, 2011) (claims of

6  named plaintiffs, California residents, not typical of claims of non-California residents).

7      Second, he cannot demonstrate that he is a "consumer" under the CLRA.  Plaintiff has

8  admitted that he cannot say that he primarily used his 8500 printer for "personal, family, or household

9  purposes" (Evanson Decl., Ex. B at 106:20–107:2), and therefore he cannot satisfy the requirements

10  of California Civil Code § 1761(d), *Arabian*, 2007 WL 627977, at *7 (class representatives not

11  typical because of failure to qualify as a "consumers" under the CLRA); *Mazur v. eBay Inc.*, 257

12  F.R.D. 563, 568 (N.D. Cal. 2009) (same).

13      Third, Plaintiff purchased his printer in July 2009 before HP knew about a potential page-

14  skipping issue in the fall of that year.  (SAC ¶ 30; Leong Soon Decl. ¶ 4.)  As this Court has

15  previously held, where a defendant lacks knowledge of the facts that rendered its representations

16  misleading at the time it made the representations, courts are unwilling to impose liability under the

17  fraudulent prong of the UCL or the CLRA.  (Dkt. #48, at 6; *accord* Dkt. #57, at 10 (citing, e.g., *In re*

18  *Sony Grand WEGA Litig.*, 758 F. Supp. 2d 1077 (S.D. Cal. 2010).)  His claims therefore are plainly

19  atypical of the class, and he is subject to a unique defense.  *Hanon*, 976 F.2d at 508 ("named

20  plaintiff's motion for class certification should not be granted if 'there is a danger that absent class

21  members will suffer if their representative is preoccupied with defenses unique to it'").

22      Fourth, as described in Section II.B, *supra*, Plaintiff admits that the supposed false statements

23  that purportedly form the basis of his UCL and CLRA claim are accurate (Evanson Decl. Ex. B at

24  32:16–33:9, 67:17–23), raising obvious problems with him proving his claims and representing the

25  class.  *See Freeman v. Time, Inc.*, 68 F.3d 285, 286 (9th Cir. 1995); *see also Hanon*, 976 F.2d at 508.

26      Finally, Plaintiff's counsel cannot adequately represent the class because they have not even

27  adequately represented Mr. Kowalsky.  Surprisingly, Mr. Kowalsky testified in his deposition that his

28  counsel failed to provide him with HP's response to his CLRA demand letter.  (Evanson Decl., Ex. B

HEWLETT-PACKARD COMPANY'S OPPOSITION TO                    Case No. 10-CV-02176 LHK
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    at 227:2–22.)  He was surprised to learn that HP had offered to replace or repair his printer or refund

2    his purchase price.  (*Id.* at 96:24–97:7.)  He indicated that he was interested in receiving a refund and

3    would have "taken HP up on that offer," but his lawyers never apprised him of it (*id.* at 97:8–11,

4    98:11–15), perhaps because they are more interested in generating fees than in seeking relief for their

5    clients.  Whatever the reason, had Plaintiff's counsel simply communicated HP's offer to Plaintiff,

6    the parties (and the Court) may have avoided almost two years of litigation.  Plaintiff's counsel's

7    conduct shows they are inadequate to represent the proposed class, and for this additional reason

8    Plaintiff's motion should be denied.  Because Plaintiff has failed to satisfy the commonality,

9    typicality, adequacy, or predominance requirements and has not produced a plan for how this case

10   could be managed at trial, this Court should deny class certification.

## IV.    CONCLUSION

12       Plaintiff has not and cannot show that his claims are capable of class-wide resolution, and thus

13   fails to satisfy the requirements of Rule 23.  His motion for class certification should be denied.

15   DATED: February 10, 2012          GIBSON, DUNN & CRUTCHER LLP

17                                     By:      /s/    Samuel G. Liversidge
                                                Samuel G. Liversidge

18                                     Attorneys for Defendant Hewlett-Packard Company

27