SAMUEL LIVERSIDGE, SBN 180578
sliversidge@gibsondunn.com
AUSTIN SCHWING, SBN 211696
aschwing@gibsondunn.com
BLAINE H. EVANSON, SBN 254338
bevanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Defendant
HEWLETT-PACKARD COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CHAIM KOWALSKY, on Behalf of Himself and All Others Similarly Situated,

Plaintiff,

v.

HEWLETT-PACKARD COMPANY and DOES 1 Through 100, inclusive,

Defendants.

CASE NO.: 10-CV-02176 LHK

**DECLARATION OF BLAINE H. EVANSON IN SUPPORT OF HP'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

I, Blaine H. Evanson, hereby declare:

1. I am an associate in the law firm of Gibson, Dunn & Crutcher LLP, counsel for Defendant Hewlett-Packard Company ("HP") in this matter. I am duly licensed to practice before the courts of the State of California. I make this Declaration in support of HP's Opposition to Plaintiff's Motion for Class Certification. All matters stated herein are of my own personal knowledge, unless otherwise stated, and if called as a witness, I could and would competently testify thereto.

2. Attached as Exhibit A is a true and correct copy of excerpts of the transcript of the case management conference before this Court on February 1, 2012.

3. Attached as Exhibit B is a true and correct copy of excerpts of the deposition of Plaintiff Chaim Kowalsky, taken on January 6, 2012, in New York, New York.

4. Attached as Exhibit C is a true and correct copy of excerpts of the deposition of Craig Johnson, HP's corporate designee under Federal Rule of Civil Procedure 30(b)(6), taken on December 7, 2011, in San Diego, California.

5. Attached as Exhibit D is a true and correct copy of a review on PCMag.com entitled "HP Officejet Pro 8500 Wireless All-in-One," dated May 8, 2009, *available at* http://www.pcmag.com/article2/0.2817,2346614,00.asp (last visited May 11, 2009).

6. Attached as Exhibit E is a true and correct copy of a review in Small Business Computing entitled "HP Officejet Pro 8500 Wireless All-in-One," dated April 6, 2011, *available at* http://www.smallbusinesscomputing.com/testdrive/article.php/3814376 (last visited Feb. 8, 2012).

7. Attached as Exhibit F is a true and correct copy of a review in Computer Shopper entitled "HP OfficeJet Pro 8500 Review and Ratings," dated March 4, 2009, *available at* http://computershopper.com/printers/reviews/hp-officejet-pro-8500 (last visited Feb. 8, 2012).

Gibson, Dunn & Crutcher LLP

2

DECLARATION OF BLAINE H. EVANSON IN SUPPORT OF HP'S OPPOSITION TO CLASS CERTIFICATION
CASE NO.: 10-CV-02176 LHK

8. Attached as Exhibit G is a true and correct copy of an article in PC Magazine entitled "Our 2009 Editors' Choice Printers," dated December 16, 2009, *available at* http://www.pcmag.com/article2/0,2817,2357143,00.asp (last visited Feb. 8, 2012).

9. Attached as Exhibit H is a true and correct copy of HP 8500 series specifications and customer reviews of the HP 8500 printer produced by Plaintiff at CK 53–57.

10. Attached as Exhibit I is a true and correct copy of "How HP measures inkjet printing speed," *available* on HP's website *at* http://www.hp.com/products1/ISO/printing_speed/index.html (last visited Sep. 20, 2011).

11. Attached as Exhibit J is a true and correct copy of Plaintiff's response to HP's Interrogatory No. 3.

12. Attached as Exhibit K is a true and correct copy of HP 8500 series specifications produced by Plaintiff at CK61–62.

13. Attached as Exhibit L is a true and correct copy of "FDIS ISO/IEC 24734 Printing Productivity Report," *available at* http://www.hp.com/products1/ISO/reports/Officejet_Pro_8500_All-in-One_Series_A909.pdf (last visited Feb. 7, 2012).

14. Attached as Exhibit M is a true and correct copy of an email forwarded by HP employee Dan Ferley on September 14, 2011, which was produced by HP at HP00052659–HP00052661.

15. Attached as Exhibit N is a true and correct copy of the CLRA demand letter received from Plaintiff's counsel on April 27, 2010.

16. Attached as Exhibit O is a true and correct copy of a letter HP's counsel sent Plaintiff in response to his CLRA demand letter, on May 27, 2010.

17. Attached as Exhibit P is a true and correct copy of the HP's Limited Warranty Statements, available on HP's website at http://we1come.hp.com/country/us/en/privacy/limited warranty.html.

18. Attached as Exhibit Q is chart, prepared at my direction, discussing numerous material differences among the consumer protection laws of the 50 states.

19. **REDACTED**

Gibson, Dunn & Crutcher LLP

4

DECLARATION OF BLAINE H. EVANSON IN SUPPORT OF HP'S OPPOSITION TO CLASS CERTIFICATION
CASE NO.: 10-CV-02176 LHK

**REDACTED**

I declare under penalty of perjury under the laws of the United States and the state of California that the foregoing is true and correct to the best of my knowledge.

Executed this 10th day of February, 2012, in Los Angeles, California.

By: /s/ Blaine H. Evanson
Blaine H. Evanson

101232924.3

Gibson, Dunn & Crutcher LLP

5

DECLARATION OF BLAINE H. EVANSON IN SUPPORT OF HP'S OPPOSITION TO CLASS CERTIFICATION
CASE NO.: 10-CV-02176 LHK

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| CHAIM KOWALSKY, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | ) | C-10-02176 LHK |
| | ) | SAN JOSE, CALIFORNIA |
| PLAINTIFFS, | ) | FEBRUARY 1, 2012 |
| VS. | ) | PAGES 1-24 |
| HEWLETT-PACKARD COMPANY AND DOES 1 THROUGH 100, INCLUSIVE, | ) | |
| DEFENDANTS. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LUCY H. KOH
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF: WEISS & LURIE
BY: JOEL E. ELKINS (TELEPHONICALLY)
10940 WILSHIRE BOULEVARD
23RD FLOOR
LOS ANGELES, CALIFORNIA 90024

FOR THE DEFENDANT: GIBSON, DUNN & CRUTCHER
BY: AUSTIN V. SCHWING
555 MISSION STREET, SUITE 3000
SAN FRANCISCO, CALIFORNIA 94105

OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

Exhibit A

THE COURT: UM-HUM.

MR. SCHWING: MR. ELKINS IS -- I'LL LET HIM SPEAK FOR HIMSELF, BUT I THINK HIS CONCERN WAS THAT THE CASE MIGHT -- THE PLAINTIFF, WHO LOST IN THAT CASE, MIGHT PETITION FOR EN BANC HEARING, EN BANC HEARING MIGHT BE GRANTED AND, YOU KNOW, THE CASE MIGHT BE OVERTURNED.

THE COURT: UM-HUM.

MR. SCHWING: THIS IS ALL, I THINK IN OUR VIEW, VERY SPECULATIVE AND THE CASE SHOULDN'T BE STAYED BECAUSE IF WE STAYED A CASE EVERY TIME THERE WAS A NEW NINTH CIRCUIT CASE ADDRESSING CLASS CERTIFICATION, NOTHING WOULD EVER GET DONE.

THE COURT: UM-HUM.

MR. SCHWING: BUT I BELIEVE MR. ELKINS, AND I'LL BE QUIET NOW AND LET HIM SAY WHAT HE THINKS, BUT I THINK HE'S SEEKING CLARIFICATION FROM THE COURT WITH RESPECT TO THAT.

THE COURT: OKAY.

MR. ELKINS: I AGREE WITH MR. SCHWING ON MOST OF THAT.

I THINK BASED ON MAZZA, THE COURT WOULD HAVE NO CHOICE BUT TO DENY A NATIONWIDE CLASS.

THE COURT: UM-HUM.

MR. ELKINS: THERE'S NO WAY WE COULD EVEN

DISTINGUISH THIS. IT'S NOT A DISTINGUISHABLE CASE. IT'S NOT EVEN BASED ON THE FACTS.

IT'S BASICALLY SAYING, UNDER STATE LAW, YOU CANNOT HAVE A NATIONWIDE CLASS.

AND I'VE SPOKEN TO PLAINTIFFS' COUNSEL IN THAT CASE. THEY SAID THAT THEY ARE FILING AN EN BANC PETITION TODAY OR TOMORROW. THEY ARE LINING UP AMICUS BRIEFS AS WE SPEAK.

THE COURT: UM-HUM.

MR. ELKINS: IT'S ALMOST CERTAINLY GOING TO GET REHEARD.

AND IT JUST SEEMS LIKE A WASTE OF EVERYONE'S TIME AND EFFORT TO GO AHEAD AND GO THROUGH THIS BRIEFING WHEN IT'S ALMOST DEFINITE THAT THE COURT'S GOING TO DENY IT, WE'RE GOING TO HAVE TO APPEAL, AND WE'RE GOING TO HAVE TO WAIT FOR THE EN BANC PETITION. IT'S INEVITABLE.

AND IF THE COURT HAS ANY SUGGESTIONS, I'M OPEN TO IT, BUT IT JUST SEEMS TO BE A WASTE OF TIME.

THE COURT: WHO IS ON THE THREE-JUDGE PANEL?

MR. ELKINS: IT WAS -- IT WAS ACTUALLY ONE OF THE -- IT WAS THE MAJORITY OPINION. ONE OF THE JUDGES WAS JUDGE GOULD.

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED TRANSCRIPTION TO THE BEST OF MY ABILITY.

/S/

______________________________
LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

---

CHAIM KOWALSKY, on Behalf of Himself and All Others Similarly Situated,

Plaintiffs,

-against-

HEWLETT-PACKARD COMPANY and DOES 1 Through 100, inclusive,

Defendants.

Case No. 10-CV-02176-LHK

---

January 6, 2012
9:07 a.m.

DEPOSITION of CHAIM KOWALSKY, taken by Defendants, pursuant to Notice, held at the offices of GIBSON, DUNN & CRUTCHER, LLP, 200 Park Avenue, New York, New York before Wayne Hock, a Notary Public of the State of New York.

C. Kowalsky

Friday. 09:27:24

Q. Why did you need to tell him that? 09:27:25 09:27:28

A. Because he calls me often. 09:27:28

Q. Would David Werner be okay with you taking two weeks off to attend the trial? 09:27:28 09:27:29 09:27:29

A. I have done it before with him. Not for a trial but I've taken two weeks off. 09:27:31 09:27:33 09:27:36

Q. Who else did you tell besides David Werner about this days case? 09:27:38 09:27:41

A. My wife. 09:27:44

Q. Who else? 09:27:45

A. I don't recall names. I may have mentioned it in passing, you know, to acquaintances. 09:27:46 09:27:46 09:27:47

Q. Who? 09:27:47

A. I don't recall who I may have mentioned it to. I haven't advertised it, that's for sure. 09:27:48 09:27:49 09:27:52

Q. Do you know someone named Eli Kowalsky? 09:27:54 09:27:58

A. That's my father. 09:27:58

C. Kowalsky

Q. Did you talk to him about the lawsuit? 09:27:59 09:28:00

A. I'm not even sure if he knows. 09:28:00

Q. Where does Eli Kowalsky live? 09:28:04

A. In Brooklyn. 09:28:07

Q. Do you know someone named Temima Feldman? 09:28:08 09:28:16

A. Yes, that's my sister. 09:28:17

Q. Where does she live? 09:28:19

A. Spring Valley. 09:28:25

Q. What state? 09:28:26

A. New York. 09:28:28

Q. Do either Eli or Temima work with you? 09:28:28 09:28:43

A. No. 09:28:44

Q. Have they worked with you before? 09:28:44 09:28:47

A. Eli. 09:28:47

Q. Where did Eli work? 09:28:48

A. Eli owns Kensington Capital Partners. 09:28:50 09:28:54

Q. So when you were at Kensington Capital for a year, year and a half, was he your boss? 09:28:54 09:29:13 09:29:17

C. Kowalsky

A. I have chaim.kowalsky@gmail.com. And I have ckowalsky@dwrei.com. 09:33:07 09:33:14

Q. What did you do with the documents that you found that were responsive to Exhibit 1? 09:33:19 09:33:32 09:33:34

A. Anything I had I gave to the attorneys. 09:33:36 09:33:38

Q. You gave to your lawyers? 09:33:38

A. Yes. 09:33:41

Q. Do you know if your lawyers produced it? 09:33:41 09:33:45

A. I believe they did, although I can't be a hundred percent certain. 09:33:45 09:33:52

Q. Tell me why you're suing HP. 09:33:54

A. Background of the case? I purchased the 8500 printer all-in-one. I think it was in July of 2009. One of the primary functions that we use it for was the automatic document feeder, the ADF, to make faxes and photocopies, some scanning as well but primarily faxing and copying. And it would randomly, you know, for argument's sake I would put ten of fifteen pages in and it would, you know, let's say 09:33:59 09:34:03 09:34:10 09:34:13 09:34:16 09:34:22 09:34:25 09:34:28 09:34:31 09:34:32

C. Kowalsky

I put ten pages in in this example and it would randomly, you know, miss a page or two or three, whether I was faxing, copying, or scanning. 09:34:33 09:34:35 09:34:38 09:34:41

I called HP, they tried a couple of work-arounds, reset the printer, tried running blank papers through it. Nothing worked. They sent me a second printer. The same exact problems. They gave me the work-arounds, the resets. Sent me a third printer and at that point I had, you know, started going on-line and seeing that I wasn't the only one that had this problem. I was beyond fed up. I had spent I don't want to say hours but a considerable amount of time on the phone with tech support getting nowhere and I went out and bought a new printer. I said, you know what -- it was really -- it bothered me that they were selling a printer that they knew had an issue and they kept on selling it. 09:34:44 09:34:47 09:34:48 09:34:49 09:34:55 09:34:57 09:35:00 09:35:02 09:35:05 09:35:09 09:35:09 09:35:11 09:35:13 09:35:18 09:35:20 09:35:21 09:35:23 09:35:25

Q. You mentioned that you're fed up with the printer by the time you had 09:35:26 09:35:28

C. Kowalsky

A. Yes. 09:37:29

Q. Did HP make any false or misleading statements to you? 09:37:30 09:37:32

A. I believe that the printer claimed to have a fifty -- let's put it -- let me rephrase that. I expected to buy, based on the advertising, I expected to buy a printer that had a working ADF. 09:37:33 09:37:45 09:37:50 09:37:53 09:37:55

Q. What advertising led you to believe that? 09:37:59 09:38:14

A. The fact that it was advertised as an all-in-one printer with I think it was a fifty-sheet ADF. 09:38:14 09:38:16 09:38:19

Q. Did it have a fifty-page ADF? 09:38:23

A. I'm not sure if it was thirty-five or fifty, but it was one or the other. It had a feeder on top, yes. 09:38:29 09:38:31 09:38:32

Q. Do you have any reason to believe that the ADF wouldn't hold fifty pages? 09:38:35 09:38:36 09:38:39

A. I don't recall if this particular model was a thirty-five or a fifty-page ADF, but either way it would have been fine with me. 09:38:39 09:38:41 09:38:42 09:38:46

C. Kowalsky

Q. Do you have any reason to believe that the printer did not hold the number of pages that was advertised? 09:38:47 09:38:48 09:38:51

A. No. 09:38:52

MR. RUBIN: Objection. Asked and answered. 09:38:52 09:38:53

I just want to instruct my client give me a moment after he asks his question just in case there is an objection. 09:38:55 09:38:55 09:38:58 09:39:00

THE WITNESS: Okay. 09:39:01

Q. So if the machine had advertised that it held -- 09:39:01 09:39:03

MR. SCHWING: Strike that. 09:39:06

Q. If HP advertised that the machine held thirty-five pages, you don't have any reason to believe that that's wrong; correct? 09:39:07 09:39:09 09:39:12 09:39:14

MR. RUBIN: Objection. Asked and answered. 09:39:14 09:39:15

You can answer. 09:39:16

A. I would have no reason to believe that would be incorrect. 09:39:17 09:39:20

Q. And if HP had advertised that 09:39:21

C. Kowalsky

the ADF held fifty pages, you have no reason to believe that that's wrong; right? 09:39:23 09:39:27 09:39:28

MR. RUBIN: Objection. Calls for speculation. 09:39:30 09:39:32

A. I would assume -- I believe that -- if they advertised it, I would imagine it's correct. 09:39:32 09:39:35 09:39:38

Q. Your real problem with the printer is just you don't believe the ADF worked properly and skipped pages; is that right? 09:39:39 09:39:41 09:39:45 09:39:47

MR. RUBIN: Objection as to form. Mischaracterizes prior testimony. 09:39:47 09:39:49

Q. Tell me in your own words, what's wrong with the printer? 09:39:51 09:39:53

A. It skips pages when the ADF -- when you were trying to scan pages through the ADF. 09:39:53 09:39:56 09:39:58

Q. Anything else? Anything else wrong? 09:40:01 09:40:02

A. Not that I noticed. 09:40:03

Q. So in your view, this case is really about the fact that the ADF, when 09:40:05 09:40:07

C. Kowalsky

you're using the printer and using the ADF, pages sometimes get skipped; is that right? 09:40:11 09:40:14 09:40:17

MR. RUBIN: Objection as far as it misstates his prior testimony. 09:40:17 09:40:19

A. My primary or my issue with the printer was that, when you scanned, faxed, copied pages through the ADF, it randomly missed pages. 09:40:23 09:40:28 09:40:32 09:40:35

Q. Do you have any other issues with the printer besides that? 09:40:36 09:40:37

A. Not that I recall. 09:40:38

Q. I'm asking you here today not what you recall from the past, I'm asking you here today do you have any other problems with the 8500 printer besides the fact that it sometimes would skip pages? 09:40:43 09:40:49 09:40:51 09:40:53 09:40:57

A. I don't think so. I think that was my issue. 09:41:01 09:41:02

Q. You don't have a problem with the capacity of the printer, the number of pages that the ADF would hold; do you? 09:41:03 09:41:16 09:41:18

A. No. 09:41:22

Q. You don't have a problem with 09:41:22

the speed of the printer, how quickly it will print or scan; do you? 09:41:25 09:41:29

A. How quick it prints or how quick it scans? 09:41:31 09:41:35

Q. Do you have a problem with how quickly the printer prints? 09:41:36 09:41:38

A. No, I didn't have a problem with that. 09:41:39 09:41:41

Q. Did you have a problem with how quickly the printer scans? 09:41:41 09:41:43

A. If I had a printer with the scanning capabilities. I had an issue with the scanning capabilities, yes. 09:41:43 09:41:45 09:41:46

Q. But your issue was the fact that it sometimes skips pages; correct? 09:41:50 09:41:52

A. Correct. 09:41:54

Q. Other than that, you don't have a problem with the speed of the printer's scanning; right? 09:41:55 09:41:56 09:41:59

A. No. 09:41:59

Q. Do you have a -- did you have a problem with the speed of the printer's faxing apart from the page skipping issue? 09:42:00 09:42:03 09:42:07

A. No. 09:42:11

C. Kowalsky

Q. Did you have a problem with the printer's copying apart from the page skipping issue? 09:42:13 09:42:17 09:42:21

A. No. 09:42:21

Q. So this all really boils down to -- this case boils down to the fact that the ADF in the 8500 printer sometimes skips pages; is that right? 09:42:22 09:42:25 09:42:27 09:42:33

A. More than sometimes, but yes. 09:42:35

Q. Well, did it skip pages every time? 09:42:37 09:42:40

A. Okay, I guess sometimes is a fair word. I can't recall if there were times when it didn't skip pages, but it seemed like almost every time. 09:42:41 09:42:43 09:42:45 09:42:48

Q. You said that -- previously you said that you saw some representations from HP that led you to expect you would buy a printer with a working ADF; is that fair in terms of what you expected? 09:42:50 09:43:07 09:43:09 09:43:12 09:43:17

A. I expected a printer with a working ADF, yes. 09:43:19 09:43:21

Q. What did HP say to you that led you to believe that? 09:43:23 09:43:25

C. Kowalsky

Imagine you bought an 8500 printer that worked correctly and you didn't have a page skipping issue. 09:55:20 09:55:25 09:55:26

Okay? 09:55:29

A. Okay. 09:55:29

Q. Do you believe in that instance that HP would have made a false statement to you? 09:55:30 09:55:33 09:55:36

A. Assuming that I bought a printer that had no issues, then I would have assumed that everything would have been fine. 09:55:36 09:55:43 09:55:46 09:55:48

Q. That's not what I asked you. 09:55:48

What I asked you would HP have made a false statement to you. 09:55:50 09:55:52

A. I don't believe so. 09:55:54

Q. So it's the fact that your 8500 printer skipped pages that made HP's statement to you false; is that right? 09:55:55 09:55:59 09:56:02

A. Yes. 09:56:03

Q. So if your best friend bought an 8500 printer and didn't experience a page skipping issue, do you think that HP would have made any false statements to him? 09:56:04 09:56:11 09:56:15 09:56:20

C. Kowalsky

MR. RUBIN: If you don't understand or you need clarification, just ask. 09:56:37 09:56:39 09:56:41

A. Can you rephrase it or ask it again? 09:56:41 09:56:44

Q. If your best friend bought an 8500 printer, the same type that you bought, and didn't experience any page skipping issues after using it, do you believe that HP made any false statements to your friend? 09:56:44 09:56:47 09:56:49 09:56:51 09:56:53 09:56:57

MR. RUBIN: Objection. Calls for speculation. 09:57:01 09:57:02

A. I'm not sure what my friend would think or -- 09:57:03 09:57:06

Q. I'm not asking you what your friend would think. I'm asking you did HP make any false statements to your friend in that situation? 09:57:07 09:57:09 09:57:12 09:57:14

MR. RUBIN: Objection. It's vague. 09:57:15 09:57:16

Do you mean make false statements as to the ADF? What part of the printer? 09:57:16 09:57:18 09:57:20

C. Kowalsky

Q. You can answer. 09:57:21

A. I would say I guess that, in his mind, there were no false statements made. 09:57:22 09:57:31

Q. Well, in your mind were there any false statements made to your friend if his printer worked properly? 09:57:33 09:57:36 09:57:39

A. You know, I had an issue with my printer so I believe there was false advertising or statements, however you want to phrase it. But, you know, if my friend bought a printer and it worked, then I guess he's happy and he doesn't believe there was any false statements made. 09:57:42 09:57:48 09:57:51 09:57:53 09:57:58 09:58:03 09:58:05 09:58:07

Q. And you don't believe that either, do you, with respect to your friend? 09:58:07 09:58:09 09:58:11

A. I don't believe it, no. 09:58:12

Q. You don't believe that any false statements were made towards your friend? 09:58:13 09:58:16

A. In that situation, I would agree with you, yes. 09:58:18 09:58:20

Q. Do you believe -- 09:58:27

MR. SCHWING: Strike that. 09:58:31

C. Kowalsky

skipping issue and then called one of these customer service representatives at HP and the HP representative had let's say provided you with a firmware update that fixed your printer, would that have satisfied you? 09:59:42 09:59:44 09:59:46 09:59:50 09:59:55 09:59:58

MR. RUBIN: Objection. Calls for speculation. 09:59:58 10:00:00

A. Well, they didn't. I would have been satisfied had the printer been fixed, yes. 10:00:01 10:00:14 10:00:15

Q. Because you would have had a working printer at that point; right? 10:00:16 10:00:18

A. I would have still been frustrated that I had the issue to begin with, but I would have been satisfied once it was fixed. 10:00:20 10:00:23 10:00:25 10:00:27

Q. And you're not seeking money in this case for your frustration though; are you? 10:00:28 10:00:31 10:00:31

A. I'd like the money back for my printer. 10:00:31 10:00:34

Q. That's it; right? 10:00:34

A. Yes. 10:00:35

C. Kowalsky

Q. You're not seeking any frustration-related damages; are you? 10:00:36 10:00:38

A. No. 10:00:40

Q. So you would have had, in the instance of calling HP and getting a firmware fix where your printer worked fine, you wouldn't have any damages in this case; right? 10:00:41 10:00:46 10:00:48 10:00:51 10:00:54

MR. RUBIN: Objection. Asked and answered. Calls for a legal conclusion. 10:00:55 10:00:56 10:00:57

A. Had they fixed my printer, we would not be sitting here today. 10:01:02 10:01:06

Q. Because you wouldn't have been harmed; right? 10:01:07 10:01:10

A. That's correct. 10:01:10

Q. Do you think that HP should create a list of every problem that a customer has ever experienced with the 8500 printer and make that available to the public somehow? 10:01:17 10:01:28 10:01:31 10:01:34 10:01:36

MR. RUBIN: Objection. Speculative. 10:01:38 10:01:38

A. I don't know what HP should do. 10:01:39

C. Kowalsky

Q. Including the people who didn't have any problem with the 8500 printer? 10:14:05 10:14:06

A. I don't know who had issues and who didn't have issues. 10:14:10 10:14:13

Q. If you assume for the moment that there were some people who didn't have an issue, a page skipping issue with their 8500 printer, you want to represent those people in this lawsuit, too, and have them be part of your class? 10:14:14 10:14:16 10:14:17 10:14:18 10:14:22 10:14:24

MR. RUBIN: Objection. Calls for speculation and a legal conclusion as to the definition of the class. 10:14:26 10:14:27 10:14:30

A. I'm not sure if they're included. 10:14:32 10:14:39

Q. Do you think that people who haven't experienced a page skipping issue with their 8500 printer have been harmed? 10:14:39 10:14:43 10:14:45

A. With respect to the ADF skipping issue? 10:14:52 10:14:56

Q. Correct. 10:14:59

A. No. 10:15:00

Q. To figure out who -- 10:15:01

MR. SCHWING: Strike that. 10:15:15

C. Kowalsky

representing them in the class? 10:19:04

MR. RUBIN: Objection as to a legal conclusion. 10:19:06 10:19:09

A. Yeah, I'm not sure. 10:19:10

Q. Have they been harmed? 10:19:12

MR. RUBIN: Objection. 10:19:15

A. I'm not sure. 10:19:15

Q. If you got a refund for your 8500 printer, do you think you would have been harmed? 10:19:16 10:19:20 10:19:23

MR. RUBIN: Objection as to the meaning of the word "harmed," whether it's a legal -- 10:19:26 10:19:27 10:19:30

A. I would have been happy to have my money back. 10:19:34 10:19:37

Q. And you would have been made whole and not harmed; right? 10:19:38 10:19:40

A. Excluding the frustration issue, yes. 10:19:42 10:19:46

Q. But you're not suing about the frustration issue? 10:19:46 10:19:48

A. Correct. 10:19:49

Q. How many 8500 printers -- 10:19:57

MR. SCHWING: Strike that. 10:20:00

C. Kowalsky

Q. My understanding is that you bought a mid model 8500 printer and you returned that printer to HP, got another printer, and then you returned that printer and got another printer; is that right? 10:20:00 10:20:03 10:20:08 10:20:12 10:20:14 10:20:18

A. Yes. 10:20:18

Q. Other than those 8500 printers, have you ever owned another HP 8500 printer? 10:20:19 10:20:22 10:20:26

A. No. 10:20:26

Q. Have you ever owned another HP printer? 10:20:27 10:20:31

A. Yes. 10:20:31

Q. What kind of printer was that? 10:20:31

A. It was a PhotoSmart. I don't recall the model. I owned it before this one. I think it was called a PhotoSmart. 10:20:33 10:20:37 10:20:40

Q. Did you ever own an 8500 base model printer? 10:20:45 10:20:50

A. No. 10:20:51

Q. Did they have one at Kensington? 10:20:51

A. Yes. 10:20:56

Q. And did you ever use that 10:20:57

C. Kowalsky

printer? 10:21:01

A. Occasionally. 10:21:01

Q. Did you ever have a problem with that 8500 base model printer? 10:21:04 10:21:08

A. I didn't experience any problems with it, no. 10:21:12 10:21:14

Q. Do you know if anybody else at Kensington experienced any problems with that 8500 printer? 10:21:15 10:21:16 10:21:20

A. I don't know. 10:21:21

Q. But you never experienced a page skipping issue with that printer; right? 10:21:21 10:21:27

A. No. I'm not even sure if I used the ADF, no. 10:21:29 10:21:33

Q. Do you have any knowledge whatsoever that the base model 8500 printer exhibits a page skipping problem? 10:21:34 10:21:35 10:21:38

A. I don't know. 10:21:40

Q. Do you have any knowledge whatsoever that the premier printer, the high level 8500 printer has an ADF problem where it skips pages? 10:21:46 10:21:47 10:21:49 10:21:53

A. None. 10:21:55

Q. You only have knowledge about 10:21:55

C. Kowalsky

the mid level printer; correct? 10:21:58
A. Correct. 10:22:01
Q. Did Kensington buy that mid level -- 10:22:02 10:22:07
MR. SCHWING: I'm sorry, strike that. 10:22:08 10:22:10
Q. Did Kensington buy the base model 8500 printer after you had purchased your mid level 8500 printer? 10:22:10 10:22:12 10:22:15
A. Yes. 10:22:17
Q. Were you consulted with respect to that purchase at all? 10:22:18 10:22:20
A. Yes. 10:22:22
Q. And you recommended that Kensington purchase that 8500 printer; correct? 10:22:22 10:22:25 10:22:28
A. No. 10:22:28
Q. What did you say about it? 10:22:29
A. I mentioned the page skipping issue. 10:22:30 10:22:32
Q. Before they bought the 8500 printer you mentioned the page skipping issue? 10:22:32 10:22:38 10:22:40
A. Yes. 10:22:41

C. Kowalsky

Q. Who did you tell about that? 10:22:41

A. Eli Kowalsky. 10:22:42

Q. You told your father about it; right? 10:22:44

A. Yes. 10:22:44

Q. What did you tell him? 10:22:44

A. I said I'm having issues with the printer. If you want to buy one, you can buy one. 10:22:46

Q. You understood that he heard you about it? 10:22:51

A. I believe he heard me. 10:22:53

Q. And he bought it anyway; is that right? 10:22:54

A. Yeah. 10:22:56

Q. So do you believe that your father, when he bought that 8500 printer, bought it with eyes wide open because you told him about the page skipping issue and he still bought it anyway? 10:23:00

A. Yes. 10:23:14

Q. Do you believe if he later experienced a page skipping issue with that 8500 printer that he would have been 10:23:14

C. Kowalsky

they read reviews and posts on HP.com that said that the printer was experiencing page skipping issues and they read a number of those posts and they still went forward and but the bought the printer, do you think that they would have done so knowing that there was a risk that their printer might skip pages when they use the ADF? 10:25:16 10:25:21 10:25:23 10:25:25 10:25:28 10:25:30 10:25:32 10:25:33 10:25:37

A. I think if they read the posts then -- I don't know what's going on inside everybody's brain but I would assume that, if they read the posts and they knew there was a possibility, yes. 10:25:37 10:25:41 10:25:43 10:25:45 10:25:50

Q. Do you think that customers who bought the 8500 printer should get their money back? 10:26:09 10:26:12 10:26:15

A. Yes. 10:26:16

Q. Do you believe people who bought the 8500 printer and didn't experience the page skipping issue when using the ADF should get their money back? 10:26:26 10:26:28 10:26:32 10:26:35

A. I guess if their printer has no issue, then I don't see why they would get 10:26:44 10:26:46

C. Kowalsky

their money back. 10:26:49

Q. Because they would get a windfall, right, they would have a printer that works fine and they would get back their few hundred dollars that they had spent; right? 10:26:51 10:26:53 10:26:53 10:26:54 10:26:56

A. If a customer didn't have an issue and he uses his ADF, you know, regularly and they didn't have the issue then I don't think they would get a refund. 10:27:00 10:27:02 10:27:07 10:27:09 10:27:12

Q. Do you know when your class certification motion is due? 10:27:14 10:27:18

A. No. 10:27:20

Q. How do you propose to define the class in this case? 10:27:21 10:27:27

MR. RUBIN: Objection as to a legal conclusion. 10:27:31 10:27:32

A. I understand the class again to mean owners of an 8500 printer. 10:27:34 10:27:41

Q. And you would include in that purchasers of the base model, the mid model, and the high level model? 10:27:43 10:27:46 10:27:49

A. Again, I don't know if those 10:27:52

C. Kowalsky

document Exhibit -- Defendant's Exhibit 2 at the top says Weiss and Lurie. It's dated April 23, 2010. It's three pages long. And it's signed by Zev Zysman. 10:57:07 10:57:11 10:57:13 10:57:16 10:57:20

Q. Were you consulted in any way about this document? 10:57:26 10:57:34

A. I don't recall. I was consulted about the case in general. 10:57:34 10:57:36

Q. Do you know if HP ever responded to this letter? 10:57:38 10:57:41

A. I'm not sure. 10:57:42

Q. Did you ever see a letter from HP in response to a letter? 10:57:43 10:57:45

A. I don't recall. 10:57:46

Q. Have you ever seen a letter from HP's counsel at all? 10:57:47 10:57:49

A. I don't recall. 10:57:50

Q. Did you ask to be included on correspondence from HP? 10:57:51 10:57:58

A. I don't recall specifically asking that, no. 10:58:00 10:58:02

Q. Did you ever hear that HP had offered to repair or replace your printer 10:58:03 10:58:34

C. Kowalsky

after you filed the lawsuit? 10:58:37

A. No. 10:58:38

Q. Did you ever hear that HP had offered to refund your purchase after you filed the lawsuit? 10:58:42 10:58:44 10:58:46

A. No. 10:58:47

Q. If you had heard that HP had offered to refund your purchase, would you have taken HP up on that offer? 10:58:47 10:58:58 10:59:01

A. Yes. 10:59:03

Q. You had called up HP's customer service line before when you experienced page skipping issues with your printer; right? 10:59:03 10:59:14 10:59:18 10:59:22

A. Yes. 10:59:22

Q. And on two separate occasions you exchanged your printer for another one; right? 10:59:22 10:59:25 10:59:28

A. Yes. 10:59:28

Q. Did you ever to send in your printer in order to get the exchange printer? 10:59:29 10:59:30 10:59:34

A. Yes. 10:59:35

Q. You didn't have a problem with 10:59:35

C. Kowalsky

sending your old printer to HP; did you? 10:59:37

A. It was a pain in the neck. I had to go back it up and drop it off. But I don't know how you define a problem. 10:59:40 10:59:42 10:59:48

Q. Besides the hassle of shipping, you were okay with providing HP with the old printer in exchange for getting a new one; right? 10:59:48 10:59:51 10:59:53 10:59:57

A. Yes. 10:59:57

Q. And if HP had offered to refund your printer, you wouldn't have had a problem with sending them your old printer in order to get the refund; right? 10:59:58 11:00:02 11:00:06 11:00:09

A. Yes. No problem. 11:00:13

Q. Did you ever ask HP to refund you the purchase price of your printer? 11:00:14 11:00:17

A. I believe on a call I said, you know, send me a refund and the rep said no, we'll send you a new printer and stuff. 11:00:19 11:00:21 11:00:26 11:00:29

Q. Which call? 11:00:29

A. I don't recall. 11:00:31

Q. Which printer did you have when you made this call, which of the three 11:00:34 11:00:38

C. Kowalsky

conversation, but evidently they sent me another printer and I didn't get my money back. 11:01:36 11:01:40 11:01:43

Q. Did you demand a refund and say no, I do not, I don't want an exchange -- 11:01:43 11:01:45

A. I don't recall demanding a refund. 11:01:48 11:01:50

Q. You don't recall ever demanding a refund with respect to the first printer you bought, the second, or the third; right, the two replacement printers? 11:01:51 11:01:57 11:01:59 11:02:02

MR. RUBIN: Objection. 11:02:05

A. I don't recall ever demanding a refund. 11:02:05 11:02:08

Q. Did your lawyers tell you that you had to retain any documents in the case? 11:02:08 11:02:18 11:02:20

A. They asked me to show them whatever I had. 11:02:20 11:02:25

Q. Did they tell you to retain things, not destroy them, get rid of them? 11:02:26 11:02:29

A. Yes. 11:02:32

Q. What steps did you take to retain documents? 11:02:32 11:02:34

C. Kowalsky

MR. SCHWING: Strike that. 11:07:51

Q. When you worked at Kensington Capital, did you work at home? 11:07:52 11:07:55

A. I did some work from home, yes. 11:07:56

Q. In the evenings when you would come home from work, did you have the misfortune like many of us do of having to work at night? 11:07:58 11:08:00 11:08:02 11:08:06

A. Yes. 11:08:07

Q. Did you use your printer at night? 11:08:07 11:08:09

A. I used at night, yes. 11:08:10

Q. Did you use your printer for your work that you did at Kensington Capital? 11:08:14 11:08:16 11:08:21

A. Maybe a little bit. I don't recall if I really had to use it at home much. 11:08:21 11:08:23 11:08:25

Q. Did you purchase your 8500 printer primarily for business purposes? 11:08:26 11:08:28

A. I don't know if primarily, but it was purchased for home use as well as the business use for that I helped my wife with her physical therapy business, you 11:08:31 11:08:35 11:08:38 11:08:42

C. Kowalsky

know, billing and stuff. 11:08:44

Q. Did they use the printer more than you did? 11:08:46 11:08:48

A. No, I do most of the technology things in the house. I helped her with anything that was really computer-based or printer-based. 11:08:49 11:08:51 11:08:53 11:08:56

Q. Percentage-wise in terms of home -- use for sort of home and family use versus business use, was it more business use, use of the printer? 11:08:57 11:09:01 11:09:05 11:09:08

A. The use of the ADF function? 11:09:10

Q. No, the printer. 11:09:12

A. I don't know what was more. It was, you know -- I don't want to say equal because that's very defined. I used it for both. 11:09:13 11:09:17 11:09:23 11:09:26

Q. So you can't quantify it either way, whether it was primarily for business use or for -- 11:09:26 11:09:29 11:09:31

A. I can't quantify that, no. 11:09:33

Q. I'm sorry, let me finish the question. 11:09:35 11:09:36

A. Sorry. 11:09:36

C. Kowalsky

checking the price. And I believe I also went to C-Net and see if they had a review on it. 11:11:35 11:11:39 11:11:43

Q. Did you do anything else? 11:11:43

A. I don't recall anything else. 11:11:45

Q. So to research for the 8500 printer, you looked at HP's Web site and examined different models of printer that HP offered, you looked on Amazon, and you looked on C-Net; is that right? 11:11:48 11:11:53 11:11:57 11:11:59 11:12:02

A. I believe so. 11:12:07

Q. How long did you spend researching the 8500 printer before you bought it? 11:12:08 11:12:10 11:12:12

A. I can't recall exactly, maybe a couple of hours at most. 11:12:13 11:12:19

Q. Two hours at most? 11:12:20

A. I don't want to say at most, but give or take. 11:12:22 11:12:27

Q. You didn't spend five hours doing research; did you? 11:12:28 11:12:31

A. Probably not. 11:12:33

Q. You didn't spend four hours doing research; did you? 11:12:33 11:12:38

C. Kowalsky

you about researching the 8500 printer, do you think you have all the information that you're going to have to be able to answer that question? 11:28:47 11:28:51 11:28:52 11:28:54

A. I believe so. 11:28:55

Q. Did you see any advertisements separate and apart from HP's Web site that discussed the 8500 printer? 11:28:56 11:29:04 11:29:08

A. I don't recall. 11:29:10

Q. Do you remember any of the reviews that you read on HP's Web site about the 8500 printer before you bought it? 11:29:11 11:29:23 11:29:25 11:29:28

A. I don't remember any details of any of the reviews, no. 11:29:28 11:29:32

Q. Did you look at HP's support forum on the HP Web site before you bought the 8500 printer? 11:29:34 11:29:38 11:29:42

A. No. 11:29:43

MR. SCHWING: Mr. Kowalsky, I'm going to hand you a document and ask that the court reporter mark it as Defendant's Exhibit 3. 11:30:37 11:30:38 11:30:42 11:30:43

(Whereupon, a three-page 11:30:47

C. Kowalsky

that. Then it will narrow down your choices. 11:38:35 11:38:35

Let's say you choose high volume. It will give you all your, you know, high volume printers. Well, do you need color, black and white, it will give you those choices and so on and so forth. 11:38:36 11:38:37 11:38:38 11:38:41 11:38:43

Q. You don't recall if you used the help me choose function on HP's Web site to buy your 8500 printer; do you? 11:38:46 11:38:47 11:38:48

A. I can't recall. 11:38:52

Q. Can you identify any false statements on the help me choose function? 11:38:53 11:38:56

A. I don't recall if I used it. 11:38:58

Q. So you can't identify any false statements or misleading statements, right, because you don't remember using it at all? 11:39:01 11:39:01 11:39:03 11:39:04

A. I don't recall. 11:39:06

Q. You can't identify any false statements or misleading statements; right? 11:39:06 11:39:09 11:39:10

A. Yes. I cannot identify any misleading statements. 11:39:11 11:39:14

C. Kowalsky

Q. How long did you spend looking at HP's Web site before you bought the 8500 printer? 11:39:15 11:39:27 11:39:30

MR. RUBIN: Objection. Asked and answered. 11:39:31 11:39:32

A. Again, I don't recall exactly how long I spent on HP's Web site. I know I spent, you know, give or take two hours probably researching in general. 11:39:33 11:39:38 11:39:41 11:39:44

Q. Total through any media; right? 11:39:46

A. Correct. 11:39:49

Q. Which would include HP's Web site, Amazon, C-Net; right? 11:39:50 11:39:53

A. Yes. 11:39:57

Q. How long did you take reviewing the specifications for the 8500 printer? 11:39:57 11:40:10

A. I don't recall. 11:40:13

Q. Did you review any advertisements about the 8500 printer? 11:40:15 11:40:26

MR. RUBIN: Objection. Asked and answered. 11:40:29 11:40:30

A. I don't recall if I saw any advertisements. 11:40:30 11:40:32

Q. Did you see any representations 11:40:33

C. Kowalsky

MR. RUBIN: Objection. Asked and answered. 11:43:38 11:43:39

A. Well, if the ADF didn't scan the pages correctly then the representation that it would scan X number of pages per minute would not be a true statement. 11:43:40 11:43:44 11:43:46 11:43:49

Q. Was the representation that the printer would scan a multiple page document within a certain amount of time or was the representation that the printer could take a single page and scan it and produce duplicates, a certain number of duplicates within a certain amount of time? 11:43:53 11:43:55 11:44:01 11:44:04 11:44:08 11:44:13 11:44:17 11:44:20

MR. RUBIN: Objection. Asked and answered. 11:44:20 11:44:22

A. Ask it one more time? 11:44:23

MR. SCHWING: Read it back, please. 11:44:24 11:44:25

(Whereupon the requested portion was read back by the reporter) 11:44:26 11:44:44

A. I don't recall. 11:44:44

Q. Do you understand the distinction between those two things? 11:44:45 11:44:49

C. Kowalsky

A. I think I do. I think that -- I can take one page and I can make ten copies of it in a certain amount of time or if I take ten pages how long will it take me to duplicate all ten, how long will it take to scan all ten. 11:44:52 11:44:55 11:44:58 11:45:01 11:45:03 11:45:04

Q. And you don't know one way or the other whether or not the HP representations had to do with the one scenario versus the other; is that right? 11:45:06 11:45:08 11:45:10 11:45:15

A. I don't recall what I saw at the time. 11:45:16 11:45:17

Q. So do you have any basis sitting here today to say that HP made a false representation about the speed of the ADF given that you can't remember what the representation was? 11:45:17 11:45:20 11:45:23 11:45:26 11:45:29

A. I don't recall what the representation was exactly. 11:45:37 11:45:38

Q. So if you can't recall what the representation was you can't tell me if you were misled by it; right? 11:45:39 11:45:41 11:45:44

MR. RUBIN: Objection. 11:45:47

A. I'd say I was misled in general 11:45:47

C. Kowalsky

by the advertising that there was a working ADF. 11:45:55 11:45:56

Q. But in terms of the speed of the scanning or faxing or copying, you can't identify any representation that was made that misled you about that because you can't remember what the representation was; right? 11:45:57 11:46:01 11:46:05 11:46:06 11:46:09 11:46:11

A. I don't recall the exact representations. 11:46:11 11:46:12

Q. So you can't tell me sitting here today that you were misled by it because you can't remember what it was; right? 11:46:14 11:46:16 11:46:20 11:46:22

A. When you phrase the question like that, then the answer's yes. 11:46:22 11:46:28

Q. Well, I'm not trying to be tricky here. 11:46:29 11:46:31

If you can tell me what the representation was, I'd like to hear it. 11:46:32 11:46:34

A. I don't recall. 11:46:36

Q. So you don't remember and you so can't tell me if you were misled by it; right? 11:46:37 11:46:41 11:46:44

MR. RUBIN: Objection. Vague. 11:46:45

Do you mean misled by it back then or misled by it today? 11:46:46 11:46:47

Q. Were you mislead by it back then when you read a representation about the ADF speed? 11:46:48 11:46:50 11:46:51

MR. SCHWING: Strike that. 11:46:52

Q. Were you misled -- prior to purchasing this printer, were you misled by any representation with respect to the speed of the ADF? 11:46:53 11:46:56 11:46:59 11:47:01

A. I believe that I recall seeing ADF speeds. Again, I don't remember what they were. I don't remember the details. 11:47:03 11:47:05 11:47:07

Q. You can't remember where you saw that; right? 11:47:08 11:47:09

A. It was on the HP Web site. I don't remember what the details of those specifications were. 11:47:09 11:47:13 11:47:15

Q. If you can't remember the details of it then you can't tell me why it's false; right? 11:47:16 11:47:18 11:47:24

A. If I don't remember the details, I cannot tell you why it's false, correct. 11:47:25 11:47:29

C. Kowalsky

Q. In fact, you can't even tell me if it's false because you can't remember; right? 11:47:31 11:47:33 11:47:34

A. If I don't remember the details, I can't tell you that it's false, correct. 11:47:34 11:47:38

Q. So you're not basing any claim in this case about something that you can't remember at all; correct? 11:47:38 11:47:41 11:47:45

MR. RUBIN: Objection. Again, vague. 11:47:47 11:47:48

Are you referring to if he recalls it now or recalled it then? 11:47:48 11:47:51

Q. Go ahead and answer. 11:47:53

A. I don't recall it sitting here right now. When I purchased the printer, at the time I saw what it was. Two and a half years later I cannot remember what I saw. 11:47:54 11:47:57 11:48:00 11:48:03 11:48:06

Q. So you can't remember if you were tricked by it or not because you can't remember what it was; right? 11:48:06 11:48:09 11:48:11

A. I can remember at the time feeling that it was misleading, yeah. 11:48:12 11:48:14

Q. What was the thing that was 11:48:16

C. Kowalsky

misleading? 11:48:17

A. Again, I don't remember the details of the specs. But sitting here today, I can tell you that I remember feeling misled by the overall functions of the printer. 11:48:18 11:48:21 11:48:25 11:48:27 11:48:32

Q. So you have this recollection of feeling misled but you can't tell me why it's false or misleading; right? 11:48:32 11:48:33 11:48:36

A. With respect to the exact speeds? 11:48:38 11:48:41

Q. With respect to the speed of the printer. 11:48:42 11:48:43

A. With respect to the speed of the ADF? No. 11:48:44 11:48:47

Q. Did you ever look at the ADF -- 11:48:48

MR. SCHWING: I'm sorry, strike that. 11:48:59 11:49:01

Q. Did you ever look at the 8500 printer in a store before you bought it? 11:49:01 11:49:03

A. I don't think so. 11:49:05

Q. Did you ever look at an 8500 printer at all before purchasing it in person? 11:49:06 11:49:10 11:49:18

C. Kowalsky

Q. Do you remember ever calling HP and telling them you had a problem accessing the wireless connection for your printer? 13:37:29 13:37:38 13:37:42 13:37:47

A. I don't have a recollection. 13:37:47

Q. Do you remember ever having a problem accessing the wireless connection for the 8500? 13:37:49 13:37:52 13:37:54

A. Not that I recall. 13:37:55

MR. SCHWING: I'm going to hand you another document. 13:38:26 13:38:27

(Whereupon, a letter dated May 27, 2010 was marked Defendant's Exhibit 10 for identification.) 13:38:56 13:38:56 13:39:04

Q. Have you ever seen Exhibit 10 before, which is a two-page document dated May 27, 2010? 13:39:04 13:39:07 13:39:12

A. It does not look familiar to me. 13:39:13

Q. So you don't think you had seen it before; right? 13:39:18 13:39:23

A. I don't recall one way or the other, but it does not look familiar to me. 13:39:24 13:39:26 13:39:28

Q. If you look at page two in the 13:39:28

C. Kowalsky

second to last paragraph it says, "if, as you represent, Mr. Kowalsky purchased his 8500 series printer on July 2, 2009, it would appear his printer is still covered by HP's one-year limited warranty. Accordingly, if he simply complies with the terms of the warranty and returns the allegedly defective product to HP, HP will repair or replace it in accordance with the terms of the warranty and, as stated in the limited warranty, 'if HP is unable to repair or replace as applicable a defective product which is covered by HP's warranty, HP shall, within a reasonable time after being notified of the defect, refund the purchase price of the product.'" 13:39:35 13:39:39 13:39:42 13:39:46 13:39:48 13:39:51 13:39:55 13:39:57 13:39:59 13:40:01 13:40:05 13:40:08 13:40:12 13:40:15 13:40:18 13:40:19 13:40:21

Do you remember ever receiving any information that HP had made this offer to you that you could return your printer in exchange and that they would repair or replace the printer and if they couldn't repair or replace it that they would refund your money? 13:40:25 13:40:28 13:40:32 13:40:35 13:40:36 13:40:38 13:40:39

C. Kowalsky

A. I don't recall getting this, but they did replace my printer twice. 13:40:41 13:40:43

Q. I'm asking you if you ever saw this offer from May of 2010 where HP said if you return the printer, we'll try to repair or replace it and if we can't, we'll give you your money back? 13:40:45 13:40:47 13:40:51 13:40:53 13:40:57

A. I don't recall seeing this offer. 13:40:59 13:41:00

Q. Do you want to be refunded the purchase price of your printer? 13:41:00 13:41:07

A. Yeah. 13:41:08

Q. Are you willing to part with your 8500 printer that you believe has page skipping issues in exchange for a refund? 13:41:09 13:41:12 13:41:17 13:41:21

A. Yes. 13:41:22

Q. Do you plan to give the printer back to HP and receive a refund if this offer is still good and existing? 13:41:25 13:41:28 13:41:33

A. I would do that. 13:41:37

Q. When you bought your replacement printer, the Canon, to replace the 8500 printer, did you still use the 8500 13:41:57 13:42:00 13:42:04

C. Kowalsky

Q. And given that you didn't return your printer, your third printer to HP, you didn't expect them to either give you a new printer or refund your purchase; right? 13:55:03 13:55:04 13:55:04 13:55:07 13:55:10

A. That's correct. 13:55:11

Q. Are you aware of anyone ever contacting HP with respect to the 8500 base model printer that was purchased for use at Kensington? 13:55:11 13:56:01 13:56:05 13:56:10

A. No. 13:56:11

MR. SCHWING: I hand you another document and ask the court reporter to mark it as Exhibit Number 13. 13:57:18 13:57:20 13:57:22

(Whereupon, a two-page document was marked Defendant's Exhibit 13 for identification.) 13:57:28 13:57:28 13:57:28

Q. Let me know after you've had a chance to review it, sir. 13:57:28 13:58:12

A. (Reviewing). 13:58:14

Okay. 13:58:15

Q. Have you ever seen this document before? 13:58:32 13:58:34

A. It looks like it's a printout of 13:58:34

C. Kowalsky

information on the Internet about that particular thing, ISO/IEC 24734? 14:02:49 14:02:52

A. No. 14:02:59

Q. Did you ever feel misled in any way about anything related to ISO/IEC 24734 given that you don't know what it is? 14:02:59 14:03:08 14:03:12 14:03:19

A. Given that I don't know what it is, then I have not felt misled, not to the best of my knowledge. 14:03:20 14:03:24 14:03:32

MR. SCHWING: I hand you another document. I'll ask the court reporter mark this document as Defendant's Exhibit 15. 14:03:43 14:03:45 14:03:57 14:03:59

(Whereupon, a one-page document was marked Defendant's Exhibit 15 for identification.) 14:04:00 14:04:00 14:04:15

Q. Have you ever seen this document before, sir? 14:04:15 14:04:16

A. Yes. 14:04:17

MR. SCHWING: This document, for the record, is marked CK 52. 14:04:18 14:04:20

Q. When did you see this? 14:04:21

A. On the computer -- the printed 14:04:22

CERTIFICATION BY REPORTER

I, Wayne Hock, a Notary Public of the State of New York, do hereby certify:

That the testimony in the within proceeding was held before me at the aforesaid time and place;

That said witness was duly sworn before the commencement of the testimony, and that the testimony was taken stenographically by me, then transcribed under my supervision, and that the within transcript is a true record of the testimony of said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, that I am not interested directly or indirectly in the matter in controversy, nor am I in the employ of any of the counsel.

IN WITNESS WHEREOF, I have hereunto set my hand this 10th day of January, 2012.

______________________________

WAYNE HOCK

# EXHIBIT C

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHAIM KOWALSKY, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HEWLETT-PACKARD COMPANY and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 10-CV-02176 LHK |

ORIGINAL

DEPOSITION OF CRAIG THOMAS JOHNSON

Wednesday, December 7, 2011

REPORTED BY:
Ingrid Suárez Egnatuk
CSR No. 3098

File No.: 12-3-111

The Egnatuk Agency
CERTIFIED SHORTHAND REPORTERS
2420 West Carson St.
Suite 210
Torrance, California 90501
(310) 787-3240

The business I'm in is called the Imaging and Printing Group. And that group develops all the printers, all-in-ones, scanners, you know, devices like that; hard-copy output devices. But again, like I said, there's a number of businesses in San Diego. I'm in one of the businesses.

Q. When you say "develop," you mean from concept to manufacturing?

A. Yes. Yeah. From concept to manufacturing. All the manufacturing is done overseas. But the product design and development for some of the products is done here. There's also a design center in Singapore where this product was developed. The Officejet 8500 was developed in Singapore.

Q. And HP is headquartered in Northern California?

A. Palo Alto. Yeah.

Q. And what's the relationship between the campus down here and the headquarters up north?

MR. SCHWING: That question is vague, "the relationship."

MR. ELKINS: Okay. I'll explain.

Q. Do you have to report to the headquarters, or does the -- are you more or less autonomous down here?

A. Well, I mean, we're part of HP. So I guess in that way we report to the headquarters. But this

Imaging and Printing Group is a big business. That's, you know, semi-autonomous. It's not real tightly linked into some of the other businesses, like the computer business or something like that.

Q. Okay. So I'm just trying to find out who -- where you're getting the marching orders from.

Are most of the decisions made in the Palo Alto office, or were they being made here?

A. For which product? Are you talking about the Officejet 8500?

Q. I'm talking about in general. I'm talking about at what point, if you're developing a product, who says, "Okay. We'll go forward with it," or, "We won't go forward with it. This is how we're going to market it. This is" --

A. The specific business unit.

MR. SCHWING: Object. The question is vague as to which unit or product.

BY MR. ELKINS:

Q. I'm sorry. What were you saying?

A. The specific business unit. So the business unit that develops the Officejet 8500 is the -- let me see if I can remember the acronym. IBP, Inkjet Business Products Group, I think, which is in Singapore.

Q. Okay. So they're the ones making the

decisions?

A. They make the decisions on which products to market, what the design -- you know, product feature designs, and that kind of thing. So each business unit kind of runs their own business.

Q. So what -- at what point do you have to go to the Palo Alto office to clear any sort of decision-making? At what level? Is it mid-management, upper management?

MR. SCHWING: The question is vague.

BY MR. ELKINS:

Q. Do you understand the question?

MR. SCHWING: If you understand.

THE WITNESS: Well, so the head of the Imaging and Printing Group is -- would really be the connection to Palo Alto. I don't have any direct connection to Palo Alto, the headquarters.

BY MR. ELKINS:

Q. Okay.

A. But the head of the IPG, you know, he works for the -- you know, he works for the CEO of HP.

Q. And the CEO is in Palo Alto?

A. I don't know if she is. Actually that is where her office is. But that's where the headquarters is.

Q. I'm fairly clear. I'm not exactly clear.

Q. Where are they located?

A. They're in China, South China.

Q. And when you say "top level" --

A. They built the actual -- they didn't build the ADF, but they built the Daimler, the full all-in-one product.

Q. All three models?

A. All three models.

Q. And do you know at what point they started manufacturing?

A. I don't -- I'm not sure I know the exact date. I know when there was qualification testing going on in late 2009. I don't know when they actually turned on that production line.

Q. Do you know what the abbreviation "CR" is?

A. I know one possible definition of that. But --

Q. Okay. If you need reference, we'll get to it when we get to those documents. I'll ask you.

A. Okay.

Q. Do you know what "NPI" is?

A. Yeah. New product introduction.

Q. Okay.

A. That's the prelaunch.

Q. And that's for all products? They all have NPI?

A. NPI is like a phase, the development phase.

Q. Do you know what "LP" stands for?

A. Lab prototype.

Q. What is Cimation test, C-I-M-A-T-I-O-N?

A. Cimation is an automated test that HP uses to test the functions and quality of products coming off the production line and also the prototypes that are being built in various phases. So it's an automated test.

Q. And it deals with all functions of the printer?

A. It -- yeah. There are different versions. There's versions of Cimation that may test a component and other versions that test the whole product.

Q. And what's AIO?

A. All-in-one.

Q. So you were saying that the design is mostly done in the San Diego office; correct?

MR. SCHWING: Misstates his testimony.

THE WITNESS: Not -- for the Officejet 8500, the design is mostly done in Singapore.

BY MR. ELKINS:

Q. Okay. And is there a separate company that does that, or is that an HP division?

A. It's -- an HP division owns it, and they sometimes subcontract some things out.

Q. Is there a name to that division?

A. BPD, Business Printing Division I believe is what it stands for. That's the name of the Singapore business unit.

Q. And where is the testing done?

A. Which testing?

Q. I'm sorry. The following questions will all be dealing with the 8500 printer.

When you're testing --

MR. SCHWING: The question is -- I'm not trying to be difficult here. But the question is vague. Do you mean like the ADF or the ADF testing for the 8500?

MR. ELKINS: I was talking about all testing.

Q. But if there's -- testing is done at different places, then you can say so.

A. Testing is done at different places.

Q. Is the -- is it done in different places based on what aspect of the printer you're testing or based on what stage in testing you're doing?

A. Mostly based on what -- the former, on what -- what aspect of the printer you're testing.

Q. Okay. So let's deal with the ADF.

Where is that tested?

A. The ADF testing was mostly done at Flextronics, which was the company contracted to manufacture the ADF

mechanism itself.

Q. And where is that located?

A. And that is in Malaysia.

Q. So they do the testing and the manufacturing of the ADF?

A. Yeah. Most of the testing and -- and the manufacturing, yes.

Q. And they do testing all the way from the earliest testing all the way up until the manufacturing testing?

A. Yes.

Q. If you know, can you explain the different stages of testing in the order that they are done? If you want, I can give you examples, and you can put them in order for me.

A. That would be helpful.

Q. I've seen in the documents that you produced something called beta testing; MP, or manufacturing prototype testing; PP, production prototype; MR, manufacturing release.

Can you put those in order of when they occur?

A. Yeah. The LPs are first, and there are probably a bunch of LP, you know, 0, 1, 2, 3, 4, 5, I think. And then I believe the PP -- well, I'm not sure if the PP is the same as the MP. It might be. But

was being brought up, Foxconn. And so this qual test was done there.

Q. So you're saying that Foxconn was not the original manufacturer?

A. That's right.

Q. Who was the original manufacturer?

A. Venture.

Q. And where are they located?

A. Malaysia.

Q. Is it safe to say that the change between Venture and Foxconn happened at the end of 2009, approximately October?

A. I know it was -- the qualification test was going on then. I don't -- like I said, I don't exactly know when manufacturing transitioned.

Q. Okay. And the tests that you do when you change a manufacturer, is that more or less the same sort of testing that you would do for the audit test?

MR. SCHWING: I'm going to object. It's vague as to -- are we talking about the 8500, or are we talking about generally or -- I just want to make sure we're all on the same page.

MR. ELKINS: Yes. I am talking about the 8500.

THE WITNESS: So for the 8500 it might not necessarily be similar to that audit test, but it would

Do they get it from HP, or do they do their own testing?

A. No. I would assume they get it from HP. HP, you know, will put it on the box or . . . . . .

Q. So they use the same specifications that HP does?

MR. SCHWING: I think you're calling for speculation as to what retailers may be representing or not.

MR. ELKINS: Okay.

MR. SCHWING: If it's a spec question about what HP's --

MR. ELKINS: Okay.

Q. If you know, when HP ships products to retailers, do they include a specification sheet with the product, if you know?

A. Certainly some specifications. I don't know if every single specification is included on every product.

Q. I'd like to show you a document now.

(Deposition Exhibit 1 was marked for identification.)

BY MR. ELKINS:

Q. I've now handed you an exhibit with the number HP00034787 on the bottom.

Do you see that?

A. Yes.

Q. Can you explain to me, given that I do not have an engineering degree, what the page-skipping issue consists of?

And I will mark another exhibit, which you can use if you want. You don't have to. It's more or less a visual aid.

It's Bates No. HP00029366 through 381. And we'll mark that as Exhibit 7.

(Deposition Exhibit 7 was marked for identification.)

BY MR. ELKINS:

Q. So, again, I don't need you to review this entire document. I'm not going to ask you questions about this document. I'm just giving it to you if you want to use these pictures in helping you explain the problem.

MR. SCHWING: I'm looking at 29377, which has a reference to Lorentz, which is a different printer. And I'm just going to state an objection for the record.

I'm not sure that this relates to the 8500, which is what we're here to discuss today.

But he's not asking you any questions about the document. So if he wants to --

I'm not objecting to a question. There is no question pending. But you've handed him this document,

and I just want to make it clear for the record.

BY MR. ELKINS:

Q. If this document only deals with the Lorentz and not the Daimler, but you could still use these pictures to help your explanation, go ahead and just point out any differences that the Lorentz may have. If this does not only deal with the Lorentz, then you can use the document without any corrections.

THE WITNESS: Okay.

BY MR. ELKINS:

Q. Would you like me to repeat my question?

A. Yes, please.

Q. Can you please explain to me, someone who does not have an engineering degree, what the nature of the page-skipping issue was? And you can use the diagrams in the exhibit I just showed you to help explain.

MR. SCHWING: If you need -- if you need them. He's not asking you about any particular page. But why don't you just tell us what the page-skipping issue is.

THE WITNESS: I'm not familiar with Lorentz. I was actually prepared to talk about the Daimler. So I'll stick to that.

So the page-skipping issue was found in testing at HP. And it was found to be, you know, an intermittent issue that only happened on some machines

in certain conditions with, you know, certain work flows and not other work flows, you know, with certain stack sizes in the ADF. So it was -- it was a -- it was found to be a fairly uncommon event.

BY MR. ELKINS:

Q. Okay. That doesn't explain what the issue was. I need you to explain to me what exactly caused the issue.

A. So physically in the -- in the mechanism?

Q. Correct.

A. Okay.

Q. And to the extent that Lorentz shares the same, more or less, shape, you can point to this document and say, "This is where the edge sensor is, and this is where the scan line is," if it makes it easier.

A. Well, my understanding of the problem or the issue is if, as the pages are going through, page -- the current page is going through the ADF, and the following page is coming in, if that gap between -- space between the pages gets too small, the firmware may not detect the transition from, you know, the current page to the next page, and it would treat it all as one big page; therefore, you know, effectively missing a page.

Q. So basically you're saying that if the pages actually come in too close, it's not reading the gap;

the first line down, it says, "ADF was not transfer. So the Hardware and Process remained the same as per NPI."

Do you understand what those two sentences mean?

A. I believe so, yes.

Q. Can you explain to me what "ADF was not transfer" means.

A. The -- the ADF mechanism itself is built by Flextronics. And that ADF mechanism gets built into a whole all-in-one product, Daimler. That happens at Venture. And what they transferred was that product-level manufacturing from Venture to Foxconn. But the ADF was always manufactured at Flextronics.

Q. Okay. So the hardware and process remain the same as per NPI, and you said NPI was what?

A. New product introduction.

Q. Thank you.

That's referring to the hardware and process of the ADF; correct?

A. Well, they say changes to hardware, ADF, et cetera. So it may be broader than the ADF. I'm not sure.

Again, I think they're kind of saying there was no intentional change to the -- to the hardware and the process as they moved from -- during this transfer.

problem?

A. That's correct. I did not have any personal involvement.

Q. Okay. Was anybody in the San Diego office or San Diego campus more involved than you in any of the areas I just said, the testing, the diagnosis of the problem, or the solution to the problem?

A. No, I don't believe so.

Q. So pretty much everyone that has any firsthand knowledge of this -- again, the testing, the diagnosis, and the solution -- would be located either in Singapore or Malaysia?

A. Yes.

Q. Would it be more Singapore?

A. Yeah. Singapore is the design center.

Q. And Malaysia is just the manufacturing?

A. Right.

Q. Where is -- is it hiPoint?

A. HiSoft.

Q. HiSoft, where are they located?

A. I'm not sure where their headquarters are.

Q. It's in Asia, though?

A. Yeah. Actually, I don't know where their headquarters are. I know they have branches that support HP's manufacturing and testing in Asia.

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

I, Ingrid Suarez Egnatuk, CSR No. 3098, a Certified Shorthand Reporter in and for the State of California, do hereby certify:

That the foregoing deposition of CRAIG THOMAS JOHNSON was taken before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony of the witness and all objections made at the time of the examination were recorded stenographically by me and were thereafter transcribed under my direction and that the foregoing is a true record of the testimony and of all objections made at the time of the examination.

I certify that a request has been made by, or on behalf of, the witness to review, correct and sign the transcript of these proceedings.

I further certify that I am neither counsel for nor related to any party to said action, nor in anywise interested in the outcome thereof.

In witness whereof, I have subscribed my name this 16th day of December, 2011.

Certified Shorthand Reporter
No. 3098

# EXHIBIT D

PRODUCT GUIDES DIGITAL CAMERAS LAPTOPS MP3 PLAYERS CELL PHONES PRINTERS DESKTOPS HDTVS SOFTWARE MORE >
PCMAG.COM THE INDEPENDENT GUIDE TO TECHNOLOGY
Sign In | Register | My Account
AD: Instant Savings on Dell Wasabi Mobile Photo Printer

HOME REVIEWS DOWNLOADS SOLUTIONS NEWS COLUMNS COMPARE PRICES FORUMS @WORK BLOGS VIDEO SUBSCRIBE
Latest Reviews Comparisons Review Roundups Editors' Choice Gadgets & Gaming
SEARCH PCMAG.COM REVIEWS SEARCH PC Magazine: Current Issue Previous Issue
Home > Product Guides > Printers > MFPs > HP Officejet Pro 8500 Wireless All-in-One

MFPs

TABLE OF CONTENTS
At a Glance
Full Review

MORE ON THIS

Related Links
- Ricoh GX3050SFN
- Epson Artisan 800
- Multi-Function Printer Product Guide
- Ink Jet Printer Product Guide
- Printer Product Guide

# HP Officejet Pro 8500 Wireless All-in-One

EDITORS' CHOICE

REVIEW DATE: 05.08.09

RATINGS
EDITOR ●●●●○ VERY GOOD
Rate This Product

CHECK PRICES
Check Prices

By M. David Stone — Discuss Total posts: 1

Green Tech

GREENTECH APPROVED

As one of the few inkjet all-in-ones (AIOs) aimed squarely at the small office, the HP Officejet Pro 8500 Wireless All-in-One ($399.99 direct) stands apart from most inkjets. In fact, its combination of speed and office-centric features makes it less a competitor to other inkjets than to inexpensive color laser AIOs. Small enough to serve as a personal printer in any size office (although large enough to serve more comfortably near your desk than on it), it offers more than enough capability for a shared AIO in a small office as well.

SLIDESHOW (7)
Slideshow | All Shots

The 8500 comes in three variations. The Wireless model, which I reviewed, and the HP Officejet Pro 8500 Premier All-in-One ($499.99 direct) are identical, according to HP, except that the Premier model comes with an extra set of standard cyan, yellow, and magenta (but not black) ink cartridges, 50 sheets of glossy brochure paper, and a second paper tray to boost input capacity from 250 sheets—which should be enough for most small offices—to a hefty 500 sheets. You can also add the tray to the Wireless model as an option ($79.99 direct), but when you tally the cost of the extra set of ink cartridges ($19.99 direct each), you discover that buying the Premier model can save you a few dollars.

The third model is the HP Officejet Pro 8500 All-in-One ($299.99 direct). According to HP, it's built around the same printer engine as the other two models, so my comments about speed and output quality in this review should apply to it as well. There are some important differences with this model, however, ranging from the size of the scanner flatbed (letter-size rather than legal-size) to the controls on the front panel (which do not include the Wireless model's touch screen or its incredibly well-designed menus). So don't assume that any other comments in this review are true for the base model.

on Yahoo!

The 8500 Wireless can print, scan, and fax, even over a network, and it works as a standalone copier, fax machine, and e-mail sender, complete with a 50-page automatic document feeder (ADF). Even better, both the printer and ADF can turn a page over to print on or scan both sides, so you can copy both simplex (one-sided) and duplex (two-sided) originals to your choice of simplex or duplex format. You can also scan, fax, or e-mail both simplex and duplex documents.

Despite the emphasis on office needs, the printer offers some photocentric features as well, including the ability to print directly from PictBridge cameras and memory cards, as well as preview photos before printing on the 3.4-inch LCD. The photocentric features make the 8500 Wireless particularly appropriate for businesses like real estate offices, which need to print photos. And thanks to the relatively high photo quality, the printer is even a good choice for busy home offices to fill the dual role of home and home-office printer.

Setup is reasonably typical for an inkjet. Because of the legal-size flatbed, the 8500 Wireless is of necessity larger than most inkjets—and even some laser AIOs—at 13 by 19.5 by 18.9 inches (HWD). It weighs just 28 pounds, though. Once you find a spot for it, you can remove the packing materials and snap the automatic duplexer into place in the back. You then install the

Inform

PRODUCT GUIDES
Cell Phones
Desktops
Digital Cameras
GPS Devices
Headphones
HDTVs
Laptops
LCDs
Netbooks
Printers
Security Software
All categories

top sellers
Compare Store Deals
1. Dell XPS M1330 PC Notebook
2. Dell Inspiron Mini 10 (DNCWEA1) PC Notebook
3. Sony VAIO VGN-N365E/B PC Notebook
4. Hewlett Packard Compaq Evo Notebook N610c (470048-956)
5. Dell Latitude™ C640 PC Notebook
more >

shop now
Find great products and great deals.
Shop for:
(enter product name

Dell Resource Center

Dell Studio XPS 435
EDITOR ●●●●○ VERY GOOD
The Dell Studio XPS 435 does a great job with multimedia tasks like encoding video and editing photos, and does very well with 3D games.
02.26.09

Dell Studio XPS 16
EDITOR ●●●●○ VERY GOOD
The Dell Studio XPS 16 delivers a lavish media center experience with a unique design, home-theater features, and a vibrant RGB LED widescreen.
01.08.09
CHECK PRICES FULL REVIEW

Info Centers
Lenovo ThinkPad & IdeaPad Notebook Store
Linksys by Cisco Networking Info Center

Special Offers
Check out the 2009 ExtremeTech Case Mod Contest—sponsored by Newegg...*Enter Today!*
Hear the insights of four top experts about harnessing the power of ITIL
Don't let low-functioning systems go unnoticed— Get Disk Performance Analyzer for Networks 2.0 free now!
Hear from your peers the issues businesses are experiencing with their software *and their solutions*
Switching to Mac? Find answers to some of the most common PC-to-Mac questions

Free White Papers
Harnessing the Power of ITIL
Keeping Your SQL Server Databases Defragmented with Diskeeper
On the Hotseat: How Your Peers Are Tackling the Questions That Matter Now
IDC: Business Agility as an Enabler for Growth
PDF security - a brief history of development
View all White Papers >
Click here to list your White Papers >

FEATURED VIDEO

or keywords)
In:
All Categories

news

'High-Risk' Shuttle Launch to Be Streamed Live

Mozilla 'Prism' Beta Puts Web Apps on Desktop

Startup Pulls from Microsoft, Twitter

Skype Founders Form VC Fund

Garmin Delays Nuvifone Again

View All

columns

Web 2.0 Is Not Doomed—It Doesn't Exist!

We Are All Media Now

One Cell Phone Per Child

The Imminent World of Androids

What Price Cool? Mac vs. PC

View All

four ink cartridges and two printheads (each printhead handles two ink colors), load paper, connect the power cord, and let the printer go through its initial setup, including printing auto-alignment pages—a one-time operation, since the printheads are meant to last the life of the unit.

Once the physical setup is finished, you can run the automated installation program from disc. I installed the printer using an Ethernet connection and Windows Vista. HP says it also supplies drivers and a full set of software for Windows 2000, XP, and Mac OS 10.4.11 and later.

To say that print speed is a strong point is an understatement. I timed the 8500 on our business applications suite at a total of 7 minutes 23 seconds—a new record for an inkjet AIO. The only models that come close are the far-more-expensive Ricoh GX3050SFN, at 7:47, and the somewhat-less-expensive Epson Artisan 800, at 8:10. Photo speed is less impressive, however, averaging 2:27 for 4-by-6s and 5:21 for 8-by-10s, compared with 59 seconds and 2:08, respectively, for the Epson printer.

View Performance Tests

Output quality is acceptable for text and impressive for graphics and photos. More than half of the fonts on our text tests qualified as easily readable at 6 points, although it took a boost up to 8 points for more than half to qualify as both easily readable and well formed. Even two heavily stylized fonts with thick strokes passed both thresholds at 12 points. One of the test fonts, a common choice for business documents, showed a slight character-spacing problem at sizes as large as 12 points, but since only one font had that problem, I count this as a minor issue at most. The text quality is certainly good enough for most business uses.

Graphics and photo quality are both in the top tier for inkjet AIOs. I saw banding in some of the graphic images in default mode, but no important flaws in highest-quality mode. That's enough to make the output more than good enough for any business application up to and including marketing materials like one-page handouts and trifold brochures.

Colors in photos were a little punchy, and they had a tendency to lose detail in dark areas. On the other hand, many people prefer slightly punchy colors to more realistic images. All the photos were a match for what you might expect from your local drugstore, making them true photo quality by definition.

The 8500 Wireless is covered under HP's standard one-year warranty. If you have a problem that can't be resolved with a phone call, HP will ship a replacement along with a return shipping label, with HP covering the cost of shipping both ways.

The 8500 Wireless also has the distinction of being one of the first printers to qualify for the PCMag.com GreenTech Approved seal. It is RoHS and REACH compliant, and Energy Star 1.0 qualified. (HP says it expects that the printer will also be Energy Star 1.1 qualified, but that assumes the requirements that are currently expected don't change in the final Energy Star version.) The LED light source in the scanner eliminates wasted energy for warm-up and is mercury free. Even better, there's a recycling program for both the printer and ink cartridges, with no out-of-pocket costs for either.

The printer also scored reasonably well on our practical tests, particularly for canceling a print job. The cancel command takes only one button press, and printing stopped immediately on my tests, without wasting any additional paper or ink once I canceled the job. Printing a 12-page Word file in duplex mode took a touch over three times as long as printing in simplex—at 3:21 compared with 59 seconds—mostly because, as with any inkjet, the printer has to pause to let the ink dry on the first side before printing on the second side.

One last plus that demands mention is a notably low claimed running cost, at 1.6 cents per black-and-white page and 7.2 cents per color page. That's comparable with—and for black-and-white pages lower than—the 2.3 cents and 6.9 cents that Kodak claims as a major selling point for its line of AIOs. Print enough pages and the running cost can make the 8500 Wireless cheaper to own in the long run than a less-expensive AIO with a higher cost per page.

As should be obvious from reading this, the HP Officejet Pro 8500 Wireless All-in-One is an impressive printer. Its speed is a match for some slower lasers; its output quality is adequate for text and impressive for graphics and photos; it has almost any AIO feature you could want; and it's cheap to run. It is, in short, a runaway winner and easy pick for Editors' Choice.

Check out the HP Officejet Pro 8500 Wireless All-in-One's performance test results.

**Complete Green Tech Coverage**

*More Multi-Function Printer Reviews:*

- HP Photosmart Premium Fax All-in-One
- HP Officejet Pro 8500 Wireless All-in-One
- Konica Minolta magicolor 1690MF
- Canon Pixma MP620 All-In-One Photo Printer
- Epson WorkForce 600
- more

PCMAG.COM

Issue Index | Contact Us | About | Advertise | Site Map | Magazine Customer Service

PCMAG.COM QUICK LINKS Desktop PC Reviews | Cheap Laptops | Wireless Networking | Media Desktops | Laser Printers | InkJet Printers | MP3 Players | Digital Cameras | HDTV's | Computer & Console Video Gaming | Small Business Solutions | Everything Apple | LCD TVs & Monitors | Cheap Digital Cameras | Antivirus Software | Small Business Solutions

ZIFF DAVIS MEDIA Ziff Davis Home | Contact Us | Advertise | Link to Us | Reprints | Magazine Subscriptions | Newsletters | RSS Feeds | Tech Shop | Tech Encyclopedia | PC Downloads | Tech Webcasts | Tech Podcasts | Tech Video | White Papers | Ziff Davis Media International

AppScout | Cranky Geeks | DigitalLife | DL.TV | ExtremeTech | Filefront | GearLog | GoodCleanTech | PCMag.com | PCMagCasts | Security Watch | Smart Device Central | What's New Now

AppScout Mobile | Gearlog Mobile | GoodCleanTech Mobile | PCMag.com Mobile

Use of this site is governed by our Terms of Use and Privacy Policy
Copyright © 1996-2009 Ziff Davis Publishing Holdings Inc. All Rights Reserved. PC Magazine is a registered trademark of Ziff Davis Publishing Holdings Inc. Reproduction in whole or in part in any form or medium without express written permission of Ziff Davis Media Inc. is prohibited.

plasma TVs. Also, listener mail!

PCMag Radio Archives

Most Popular Podcasts

- The Future of Windows PCs
- Our Predictions For 2009
- Does Windows 7's Wow Start Now?
- iPhone vs. Blackberry Bold
- Windows Vista Headaches

All PCMag Radio Podcasts >

RELATED ADS

Printer Ink
HP Printer Drivers
Ink Cartridges
Inkjet Printer Cleaning
Inkjet Refill
Canon Ink
HP LaserJet

Case 5:10-cv-02176-LHK Document 91-3 Filed 02/10/12 Page 78 of 194

< Back

Print Email Save Rate it Reprints

Buzz up! Mixx It Digg It Stumble! Like? More...

XML Add PC Magazine Multi-Function Printers Product Guide RSS feed to your feed reader so that you don't miss another headline!

MY YAHOO! Add to Google my msn More Readers

What is this? See all tech RSS feeds

**Top-Rated Printers**
Get the printers critics choose Award-winning printers. Lexmark.
www.officemax.com

**Inkjet Printer Reviews**
Reviews, analysis, recommendations Compare and buy inkjet printers
www.ConsumerSearch.com

**Inkjet or Laser Printer?**
Read Reviews, Compare Prices & More 6 Budget Printers - Editors Ratings
computershopper.com/printers

**Wireless Internet**
Search our B2B directory for wireless internet. Compare & save
www.business.com

**C4140 Ink For $10.45**
Top quality cartridge guaranteed Fast shipping receive in 2-3 days
www.inkforsale.net

**newsletters**

Get PCMag.com's **FREE** email newsletters delivered to your inbox.

It's easy, just follow the steps.

Want more? Check out our other newsletters here.

Manage your newsletter subscriptions here.

**1. Make your selections:**
- Daily News Alert
- Inside PCMag.com
- PCMag.com Small Business Update
- PCMagCast Update
- Productwire: First Looks Update
- Security Watch
- Tech Saver
- Tip of the Day
- Utility Library Update
- What's New Now
- PCMag Announcements

2. Select email format: HTML

3. Enter email address:

ONLY 62C a copy
Subscribe
SUBSCRIBE TO PC MAGAZINE DIGITAL TODAY!

Subscription Help | Renew | Give a Gift

**sponsors**

ScanSnap S1500 Color Double-sided Document Scanner
Iomega NAS. Make it work for your small business.
Boot your PC in seconds with Presto - Instantly start to email, chat, or download cool apps on your PC.
Antivirus software that won't slow down your PC!
Cisco Network Magic Pro - Networking Simplified!
Panda Managed Office Protection - Try it free to simplify your life and budget
Transform Your Business with the NEW Cisco Aironet 1140 Series
One PC/Mac solution for all your media.
Mozy Online Backup - Unlimited Space - Only $4.95/Month!

# EXHIBIT E

 | An IT Business Edge Site

Small Business Computing.com
Make smart technology decisions

 Tech News & Trends  How-to Guides  Product Reviews  eBook Library  Free Resources  Ven

## Review: HP Officejet Pro 8500 Wireless All-in-One

By Joseph Moran | Published on: 08-Apr-09

Back to a

The HP OfficeJet Pro Wireless All-in-One is the company's top-of-the-line business-oriented inkjet printer. While the $399 price tag is somewhat dea take consolation in knowing that it buys you just about every feature you'd likely want in a small office printer/fax/copier/scanner device. (Note: as of HP's Web site is offering a $40 instant rebate which knocks the price down to a more attractive $359.99.)

### Paper and Ink

For starters, the 8500 Wireless AIO is adept at paper handling. An automatic two-sided (duplex) printing attachment comes standard, as does a 50-p document feeder (ADF) and 250-sheet tray that handles letter or legal size paper. The printer's scanning surface can accommodate 8.5- x 14 –inch le documents.

The 8500 Wireless AIO lets you minimize wasted ink by using a four cartridge scheme for its pigment-based inks. There's one for black and one each Magenta and Yellow. The standard 940 ink cartridges (a set comes with the printer) are rated for about 1,000 pages black or 900 pages color.

There's also a 940XL high-capacity series that ups the page yield to 2,200 and 1,400 for black and color, respectively. Ink cartridges are easily acces a door at the lower front corner of the 8500 Wireless AIO, so you don't have to visit the printer's innards to replace them. (You do need to "pop the hoo install a pair of print head modules, however.)

The 940XL cartridges cost $35.99 for black and $29.99 each for the colors. That works out to a very reasonable 1.6 cents per page for black and 6.4 c (As with most inkjet printers, buying the least expensive lowest-capacity ink cartridge is a false economy.) The printer's software actually lets you adj volume of ink used in five increments from light to heavy.

### LCD's a Touch Quirky

A large 3.4-inch color touch screen LCD sits front and center on the printer, and you can use it in lieu of the physical buttons on the control panel to i printer tasks. You can also use the touch screen to configure the printer, obtain the device status and select, preview and print photos found in one of memory-card slots or on a camera connected to the 8500's PictBridge port.

We do appreciate the 8500's touch interface and the well-designed menu system. It could still be frustrating to use at times, though, given that in our touch screen often failed to acknowledge contact with a button, register a double-press or even activate an unintended and adjacent button.

The printer's 19.5- x 18.9-inch footprint is compact enough to fit in a tight office space. Anyone caught sitting next to or near the 8500 Wireless ought distracted by the noise—the printer goes about its business emitting relatively hushed tones, and it's one of the quietest inkjets we've ever used.

### Connectivity and Software

If you forgo the 8500 Wireless AIO's direct USB interface, you can connect it to your network via Ethernet or Wi-Fi (a lighted indicator on the front of t you which network link is in use). We didn't have any trouble connecting our unit to a WPA2-encrypted WLAN. Bluetooth connectivity isn't standard, available as an option.

HP's bundled Solution Center software for Windows Vista and XP provides access to the configuration features of a network-connected 8500 Wireless software's also available for Mac OS X.) We're pleasantly surprised that the installation process isn't nearly as interminable as it once was, at least on Windows. With previous HP business inkjets we've used, you could practically read a novel—maybe even write one—waiting for the bundled software to install.

The 8500 Wireless AIO's also has an embedded Web server, which you can take advantage of by pointing a browser to the printer's IP address. You can't execute print/fax/scan tasks via the browser, but you can view and modify most of the configuration options this way.

### Print Speed and Quality

The 8500 Wireless AIO promises laser-quality output as fast as 15 pages per minute for black and 11 ppm for color. In high-speed draft mode, it's 35 and 34 ppm, respectively. Not

surprisingly, the 8500 Wireless AIO wasn't quite that fast in our stopwatch-based tests, but it still managed to spit out our test documents with reasonable alacrity, especially in draft mode.

The printer produced 24 ppm of text in draft mode, though it managed only six in best-quality mode. Draft-mode output is clear and easily readable, if not especially dark or sharp. In best-quality mode, the 8500 Wireless AIO's text quality is bold and crisp, and in our estimation, very laser-like. (We used standard multi-purpose paper).

**The feature-laden HP Officejet Pro 8500 Wireles**

**Digital Document Management**

A printer's primary function is to convert digital material into printed form, and just about any printer will help you churn out countless reams of printed (this one's duty cycle is a hefty 15,000 pages per month). But HP uses the 8500 Wireless AIO's network connectivity in ways that can not only imprc office productivity, but can also cut down on paper consumption and needless printing.

For example, the 8500 Wireless AIO's Digital Fax feature can automatically store incoming faxes in a network folder or forward them to a particular e- (There's also a 100-entry junk fax blocker list.)

With the 8500 Wireless AIO's Direct Digital Filing feature, you can walk up to the printer, press a few buttons to scan a document or photo (at 2400 x resolution) and then save it to a network folder or have it delivered to an e-mail recipient. The 8500 Wireless AIO can store up to 10 e-mail addresses a network locations.

The Direct Digital Filing Feature requires that you save a set of account credentials to the printer for network access, and since it doesn't support Act it can't grant or deny folder access to specific users. You can, however, assign a PIN code to each network folder or e-mail address to prevent unauth from scanning documents to them.

It's worth noting that there are two other products in the HP's 8500 printer line. Spending another hundred bucks on the 8500 Wireless AIO "Premier" you the same printer but a second 250-sheet tray, an extra set of color ink cartridges and a paper sampler kit. Conversely, the lower-end ($299) 8500 wireless networking and Direct Digital Filing features and makes do with a 35-sheet ADF and a smaller and non-touch-screen LCD.

All in all, the HP Officejet Pro 8500 Wireless All-in-One hits the right notes in terms of quality, speed, paper handling and network connectivity, and it' choice for small offices that need a versatile and heavy-duty workgroup printer.

*Joe Moran spent six years as an editor and analyst with Ziff-Davis Publishing and several more as a freelance product reviewer. He's also worked in t public relations and as a corporate IT manager, and he's currently principal of Neighborhood Techs, a technology service firm in Naples, Fla. He hold industry certifications, including Microsoft Certified Systems Engineer (MCSE) and Cisco Certified Network Associate (CCNA).*

Do you have a comment or question about this article or other small business topics in general? Speak out in the **SmallBusinessComputing.com** the discussion today!

Tech News & Trends | How-to Guides | Product Reviews | eBook Library | Free Resources | Vendor Finder

Sitemap | Contact Us

ITBUSINESSEDGE

Copyright 2012 QuinStreet Inc. All Rights Reserved.

Terms of Service | Licensing & Permissions | Privacy Policy
About the IT Business Edge Network | Advertise

# EXHIBIT F



COMPUTER SHOPPER

NO-NONSENSE BUYING ADVICE SINCE 1979

Search for Laptops, Printers, Tablet PCs, Desktop PCs, or Components...

DESKTOPS | LAPTOPS | TABLETS | APPLE | PRINTERS | COMPONENTS | STORAGE

ALL PRINTERS | INKJET | LASER | MULTIFUNCTION | PHOTO | BUSINESS | BEST PRICES | REVIEWS

Home > Printers > Reviews > HP OfficeJet Pro 8500

Fol

# HP OfficeJet Pro 8500 Review and Ratings

Like

Priced from $10,857.18

EDITORS' RATING: 
EDITORS' CHOICE

SHOPPER'S CHOICE
2010

BUSINESS

*Reviewer*
*Sally Wiener Grotta and Daniel Grotta*

Our Verdict: This all-in-one offers trouble-free operation, excellent ease of use, and low media cost for small workgroups. Read More...

Manufacturer's Price: $399.99

| Shoplet.com | $10,857.18 | SEE IT |
|---|---|---|

See all prices from $10,857.18

### What We Liked...

- Easy to use
- Wi-Fi, Ethernet, and USB connectivity
- Automatic duplexing
- Inexpensive ownership costs
- Excellent touch-screen control panel

### What We Didn't...

- Pricey
- Tedious setup and installation procedure
- Bright but inaccurate color reproduction
- Boxy, stodgy design

EP
EXCEED
TOS
Leading

## HP OfficeJet Pro 8500 Review

*By Sally Wiener Grotta and Daniel Grotta, reviewed March 4, 2009*

Share This Review:

Once you get over the sticker shock, Hewlett Packard's $399.99 OfficeJet Pro 8500 multifunction printer may seem like a good deal. In addition to providing good print and excellent scanning quality, moderate speed, and trouble-free operation, the easy-to-use OfficeJet Pro 8500 is one of the least-expensive color-inkjet all-in-ones to operate. It also comes

Mos

M

with a host of software and Web-based services that further extend its usefulness.

The large, boxy, black-and-gray OfficeJet Pro 8500 has a stodgy all-business look that won't win any beauty contests, especially compared with other recent inkjet MFPs, such as the Epson Artisan 800. But under the hood are various refinements that make using the OfficeJet Pro 8500 a pleasure to use. For starters, the scan bed is large enough to accommodate 8.5x14-inch paper without having to double-scan and stitch legal-size documents. The 250-sheet paper tray is so accessible that a separate slot or feeder isn't necessary. If you need a higher page capacity, the 8500 can accommodate a second 250-sheet tray ($79.99). What's more, the receiver tray on top is angled upward, with an adjustable pull-out stop, so ejected pages can't slough off and drift away. It also features a built-in duplexer, a 35-sheet ADF, and an e-mail function that you can operate without a computer.

The 8500's touch-screen control panel is one of the best we've used. It's large (3.5 inches), as easy to read as a GPS, and so intuitive that you really don't have to study the user manual to understand and use all its functions. To the right of the touch screen are lights indicating when the network or wireless interface is available. The function buttons are intelligently positioned and well marked. On the right side of the printer are memory-card and USB slots for direct printing, as well as for saving scans, photos, and files.

Be prepared to spend between 45 minutes and an hour setting up the printer and installing software. First, you must attach the receiver tray and a plastic cover for the duplexer. Then, you insert the two printheads (one black and yellow, the other cyan and magenta) followed by cyan, magenta, yellow, and black ink cartridges. Each is designed to fit in only the correct slot, but lining up and pushing them in correctly can be tricky.

The cartridges have a larger-capacity reservoir of ink than most comparable MFPs, which makes them significantly more economical than comparable inkjet AIOs. (Plus, you don't need to replace them as often.) High-capacity color cartridges ($25.99 each) are rated for approximately 1,400 pages, while the extra-capacity black cartridge ($35.99) is rated for about 2,200 pages. That equates to about 1.6 cents per page for text, and 7 cents for color in ink costs, plus another two-tenths of a cent for printhead wear ($59.99 each), which must be replaced after approximately 40,500 pages. In addition, HP says that the Energy Star-rated 8500 uses 50 percent less electricity than a laser printer.

Once installed, the printer requires 20 to 25 minutes to align and calibrate the printheads automatically. And since HP provides a vast array of programs, templates, and utilities, software installation is also time-consuming. The only problem we had was when we followed the setup booklet, which said that the firewall shouldn't be turned off while installing the 8500 as a network or wireless device. Our installation failed twice until we consulted the 291-page user manual, which, contrary to the setup booklet, told us to turn off the firewall, after which it performed flawlessly.

1. H
2. D
3. Sa
4. Ca
5. H

How
iPad/
How
Comp
All In
Whicl
comp
What

Except for a couple of cryptic messages and accompanying brief delays (waiting for a color photo to dry, cleaning the printhead after we switched from text to photo printing), operation was flawless. We experienced no paper jams, misfeeds, or other problems. HP's interface is exceptionally simple to use, especially since the settings for various types of originals and paper types automatically program in the appropriate parameters.

Printing text in normal and draft mode is relatively fast, edging out Epson's WorkForce 600 and Kodak's ESP 9. Our test text page scanned in 14.1 seconds, and a 4x6-inch photo in 1 minute and 9 seconds. Printing 10 pages of text and graphics in draft mode took only 36 seconds, though quality text mode slowed the printer down to 4:20 (just a hair faster than Epson's WorkForce 600). Our 20-page text-only document printed in a fast 1:03 in draft mode, though it took 5:29 in quality mode. A 4x6-inch photo was slower than both the Epson and Kodak ESP9 printers, taking 1:09. Generally, we found the 8500 (using quality mode) to be slower than the Epson but better than the Kodak. Printing color on plain paper is also faster than the Epson and Kodak models but much slower than either when generating photos.

Text quality is very good, with dark and generally well-formed characters, though it isn't as crisp and clean as that of some competing AIOs. Though vibrant, colors are punched-up and inaccurate; they're more suited for business graphics than photos. Scanning and copying are simple, fast, and trouble-free. Our test scan to Microsoft Word performed flawlessly. Especially useful is the e-mail function, which wirelessly transmits scans to any preselected address.

Where the OfficeJet Pro 8500 excels is in its value-added extras. HP provides a comprehensive package of free software and Web-based services designed to assist businesses in generating, storing, transmitting, and managing documents. The software includes a utility for clipping, collecting, and printing parts of Web pages; an activity center with scores of business and personal projects and templates; and an online document center that aids scanning, annotating, faxing, and filing of all sorts of documents.

The OfficeJet Pro 8500 is a no-nonsense, all-business device that will give excellent service to small-office and home-office workgroups. The initial purchase price is high, but low operating costs could make the 8500 ultimately cheaper than the competition.

### Related Reading

See All Reviews of Hewlett-Packard Products
Kodak ESP 9 Review
Epson WorkForce 600 Review

### Specifications

---

## Comments

Like

# EXHIBIT G



# Our 2009 Editors' Choice Printers

**ARTICLE DATE** : December 16, 2009

**By M. David Stone**

Every so often, we have to redesign our Editors' Choice categories to better reflect the products we cover. Usually the changes are obvious enough so we can just make the change without mentioning it. When single-function printers were joined by multifunction printers (MFPs), aka all-in-ones (AIOs), for example, we simply added an MFP category for each relevant printer category and didn't need to explain why. Sometimes, however, the changes are more significant, and worth pointing out. This is one of those times.

When *PC Magazine* first started designating Editors' Choice printers, in the noisy era of daisywheels and dot matrix, we divided the categories primarily by technology and secondarily by price, speed, and the number of pages they were designed to churn through per month, all of which were pretty well correlated with each other.

When lasers and inkjets took over as the dominant technologies, MFPs were added to the mix. When networks became the norm in offices, we responded by creating single-function and multi-function categories with networked and personal variations for each, and then divided the printers by technology within each of those categories. We also added categories for special-purpose printers like label printers and dedicated photo printers.

These categories are becoming less and less useful. Today, even low-end printers aimed at home use can connect to a network, there is little distinction between a personal printer and a shared printer for a small office, and the characteristics of inkjet and laser printers are beginning to overlap—a trend that's going to get more and more obvious as each technology gets better at what the other has traditionally done best. The time has come, in short, to revamp our categories.

The key division between categories for general-purpose printers, then, is between office printers, home printers, and printers that can serve as home printers, SoHo (small office or home office) printers, or both. For each of those, we have separate categories for single-function and multifunction printers (MFPs or AIOs), and for office printers, we have separate categories for monochrome and color.

Home use demands a focus on photos and photocentric features as well as graphics. It may also include features like built-in options for printing graph paper and notebook paper. It doesn't need a high level of text quality. Office use in contrast doesn't need high-quality photo output, but it demands text quality that, at a minimum, is suitable for business correspondence. For MFPs, it also demands office-centric features, including an automatic document feeder (ADF) and, most often, a fax capability. There are also some printers—both single-function and multi-function—that can serve in a dual role for both home and home office printing.

For special-purpose printers, our categories remain unchanged: label printers, portable printers, dedicated photo printers (which literally can't be used for other purposes), near-dedicated photo printers (which can print typical office output, although no one would buy them for that), and photo-centric AIOs, which are effectively home photo labs that can scan and print high-quality photos from slides, film, and prints, as well as print from cameras and memory cards.

Note that the change in categories doesn't have any effect on which printers will earn an Editors' Choice designation. It just puts the choices in a different conceptual framework, and should make it easier to spot the right printer for your needs. If you know you want an MFP for both home and home office, for example, you can focus on the Editors' Choices in the dual-purpose categories, and ignore the ones that are just for home or just for the office.

Here is a list of the new primary Editors' Choice printer categories. General-Purpose Printers: Home Printers; Home AIOs; Home, SoHo, or Dual-Purpose Printers; Home, SoHo, or Dual-Purpose AIOs; Office Color Printers; Office Mono Printers; Office Color AIOs; Office Mono AIOs. Special-Purpose Printers: Dedicated Photo Printers; Near-Dedicated Photo Printers; Photo-Centric AIOs; Portable Printers; and Label Printers. (These categories are sometimes further divided into subcategories to denote a particular focus such as office size or price range, as you'll see reflected in the product list below.)

Keep in mind too that just because a category is logically possible doesn't necessarily mean any printers will earn an Editors' Choice for that category. There are always categories that simply don't have any candidates that are good enough to qualify. Here's a list of printers that earned an Editors' Choice designation in 2009, with their new categories identified.

Brother HL-5340D
*$200 street*
●●●●◐ EC
Office Mono Printer for SoHo or personal use. Fast speed, small size, better than par graphics, and good paper handling (including a duplexer) make this mono laser a winner.

Brother MFC-8480DN
*$400 street*
●●●●○ EC
Office Mono AIO for a small office. The monochrome-laser based MFC-8480DN delivers fast speed, high quality monochrome output and all the MFP functions a small office needs.

Canon Color ImageClass MF8350Cdn
*$699 direct*
●●●●○ EC
Office Color AIO/MFP for a micro or small office or workgroup. Canon's color laser-based MFP delivers impressive speed and output quality along with the ability print, scan, and fax over a network as well as work as a standalone copier and fax machine.

Epson PictureMate Charm
*$149.99 direct*
●●●●◐ EC
Dedicated Photo Printer. An inkjet based photo printer, the charm boasts long lived, high quality 4- by 6-inch photo output at a low cost per photo.

Epson Stylus NX515
*$129.99 direct*
●●●●○ EC
Home, SoHo, or Dual-Purpose AIO/MFP, with an emphasis on home use. Although this fast ink jet offers high quality output for text as well as photos, its features peg it primarily for the home, with some potential for light duty office use.

Epson WorkForce 310 All-In-One
*$129.99 direct*
●●●●○ EC
Office Color AIO/MFP for a micro or home office. Fast for the price, the 310 prints, scans, and faxes over a network and works as a standalone copier and fax machine, with a paper capacity suitable for light duty use.

HP Officejet 6000 Wireless Printer
*$119.99 direct*
●●●●○ EC
Home, SoHo, or Dual-Purpose Printer. This fast inkjet with high quality graphics and photos also offers a duplexer for 2-sided printing.

HP Officejet Pro 8500 Wireless All-in-One
*$399.99 direct*
●●●●○ EC
Home, SoHo, or Dual-Purpose AIO/MFP, with an emphasis on office use. The 8500's combination of speed and office-centric features make it a competitor to inexpensive color laser AIOs for the micro or home office. But its photo output quality is good enough to let it serve in the dual role of home and home office printer as well.

HP Photosmart Premium Fax All-in-One
*$299.99 direct*
●●●●○ EC
Home, SoHo, or Dual-Purpose AIO/MFP, for high end home- or light duty office-use. Packed with features for home and office, this ink jet is limited by its relatively low paper capacity to light duty office use.

Konica Minolta magicolor 1600W
*$140 street*

●●●●○ EC
Office Color Printer for SoHo and personal use. Small enough to fit comfortably on a desktop, with high quality text and vibrant color graphics, this color laser is a good fit as a personal printer in any size office.

Xerox Phaser 6280DN
*$649 direct*
●●●●○ EC
Office Color Printer for small offices or workgroups. The 6280DN color laser offers great looking output for text and graphics, reasonably fast speed, and ample paper handling.

Xerox Phaser 7500/DN
*$3299.99 direct*
●●●●◐ EC
Office Color Printer for tabloid or supertabloid size printing (11 by 17 inches and larger). For office users and, to a lesser extent, graphic artists, this color laser delivers top quality output on plain paper at up to 13- by 19-inches as well as banner size.

Copyright (c) 2012 Ziff Davis Inc. All Rights Reserved.

# EXHIBIT H



United States-English

» Contact HP or call 866-625-1176

Search:

Products for Business All of HP US

Products for business > Color Multifunction and All-in-One > Office Inkjet All-in-One Printers

# HP Officejet Pro 8500 All-in-One Printer series - A909 - Overview and Features

NEW!

» Products for Business

Shopping cart

Your cart is empty

» Products for business
» Color Multifunction and All-in-One

Solutions for
» Small & Medium Business
» Large Enterprise Business
» Government, Health & Education
» Graphic Arts

**Starting at: $ 299.99***

FREE SHIPPING through 01/31/10.

Related Links
» HP Support & Drivers

**Special offers:** Get $50 cash back when you purchase an HP Officejet Pro 8500 All-in-One Printer series.

Offer ends 12/31/09

ECOHIGHLIGHTS

Enlarge Image | Top rated products

**Product rating:**

13 of 16 (81%) customers recommend this product.

>> Read 16 reviews
>> Write a review

» Models | Overview | » Specifications | » Accessories, supplies & services

May 8, 2009
HP Officejet Pro 8500 Wireless All-in-One

**Overview**

Get professional results and save up to 50% on cost per color page compared to lasers[1]. Add these energy-saving HP All-in-Ones to your network and replace multiple office machines. Plus, get vivid long-lasting documents and two-sided printing.

**Features**

**Save up to 50% per color page vs. lasers[1]**
- Print professional color documents for up to 50% less cost per page than lasers with HP Officejet inks[1]
- Save up to $500 per year on professional color printing costs compared to lasers[10]
- Print water-resistant documents on plain paper using pigment inks designed for business[4]
- Save money by replacing only the individual pigment ink cartridge that runs out

**Cut energy use and build your bottom line**
- This HP Officejet Pro All-in-One consumes up to 50% less energy than color laser all-in-ones[2]
- Save money and energy with this efficient ENERGY STAR® qualified all-in-one
- Reduce energy use by as much as 40% when using this HP All-in-One instead of 4 separate products
- Reduce paper use and costs by up to 50% with two-sided printing

**All-around top performer**

- Speeds equivalent to a laser printer with up to 15 ppm black, 11 ppm color[5][6]
- Maximum speeds of 35 ppm black, 34 ppm color[6]
- Easily share using wired Ethernet or optional wireless 802.11g networking[9]
- Print up to 500 sheets without reloading thanks to an optional second 250-sheet paper tray

**Eco Highlights**

- Reduce energy use up to 50% with this HP Officejet Pro All-In-One[eco01]
- Save paper with automatic two-sided printing
- Save paper by viewing and storing faxes electronically

[eco01]Majority of color laser AiOs < $600, June 2008, OJ Pro with highest-capacity cartridges. Energy use based on HP testing using the ENERGY STAR® program's TEC test method criteria.

**ENERGY STAR® Qualified**

**Please recycle your computer hardware and printing supplies. Find out how at our website.**

- http://www.hp.com/ecosolutions

*Footnotes:*

[1]Majority of color laser AiOs < $600, June 2008, OJ Pro with highest-capacity cartridges. For details http://www.hp.com/go/officejet
[2]Majority of color laser AiOs < $600, June 2008, energy use based on HP testing using the ENERGY STAR(R) program's TEC test method criteria. For details http://www.hp.com/go/officejet
[3]Not included on all models. Please purchase separately
[4]Based on HP internal testing, using papers with the ColorLok logo
[5]Based on ppm measured using FDIS ISO/IEC 24734. Standard applies to inkjet and laser products and excludes first set of test documents
[6]After first page. For details, see http://www.hp.com/go/inkjetprinter
[8]Memory card slots support Secure Digital/Multimedia Card, CompactFlash, Memory Stick, Memory Stick Duo, xD-Picture Card
[9]Wireless networking available on the HP Officejet Pro 8500 Wireless and 8500 Premier only. Wireless performance is dependent upon physical environment and distance from access point
[10]Majority of color laser printers less than $300 and color laser all-in-ones less than $600, June 2008, OJ Pro with highest capacity cartridges. Color page volume/coverage estimates for businesses with 5 to 19 employees from 2/09 InfoTrends report. For details, see http://www.hp.com/go/officejet. Based on published yields and continuous printing, see http://www.hp.com/go/learnaboutsupplies. Results may vary.

**At a glance**

| Model | Model differences | Buy |
|---|---|---|
| HP Officejet Pro 8500 All-in-One Printer - A909a (CB022A) NEW! | Base printer | **Price: $299.99*** Add to Cart » » Contract Pricing » Find a reseller |
| HP Officejet Pro 8500 Wireless All-in-One Printer - A909g (CB023A) NEW! | Base printer, plus: wireless networking, legal-size scanner glass, touchscreen and direct digital filing | **Price: $399.99*** As low as $12/mo.** Add to Cart » » Contract Pricing » Find a reseller |
| HP Officejet Pro 8500 Premier All-in-One Printer - A909n (CB025A) NEW! | Base printer, plus: wireless networking, two-sided printing, legal-size scanner glass, touchscreen, Direct Digital Filing, additional 250-sheet paper tray, second set of color ink cartridges and creative software. *HP Digital Solutions are available with HP Officejet Pro products that are connected to a network—either | **Price: $499.99*** As low as $15/mo.** Add to Cart » » Contract Pricing » Find a reseller |

through a wireless or wired (Ethernet) connection. However, these solutions are not available for products connected to a computer with a USB cable.

**Product Reviews** Review This Product Choose a sort order 

Overall: ★★★★★
Texas-kv

**Great product!** Date: November 21, 2009

"This printer does all it advertises. The installation was a breeze - even the wireless set up. Works great with my XP pro desktop and my Vista laptop. I've used all the features and cannot be more pleased with this printer."

2 of 3 people found this review helpful.

Was this review helpful to you? Yes No (Report Inappropriate Review)

Share this Review:

Overall: ★★★★☆
Coniver

**Great Printer** Date: October 15, 2009

"Having worked with other printers preceeding this model, all have been ok. This one now being available has been great to work with. The digital faxing was a nice improvement. Didn't even know that it was available, when ordering the printer."

1 of 3 people found this review helpful.

Was this review helpful to you? Yes No (Report Inappropriate Review)

Share this Review:

Overall: ★★★★★
kt

**crystal clear printing!** Date: October 12, 2009

"Printer gives excellent quality for both copying documents and receiving fax's. Initializing and aligning times were a little long but worth the wait."

2 of 2 people found this review helpful.

Was this review helpful to you? Yes No (Report Inappropriate Review)

Share this Review:

Overall: ★★★★★
Foxy1

**GREAT PRINTER!** Date: October 8, 2009

"I just purchased this HP Officejet Pro 8500 (All-In-One) printer and am extremely happy with it. I did hire a professional to install the printer as I had a mountain of trouble with an earlier printer installation that resulted in it not ever working.

It was well worth the cost to have this printer installed by a professional and there were no gliches. Even if this printer might be easy to install, problems in the set-up can occur during installation due to not slecting the right choice when different windows pop up during the installation. My printer is correctly installed and works properly on my network.

I am now busy printing a large project (duplex printing) that is

a breeze. Duplex printing is a bit on the slow side but is turning out really great.

I love the ink cartridge indicator that shows in the window pane just how much ink is left (can also be view by opening the HP Solution Center). Having separate color cartridges is a big cost savings as you only replace the color that is out.

This printer is the tops! So glad I bought it and I highly recommend it for office or home use."

11 of 11 people found this review helpful.

Was this review helpful to you? Yes No (Report Inappropriate Review)

Share this Review:

Overall: ★★★★★

vrs

**Excellent Printer** Date: October 3, 2009

"Having been a Director of IT departments and a Systems Engineer I have reviewed many printers over the years.

Years ago I made HP printers from, small departments' installations to large format printers the standard in companies I supported.

The Officejet Pro 8500 is replacing my HP Officejet G85, which I have had in production for more years than I can remember, in my business. And as an aside the G85 is still running great and will remain in production.

The Pro 8500 has all the features that I was seeking for my small business, from built in Ethernet to the vast paper handling capabilities.

Setup was an absolute breeze; HP's setup sheet has the printer ready to plug in to the network router within minutes. HP certainly has setup down!

The software installation ran just as smoothly and configuring the networking was straight forward. I have installed so many HP's it was second nature setting up the IP, gateway and subnet through the LCD panel. The networking portion was flawless.

I like the new software management tools, which have matured over the G85 quite nicely, with excellent built in features.

The energy saving sleep mode is great and saves on electricity and the printer comes out of sleep mode on demand. The 8500 does take longer than the G85 to power up from a cold boot as the printer performs its advanced diagnostics.

I am very happy with the ink system, having separate ink cartridges, which translates to savings on ink cost. And, also like the pigment based ink which will resist fading over time.

My first high color business flyers and fax applications ran spot on.

Great design, easy straight forward installation and rock solid performance! An excellent all round printer for home, small business or departmental applications.

I have had a long run with my G85, which is like an old trusted friend, but the Officejet Pro 8500 is an excellent replacement which has greatly enhanced our production speed and capabilities.

Good job HP."

15 of 15 people found this review helpful

Was this review helpful to you? Yes No (Report Inappropriate Review)

Share this Review:

1 2 3 4 next >>

Windows Vista is either a U.S. registered trademark or trademark in the United States and/or other countries.

*Except where noted, all prices are estimated U.S HP prices. Actual prices from other locations or websites may vary.

** Leasing information, where displayed, is for a 48-month lease. Call 1-800-888-5858 to talk to a representative about leasing options to meet your needs. Shipping and tax not included. Details

Product rating disclaimer: Reviews dated from 9/1/09 – 10/15/09 may have been part of a sweepstakes submission

*** PC Mag Green Tech Award Logo is a registered trademark of Ziff Davis Publishing Holdings Inc. Used under license.

Printable version

Privacy statement | Using this site means you accept its terms | Feedback to webmaster

© 2009 Hewlett-Packard Development Company, L.P.

# EXHIBIT I

How HP measures inkjet printing speed Page 1 of 3

United States-English

» HP Home | » Products & Services | » Support & Drivers | » Solutions | » How to Buy

Search:

» Contact HP

Home & Home office All of HP US

Learn about how HP measures printer speed > How HP measures inkjet printing speed

# How HP measures inkjet printing speed

» Home & Home Office

» Everyday Printing
» Digital Photography
» Everyday Computing
» Digital Entertainment
» Activity Center
» Free online classes

Browse & Buy
» Home & Home Office Store
» Rebate Center

Product Support
» Support & troubleshooting
» Software & Drivers
» Warranties & services
» Register your product

Learn more about HP printers to help you choose the one that's right for you

» HP Deskjet
» HP Laserjet
» HP Officejet Pro and HP Officejet
» HP Photosmart
» HP Scanjet

HP inkjet print speed specifications cover various types of printing. For example, 4 x 6-inch color photo print speed tests are very different from 8.5 x 11-inch black text document tests. Below are explanations of various types of printing and the speed testing methodology for each.

**FastDraft Mode:**

**Plain Paper Text:**

Testing is conducted with the printer in draft or fastdraft mode (depending on the printer) and single-sided printing, unless otherwise specified. Text tests are conducted using Microsoft Word and 8.5 x 11-inch plain paper. The average ink coverage of black and color text pages is approximately 4 percent of the printable area (excludes margins) of the suite of test pages.

- **Black Text, Color Text (up to PPM)**
  - Tests do not include or measure processing time, which will vary depending upon the computer configuration, image, software, and connectivity. Timing begins when the first sheet lands in the output tray and ends when the last sheet lands in the output tray.

**Photo:**

Testing is conducted with the printer in draft or fastdraft mode (depending on the printer), unless otherwise specified. Photo tests are conducted using the picture viewer software included with the Windows operating system and 4 x 6-inch HP Advanced Photo Paper, unless otherwise specified. Ink coverage is equal to 100 percent of the printable area of the photo paper in bordered mode, unless otherwise specified.

- **Seconds per Color Photo (as fast as)**
  - Tests do not include or measure processing time, which will vary depending upon the computer configuration, image, software, and connectivity. Timing begins when the first sheet lands in the output tray and ends when the last sheet lands in the output tray.

» Return to top

**Default and Best Mode:**

http://www.hp.com/products1/ISO/printing_speed/index.html 9/20/2011

**Plain Paper:**

Tests are conducted in default mode and single-sided printing, unless specified otherwise, using mixed content printed from Microsoft Word, Microsoft Excel, and Adobe Reader and 8.5 by 11-inch plain paper. The average ink coverage of the test pages is approximately 11 percent of the printable area (excludes margins). Black tests are conducted with the driver set to print black ink only. A warm up page is sent to the printer prior to starting testing.

- **Laser Comparable Speed and ISO/IEC 24734 (up to PPM)**
  - ISO/IEC 24734 is an international standard for measuring the productivity of both inkjet and laser printers in default mode. Tests do not include or measure processing time, which will vary depending upon the computer configuration, image, software, and connectivity. Timing excludes the first set of test documents. See ISO/IEC 24734 page for more information

- **Black and Color PPM (up to PPM)**
  - Tests do not include or measure processing time, which will vary depending upon the computer configuration, image, software, and connectivity. Timing excludes the first set of test documents.

- **Black and Color First Page Out (as fast as)**
  - Timing begins with pressing "OK" in the print dialog box and ends when the first sheet lands in the output tray. Tests do include and measure processing time.

» Return to top

**Photo:**

Tests are conducted in default mode, unless specified otherwise, using the picture viewer software included with the Windows operating system and 4 x 6-inch HP Advanced Photo Paper unless otherwise specified. Ink coverage is equal to 100 percent of the printable area of the photo paper in borderless mode, unless otherwise specified. A warm up page is sent to the printer prior to starting testing.

- **Seconds Per Color Photo (as fast as)**
  - Tests do not include or measure processing time, which will vary depending upon the computer configuration, image, software, and connectivity. Timing begins when the first sheet lands in the output tray and ends when the last sheet lands in the output tray.

» Return to top

**Test Conditions and Equipment Used:**

Printing speed tests are run in a normal office environment using the default driver included with the printer. Multiple tests are conducted to confirm the accuracy of the speed measurement. PPM may be rounded down. For example, if the test resulted in an average PPM of 27.4, HP may specify 27 PPM. Seconds may be rounded up. For example if a test resulted in an average of 14.5 seconds, HP may specify 15 seconds.

As of January 1, 2009, for Deskjet and Photosmart products, HP uses a notebook PC that includes an AMD Turion processor, 2.0 GHz, using Microsoft Vista and a USB connection, unless specified otherwise. As of January 1, 2009, for Officejet and Officejet Pro products, HP uses a desktop PC that includes an Intel Pentium 4 processor, 3.4 GHz, using Microsoft XP and a USB connection, unless specified otherwise. Print speed is affected by many factors, such as computer configuration, software, connectivity, and document complexity. If the printer is on a network, or trying to join for a network, print speed may vary. Print speed with other paper sizes may vary. If multiple input trays are available, all testing is done using the main input tray, unless otherwise specified. Speed tests for copying and printing directly from a memory card are tested in a similar manner as specified above. If required, a software interface is used to set the quality and/or the number of copies. Copy speed tests are done without the use of an automatic document feeder, unless otherwise specified.

» Return to top

Printable version

Privacy statement

Using this site means you accept its terms

© 2009 Hewlett-Packard Development Company, L.P.

# EXHIBIT J

WEISS & LURIE
Jordan L. Lurie (130013)
jlurie@weisslurie.com
Zev B. Zysman (176805)
zzysman@weisslurie.com
Joel E. Elkins (256020)
jelkins@weisslurie.com
10940 Wilshire Blvd, 23rd Floor
Los Angeles, CA 90024
Telephone: (310) 208-2800
Facsimile: (310) 209-2348

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHAIM KOWALSKY, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY and DOES 1 Through 100, inclusive,<br><br>Defendant. | Case No.: 10-CV-02176 LHK<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S RESPONSES TO FIRST SET OF INTERROGATORIES**<br><br>Judge: Hon. Lucy H. Koh |

7. Each objection stated in this Preliminary Statement and General Objections (the "GENERAL OBJECTIONS") is incorporated, by this reference, into each response set forth below. All responses are made subject to and without waiver of any of the foregoing objections.

## SPECIFIC RESPONSES AND OBJECTIONS

INTERROGATORY NO. 1:

Please list the brand, model number, and serial numbers of all printers YOU have purchased in the past 5 years for personal or business use, including the printer YOU allege in paragraph 39 of YOUR COMPLAINT that YOU "purchase[d] . . . from another manufacturer."

RESPONSE TO INTERROGATORY NO. 1:

Plaintiff incorporates by reference the General Objections set forth above. Plaintiff further objects to this Interrogatory on the grounds that it is vague and ambiguous, and seeks information neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving all stated objections, Plaintiff responds as follows: Aside from the HP 8500 printer which is the subject of this litigation, Plaintiff also purchased a Canon MX860, serial # 2008DJ4282.

INTERROGATORY NO. 2:

Please list the brand, model number, and all relevant specifications, including the operating system and software, for any computer with which YOU used the HP 8500 PRINTER.

RESPONSE TO INTERROGATORY NO. 2:

Plaintiff incorporates by reference the General Objections set forth above. Plaintiff further objects to this Interrogatory on the grounds that it is vague and ambiguous and overbroad as to time and scope. Subject to and without waiving all stated objections, Plaintiff responds as follows: Dell Inspiron 6000, with Windows XP operating system.

INTERROGATORY NO. 3:

Please state all facts supporting or undermining YOUR allegation, in paragraph 28 of YOUR COMPLAINT, that "HP either knew that [the] speed specifications [for the HP 8500

PRINTER] could not reasonably be obtained or else failed to adequately test the Printers to ensure that the specifications published by Defendant were true and correct." The response to this Interrogatory should identify, as specifically as possible, which "speed specifications" YOU allege "could not reasonably be obtained," including the precise language of the specification, and where such "speed specifications" were advertised, marketed, or otherwise represented by HP.

RESPONSE TO INTERROGATORY NO. 3:

Plaintiff incorporates by reference the General Objections set forth above. Plaintiff further objects to this Interrogatory on the grounds that it is compound, vague and ambiguous, overbroad, unduly burdensome, and seeks documents protected by the attorney-client privilege and attorney work product doctrine and documents which are in Defendant's, and not Plaintiff's, possession, custody or control. Plaintiff further objects that this contention Interrogatory is premature as discovery is still continuing in this case, and Plaintiff reserves the right to supplement this response when further information becomes available. Subject to and without waiving all stated objections, Plaintiff responds as follows:

HP made, at a minimum, the following claims on its website: http://h71016.www7.hp.com/html/pdfs/OJ_Pro_8500.pdf:

> "[the 8500 Printer has] Laser Quality Speed (fn2: Based on ppm measured using FDIS ISO.IEC 24734. Standard applies to inkjet and laser products and excludes first set of test documents): Up to 15 ppm black, Up to 11 ppm color, Maximum 35 ppm black and 34 ppm color (fn3: After first page. For details, see www.hp.com/go/injetprinter)," "Speeds equivalent to a laser printer with up to 15 ppm black, 11 ppm color (same fns 2, 3), Maximum speeds of 35 ppm black, 34 ppm color (same fn3)"

http://h10010.www1.hp.com/wwpc/us/en/sm/WF05a/18972-18972-238444-12019-3328086-3752454.html:

> "Speeds equivalent to a laser printer with up to 15 ppm black, 11 ppm color [fn5: Based on ppm measured using FDIS ISO/IEC 24734. Standard applies to

inkjet and laser products and excludes first set of test documents] [fn6: After first page. For details, see http://www.hp.com/go/inkjetprinter] Maximum speeds of 35 ppm black, 34 ppm color [same fn6]"

http://h10010.www1.hp.com/wwpc/ca/en/sm/WF06b/18972-18972-238444-3328086-3328086-3752454-3752457.html

Print Speed (Black, Draft Quality, A4): Up to 35 ppm

Print Speed (Colour, Draft Quality, A4): Up to 34 ppm

Print Speed (Black, Normal Quality, A4): Up to 19 ppm

Print Speed (Colour, Normal Quality, A4): Up to 19 ppm

Print speed black (laser comparable): Up to 15 ppm

* * *

Paper Handling Standard/Input: 250-sheet input tray, 35-sheet Automatic Document Feeder (ADF)

Print speed color (laser comparable): Up to 11 ppm

http://h10010.www1.hp.com/wwpc/ca/en/sm/WF06a/18972-18972-238444-3328086-3328086-3752454.html

Print Speed (Black, Draft Quality, A4): Up to 35 ppm

Print Speed (Colour, Draft Quality, A4): Up to 34 ppm

Print Speed (Black, Normal Quality, A4): Up to 19 ppm

Print Speed (Colour, Normal Quality, A4): Up to 19 ppm

Print speed black (laser comparable): Up to 15 ppm

Print speed color (laser comparable): Up to 11 ppm

* * *

Paper Handling Standard/Input: 8500: 250-sheet input tray, 35-sheet Automatic Document Feeder (ADF); 8500 Wireless: 250-sheet input tray, 50-sheet Automatic Document Feeder (ADF); 8500 Premier: 250-sheet input tray; 250-sheet second paper tray; 50-sheet automatic document feeder

Dated: September 27, 2011

Jordan L. Lurie
Zev B. Zysman
Joel E. Elkins
WEISS & LURIE

By: ______________________
Joel E. Elkins

10940 Wilshire Blvd., 23rd Floor
Los Angeles, CA 90024
Telephone: (310) 208-2800
Facsimile: (310) 209-2348

*Attorneys for Plaintiff and the Proposed Class*

10

PLF'S RESPS TO FIRST SET OF INTERROGATORIES Case No. 10-CV-02176 JF

# EXHIBIT K

Canada-English

» HP Home | » Products & Services | » Support & Drivers | » Solutions | » How to Buy

» Contact HP | Buy online or Call 1-888-352-1085 | search: ◉ Products and Services ○ All of HP Canada

Inkjet All-in-One Printers

# HP Officejet Pro 8500 All-In-One Printer series - A909 - specifications and warranty

Starting at: $ 217.99*

» Data sheets / Documents
» Technical Support

Customer review:
★★★
248 out of 423 (59%) customers recommend this product.
>> Read 423 reviews
>> Write a review

Enlarge Image | Product demo

» Products and Services
Recently browsed
» HP Officejet Pro ...
» Clear history
» Inkjet All-In-One Printers
» Desktops
» Workstations
» Notebooks & Tablet PCs
» Printing & Multifunction
» Handheld Devices
» Monitors & Projectors
» Digital Photography
» Fax, Copiers & Scanners
» Entertainment
» Storage
» Servers
» Supplies & Accessories
» Networking
» How to buy
» Support & Drivers

Please rate this page
bad good

May 8, 2009
HP Officejet Pro 8500 Wireless All-in-One

» Models | » Overview | Specifications | » Accessories, supplies & services

| Functions | |
|---|---|
| Functions | Print, copy, scan, fax |
| AIO multitasking supported | Yes |
| **Printing specifications** | |
| Print Speed (Black, Draft Quality, A4) | Up to 35 ppm |
| Print Speed (Colour, Draft Quality, A4) | Up to 34 ppm |
| Print Speed (Black, Normal Quality, A4) | Up to 19 ppm |
| Print Speed (Colour, Normal Quality, A4) | Up to 19 ppm |
| Print speed black (laser comparable) | Up to 15 ppm |
| Print speed color (laser comparable) | Up to 11 ppm |
| Print Speed Footnote | Print speeds measured either after first page or after first set of ISO test pages. For details see http://www.hp.com/go/ojnotes |
| First page out black (A4, ready) | As fast as 15 sec |
| First page out colour (A4, ready) | As fast as 15 sec |
| pages per month | Up to 15,000 pages |
| Recommended monthly page volume | 250 to 1250 |
| Print technology | HP Thermal Inkjet |
| Print Quality (Black, Best Quality) | Up to 1200 x 1200 dpi |
| Print Quality (Colour, Best Quality) | Up to 4800 x 1200 dpi |
| Number of print cartridges | 4 (1 each black, cyan, magenta, yellow, optional XL) |
| **Paper handling** | |
| Paper Handling Optional/Input | Optional second 250-sheet input tray |
| Paper Handling Optional/Output | None |
| Paper Handling Standard/Input | 8500: 250-sheet input tray, 35-sheet Automatic Document Feeder (ADF)<br>8500 Wireless: 250-sheet input tray, 50-sheet Automatic Document Feeder (ADF)<br>8500 Premier: 250-sheet input tray; 250-sheet second paper tray; 50-sheet automatic document feeder |
| Paper Handling Standard/Output | 150-sheet output tray |
| Maximum input capacity (envelopes) | Up to 20 |
| Envelope feeder | No |
| Duplex Print Options | Automatic (standard) |
| Finished output handling | 8500 Wireless: sheet feed<br>8500 / 8500 Premier: Sheetfed |
| Standard Media Sizes | A4 (210 x 297 mm), A5 (148 x 210 mm), A6 (105 x 148 mm), B4 (250 x 353 mm), B5 (176 x 250 mm), B6 (125 x 176 mm), C5 (162 x 229 mm), C6 (114 x 162 mm), 100 x 150 mm |

CK 61

| | |
|---|---|
| Custom Media Sizes | 76 x 127 to 216 x 356 mm |
| Media Types supported | Paper (brochure, inkjet, plain), photo paper, envelopes, cards (index), transparencies |
| **Additional specifications** | |
| Processor speed | 384 MHz |
| Standard memory | 8500 Wireless / 8500 Premier: 128 MB<br>8500: 64 MB |
| Maximum memory | 8500 Wireless / 8500 Premier: 128 MB<br>8500: 64 MB |
| Standard Printer Languages | HP PCL 3 GUI |
| **Scanner specifications** | |
| scan type | Flatbed, ADF |
| Optical Scanning Resolution | Up to 4800 dpi |
| Bit Depth | 48-bit |
| Maximum Scanning Size | 8500 Premier: 216.9 x 355.6 mm<br>8500: 216 x 297 mm<br>8500 Wireless: 216 x 356 mm |
| Scan size maximum (ADF) | 216 x 356 mm |
| **Digital Sender Specifications** | |
| Digital sending standard features | 8500: No<br>8500 Wireless / 8500 Premier: Scan to E-mail, Scan to Network Folder, Fax Archive to E-mail, Fax Archive to Network Folder |
| **Copier specifications** | |
| Maximum copy speed (black, A4) | Up to 35 cpm |
| Copy Resolution (Black Text) | Up to 1200 x 600 dpi |
| Copy Resolution (Colour Text and Graphics) | Up to 1200 x 600 dpi |
| Copier Resize | 25 to 400% |
| Maximum Number of Copies | Up to 99 |
| **Fax specifications** | |
| Fax Speed (A4) | 3 sec per page* |
| A4 Pages Held in Memory | Up to 125 pages |
| Fax Speed Footnote | *Based on standard ITU-T test image #1 at standard resolution. More complicated pages or higher resolution will take longer and use more memory. |
| fax resolution, best (dots per inch) | Up to 300 x 300 dpi |
| Maximum Speed Dialing Numbers | Up to 99 |
| Auto-Redialing | Yes |
| Fax Delayed Sending | Yes |
| Max Nr. of Broadcasting Locations | 48 locations |
| Junk barrier supported | Yes (requires Caller ID) |
| **Photo printing** | |
| Display | 8500 Wireless: 8.76 cm touch-screen LCD (colour graphics)<br>8500: LCD (2-line text)<br>8500 Premier: Touchscreen, 3.4-in LCD (color graphics) |
| Memory Card Compatibility | CompactFlash Type I and II, Memory Stick, Memory Stick Pro, Secure Digital (SD), High Capacity Secure Digital (SDHC), MultiMediaCard (MMC), xD-Picture Card, Memory Stick Duo, Memory Stick Pro Duo, Memory Stick Micro (adapter not included, purchase separately); Reduced-Size MultiMediaCard RS-MMC/MMC mobile, MMCmicro, miniSD, microSD (adapter not included, purchase separately) |
| Borderless printing | Yes (up to 216 x 297 mm) |
| **Connectivity** | |
| Standard connectivity | 8500 Premier: 1 USB 2.0; 1 Ethernet; 1 PictBridge; 1 RJ-11 fax; 1 Wireless 802.11 b/g<br>8500: USB 2.0, Ethernet, PictBridge, RJ-11 fax<br>8500 Wireless: USB 2.0, Ethernet, PictBridge, RJ-11 fax, Wireless 802.11 b/g (standard or optional) |
| Optional connectivity | Print only: HP Jetdirect en1700 IPv4/IPv6 Print Server J7988G, HP Jetdirect en3700 Fast Ethernet external Print Server for network-capable Hi-Speed USB 2.0 peripherals J7942G, HP Jetdirect ew2400 802.11g Wireless and Fast Ethernet External Print Server J7951G, HP bt500 Bluetooth USB 2.0 Wireless Adapter Q6273A, HP Wireless Printing Upgrade Kit Q6259A, HP 2101nw Wireless G Print Server Q6302A, Apple AirPort Express, Apple AirPort Extreme |
| Minimum system requirements for Macintosh | Mac OS X v 10.4, v 10.5, v 10.6; PowerPC G3, G4, G5, or Intel Core processor; 256 MB RAM; 500 MB hard disk space; CD-ROM; USB |
| Minimum System Requirements | Microsoft® Windows® 7 ready. For more information go to http://www.hp.com/go/Windows7. Windows® Vista®: 800 MHz 32-bit (x86) or 64-bit (x64) processor, 512 MB RAM, 425 MB hard disk space, Internet Explorer 7.0; Windows® XP x64: AMD Athlon® 64 or Opteron® processor, Intel Xeon or Pentium processor with Intel EM64T support; |

CK 62

| | |
|---|---|
| | Windows® XP 32-bit SP1: 512 MB RAM, 410 MB hard disk space; Windows® XP x64 SP1: 512 MB RAM, 290 MB hard disk space; Internet Explorer 6.0. Windows® 2000 (SP 4), XP SP 1 Home, Professional, x64 Editions: Intel Pentium II, Celeron processor; Windows® 2000 SP4: 128 MB RAM, 200 MB hard disk space; For all systems: CD-ROM and USB. For Windows® Vista Starter Edition, Windows® XP x64 Edition Service Pack 1, Windows® XP Starter Edition, and Windows® 2000 Service Pack 4 only the printer driver, scanner driver, and the Toolbox are available. |
| Compatible Operating Systems | Microsoft® Windows® 7 ready. For more information go to http://www.hp.com/go/windows7. Windows Vista® Ultimate (32-bit x86 and 64-bit), Windows Vista® Enterprise, Windows Vista® Business, Windows Vista® Home Premium, Windows Vista® Home Basic, Windows® XP Professional x64 (SP1), Windows® XP Professional (SP1) and Home (SP1) (32 and 64-bit), and Windows® 2000 (SP4). Windows® Foundation Server 2008, Windows® Small Business Server 2008 Standard Edition; Mac OS X v 10.4.11 or higher, Mac OS X v 10.5.x, Mac OS X v 10.6, Linux (see http://www.hplip.net) |
| Dimensions and Weight | |
| Dimensions (w x d x h) | **8500:** 494 x 479 x 299 mm (with duplexer installed)<br>**8500 Wireless:** 494 x 479 x 331 mm (with duplexer installed)<br>**8500 Premier:** 494 x 479 x 397 mm |
| Weight | **8500:** 11.9 kg<br>**8500 Wireless:** 12.7 kg<br>**8500 Premier:** 15.35 kg |
| Package weight | **8500 / 8500 Wireless:** 17.42 kg<br>**8500 Premier:** 22 kg |
| Power and operating requirements | |
| Power Requirements | Input voltage 100 to 240 VAC (+/- 10%), 50 to 60 Hz |
| Power consumption | 55 watts maximum, 16 watts (printing), 34 watts (copy), 0.4 watts maximum (off). Power measurement are based on Energy Star OM test procedure with 230 VAC, 50 Hz input. |
| Power consumption (active) | 16 watts (printing); 34 watts (copy) |
| Power Consumption, Standby | **8500:** 5.8 watts<br>**8500 Wireless / 8500 Premier:** 7.2 watts |
| Power consumption, powersave | **8500:** 5.1 watts<br>**8500 Wireless / 8500 Premier:** 6.7 watts |
| Power consumption (off) | 0.4 watts |
| Acoustic Pressure Emissions | **8500 Wireless:** 59 dB(A) (black-and-white normal printing), 62 dB(A) (black-and-white draft printing), 16 dB(A) (idle)<br>**8500:** 59 dB(A) (black-and-white normal printing), 63 dB(A) (black-and-white draft printing), 16 dB(A) (idle)<br>**8500 Premier:** 59 dB(A) (plain mono Normal mode), 62 dB(A) (plain mono Draft mode), 16 dB(A) (idle mode) |
| Acoustic Power Emissions | **8500:** 6.7 B(A) (black-and-white normal printing), 7.1 B(A) (black-and-white draft printing)<br>**8500 Wireless:** 6.8 B(A) (black-and-white normal printing), 7.1 B(A) (black-and-white draft printing)<br>**8500 Premier:** 6.8 B(A) (plain mono Normal mode), 7.1 B(A) (plain mono Draft mode) |
| Recommended Operating Temperature Range | 15 to 35° C |
| Energy Star certified | Yes |
| What's in the box | |
| What's in the box | **8500:** HP Officejet Pro 8500 All-in-One; HP Automatic Duplexer; HP 940 Black Officejet Ink Cartridge; HP 940 Introductory Ink Cartridges (Cyan, Magenta, Yellow); HP 940 Officejet Printheads (Black and Yellow, Magenta and Cyan); Ethernet cable; printer software and user's guide on CD-ROM; getting started guide; setup poster; power cable; phone cord<br>**8500 Premier:** HP Officejet Pro 8500 Premier All-in-One, automatic two-sided printing accessory, second 250-sheet paper tray; HP 940 black/yellow printhead; HP 940 Cyan/Magenta printhead; (1 each) HP 940 Black Officejet Ink Cartridge (~1000 pages); (2 each) HP 940 Cyan Officejet Ink Cartridge; (2 each) HP 940 Magenta Officejet Ink Cartridge; (2 each) HP 940 Yellow Officejet Ink Cartridges: composite yield (~900 pages). power supply; power cord; phone cord; setup poster; Getting Started Guide; CD-ROMs (for software, Windows and Mac printer drivers, and User's Guide). [Average based on ISO/IEC 24711 or HP testing methodology and continuous printing. Actual yield varies considerably based on content of printed pages and other factors. Some ink from included cartridge is used to start up the printer. For details see http://www.hp.com/go/learnaboutsupplies]<br>**8500 Wireless:** HP Officejet Pro 8500 Wireless All-in-One; HP Automatic Duplexer; HP 940 Black Officejet Ink Cartridge; HP 940 Introductory Ink Cartridges (Cyan, Magenta, Yellow); HP 940 Officejet Printheads (Black and Yellow, Magenta and Cyan); Ethernet cable; printer software and user's guide on CD-ROM; getting started guide; setup poster; power cable; phone cord |
| Cable included | No |
| Software included | HP Solution Center, HP Photosmart Essential, HP Smart Web Printing, HP Update, HP Document Manager, HP Product Assistant |
| Warranty | Standard one-year limited hardware warranty. Warranty and support options vary by product, country and local legal requirements. |
| Plus | Wired/wireless options, digital solutions |

**At a glance**

| Model | Model Difference | Buy |
|---|---|---|
| HP Officejet Pro 8500 All-in-One Printer - A909a (CB022A) | Professional colour for up to 50% less cpp and energy use than lasers, speeds equivalent to a | Price: $249.99* Buy» |

CK 63

# EXHIBIT L

**FDIS ISO/IEC 24734 Printing Productivity Report: Office Category**
**Full Detailed Test Report**
**HP Officejet Pro 8500 All-In-One series A909**

**Printing device and test settings**

| | |
|---|---|
| Test Start Date and Time | November 4, 2008 9:00:00 AM |
| Tester | Sim,Emchieng |
| Machine product number | A909 |
| Machine name/model | HP Officejet Pro 8500 All-In-One series |
| FW Version | DLM1FN0842AR |
| Colour or B&W | Colour printing device |
| Temperature and humidity | 24 degrees C, 47% |
| Voltage | 240 volts AC |
| Test End Date and Time | November 4, 2008 5:00:00 PM |

| | Item | Value |
|---|---|---|
| Modes and Settings | Driver version | 70.082.15.00 |
| | Media / Quality Setting | Default / Default |
| | Simplex B&W settings | Driver was set to "print in grayscale, black ink only" |
| | Duplex B&W settings | Driver was set to "print in grayscale, black ink only" |
| | Setting N set count | Application |
| | Collating function | Activated (application), except for Microsoft Office Excel 2003 |
| Paper Path | Paper sending direction | Default |
| | Paper size setting | Default |
| | Paper feeding | Standard cassette |
| | Paper exit | Standard exit tray |
| | Output orientation | Default (face up) |
| | Duplexing unit (Yes/No) | No |
| Paper | Paper Manufacturer | HP |
| | Weight | 20lb |
| | Size | 8.5 x 11" |
| | Paper type/name | HP Multipurpose Colorlok |

**Summary Report**

| | | FSOT (seconds) | ESAT (Ipm) |
|---|---|---|---|
| Color | Single Sided | 34 | 11.0 |
| | Two Sided | 81 | 3 |
| B&W | Single Sided | 28 | 15.0 |
| | Two Sided | 74 | 3 |

Notes: 1) Ipm = Images Per Minute and is equivalent to ppm or Pages Per Minute
2) For Simplex B&W results, Driver was set to "print in grayscale, black ink only"
3) For Simplex B&W results, Driver was set to "print in grayscale, black ink only"
4) For device and test settings see Full Detailed Report

**Full Report**

| | | Office Category Test Files | FSOT (sec) | EFTP (Ipm) 1 Set | EFTP (Ipm) 1 Set+ 30 seconds | EFTP (Ipm) 1 Set+ 4 Minutes | ESAT (Ipm) |
|---|---|---|---|---|---|---|---|
| Color | Single Sided | PDF | 35.52 | 6.59 | 7.99 | 8.88 | 8.94 |
| | | (# sets) | | | 3 | 11 | |
| | | Word | 26.59 | 9.25 | 13.73 | | 16.39 |
| | | (# sets) | | | 4 | | |
| | | Excel | 37.38 | 6.63 | 8.04 | | 9.00 |
| | | (# sets) | | | 3 | | |
| | | Average | 34 | 7 | 9 | 8 | 11.0 |
| | Two Sided | PDF | 64.53 | 2.64 | 2.87 | | 3.12 |
| | | (# sets) | | | 2 | | |
| | | Word | 73.77 | 3.23 | 3.44 | | 3.66 |
| | | (# sets) | | | 2 | | |
| | | Excel | 82.78 | 2.68 | 3.00 | | 3.13 |
| | | (# sets) | | | 2 | | |
| | | Average | 81 | 2 | 3 | | 3 |
| B&W | Single Sided | PDF | 28.84 | 8.75 | 11.73 | 9.52 | 14.14 |
| | | (# sets) | | | 3 | 16 | |
| | | Word | 24.45 | 9.20 | 15.08 | | 18.22 |
| | | (# sets) | | | 4 | | |
| | | Excel | 28.14 | 8.54 | 11.10 | | 13.06 |
| | | (# sets) | | | 3 | | |
| | | Average | 28 | 8 | 12 | 9 | 15.0 |
| | Two Sided | PDF | 74.63 | 3.22 | 3.39 | | 3.59 |
| | | (# sets) | | | 2 | | |
| | | Word | 71.23 | 3.38 | 3.59 | | 3.80 |
| | | (# sets) | | | 2 | | |
| | | Excel | 75.33 | 3.17 | 3.35 | | 3.56 |
| | | (# sets) | | | 2 | | |
| | | Average | 74 | 3 | 3 | | 3 |

Notes: 1) Ipm = Images Per Minute and is equivalent to ppm or Pages Per Minute
2) For Simplex B&W results, Driver was set to "print in grayscale, black ink only"
3) For Simplex B&W results, Driver was set to "print in grayscale, black ink only"
4) For device and test settings see Full Detailed Report

**Test system parameters**

| | Item | Value |
|---|---|---|
| Test System | Computer | HP Workstation xw4200 |
| | Processor | Intel® Pentium 4 Processor with Hyper-Threading, 3.40 GHz, 1 MB / 800 MHz FSB |
| | System Chip Set | Intel 925X Express |
| | System Board | Standard system devices, default system BIOS |
| | System Memory | 2 x 512 MB RAM, MTI Brand-DDR2 ,533, CL4, ECC |
| | Hard Drive subsystem | Maxtor 6Y0M080, 149GB |
| | Video subsystem | ATI Technologies INC, FireGL V3100, 128MB |
| | Optical Drive | Hewlett-Packard, DVD Writer 400C |
| | I/O subsystem | Microsoft Natural PS2 keyboard, PS2 compatible mouse |
| | USB subsystem | USB 2.0 |
| I/O | USB | USB 2.0 |
| Software | Operating System | Microsoft Windows Professional XP SP2 |
| | Printing Applications | Microsoft Office Word 2003 |
| | | Microsoft Office Excel 2003 |
| | | Adobe Reader 8.0 |
| | Test Files and location | Office Category files, hard drive |

# EXHIBIT M

**From:** Ferley, Dan (IPG Category Support) <dan.ferley@hp.com>
**Sent:** Wednesday, September 14, 2011 10:19 AM
**To:** White, Scott D (IWS Sales Response Team) <scott.white2@hp.com>
**Subject:** FW: ICWC Alert - Incident Number IM6058027
**Attach:** Alert Request Template CRM2007 V2 1 OJ 8500 FW update scott white 05202010.xlsm

---

**From:** Vogt, Ross A
**Sent:** Thursday, May 20, 2010 8:34 AM
**To:** White, Scott D (IPG Category Support)
**Cc:** Ferley, Dan (HP-Ft.Collins); ASTRO Business Administrators NAR
**Subject:** RE: ICWC Alert - Incident Number IM6058027

Hi Scott,

An ICWC agent alert has been published to fire from 5/20/10 to 6/21/10 per the attached. The message displayed to the agents is below.

OJ 8500 FW update message: "There is a new firmware version available on the web for this product that HP recommends all customers upgrade to. Agents should mention the new firmware to customers on all calls (not necessarily perform the firmware update on the call)"

Regards,

Ross
970-461-0816 home/office
970-898-7120 office
* This e-mail, and any files transmitted with it are HP Confidential and intended solely for the use of the individual or entity to whom it is addressed. If you have received this e-mail in error, please discard the message and notify me directly.

---

**From:** Vogt, Ross A
**Sent:** Tuesday, May 18, 2010 5:23 PM
**To:** White, Scott D (IPG Category Support)
**Cc:** Ferley, Dan (HP-Ft.Collins); ASTRO Business Administrators NAR
**Subject:** RE: ICWC Alert

Hi Scott,

To setup an ICWC agent alert please complete the Alert Request Template CRM2007 V2 1.xls file including the customer/product details and the alert message/recommendation. This template collects the alert requirements and allows our team to track and record the alerts requested. Also attached is Astro2 – Requesting ICWC Alerts document. This document describes the process for submitting a request for an ICWC Agent Alert.

Steps for requesting a new ICWC agent alert:

1. The critical pieces required in the template to setup the ICWC alert are the Value column and the Alert message/Alert recommendation columns. The remaining columns are related to ICWC config details and we'll complete those columns. Definitions of the data required in the template columns are:
   - Value – Customer/Contact/Product details used to trigger the alert (i.e. contact phone number, e-mail address, ICWC customer ID etc.)
   - Alert message - This is the text displayed to the agent - it should contain the key points of information (255 characters max)
   - Alert recommendation - This is the supporting text displayed when the mouse is placed on top of the alert (255 characters max)

   The Alert message and Alert recommendation can contain the same message or a different message

depending on the message you want displayed to the ICWC agents. These fields are limited to 255 characters each.

2. Attach the completed alert template to an HPSC ticket (section 2.2 of the attached) Astro2 – Requesting ICWC Alerts doc.

If you need assistance completing the Alert template please schedule a call with Arun Yegappan and I. During the meeting we will verify what is needed and answer any questions/concerns you have.

Regards,

Ross
970-461-0816 home/office
970-898-7120 office
* This e-mail, and any files transmitted with it are HP Confidential and intended solely for the use of the individual or entity to whom it is addressed. If you have received this e-mail in error, please discard the message and notify me directly.

-----Original Message-----
From: White, Scott D (IPG Category Support)
Sent: Tuesday, May 18, 2010 2:12 PM
To: Vogt, Ross A
Cc: Ferley, Dan (HP-Ft.Collins)
Subject: ICWC Alert

Hi Ross,

I was given your name as a contact for getting an ICWC alert posted. Please let me know if you are not the correct person or if I need to go another direction.

Here is a brief description of what we would like.

Alert/Issue: There is a new firmware version available on the web that HP recommends all customers upgrade to.
We would like agents to mention (not necessarily perform the upgrade on the call) the new firmware to all customers of these products regardless of issue.

Products:

HP Officejet Pro 8500 All-in-One Printer - A909a
HP Officejet Pro 8500 All-in-One Printer - A909b
HP Officejet Pro 8500 Premier All-in-One Printer - A909n
HP Officejet Pro 8500 Wireless All-in-One Printer - A909g

Link to an example of the firmware. This is for Win XP A909b
http://h10025.www1.hp.com/ewfrf/wc/softwareDownloadIndex?softwareitem=mp-82657-2&lc=en&dlc=en&cc=us&os=228&product=3964986&sw_lang=

Please let me know if you have any questions or need further clarification.

Thanks,

Scott White

IPG Category Support
WIR - 7T, DU, T4

Hear what consumers are saying at http://h30434.www3.hp.com/psg/

*This e-mail, and any files transmitted with it are HP Confidential and intended solely for the use of the individual or entity to whom it is addressed. If you have received this e-mail in error, please discard the message (and any associated files) and notify me directly.

# EXHIBIT N

WEISS & LURIE

Suite 2300
10940 Wilshire Boulevard
Los Angeles, CA 90024
TEL (310) 208-2800
FAX (310) 209-2348

New York . Los Angeles

SCANNED

April 23, 2010

VIA U.S. CERTIFIED MAIL, RETURN RECEIPT REQUESTED MAIL
Hewlett-Packard Company
3000 Hanover Street
Palo Alto, CA 94304-1185

Re: *Notification Pursuant to California Civil Code §1782*

To Whom It May Concern:

Please be advised that this demand letter is meant to comply with the requirements of California Civil Code §1782 on behalf of Chaim Kowalsky.

On or around July 2, 2009, Mr. Kowalsky purchased a HP 8500 Printer (hereinafter referred to as the "HP 8500"), serial number MY934210NW, for over $250.00 directly from HP's website.

Almost immediately after purchase, Mr. Kowalsky began to experience problems while copying, scanning or faxing using the HP 8500 Printer. Specifically, when attempting to copy, scan or fax a multi-page document, some of the pages, without warning and often successively, would not print, save to file, scan to email or fax. For a few months after he first experienced the problem described above, Plaintiff was able to continue using the printer. Eventually, however, as the problem got progressively worse, the printer reached a point where it would always miss random pages when copying, scanning or faxing, rendering it totally unreliable and useless.

As a result, Mr. Kowalsky contacted HP customer care, which exchanged his printer for a new one. However, within a few days Plaintiff noticed the same defect with the new printer randomly missing pages when copying, scanning or faxing. Once again, Mr. Kowalsky contacted HP customer care, and once again his second printer was exchanged for a new one, and once again within days he noticed the same defect. At this point, in need of a Multi-Function printer that would be reliable and seeing that three printers in a row from HP were all defective, Mr. Kowalsky purchased a new printer from another manufacturer.

HP represented and advertised the HP 8500 Printers as a "premier all-in-one printer" and an "all-around top performer." Despite HP's representations, the HP 8500 Printers contain uniform defects, that negatively impact their performance at an abnormally high rate and in some instances make the printers completely inoperable. The problems experienced by Mr. Kowalsky as a result

of the defects are virtually identical to those of thousands of other HP purchasers who have recounted their problems with the HP 8500 Printer series.

Significantly, HP was aware, prior to marketing and selling the HP 8500 Printers, or at minimum after they had been selling these printers for a few months, that the printers contained an inherent defect that was already present at the time of purchase and would cause a substantial number of the HP 8500 Printers to routinely skip pages when copying, scanning and faxing, even with normal use. HP has been advised by scores of purchasers of these defects and its negative impact on performance. As a direct result of HP's false and misleading statements and concealment, Mr. Kowalsky and thousands of other similarly situated consumers have purchased HP 8500 Printers and have suffered – and continue to suffer – failure of these printers due to inherent design defects. Accordingly, Mr. Kowalsky and other purchasers have been misled and continue to be misled by HP's wrongful conduct.

HP has violated, and continues to violate, the Consumer Legal Remedies Act in at least the following respects:

a. in violation of Civil Code §1770(a)(5), HP has represented that the HP 8500 Printers have characteristics and benefits it does not have;

b. in violation of Civil Code §1770(a)(7), HP has represented that the HP 8500 Printers are of a particular standard when it is not;

c. in violation of Civil Code §1770(a)(9), HP has advertised the HP 8500 Printers with an intent not to sell it as advertised;

d. in violation of Civil Code §1770(a)(14), HP has represented that it has no obligation to repair or replace the HP 8500 Printers even though they suffer from a common design defect; and

e. in violation of Civil Code §1770(a)(16), HP has represented that the HP 8500 Printers have been supplied in accordance with representations when it has not.

Pursuant to California Civil Code §1782, this letter serves as notification of HP's alleged violations of §1770 and Mr. Kowalsky's demand for the rectification of such violations on a class wide basis. Specifically, Mr. Kowalsky requests the following: (1) a full refund for the subject product he purchased as well as on behalf of other affected consumers, or alternatively, and at the choice of the affected consumer (2) HP reliably repair the defects alleged at no cost to the consumer; (3) a full refund for all out-of-pocket expenses expended by affected consumers who made repair attempts; (4) HP cease its misleading and false advertising practices in whatever context it occurs; and (5) HP notify all purchasers of the defects in the printers and the consumer's options for repair or refund. If HP fails to respond to Mr. Kowalsky's demands within 30 days of receipt of this

letter, pursuant to §1782, Mr. Kowalsky will amend his complaint to request actual damages, plus punitive damages, interest and attorneys fees and costs for the violations of §1770. A courtesy copy of the initial filed Complaint is enclosed for your consideration.

Very truly yours,

Zev B. Zysman

Enclosure
cc: Chaim Kowalsky
Jordan L. Lurie

# EXHIBIT O

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Samuel Liversidge
Direct: 213.229.7420
Fax: 213.229.6420
SLiversidge@gibsondunn.com

Client: T 38126-00600

May 27, 2010

VIA ELECTRONIC MAIL AND U.S. MAIL

Jordan L. Lurie
Zev B. Zysman
Weiss & Lurie
10940 Wilshire Blvd, 23rd Floor
Los Angeles, CA 90024

Re: Kowalsky v. Hewlett-Packard Co., Case No. 5:10-cv-02176-PVT

Dear Messrs Lurie and Zysman:

I write in response to your letter dated April 23, 2010, and received by Hewlett-Packard Co. ("HP") on April 27, 2010, described as a "demand letter . . . meant to comply with the requirements of California Civil Code § 1782." To the extent your letter constitutes a notice and demand letter pursuant to section 1782(a), this letter serves as a response in accordance with sections 1782(b), (c), and (e). California Evidence Code Section 1152 protects this response, and nothing in this letter is intended as, or constitutes, an admission or a waiver of any of HP's defenses, rights, or remedies. This letter is confidential and is entitled to all applicable protections of law.

Your letter does not comply with the notice requirements of the California Consumers Legal Remedies Act ("CLRA") for several reasons, and therefore does not give HP "sufficient notice of the alleged defects to permit appropriate corrections or replacements." *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 40–41 (1975).

Although all of the CLRA claims set forth in your letter appear to be based on representations HP has supposedly made regarding the HP 8500 series printer, your letter provides no indication of the substance or context regarding these alleged statements. For example, the letter does not specify any "characteristics and benefits" HP represented the 8500 series printers as having, what "particular standard" the printers were represented to meet, or when and where HP made these statements. The letter also does not explain where or when HP supposedly represented it "has no obligation to repair or replace the HP 8500 Printers"; indeed, the letter admits elsewhere that HP did, in fact, replace Mr. Kowalsky's printer. Thus, although HP denies that it has made any false statements regarding the 8500 series printer, it is unable to respond specifically to your claims that its representations and advertisements were false.

**GIBSON DUNN**

Your letter claims that HP has stated that the HP 8500 series printer is a "premier all-in-one printer" and an "all-around top performer," but the letter does not explain when or where HP made these statements, why such statements are false, or how they would be actionable under the CLRA. These statements do not make any claim about the functions or abilities of the HP 8500 series printer, and therefore they could not form the basis for a CLRA claim. *See, e.g., Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (advertising that a notebook computer had "higher performance" "longer battery life" and "faster access to data" was not actionable); *Long v. Hewlett-Packard Co.*, 2007 WL 2994812, at *7 (N.D. Cal. July 27, 2007) (advertising that HP Pavilion laptops were a "reliable mobile computing solution" that could "do more on the move" not actionable); *Brothers v. Hewlett-Packard Co.*, 2006 WL 3093685, at *5 (N.D. Cal. Oct. 31, 2006) (advertising statements that HP Pavilion laptops were "high-performance" and "top-of-the-line" not actionable).

If, as you represent, Mr. Kowalsky purchased his 8500 series printer on July 2, 2009, it would appear his printer is still covered by HP's one-year Limited Warranty. Accordingly, if he simply complies with the terms of the warranty and returns the allegedly defective product to HP, HP will repair or replace it, in accordance with the terms of the warranty. And, as stated in the Limited Warranty, "[i]f HP is unable to repair or replace, as applicable, a defective product which is covered by HP's warranty, HP shall, within a reasonable time after being notified of the defect, refund the purchase price of the product."

I believe that this letter demonstrates that HP has not violated the CLRA (or any other law). Should you have questions about the foregoing, please do not hesitate to contact me.

Sincerely,

Samuel Liversidge / BHE

Samuel Liversidge

SGL/bhe

# EXHIBIT P

# HP Limited Warranty Statements

» HP Limited Warranty Statements

» Printers and Imaging Products
» LaserJet Print Cartridges and Imaging Drums
» Desktop and Workstation PCs, Notebook and Tablet PCs, Handheld Devices, and Displays
» HP Mini PC Series, Compaq Mini PC Series, Compaq Presario CQ Desktop Series

**HP Limited Warranty Statement -- Printers and Imaging Products**

**Extent of Limited Warranty**

a. Hewlett-Packard (HP) warrants to the end-user customer that the HP products will be free from defects in material and workmanship for the duration described on the product description page. Special note for Inkjet: For inkjet cartridges, the warranty coverage extends until the HP ink is depleted or the "Warranty Ends" date has been reached, whichever occurs first. For printheads, the coverage extends until the "Warranty Ends" date has been reached or the warranted usage limit has been reached, whichever occurs first.
b. For software products, HP's limited warranty applies only to a failure to execute programming instructions.
c. HP does not warrant that the operation of any product will be uninterrupted or error free.
d. HP's limited warranty covers only those defects that arise as a result of normal use of the product and does not cover any other problems, including those that arise as a result of: (i) improper maintenance or modification; (ii) software, media, parts or supplies not provided or supported by HP; (iii) operation outside the product's specifications; or (iv) unauthorized modification or misuse.
e. For HP printer products, the use of a non-HP ink cartridge or a refilled ink cartridge does not affect either the warranty to the customer or any HP support contract with the customer. However, if printer failure or damage is attributable to the use of a non-HP or refilled ink cartridge, HP will charge its standard time and materials charges to service the printer for the particular failure or damage.
f. For HP printer cartridges and supplies, this warranty does not apply to products that (i) have been refilled, refurbished, remanufactured or tampered with in any way, (ii) experience problems resulting from misuse, improper storage, or operation outside of the published environmental specifications for the printer product or (iii) exhibit wear from ordinary use.
g. If HP receives, during the applicable warranty period, notice of a defect in any product which is covered by HP's warranty, HP shall either repair or replace the product, at HP's option.
h. If HP is unable to repair or replace, as applicable, a defective product which is covered by HP's warranty, HP shall, within a reasonable time after being notified of the defect, refund the purchase price of the product.
i. HP shall have no obligation to repair, replace or refund until the customer returns the defective product to HP.
j. Any replacement product may be either new or like-new, provided that it has functionality at least equal to that of the product being replaced.
k. HP products may contain remanufactured parts, components, or materials equivalent to new in performance.
l. HP's Limited Warranty Statement is valid in any country where the covered HP product is distributed by HP. Contracts for additional warranty services, such as on-site service, may be available from any authorized HP service facility in countries where the product is distributed by HP or by an authorized importer.

**Limitations of Warranty**

TO THE EXTENT ALLOWED BY LOCAL LAW, NEITHER HP NOR ITS THIRD PARTY SUPPLIERS MAKES ANY OTHER WARRANTY OR CONDITION OF ANY KIND, WHETHER EXPRESS OR IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY, SATISFACTORY QUALITY, AND FITNESS FOR A PARTICULAR PURPOSE.

**Limitations of Liability**

a. To the extent allowed by local law, the remedies provided in this Limited Warranty Statement are the customer's sole and exclusive remedies.
b. TO THE EXTENT ALLOWED BY LOCAL LAW, EXCEPT FOR THE OBLIGATIONS SPECIFICALLY SET FORTH IN THIS WARRANTY STATEMENT, IN NO EVENT SHALL HP OR ITS THIRD PARTY SUPPLIERS BE LIABLE FOR DIRECT, INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER LEGAL THEORY AND WHETHER ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**Local Law**

a. This Limited Warranty Statement gives the customer specific legal rights. The customer may also have other rights which vary from state to state in the United States, from province to province in Canada, and from country to country elsewhere in the world.
b. To the extent that this Limited Warranty Statement is inconsistent with local law, this Statement shall be deemed modified to be consistent with such local law. Under such local law, certain disclaimers and limitations of this Warranty Statement may not apply to the customer. For example, some states in the United States, as well as some governments outside the united States (including provinces in Canada), may: (i) preclude the disclaimers and limitations in this Warranty Statement from limiting the statutory rights of a consumer (e.g., United Kingdom); (ii) otherwise restrict the ability of a manufacturer to enforce such disclaimers or limitations; or (iii) grant the customer additional warranty rights, specify the duration of implied warranties which the manufacturer cannot disclaim, or allow limitations on the duration of implied warranties.
c. THE TERMS IN THIS WARRANTY STATEMENT, EXCEPT TO THE EXTENT LAWFULLY PERMITTED, DO NOT EXCLUDE, RESTRICT, OR MODIFY, AND ARE IN ADDITION TO, THE MANDATORY STATUTORY RIGHTS APPLICABLE TO THE SALE OF THE HP PRODUCTS TO SUCH CUSTOMERS.

**Contacting HP**

If your product fails during the warranty period and the suggestions in the product documentation do not solve the problem, you can receive support by doing one of the following:

- Locate and contact your nearest HP Support location via the World Wide Web at:

  http://welcome.hp.com/country/us/en/wwcontact.html

- Contact your HP authorized service provider
- Call the Technical Support Center at 1.800.hpinvent or 1.800.474.6836
  Before calling HP or an HP authorized service provider please have the following information available:

- Product serial number, model name, and product model number
- Applicable error messages
- Add-on options
- Operating system
- Third-party hardware or software
- Detailed questions

» Top

**HP Limited Warranty Statement - LaserJet Print Cartridges and Imaging Drums**

HP LaserJet Print Cartridges and Imaging Drums are warranted to be free from defects in materials and workmanship.

This warranty does not apply to products that (a) have been refilled, refurbished, remanufactured or tampered with in any way, (b) experience problems resulting from misuse, improper storage, or operation outside of the published environmental specifications for the printer product or (c) exhibit wear from ordinary use.

To obtain warranty service, please return the product to place of purchase (with a written description of the problem and print samples) or contact HP customer support. At HP's option, HP will either replace products that prove to be defective or refund your purchase price.

TO THE EXTENT ALLOWED BY LOCAL LAW, THE ABOVE WARRANTY IS EXCLUSIVE AND NO OTHER WARRANTY OR CONDITION, WHETHER WRITTEN OR ORAL, IS EXPRESSED OR IMPLIED AND HP SPECIFICALLY DISCLAIMS ANY IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY, SATISFACTORY QUALITY, AND FITNESS FOR A PARTICULAR PURPOSE.

TO THE EXTENT ALLOWED BY LOCAL LAW, IN NO EVENT WILL HP OR ITS SUPPLIERS BE LIABLE FOR DIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL (INCLUDING LOST PROFIT OR DATA), OR OTHER DAMAGE, WHETHER BASED IN CONTRACT, TORT, OR OTHERWISE.

THE WARRANTY TERMS CONTAINED IN THIS STATEMENT, EXCEPT TO THE EXTENT LAWFULLY PERMITTED, DO NOT EXCLUDE, RESTRICT OR MODIFY AND ARE IN ADDITION TO THE MANDATORY STATUTORY RIGHTS APPLICABLE TO THE SALE OF THIS PRODUCT TO YOU.

» Top

# EXHIBIT Q

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **ALABAMA**<br><br>*Deceptive Trade Practices Act*<br><br>**Ala. Code § 8-19-1 *et seq.* (2006).** | **Private right of action.**<br><br>Ala. Code § 8-19-10.<br><br>*Ex parte Exxon Corp.*, 725 So. 2d 930, 933 (Ala. 1998).<br><br>**Class actions prohibited unless by attorney general or a district attorney.**<br><br>Ala. Code § 8-19-10(f); *Ex parte Exxon Corp.*, 725 So. 2d 930, 933 (Ala. 1998); *Cheminova Am. Corp. v. Corker*, 779 So. 2d 1175, 1183 (Ala. 2000). | **One year from discovery, but no later than four years.**<br><br>Ala. Code. § 8-19-14. | **"Monetary damage" required.**<br><br>Ala. Code § 8-19-10(a)(1).<br><br>*Billions v. White & Stafford Furniture Co.*, 528 So. 2d 878, 880 (Ala. Civ. App. 1988). | **Misconduct must cause "monetary damage."**<br><br>Ala. Code § 8-19-10(a).<br><br>*Billions v. White & Stafford Furniture Co.*, 528 So. 2d 878, 880 (Ala. Civ. App. 1988).<br><br>**Reliance not controlling inquiry.**<br><br>*F.T.C. v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003); *McGregor v. Chierico*, 206 F.3d 1378, 1388 (11th Cir. 2000). | **"A representation is deceptive if it contains a material claim or omission that is reasonably likely to mislead consumers acting reasonably under the circumstances, to their detriment. A representation or omission is material if it is of the kind usually relied upon by a reasonably prudent person."**<br><br>*F.T.C. v. Accent Marketing, Inc.*, 2002 WL 31257708, *1 (S.D. Ala. 2002) (citations omitted). | **Defense to action if defendant "did not knowingly" commit violation of the act.**<br><br>Ala. Code § 8-19-13; *Strickland v. Katko Mfg., Inc.*, 512 So. 2d 714, 717 (Ala. 1987); *Sam v. Beaird*, 685 So. 2d 742, 744 (Ala. Ct. App. 1996). | **Greater of actual damages or $100; up to three times actual damages in discretion of court; no prejudgment interest; punitive damages recoverable up to three times actual damages; attorney's fees mandatory.**<br><br>Ala. Code § 8-19-10(a)(1), (2). | **Pre-filing demand required.**<br><br>Ala. Code § 8-19-10(e) (15 days); *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1399–1400 (N.D. Ala. 1997).<br><br>**Must waive any other cause of action arising out of transaction to bring action under the act.**<br><br>Ala. Code § 8-19-15. |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **ALASKA**<br><br>*Unfair Trade Practices and Consumer Protection Act*<br><br>**Alaska Stat. § 45.50.471** ***et seq.*** **(2006).** | **Private right of action permitted. Class actions arguably prohibited.**<br><br>Alaska Stat. § 45.50.531(a) grants right of action for a person who suffers ascertainable loss, but Alaska Stat. § 45.50.531(b), which provided for class action right, was repealed. | **Two years from discovery.**<br><br>Alaska Stat. § 45.50.531(f). | **"Actual injury as a result of the deception is not required. All that is required is a showing that the acts and practices were capable of being interpreted in a misleading way."**<br><br>*State v. O'Neill Investigations Inc.*, 609 P.2d 520, 535 (Alaska 1980); *Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 132 (Alaska 2000). | **Right of action requires "ascertainable loss of money or property" incurred "as a result of" violation.**<br><br>Alaska Stat. §§ 45.50.47(b)(12); 45.50.531(a).<br><br>*Garrison v. Dixon*, 19 P.3d 1229, 1235 n. 22. (Alaska 2001). | **Prohibits concealment of a "material" fact.**<br><br>Alaska Stat. § 45.50.471(b)(12). | **"Intent to deceive need not be proved."**<br><br>*State v. O'Neill Investigations Inc.*, 609 P.2d 520, 535 (Alaska 1980). | **Greater of 3X actual damages or $500; prejudgment interest not exempted; discretionary punitive damages allowed; attorney's fees allowed; injunctive relief available.**<br><br>Alaska Stat. §§ 45.50.531(a); 45.50.535.<br><br>**Treble damages available for willful violations.**<br><br>*Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 132 (Alaska 2000). | **Written notice prior to action for injunction required.**<br><br>Alaska Stat. § 45.50.535.<br><br>**50% of punitive damages goes to State.**<br><br>Alaska Stat. § 45.50.531(i). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **ARIZONA**<br><br>*Consumer Fraud Act*<br><br>**Ariz. Rev. Stat. Ann. § 44-1521 *et seq.* (2006).** | **Private right of action and class actions permitted.**<br><br>*Sellinger v. Freeway Mobile Home Sales, Inc.*, 521 P.2d 1119, 1122 (Ariz. 1974); *Haisch v. Allstate Ins. Co.*, 5 P.3d 940, 944 (Ariz. Ct. App. 2000). | **One year from discovery.**<br><br>Ariz. Rev. Stat. Ann. § 12-541(5).<br><br>*Murry v. W. Am. Mortg. Co.*, 604 P.2d 651, 654 (Ariz. Ct. App. 1979); *Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1380 (Ariz. Ct. App. 1994). | **Actual damage or injury required.**<br><br>*Holeman v. Neils*, 803 F.Supp. 237, 242 (D. Ariz. 1992); *Nataros v. Fine Arts Gallery of Scottsdale, Inc.*, 612 P.2d 500, 504 (Ariz. Ct. App. 1980). | **"[B]efore a private party may exert a claim under the statute, he must have been damaged by the prohibited practice. A prerequisite to such damages is reliance on the unlawful acts."**<br><br>*Peery v. Hansen*, 585 P.2d 574, 578 (Ariz. Ct. App. 1978). | **Prohibits concealment of a "material" fact.**<br><br>Ariz. Rev. Stat. Ann. § 44-1522(A). | **Specific intent not required; intent to do the act is sufficient.**<br><br>*Flagstaff Med. Ctr., Inc. v. Sullivan*, 773 F. Supp. 1325, 1361-62 (D. Ariz. 1991), *aff'd in part, rev'd in part by* 962 F.2d 879 (9th Cir. 1992); *State v. Goodyear Tire & Rubber Co.*, 626 P.2d 1115, 1118 (Ariz. Ct. App. 1981); *Clearley v. Wieser*, 727 P.2d 346, 348 (Ariz. Ct. App. 1986); *Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1380 (Ariz. Ct. App. 1994). | **Compensatory damages permitted.**<br><br>*Holeman v. Neils*, 803 F.Supp. 237, 242 (D. Ariz. 1992); *Nataros v. Fine Arts Gallery of Scottsdale, Inc.*, 612 P.2d 500, 504 (Ariz. Ct. App. 1980).<br><br>**Punitive damages if violation is wanton, reckless, or involves an "evil mind."**<br><br>*Howell v. Midway Holdings, Inc.*, 362 F. Supp. 2d 1158, 1165 (D. Ariz. 2005); *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 680 (Ariz. 1986). | **None found.** |

Case 5:10-cv-02176-LHK Document 91-3 Filed 02/10/12 Page 129 of 194

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **ARIZONA** **(cont'd)** | | | | **"An injury occurs when a consumer relies, even unreasonably, on false or misrepresented information."**<br><br>*Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004); *Holeman v. Neils*, 803 F.Supp. 237, 242 (D. Ariz. 1992); *Dunlap v. Jimmy GMC of Tuscon, Inc.*, 666 P.2d 83, 87 (Ariz. Ct. App. 1983); *Winkler v. DTE, Inc.*, 205 F.R.D. 235, 242 (D. Ariz. 2001). | | **Wrongful concealment must be with "intent that others rely."**<br><br>Ariz. Rev. Stat. Ann. § 44-1522(A). | **Attorney's fees if fraud claim "arises out of contract" and in discretion of court.**<br><br>Ariz. Rev. Stat. Ann. § 12-341.01(A); *Bennett v. Appaloosa Horse Club*, 35 P.3d 426, 432 (Ariz. Ct. App. 2001).<br><br>**No statutory damages in private action.**<br><br>*Peery v. Hansen*, 585 P.2d 574, 578 (Ariz. Ct. App. 1978). | |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **ARKANSAS**<br><br>*Deceptive Trade Practices Act*<br><br>**Ark. Code Ann. §§ 4-88-101 *et seq.*, 4-88-201 *et. seq.* (2005).** | **Private right of action for "any person" actually injured.**<br><br>Ark. Code Ann. § 4-88-113(f).<br><br>**Class actions permitted.**<br><br>*Lenders Title Co. v. Chandler*, 186 S.W.3d 695, 698 (Ark. 2004).<br><br>**Private right of action for "enhanced penalties" only for "elder" and "disabled" persons.**<br><br>Ark. Code Ann. § 4-88-204. | **Five years from violation.**<br><br>Ark. Code Ann. § 4-88-115. | **Requires "actual damage or injury."**<br><br>Ark. Code Ann. §§ 4-88-113(f), 4-88-204. | **Right of action required "actual damage or injury" incurred "as a result of" a violation of the act.**<br><br>Ark. Code Ann. § 4-88-113(f). | **Prohibits concealment, suppression, or omission of a "material" fact.**<br><br>Ark. Code Ann. § 4-88-108(2). | **Prohibits "knowingly" making false representations of "benefits" of product.**<br><br>Ark. Code Ann. § 4-88-107(a)(1).<br><br>**Prohibits concealment with "intent that others rely upon the concealment, suppression, or omission."**<br><br>Ark. Code Ann. § 4-88-108(2). | **Allows only compensatory damages and reasonable attorney's fees.**<br><br>Ark. Code Ann. § 4-88-113(f).<br><br>**Allows punitive damages for elderly and disables persons.**<br><br>Ark. Code Ann. § 4-88-204. | **None found.** |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **CALIFORNIA**<br><br>*Consumers Legal Remedies Act ("CLRA")*<br><br>**Cal. Civ. Code § 1750 *et seq.* (2005).** | **Private right of action and class action permitted.**<br><br>Cal. Civ. Code §§ 1780, 1781; *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432, 452 (1988).<br><br>**Private right of action limited to consumers who purchased product for "personal, family or household purposes."**<br><br>Cal. Civ. Code § 1761(d). | **Three years from date of improper practice.**<br><br>Cal. Civ. Code § 1783. | **"Any damage" required.**<br><br>Cal. Civ. Code § 1780(a). | **Causation required as damages must be "as result of" the unlawful practice.**<br><br>Cal. Civ. Code § 1780(a).<br><br>**Reliance required where claim is based on fraudulent conduct.**<br><br>*Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798 (2008). | **Materiality required.**<br><br>*Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 667 (1993).<br><br>**Duty to disclose required for omission based claim.**<br><br>*Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006) (limited duty to disclose in absence of affirmative misrepresentations); *Bardin v. DaimerChrysler Corp.*, 136 Cal. App. 4th 1255, 1276 (2006). | **No scienter requirement.**<br><br>Cal. Civ. Code § 1770(a).<br><br>**Violation must be intentional for damages.**<br><br>Cal. Civ. Code § 1784. | **Greater of actual damages or $1,000 in a class action; injunctive relief permitted; prejudgment interest allowed; punitive damages allowed; and "any other relief the court deems proper."**<br><br>Cal. Civ. Code § 1780(a).<br><br>**Attorney's fees available.**<br><br>Cal Civ. Code § 1780(d). | **Requires presuit notice and opportunity to cure.**<br><br>Cal. Civ. Code § 1782; *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **CALIFORNIA (cont'd)** | | | | **Only permits a classwide inference of causation and reliance where a single, material misrepresentation was directly made to *each* class member.**<br><br>*Vasquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971); *Gonzalez v. Procter & Gamble Co.*, 247 F.R.D. 616 (S.D. Cal. 2007); *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668-69 (1993). | | | | |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **CALIFORNIA (cont'd)**<br><br>*Unfair Competition Law ("UCL")*<br><br>**Cal. Bus. & Prof. Code § 17200 *et seq.* (2005).** | **Private right of action and class action permitted for those injured as a result of defendant's conduct.**<br><br>Cal. Bus & Prof. Code §§ 17203, 17204.<br><br>*Arias v. Superior Court*, 46 Cal. 4th 969, 975 (2009); *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432, 452 (1988). | **Four years from accrual of action.**<br><br>Cal. Bus. & Prof. Code § 17208.<br><br>**Three years for false advertising claims.**<br><br>Cal. Bus. & Prof. Code § 17500 (False Advertising Act) and Code of Civ. P. § 338(a)(h). | **Actual injury required.**<br><br>Cal. Bus. & Prof. Code §§ 17203, 17204. | **Plaintiffs must establish causation and actual reliance in accordance with principles of ordinary fraud actions.**<br><br>*In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009).<br><br>**The UCL permits a classwide inference of reliance where material misrepresentation was directly made to *each* class member.**<br><br>*In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) (UCL fraud claim based on decades-long advertising campaign); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011); *Caro v. Proctor & Gamble*, 18 Cal. App. 4th 644, 668-69 (1993). | **Materiality required.**<br><br>*Caro v. Procter & Gamble Co.*, 22 Cal. Rptr. 2d 419, 432 (4th Dist. 1993).<br><br>**Duty to disclose required for omission based claim.**<br><br>*Berryman v. Merit Property Management*, Inc., 152 Cal. App. 4th 1544 (2007); *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006). | **No scienter requirement for UCL action (effect on consumer is judged under reasonable person standard).**<br><br>*In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009); *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1105 (1996). *Cf.* Cal. Bus. & Prof. Code § 17500 ("It is unlawful for any person … *with intent* … to make or disseminate … any statement … which is untrue or misleading, *and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading* …."). | **Damages not permitted, only equitable relief, including restitution. No attorney's fees, unless available through contract or other statute.**<br><br>Cal. Bus. & Prof. Code § 17203.<br><br>*Korea Supply v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003). | **None found.** |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **COLORADO**<br><br>*Consumer Protection Act*<br><br>**Colo. Rev. Stat. Ann. § 6-1-101 *et seq.* (2005).** | **Private right of action and class action permitted.**<br><br>Colo. Rev. Stat. Ann. § 6-1-113; *Coors v. Security Life of Denver Ins.*, 112 P.3d 59, 62-64 (Colo. 2005); *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003). | **Three years from longer of violation or discovery, plus 1 year if defendant caused delay.**<br><br>Colo. Rev. Stat. Ann. § 6-1-115; *Robinson v. Lynmar Racquet Club, Inc.*, 851 P.2d 274, 281 (Colo. Ct. App. 1993). | **Requires "injury in fact."**<br><br>Colo. Rev. Stat. Ann. § 6-1-113(1)(a).<br><br>*Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998). | **"[A] false representation must either induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers."**<br><br>*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003).<br><br>**Requires "that the challenged practice caused the plaintiff's injury."**<br><br>*Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).<br><br>Colo. Rev. Stat. Ann. § 6-1-113(1)(a). | **Prohibits concealment of "material information concerning goods" if such failure to disclose "was intended to induce the consumer to enter into a transaction."**<br><br>Colo. Rev. Stat. Ann. § 6-1-105(l)(u). | **Certain violations, including falsely representing "benefits" of a product, must be made "[k]nowingly."**<br><br>Colo. Rev. Stat. Ann. § 6-1-105(l)(e), (g), & (u). | **In class actions, only actual damages.**<br><br>Colo. Rev. Stat. Ann. § 6-1-113(2)(a).<br><br>**In individual actions, statutory minimum of $500; prejudgment interest; punitive damages up to three times actual damages.**<br><br>Colo. Rev. Stat. Ann. § 6-1-113(2); *Lexton-Ancira Real Estate Fund, 1972 v. Heller*, 826 P.2d 819, 821-22 (Colo. 1992); *Martinez v. Affordable Hous. Network*, 109 P.3d 983, 992 (Colo. Ct. App. 2004).<br><br>**Reasonable attorney's fees allowed.**<br><br>Colo. Rev. Stat. Ann. § 6-1-113(2), (3). | **Plaintiffs must demonstrate alleged deceptive practice "significantly impacts the public as actual or potential consumers."**<br><br>*Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).<br><br>**If claims are "groundless" or otherwise improper, plaintiff is liable for defendant's fees and costs.**<br><br>Colo. Rev. Stat. Ann. § 6-1-113(3). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **CONNECTICUT**<br><br>*Unfair Trade Practices Act*<br><br>**Conn. Gen. Stat. Ann. § 42-110a *et seq*. (2005).** | **Private right of action, but class permitted only on behalf of Conn. residents.**<br><br>Conn. Gen. Stat. Ann. § 42-110g(b). | **Three years "after the occurrence of a violation."**<br><br>Conn. Gen. Stat. Ann. § 42-110g(f). | **Requires "ascertainable loss of money" for private right of action.**<br><br>Conn. Gen. Stat. Ann. § 42-110g(a). | **Reliance not required.**<br><br>*Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 176 (D. Conn. 2000); *Solomon v. WMN Assocs., Inc.*, 1994 WL 597390, at *6 (Conn. Super. Ct. Oct. 20, 1994). | **Materiality apparently not required because misrepresentation need not be part of the basis of the bargain.**<br><br>*Izzarelli v. R..J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 176 (D. Conn. 2000). | **Not required.**<br><br>*Calandro v. Allstate Ins. Co.*, 778 A.2d 212, 221 (Conn. App. Ct. 2001); *Muniz v. Kraus*, 757 A.2d 1207, 1214 (Conn. App. Ct. 2000); *Cheshire Mortg. Serv., Inc. v. Montes*, 612 A.2d 1130, 1144 (Conn. 1992). | **Permits actual and injunctive relief allowed; punitive damages and attorney's fees within discretion of court .**<br><br>Conn. Gen. Stat. Ann. § 42-110g(a) & (d).<br><br>**Punitive damages dependent on proof of "reckless indifference to the rights of other or an intentional or wanton violation of those rights."**<br><br>*Gargano. v. Heyman*, 525 A.2d 1343, 1347 (1987). | **No jury trial right.**<br><br>*Assoc. Invest. Co., v. Williams Assocs.*, 645 A.2d 505, 512 (Conn. 1994). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **DELAWARE**<br><br>*Consumer Fraud Act*<br><br>**Del. Code Ann. tit. 6, § 2511 *et seq.* (2003).** | **Private right of action and class action permitted if the plaintiff pleads that the misrepresentation was made wholly or in part in Delaware.**<br><br>Del. Code Ann. tit. 6, § 2525.<br><br>*Young v. Joyce*, 351 A.2d 857, 859 (Del. 1975); *Spark v. MBNA Corp.*, 157 F. Supp. 2d 330 (D. Del. 2001), *aff'd*, 48 Fed. App'x. 385 (3d Cir. 2002). | **Three years from discovery.**<br><br>Del. Code Ann. tit. 10, § 8106 (any damages action based on a statutory violation).<br><br>*Pender v. DaimlerChrysler Corp.*, 2004 WL 2191030, at *1 (Del. Super. Ct. July 30, 2004); *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 650 (Del. Super. Ct. 1985). | **Neither deception nor injury are required elements under the act.**<br><br>Del. Code Ann. titl. 6, § 2513 (a).<br><br>**However, monetary recovery is based on damages.**<br><br>*Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983). | **Reliance not required.**<br><br>*Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983); *S & R Assocs., L.P. v. Shell Oil Co.*, 725 A.2d 431, 440 (Del. Super. Ct. 1998); *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 650 (Del. Super. Ct. 1985). | **Prohibits concealment of a "material" fact.**<br><br>Del. Code Ann. titl. 6, § 2513(a).<br><br>*Brandywine Volkswagen, ltd. v. State*, 312 A.2d 632, 634 (Del. 1973). | **Neither intent to make a deceptive or untrue statement nor intent to induce reliance required, but concealment claims require "intent that others rely" on concealment.**<br><br>Del. Code Ann. tit. 6, § 2513(a).<br><br>*Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983); *Brandywine Volkswagen, ltd. v. State*, 312 A.2d 632, 634 (Del. 1973); *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 650 (Del. Super. Ct. 1985). | **Actual damages allowed; attorney's fees only for elderly and disabled; punitive damages allowed only in cases where compensatory damages are available and where the fraud was gross, oppressive, and aggravated or involves a breach of a trust or confidence.**<br><br>*Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983); *Servino v. Med. Ctr. of Del.*, 1997 WL 528263 (Del. Super. Ct. 1997).<br><br>**Injunctive relief permitted.**<br><br>Del. Code Ann. tit. 6, § 2523. | None found. |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **DISTRICT OF COLUMBIA**<br><br>*Consumer Protection Procedures Act*<br><br>**D.C. Code Ann. § 28-3901 *et seq.* (2006).** | **Private right of action and class actions are allowed. Private attorney general suits on behalf of others are allowed.**<br><br>D.C. Code Ann. § 28-3905(k)(1). | **Three years.**<br><br>D.C. Code Ann. § 12-301(8). | **The district courts have standing requirements identical to those in Article III, requiring plaintiffs to suffer actual injury.**<br><br>*Friends of Tilden Park, Inc. v. Dist. of Columbia*, 806 A.2d 1201, 1206-1207 (D.C. Ct. App. 2002). | **A merchant may violate the act "whether or not any consumer is in fact misled, deceived or damaged thereby."**<br><br>D.C. Code Ann. § 28-3904. | **Misrepresentation must be material and have tendency to mislead.**<br><br>D.C. Code Ann. § 28-3904(e). | **Undecided.** | **Once a consumer shows damages, the consumer may receive treble damages or $1,500 per violation, whichever is greater; attorney's fees; punitive damages in cases of outrageous or egregious wrongdoing proven "by clear and convincing evidence"; and an injunction.**<br><br>D.C. Code Ann. § 28-3905(k)(1).<br><br>*Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 725-26, 728 (D.C. Ct. App. 2003). | **None found.** |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **FLORIDA**<br><br>***Deceptive and Unfair Trade Practices Act***<br><br>**Fla. Stat. Ann. § 501.201** ***et seq.*** **(2005).** | **Private right of action for anyone "aggrieved by a violation of [the act]." Class actions permitted.**<br><br>Fla. Stat. Ann. § 501.211.<br><br>*Barnhill v. Fla. Microsoft Antitrust Litig.*, 905 So. 2d 195 (Fla. Ct. App. 2005); *PNR, Inc. v. Beacon Prop. Mgmt, Inc.*, 842 So. 2d 773, 777 (Fla. 2003). | **Four years.**<br><br>Fla. Stat. Ann. § 95.11(3)(f). | **Right of action granted "[w]ithout regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation."**<br><br>Fla. Stat. Ann. § 501.211.<br><br>**But, to recover damages, must show a "loss as a result" of violation.**<br><br>Fla. Stat. Ann. § 501.211(2). | **Reliance and causation not required.**<br><br>*Davis v. Powertel, Inc.*, 776 So. 2d 971, 973-74 (Fla. Ct. App. 2000); *Latman v. Costa Cruise Lines N.V.*, 758 So. 2d 699, 703 (Fla. Dist. Ct. App. 2000). | **Not required.**<br><br>*Davis v. Powertel, Inc.*, 776 So. 2d 971, 973-74 (Fla. Ct. App. 2000). | **Not required; must show that only conduct is "likely to mislead" reasonable consumers.**<br><br>*Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Ct. App. 2000); *W.S. Badcock Corp. v. Myers*, 696 So. 2d 776, 779 (Fla. Dist. Ct. App. 1996). | **Actual damages plus attorney's fees and costs; equitable relief available.**<br><br>Fla. Stat. Ann. § 501.211.<br><br>*Martinez v. Rick Case Cars, Inc.*, 278 F. Supp. 2d 1371, 1373 (S.D. Fla. 2003). | None found. |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **GEORGIA**<br><br>*Uniform Deceptive Trade Practices Act ("UDTPA")*<br><br>**Ga. Code Ann. § 10-1-370 *et seq.* (2005).**<br><br>*Fair Business Practices Act ("FBPA")*<br><br>**Ga. Code Ann. § 10-1-390 *et seq.* (2005).** | **Private right of action for injunctive relief only under UDTPA.**<br><br>Ga. Code Ann. § 10-1-373.<br><br>**Private right of action, but no class action under FBPA.**<br><br>Ga. Code Ann. § 10-1-399. | **Four years from discovery under UDTPA.**<br><br>Ga. Code Ann. § 9-3-31.<br><br>*Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1204-05 (11th Cir. 1997).<br><br>**Two years from discovery under FBPA.**<br><br>Ga. Code Ann. § 10-1-401(a). | **Must establish "likely to be damaged."**<br><br>Ga. Code Ann. § 10-1-373.<br><br>*Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199 (11th Cir. 1997); *Catrett v. Landmark Dodge, Inc.*, 560 S.E.2d 101, 106 (Ga. Ct. App. 2002).<br><br>**FBPA requires "injury or damages."**<br><br>Ga. Code Ann. § 10-1-399.<br><br>*Regency Nissan, Inc. v. Taylor*, 391 S.E.2d 467, 470 (Ga. Ct. App. 1990). | **Reliance not required under UDTPA.**<br><br>Ga. Code Ann. § 10-1-372(b).<br><br>**Reliance and causation required under FBPA.**<br><br>Ga. Code Ann. § 10-1-399(a).<br><br>*Baranco, Inc. v. Bradshaw*, 456 S.E.2d 592, 594 (Ga. Ct. App. 1995); *Zeeman v. Black*, 273 S.E.2d 910, 916 (Ga. Ct. App. 1980); *Regency Nissan, Inc. v. Taylor*, 391 S.E.2d 467, 470 (Ga. Ct. App. 1990). | **Material omissions required.**<br><br>*Regency Nissan, Inc. v. Taylor*, 391 S.E.2d 467, 470 (Ga. Ct. App. 1990). | **Intent to deceive not required under UDTPA.**<br><br>Ga. Code Ann. § 10-1-373.<br><br>**Neither knowledge of deception nor intent to deceive required under FBPA.**<br><br>*Regency Nissan, Inc. v. Taylor*, 391 S.E.2d 467, 470 (Ga. Ct. app. 1990); *Henderson v. Gandy*, 608 S.E.2d 248, 252 (Ga. Ct. App. 2004). | **No civil damages under UDTPA, including statutory damages; only injunctive relief available; attorney's fees also permitted .**<br><br>Ga. Code Ann. § 10-1-373(a)-(c).<br><br>*Catrett v. Landmark Dodge, Inc.*, 560 S.E.2d 101, 106 (Ga. Ct. App. 2002); *Moore-Davis Motors, Inc. v. Joyner*, 556 S.E.2d 137 (2001). | **FBPA requires presuit demand letter.**<br><br>Ga. Code Ann. § 10-1-399(b).<br><br>**FBPA requires "administrator" to be served with complaint and provided an opportunity to be heard in case.**<br><br>Ga. Code Ann. § 10-1-399(g).<br><br>**FBPA limits "consumer[s]" to "natural person[s]" and "transactions" to those involving goods for "personal, family, or household" purposes.**<br><br>Ga. Code Ann. § 10-1-392(a)(2) & (3). |

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **GEORGIA** (cont'd) | | | | | | | **FBPA permits recovery of actual damages, injunctive relief, and punitive damages if no intent shown; no statutory damages or prejudgment interest.**<br><br>Ga. Code Ann. § 10-1-399(a), (c).<br><br>*Conseco Fin. Serv. Corp. v. Hill*, 556 S.E.2d 468, 473 (Ga. Ct. App. 2001). | |

15

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **HAWAII**<br><br>*Unfair Practices Act*<br><br>**Haw. Rev. Stat. § 480-1** ***et seq.*** **(2006).** | **Private right of action and class action permitted.**<br><br>Haw. Rev. Stat. § 480-13.<br><br>*Leibert v. Fin. Factors, Ltd.*, 788 P.2d 833, 837-38 (Haw. 1990); *Beerman v. Toro Mfg. Corp.*, 615 P.2d 749, 754 (Haw. Ct. App. 1980).<br><br>**Private right of action limited to "consumers" defined as a "natural person."**<br><br>Haw. Rev. Stat. §§ 480-1, 480-13.<br><br>*Hunt v. First Ins. Co. of Haw., Ltd.*, 922 P.2d 976, 1985-86 (Haw. Ct. App. 1996). | **Four years from discovery.**<br><br>Haw. Rev. Stat. § 480-24.<br><br>*Leibert v. Fin. Factors, Ltd.*, 788 P.2d 833, 837-38 (Haw. 1990). | **Suit for damages requires "private damage."**<br><br>*Sambor v. Omnia Credit Servs., Inc.*, 183 F. Supp. 2d 1234, 1244 (D. Haw. 2002).<br><br>Haw. Rev. Stat § 480-13.<br><br>**"Monetary damage" not required to obtain injunctive relief.**<br><br>Haw. Rev. Stat. § 481A-4.<br><br>**"Actual confusion or misunderstanding" not required.**<br><br>Haw. Rev. Stat. § 481A-3(b). | **In a suit for damages, violation must "cause" actual damage.**<br><br>Haw. Rev. Stat. § 480-13; *Sambor v. Omnia Credit Servs., Inc.*, 183 F. Supp. 2d 1234, 1244 (D. Haw. 2002). | **Material omissions required.**<br><br>Haw. Rev. Stat. § 480-2(b); *Beerman v. Toro Mfg. Corp.*, 615 P.2d 749, 754 (Haw. Ct. App. 1980). | **Intent not required for damages.**<br><br>Haw. Rev. Stat. § 480-2; *Davis v. Wholesale Motors*, 949 P.2d 1026 (Haw. Ct. App. 1997).<br><br>**No intent required for injunctive relief.**<br><br>Haw. Rev. Stat. § 481A-4. | **A sum not less than $1,000 or three times actual damages, whichever is greater, unless plaintiff is an "elder" in which case it is the greater of $1,000 or three times damages; injunctive relief available; attorney's fees mandatory.**<br><br>Haw. Rev. Stat. § 480-13; *Eastern Star, Inc. v. Union Bldg. Materials Corp.*, 712 P.2d 1148, 1159-60 (Haw. 1985); *Cieri v. Leticia Query Realty, Inc.*, 905 P.2d 29 (Haw. 1995); *Leibert v. Finance Factors, Ltd.*, 788 P.2d 833 (Haw. 1990). | **None found.** |

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **HAWAII** (cont'd) | | | | | | | **In class actions, only compensatory damages are awarded; $1,000 minimum does not apply.**<br><br>Haw. Rev. Stat. § 480-13(c)(1). | |

17

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **IDAHO**<br><br>*Consumer Protection Act*<br><br>**Idaho Code § 48-601 *et seq.* (2006).** | **Private right of action and class action permitted.**<br><br>Idaho Code § 48-608. | **Two years from discovery.**<br><br>Idaho Code § 48-619. | **Requires "ascertainable loss" for private right of action.**<br><br>Idaho Code § 48-608.<br><br>*In re Wiggins*, 273 B.R. 839, 881 (Bankr. D. Idaho 2001); *Yellowpine Water User's Ass'n v. Imel*, 670 P.2d 54, 57 (Idaho 1983); *Jackson v. Wood*, 859 P.2d 378, 380 (Idaho Ct. App. 1993). | **Ascertainable loss incurred "as a result" of violation.**<br><br>Idaho Code § 48-608.<br><br>*Jackson v. Wood*, 859 P.2d 378, 380 (Idaho Ct. App. 1993).<br><br>**"Actual deception" not required; "tendency to deceive" is enough.**<br><br>*State ex rel. Kidwell v. Master Distribs., Inc.*, 615 P.2d 116, 122-23 (Idaho 1980). | **Material omissions required.**<br><br>*State ex rel. Kidwell v. Master Distribs., Inc.*, 615 P.2d 116, 122-23 (Idaho 1980). | **Knowledge of falsity required for affirmative representations.**<br><br>Idaho Code § 48-603.<br><br>*State ex rel. Kidwell v. Master Distribs., Inc.*, 615 P.2d 116, 122-23 (Idaho 1980). | **In individual action, greater of actual damages or $1,000; punitive damages if "repeated" or "flagrant"; prejudgment interest and injunctive relief.**<br><br>Idaho Code § 48-608(1); *In re Wiggins*, 273 B.R. 839, 881 (Bankr. D. Idaho 2001); *Mac Tools, Inc. v. Griffin*, 126 Idaho 193, 196 (Idaho 1994);<br><br>**Statutory minimum of $1,000 must be entered if elements of statute are established.**<br><br>*Fenn v. Noah*, 133 P.3d 1240, 1244-45 (Idaho 2006); *White v. Mock*, 104 P.3d 356, 364 (Idaho 2004). | **None found.** |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **IDAHO (cont'd)** | | | | | | | **Class action damages limited to "actual damages" or "a total for the class that may not exceed one thousand dollars ($1,000), whichever is the greater."**<br><br>Idaho Code § 48-608(1).<br><br>**Attorney's fees available; mandatory fees to prevailing plaintiff.**<br><br>Idaho Code §§ 48-608(4), 48-607.<br><br>*Nalen v. Jenkins*, 741 P.2d 366 (Idaho 1987); *Israel v. Leachman*, 72 P.3d 864 (Idaho 2003). | |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **ILLINOIS**<br><br>*Consumer Fraud and Deceptive Business Practice Act*<br><br>**815 Ill. Comp. Stat. 505/1 *et seq.* (2006).** | **Private right of action and class action permitted.**<br><br>815 Ill. Comp. Stat. 505/10a.<br><br>*Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill. 2d 100 (2005); *Suburban 1, Inc., v. GHS Mortg., LLC*, 833 N.E.2d 18 (Ill Ct. App. 2005). | **Three years from discovery.**<br><br>815 Ill. Comp. Stat. 505/10a(e).<br><br>*Walsh v. Barry-Harlem Corp.*, 272 Ill. App. 3d 418 (1995); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1994) (quoting *Knox Coll. v. Celotex Corp.*, 88 Ill. 2d 407, 415 (1981)). | **Actual deception and actual injury required.**<br><br>815 Ill. Comp. Stat. 505/10a.<br><br>*Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 155 (2002); *Bunting v. Progressive Corp.*, 348 Ill. App. 3d 575, 581 (2004); *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 199 (2005). | **Proximate causation required.**<br><br>*Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 155 (2002); *Siegel v. Levy Org. Dev. Co.*, 153 Ill. 2d 534, 542 (1992).<br><br>**The deception must occur in the course of conduct involving trade and commerce and proximately cause the damage.**<br><br>*Bunting v. Progressive Corp.*, 348 Ill. App. 3d 575, 581 (2004); *Xydakis v. Target*, 333 F. Supp. 2d 686 (N.D. Ill. 2004). | **Misrepresentations must be material.**<br><br>815 Ill. Comp. Stat. 505/2.<br><br>*Ryan v. Wersi Elec. GmbH & Co.*, 59 F.3d 52, 53-54 (7th Cir. 1995). | **Intent to deceive is not required, but intent that consumer rely on the information is required.**<br><br>*Griffin v. Universal Cas. Co.*, 274 Ill. App. 3d 1056, 1065 (1995); *Bunting v. Progressive Corp.*, 348 Ill. App. 3d 575, 581 (2004); *Smith v. Prime Cable of Chi.*, 276 Ill. App. 3d 843, 856 (1995); *Hoke v. Beck*, 224 Ill. App. 3d 674, 679 (1992). | **Statutory and compensatory damages.**<br><br>815 Ill. Comp. Stat. 505/2S,10a.<br><br>**Punitive damages under "other relief" provision. Grounds for that relief must be alleged fraud, malice, or gross negligence indicating wanton disregard for the rights of others.**<br><br>815 Ill. Comp. Stat. 505/2AA; *Guess v. Brophy*, 164 Ill. App. 3d 75, 81 (1987).<br><br>**Injunctive relief.**<br><br>815 Ill. Comp. Stat. 505/7.<br><br>**Attorney's fees.**<br><br>815 Ill. Comp. Stat. 505/2S, 2w, 2AA, 10a. | **Jury trial right does not exist.**<br><br>*Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33 (1994). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **INDIANA**<br><br>*Deceptive Consumer Sales Act*<br><br>**Ind. Code Ann. § 24-5-0.5-1 *et seq.* (2006).** | **Private right of action and class action permitted.**<br><br>Ind. Code Ann. § 24-5-0.5-4.<br><br>*McKinney v. State*, 693 N.E.2d 65, 69 (Ind. 1998). | **Two years from occurrence of act.**<br><br>Ind. Code Ann. § 24-5-0.5-5(b). | **"Actual damages" required.**<br><br>Ind. Code Ann. § 24-5-0.5-4(a). | **Reliance and proximate causation required.**<br><br>Ind. Code Ann. § 24-5-0.5-4(a).<br><br>*Captain & Co. v. Steinberg*, 505 N.E.2d 88, 98-99 (Ind. Ct. App. 1987). | **Material omissions.**<br><br>Ind. Code Ann. § 24-5-0.5-3(a).<br><br>*Berghausen v. Microsoft Corp.*, 765 N.E.2d 592, 598 (Ind. Ct. App. 2002). | **"Incurable" deceptive practices require "knowing violation" and "intent to mislead"; most "uncured" deceptive practices require defendant had "[known] or reasonably should have known."**<br><br>*McKinney v. State*, 693 N.E.2d 65, 68-69 (Ind. 1998). | **Damages "actually suffered" or $500, whichever is greater. Allows damages for a willful deceptive act of three times actual damages or $1,000, whichever is greater.**<br><br>**Injunctive relief; discretionary attorney's fees.**<br><br>Ind. Code Ann. § 24-5-0.5-4; P.L. 165-2005; *Missi v. CCC Custom Kitchens, Inc.*, 731 N.E.2d 1037, 1041 (Ind. Ct. App. 2000). | **Requires notice to defendant unless deceptive act is "incurable."**<br><br>Ind. Code Ann. § 24-5-0.5-5.<br><br>**Money recovered in a class action that cannot be returned to consumers within one year reverts back to defendant.**<br><br>Ind. Code Ann. § 24-5-0.5-4(b). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **INDIANA (cont'd)** | | | | | | | **Prejudgment interest recoverable**<br><br>*Clark's Pork Farms v. Sand Livestock Sys., Inc.*, 563 N.E.2d 1292, 1301 (Ind. Ct. App. 1990); *Ind. Dep't of Pub. Welfare v. Chair Lance Serv., Inc.*, 523 N.E.2d 1373, 1379 (Ind. 1988); *Courtesy Enters., Inc. v. Richards Labs.*, 457 N.E.2d 572 (Ind. Ct. App. 1983). | |

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **IOWA**<br><br>*Consumer Fraud Act*<br><br>**Iowa Code § 714.16 (2006).** | **No private right of action; enforced only by attorney general.**<br><br>*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 228 (Iowa 1998). | *N/A* | *N/A* | *N/A* | *N/A* | *N/A* | *N/A* | *N/A* |

23

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **KANSAS**<br><br>*Consumer Protection Act*<br><br>**Kan. Stat. Ann. § 50-623, *et seq.*** | **Private right of action and class action allowed.**<br><br>Kan. Stat. Ann. § 50-634.<br><br>**Class actions only allowed for certain claims.**<br><br>Kan. Stat. Ann. § 50-634(d). | **Three years from date of violation.**<br><br>Kan. Stat. Ann. § 60-512(2).<br><br>*Alexander v. Certified Master Builders Corp.*, 268 Kan. 812, 824 (2000); *Haag v. Dry Basement, Inc.*, 11 Kan. App. 2d 649, 650-51 (1987). | **Only "aggrieved" consumer, one who suffers loss or injury, may recover damages.**<br><br>Kan. Stat. Ann. § 50-634(b).<br><br>*Finstad v. Washburn Univ. of Topeka*, 252 Kan. 465, 472 (1993); *Lowe v. Surpas Res. Corp.*, 253 F. Supp. 2d 1209, 1229 n. 16 (D. Kan. 2003). | **"Causal connection" required.**<br><br>Kan. Stat. Ann. §§ 50-626; 50-634(b).<br><br>*Finstad v. Washburn Univ. of Topeka*, 252 Kan. 465, 473 (1993); *Cole v. Hewlett-Packard Co.*, 2004 WL 376471, at *6 (Kan. Ct. App. Feb. 27, 2004). | **Misrepresentation or omission must be of a "material fact."**<br><br>Kan. Stat. Ann. § 50-626(b)(2)-(4). | **Most deceptive acts or practices require willful or knowing (or have reason to know of) misrepresentation or omission.**<br><br>Kan. Stat. Ann. § 50-626(a), (b)(2)-(4).<br><br>**Party must not willfully violate Act, but must merely engage in the willful use of a misrepresentation or an omission.**<br><br>*Moore v. Bird Eng'g Co.*, 273 Kan. 2, 14 (Kan. 2002); *York v. InTrust Bank, N.A.*, 265 Kan. 271, 291 (1998); *Haag v. Dry Basement, Inc.*, 11 Kan. App. 2d 649 (1987). | **In individual actions, plaintiff may recover equitable relief or the greater of damages or civil penalty of up to $10,000 for each violation.**<br><br>Kan. Stat. Ann. §§ 50-634(b), 50-636(a).<br><br>**Punitive damages.**<br><br>*York v. InTrust Bank, N.A.*, 962 P.2d 405, 429 (Kan. 1998); *Equitable Life Leasing Corp. v. Abbick*, 757 P.2d 304, 307-08 (Kan. 1988)¶ Kan. Stat. Ann § 50-636. | **Consumers limited to individuals, husbands and wives, sole proprietors, or family partnerships.**<br><br>Kan. Stat. Ann. § 50-624(b).<br><br>**Jury trial allowed.**<br><br>*Waggener v. Seever Sys., Inc.*, 233 Kan. 517 (1983). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| KANSAS (cont'd) | | | | | | | **Discretionary attorney's fees.**<br><br>Kan. Stat. Ann. § 50-634 (e); *Dodson v. U-Needa Self Storage*, 96 P.3d 667 (2004); *Watkins v. Roach Cadillac, Inc.*, 637 P.2d 458, 464 (Kan. Ct. App. 1981).<br><br>**Recovery in class actions limited to actual damages.**<br><br>Kan. Stat. Ann. § 50-636(d).<br><br>**Prejudgment interest.**<br><br>*Schnuelle v. C&C Auto Sales, Inc.*, 99 F. Supp. 2d 1294, 1298-99 (D. Kan. 2000). | |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **KENTUCKY**<br><br>*Consumer Protection Act*<br><br>**Ky. Rev. Stat. Ann. § 367.110 *et seq.* (2006).** | **Private right of action allowed.**<br><br>Ky. Rev. Stat. Ann. § 367.220(1).<br><br>**Class action likely prohibited.**<br><br>*Arnold v. Microsoft Corp.*, 2001 WL 193765, at *6 (Ky. Cir. Ct. July 21, 2000). | **One year after any action brought by attorney general terminated or within two years after violation of Act, whichever is later.**<br><br>Ky. Rev. Stat. Ann. § 367.220(5).<br><br>**Discovery rule does not apply.**<br><br>*Cook v. State Farm Mut. Auto. Ins. Co.*, 2004 WL 2011375, at *3-*4 (Ky. Ct. App. Sept. 10, 2004). | **Must suffer "ascertainable loss of money or property, real or personal, as a result of" violation.**<br><br>Ky. Rev. Stat. Ann. § 367.220(1).<br><br>**Does not require proof of actual deception of some person.**<br><br>*Telcom Directories, Inc. v. Commonw. ex. rel. Cowan*, 833 S.W.2d 848, 850 (Ky. Ct. App. 1991). | **Proximate causation or causal relationship between act or practice and injury.**<br><br>Ky. Rev. Stat. Ann. § 367.220(1).<br><br>*Ky. Laborers Dist. Council Health & Welfare Trust Fund v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 774 (W.D. Ky. 1998); *Woods v. Walgreen Co.*, 2003 WL 1239364, at *3 (W.D. Ky. Mar. 17, 2003). | **Material omissions.**<br><br>*Smith v. Gen. Motors Corp.*, 979 S.W.2d 127, 230-31 (Ky. Ct. App. 1998). | **Must show defendant's actions are intentional or grossly negligent.**<br><br>*Sparks v. Re/Max Allstar Realty, Inc.*, 55 S.W. 3d 343, 348 (Ky. Ct. App. 2000); *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991). | **Actual damages, discretionary punitive damages, equitable relief, reasonable attorney's fees, and costs allowed.**<br><br>Ky. Rev. Stat. Ann. § 367.220(1), (3). | **Limited to persons who purchase or lease goods or services for personal, family, or household purposes.**<br><br>Ky. Rev. Stat. Ann § 367.220(1).<br><br>*Hunt Enters., Inc. v. John Deere Indus. Equip. Co.*, 18 F. Supp. 2d 697, 702 (W.D. Ky. 1997). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **LOUISIANA**<br><br>*Unfair Trade Practices Acs*<br><br>**La. Rev. Stat. Ann. § 51:1401 *et seq.* (2006).** | **Private right for individuals only; class actions prohibited.**<br><br>La. Rev. Stat Ann. § 51:1409(A).<br><br>*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 174-75 (5th Cir. 2004). | **One year "from the time of the transaction or act."**<br><br>La. Rev. Stat. Ann. § 51:1409(E).<br><br>*Mayo v. Simon*, 646 So. 2d 973, 976 (La. Ct. App. 1994). | **"[A]scertainable loss of money or movable property" required.**<br><br>La. Rev. Stat. Ann. § 51:1409(A).<br><br>*Landrum v. Bd. of Comm'rs of Orleans Levee Dist.*, 758 F. Supp. 387, 392 (E.D. La. 1991). | **Loss must have occurred "as a result of the use or employment by another person of an unfair or deceptive method, act or practice."**<br><br>La. Rev. Stat. Ann. § 51:1409(A). | **Material omissions.**<br><br>*Coffey v. Peoples Mortg. & Loan of Shreveport, Inc.*, 408 So.2d 1153, 1156 (La. App. 1981). | **Defendant must have acted "knowingly" for treble damages.**<br><br>La. Rev. Stat. Ann. § 51:1409(A). | **Permits recovery of actual damages; attorney's fees; and treble damages for knowing violations, but only if the defendant is "put on notice by the director or attorney general."**<br><br>La. Rev. Stat. Ann. § 51:1409(A); *Laurents v. La. Mobile Homes, Inc.*, 689 So. 2d 536 (La. Ct. App. 1997).<br><br>**Prejudgment interest.**<br><br>La. Rev. Stat. Ann. § 13:4203. | **"Consumer transaction" defined to require a "natural person" transacting "primarily ... for personal, family, or household use."**<br><br>La. Rev. Stat. Ann. § 51:1402(3). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **MAINE**<br><br>*Unfair Trade Practices Act*<br><br>**Me. Rev. Stat. Ann. tit. 5, § 205-A *et seq.* (2006).** | **Private right of action and class actions allowed.**<br><br>Me. Rev. Stat. Ann. tit. 5, § 213.<br><br>*Tungate v. MacLean-Stevens Studios, Inc.*, 695 A.2d 564 (Me. 1997). | **Six years from discovery.**<br><br>Me. Rev. Stat. Ann. tit. 14, § 752.<br><br>*Campbell v. Machias Savs. Bank*, 865 F. Supp. 26, 34 (D. Me. 1994); *State v. Bob Chambers Ford, Inc.*, 522 A.2d 362, 364 (Me. 1987). | **Injury must be "loss of money or property, real or personal" and "must be substantial."**<br><br>Me. Rev. Stat. Ann. tit. 5, § 213(1).<br><br>*Tungate v. MacLean Stevens Studios, Inc.*, 714 A.2d 792, 797-98 (Me. 1998); *Tierney v. Ford Motor Co.*, 436 A.2d 866, 873 (Me. 1981). | **An injury under the Act "must be an injury that consumers themselves could not reasonably have avoided."**<br><br>*Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998); *Parker v. Ayre*, 612 A.2d 1283, 1284-85 (Me. 1992); *Ambrose v. New England Ass'n of Schs. and Colleges, Inc.*, 252 F.3d 488, 492 (1st Cir. 2001); *State v. Weinschenk*, 868 A.2d 200, 203 (Me. 2005). | **Act or practice must have "the effect of deceiving the consumer, or inducing her to purchase something that she would not otherwise purchase."**<br><br>*Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998). | **Intent to deceive not required.**<br><br>*Auto Europe, LLC v. Conn. Indem. Co.*, 321 F.3d 60 (1st Cir. 2003); State v. Weinschenk, 868 A.2d 200 (Me. 2005); *Binette v. Dyer Library Ass'n*, 688 A.2d 898 (Me. 1996); *Courtney v. Bassano*, 733 A.2d 973, 976 (Me. 1999). | **Actual damages or restitution and equitable relief, including injunction; but not both.**<br><br>Me. Rev. Stat. Ann. tit. 5, § 213(1).<br><br>**Attorney's fees permitted.**<br><br>Me. Rev. State. Ann. tit. 5, § 213(2).<br><br>**Prejudgment interest allowed.**<br><br>*State v. Bob Chambers Ford, Inc.*, 522 A.2d 362, 366 (Me. 1987). | **Applies only to purchase of goods or services "primarily for personal, family or household purposes."**<br><br>Me. Rev. Stat. Ann. titl 5, § 213(1).<br><br>**Right to a jury trial.**<br><br>Me. Rev. Stat. Ann. titl 5, § 213(1).<br><br>**Must send presuit notice to defendants 30 days prior to filing suit.**<br><br>Me. Rev. Stat. Ann. titl. 5, § 213(1-A). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **MAINE (cont'd)** | | | **Recovery limited to persons who actually purchased defendant's goods or services.**<br><br>Me. Rev. Stat. Ann. tit. 5, § 213(1).<br><br>*Hoglung ex rel. Johnson v. DaimlerChrysler Corp.*, 102 F. Supp. 2d 30, 32 (D. Me. 2000). | | | | **No punitive damages.**<br><br>*Taylor v. Phillip Morris, Inc.*, 2001 WL 1710710 (Me. Super. Ct. May 29, 2001). | **No claim if injury is "outweighed by any countervailing benefits to consumers or competition that the practice produces."**<br><br>*Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **MARYLAND**<br><br>*Consumer Protection Act*<br><br>**Md. Code Ann., Com. Law § 13-101 *et seq.* (2006).** | **Private right of action and class actions allowed.**<br><br>Md. Code Ann., Com. Law § 13-408(a).<br><br>*Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 234-36 (Md. 2000); *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 634 (Md. 1995). | **Three years.**<br><br>Md. Code Ann., Cts. & Jud. Proc. § 5-101.<br><br>*Greene Tree Home Owners Ass'n, Inc. v. Greene Tree Assocs.*, 749 A.2d 806, 820-21 (Md. 2000). | **Private right of action "may be invoked only to compensate a consumer for actual injury or loss."**<br><br>Md. Code Ann., Com. Law § 13-408(a); *Berg v. Byrd*, 720 A.2d 1283, 1286 (Md. Ct. Spec. App. 1998); *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 634 (Md. 1995); *D&G Flooring, LLC v. Home Depot USA, Inc.*, 346 F. Supp. 2d 818, 823 (D. Md. 2004).<br><br>**Representation must have the "capacity, tendency, or effect of deceiving or misleading consumer."**<br><br>Md. Code Ann., Com. Law § 13-301(1). | **Private right of action for damages requires injury or loss "as the result" of proscribed practice.**<br><br>Md. Code Ann., Com. Law § 13-408(a). | **Misrepresentation or omission must be of a "material fact."**<br><br>Md. Code Ann., Com. Law § 13-301(3), (4), (9).<br><br>**A deceptive practice must include a material misrepresentation involving information important to consumers, and therefore likely to affect their choice of product.**<br><br>*Luskin's, Inc. v. Consumer Prot. Div.*, 726 A.2d 702, 713 (Md. 1999). | **Scienter not required.**<br><br>Md. Code Ann., Com. Law § 13-301(1).<br><br>*Consumer Prot. Div. v. Morgan*, 874 A.2d 919 (Md. 2005); *Golt v. Phillips*, 517 A.2d 328, 332-33 (Md. 1986). | **For private right of action, compensatory damages; no punitive damages.**<br><br>Md. Code Ann., Com. Law § 13-408(a); *Golt v. Phillips*, 517 A.2d 328, 333 (Md. 1986); *McGraw v. Loyola Ford, Inc.*, 723 A.2d 502, 510 (Md. 1999); *Hoffman v. Stamper*, 867 A.2d 276, 304 (Md. 2005).<br><br>**Attorney's fees may also be recovered after other damages are awarded.**<br><br>Md. Code Ann., Com. Law § 13-408(b). | **The intent of the General Assembly is that, in construing the term "unfair or deceptive trade practices," due consideration and weight be given to the interpretations of § 5(a)(1) of the Federal Trade Commission Act by the Federal Trade Commission and the federal courts.**<br><br>Md. Code Ann., Com. Law § 13-105. |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **MASSACHUSETTS**<br><br>*Consumer Protection Act*<br><br>**Mass. Gen. Laws ch. 93A, § 1 *et seq.* (2006).** | **Private right of action and class actions allowed.**<br><br>Mass. Gen. Laws ch. 93A, § 9(1), (2).<br><br>*Szymanski v. Boston Mut. Life Ins. Co.*, 778 N.E.2d 16, 19-20 (Mass. Ct. App. 2002). | **Four years from discovery.**<br><br>Mass. Gen. Laws ch. 260, § 5A (2006). | **Injury required.**<br><br>Mass. Gen. Laws ch. 93A, § 9(1).<br><br>*Hershenow v. Enter. Rent-a-Car Co. of Boston, Inc.*, 840 N.E. 2d 526, 535 (Mass. 2006). | **Causation required between unfair acts and claimed loss.**<br><br>*Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 486 (Mass. 2004); *Fraser Eng'g Co. v. Desmond*, 524 N.E.2d 110, 113 (Mass. Ct. App. 1988); *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975).<br><br>**Reliance not required.**<br><br>*Sebago, Inc. v. Beazer E., Inc.*, 18 F. Supp. 2d 70, 103 (D. Mass. 1998). | **Deceptive if contains material omission.**<br><br>*Underwood v. Risman*, 605 N.E.2d 832 (Mass. 1993); *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 487 (Mass. 2004). | **No intention to deceive need be shown; defendant need not know representation was false.**<br><br>*Swanson v. Bankers life Co.*, 450 N.E.2d 577, 580 (Mass. 1983); *Fraser Eng'g Co., Inc. v. Desmond*, 524 N.E.2d 110, 113 (Mass. Ct. App. 1988); *Golder v. BayBank Valley Trust Co.*, 704 N.E.2d 1191 (Mass. Ct. App. 1999); *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975). | **Greater of actual damages or $25 and double to treble damages for "willful or knowing" violations.**<br><br>Mass. Gen. Laws ch. 93A § 9(3); *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 490 (Mass. 2004).<br><br>**Prejudgment interest.**<br><br>*McEvoy Travel Bur., Inc. v. Norton Co.*, 563 N.E.2d 188 (Mass. 1990); *Patry v. Liberty Mobilehome Sales, Inc.*, 475 N.E.2d 392 (Mass. 1985).<br><br>**Attorney's fees mandatory.**<br><br>Mass. Gen. Laws ch. 93A § 9(4). | **Presuit demand required at least thirty days prior to filing action.**<br><br>Mass. Gen. Laws ch. 93A, § 9(3).<br><br>**If reasonable settlement offer rejected by plaintiffs, court may limit recovery to settlement amount.**<br><br>Mass. Gen. Laws ch. 93A, § 9(3), (4).<br><br>**No jury trial right.**<br><br>*Travis v. McDonald*, 643 N.E.2d 734 (Mass. 1994). |

| JURISDICTION / LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **MICHIGAN**<br><br>*Consumer Protection Act*<br><br>**Mich. Compl. Laws Ann. § 445.901 *et seq.* (2006).** | **Private right of action and class actions allowed.**<br><br>Mich. Comp. Laws Ann. § 445.911. | **Later of 6 years after occurrence of act and 1 year after last payment.**<br><br>Mich. Comp. Laws Ann. § 445.911(7). | **Plaintiff must have "suffer[ed a] loss."**<br><br>Mich. Comp. Laws. Ann. § 445.911(2).<br><br>**The act allows recovery for mental distress where those damages are the "legal and natural consequences of the wrongful act and might reasonably have been anticipated."**<br><br>*Lozada v. Dale Baker Oldsmobile, Inc.*, 136 F. Supp. 2d 719, 728 (W.D. Mich. 2001). | **Loss must be "as a result of a violation" of the Act.**<br><br>Mich. Compl. Laws Ann. § 445.911(2).<br><br>**Misleading acts or practices must be proximate cause of any damages.**<br><br>*Zine v. Chrysler Corp.*, 600 N.W.2d 384, 399 (Mich. Ct. App. 1999).<br><br>**Members of a class action "need not individually prove reliance on the alleged misrepresentations, " just show reasonable person would have relied.**<br><br>*Dix. v. Am. Bankers Life Assurance Co. of Fla.*, 415 N.W.2d 206, 209 (Mich. 1987). | **Actions under § 455.903(1)(s), (bb), and (cc) require omission or misrepresentation as to a material fact, which is a fact "that is important to the transaction or affects the consumer's decision to enter into the transaction."**<br><br>Mich. Comp. Laws Ann. § 455.903(1)(s), (bb), (cc). *Zine v. Chrysler Corp.*, 600 N.W.2d 384, 398 (Mich. Ct. App. 1999). | **Plaintiff must show defendant's "intent to deceive through a pattern of misrepresentations."**<br><br>Mich. Comp. Laws Ann. § 445.911(6); *Dix v. American Bankers Life Assurance Co. of Fla.*, 415 N.W.2d 206, 209 (Mich. 1987). | **In individual actions, the greater of actual damages or $250, and attorney's fees.**<br><br>**Class actions are limited to actual damages.**<br><br>**Injunctive and declaratory relief also available.**<br><br>Mich. Comp. Laws Ann. § 445.911(2), (3); *Smolen v. Dahlmann Apartments, Ltd.*, 186 Mich. App. 292 (1990). | **Must be "primarily for personal, family, or household purposes."**<br><br>Mich. Comp. Laws Ann. § 445.902(d).<br><br>**"[I]f an item is purchased primarily for business or commercial rather than personal purposes, the [Act] does not supply protection."**<br><br>*Zine v. Chrysler, Corp.*, 600 N.W.2d 384, 393 (Mich. Ct. App. 1999). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **MICHIGAN** (cont'd) | | | | | **Requires proof that a "reasonable person would have relied on the representations."**<br><br>*Dix v. American Bankers Life Assurance Co. of Fla.*, 415 N.W.2d 206, 209 (Mich. 1987). | | **Punitive damages allowed for persistent and knowing violations, not to exceed $25,000.**<br><br>Mich. Comp. Laws Ann. § 445.905(1). | **If a defendant shows that a violation was through a good-faith error, plaintiff's damages are limited to actual damages.**<br><br>Mich. Comp. Laws Ann. § 445.911(6). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **MINNESOTA**<br><br>*Consumer Fraud Act*<br><br>**Minn. Stat. § 325F.68-.70 (2006).** | **Private right of action and class actions allowed**<br><br>Minn. Stat. § 8.31(3a).<br><br>*Dahl v. Charles Schwab & Co.*, 545 N.W.2d 918, 920 (Minn. 1996). | **Six years.**<br><br>Minn. Stat. § 541.05(1).<br><br>*Estate of Riedel v. Life Care Retirement Communities, Inc.*, 505 N.W.2d 78, 83 (Minn. Ct. App. 1993). | **Civil remedy available to "any person injured."**<br><br>Minn. Stat. § 8.31(3a).<br><br>**Not limited to actual purchaser of products, "as long as the plaintiff alleges an injury" from conduct prohibited under the Act**<br><br>*Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 11 (Minn. 2001). | **Injury must be "by a violation" of the Act.**<br><br>Minn. Stat. § 8.31(3a).<br><br>**There must be a "proper legal nexus between the complained of acts and their alleged monetary losses."**<br><br>*LeSage v. Norwest Bank Calhoun-Isles, N.A.*, 409 N.W.2d 536, 539 (Minn. Ct. App. 1987). | **Deception must be "material" to the "buying decisions" of plaintiffs.**<br><br>*Nordale, Inc. v. Samsco, Inc.*, 830 F. Supp. 1263, 1272 (D. Minn. 1993). | **Must establish that defendants "intended to induce reliance."**<br><br>*Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 553 (D. Minn. 1999). | **Actual damages, "costs of investigation," reasonable attorney's fees, and injunctive relief.**<br><br>Minn. Stat. § 8.31(3a). | **Complained-of-misrepresentations must be "commercial advertising," made with the intent to influence purchasing decisions and disseminated to the public.**<br><br>*Group Health Plan, Inc. v. Philip Morris, Inc.*, 68 F. Supp. 2d 1064, 1069-70 (D. Minn. 1999). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **MINNESOTA (cont'd)** | | | **Statements must "actually deceive[] or have the tendency to deceive a substantial segment of their audience."**<br><br>*Nordale, Inc. v. Samsco, Inc.*, 830 F.Supp. 1263, 1272 (D. Minn. 1993). | **Proof of reliance is required for damages (but not for injunctive relief).**<br><br>*Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 553 (D. Minn. 1999); *Parkhill v. Minn. Mut. Life Ins. Co.*, 188 F.R.D. 332 (D. Minn. 1999); *Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 11 (Minn. 2001). | | | **Actual damages are to be measured by the "out-of-pocket" loss, or the difference between the actual value of the merchandise and the price paid for the merchandise "along with any special damages naturally and proximately caused by the fraud prior to its discovery, including expenses incurred in mitigating the damages."**<br><br>*B.F. Goodrich Co. v. Mesabi Tire Co.*, 430 N.W.2d 180, 182 (Minn. 1988); *Higgins v. Harold-Chevrolet-Geo, Inc.*, 2004 WL 2660923 (Minn. Ct. App. Nov. 23, 2004). | |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **MISSISSIPPI**<br><br>*Consumer Protection Act*<br><br>**Miss. Code Ann. § 75-24-1 *et seq.* (2006).** | **Private right of action for individuals, but not business or commercial entities, and only after exhausting administrative remedies.**<br><br>**Class actions are not allowed.**<br><br>Miss. Code Ann. § 75-24-15(1)-(4). | **Three years.**<br><br>Miss. Code Ann. § 15-1-49.<br><br>*Clark v. Commercial Credit Corp.*, 357 F. Supp. 2d 962, 965 (S.D. Miss. 2005). | **Plaintiff must have suffered "any ascertainable loss of money or property."**<br><br>Miss. Code Ann. § 75-24-15(1).<br><br>**Statements need not be literally false, but only must be capable of deceiving a reasonable person.**<br><br>*Sw. Starving Artists Group, Inc. v. State ex rel. Summer*, 364 So. 2d 1128, 1131 (Miss. 1978). | **"Ascertainable loss" must be "a result of" unlawful acts.**<br><br>Miss. Code Ann. § 75-24-15-(1). | **Omissions likely actionable.**<br><br>Miss. Code Ann. § 75-24-3(c) (courts interpreting statute must be guided by interpretations of FTC Act by federal courts); *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988) (cause of action for omissions allowed). | **Only some subsect ions require intent.**<br><br>E.g., Miss. Code Ann. § 75-24-15(i) and (j). | **Compensatory damages only.**<br><br>Miss. Code Ann. § 75-24-15(1).<br><br>**Court may award prevailing defendant attorney's fees and costs if plaintiffs' claims were frivolous.**<br><br>Miss. Code Ann. § 75-24-15(3).<br><br>**Civil penalty of $10,000 if violation was knowing or willful.**<br><br>Miss. Code Ann. § 75-24-19. | **Private right of action limited to purchases of goods or services "primarily for personal, family or household purposes."**<br><br>Miss. Code Ann. § 75-24-15(1).<br><br>**Prior to bringing a claim, plaintiff must have made a reasonable attempt to resolve any claim through informal dispute program.**<br><br>Miss. Code Ann. § 75-24-15(2). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **MISSOURI**<br><br>*Merchandising Practices Act*<br><br>**Mo. Ann. Stat. § 407.010 *et seq.* (2006).** | **Private right of action and class actions allowed; limited to "merchandise primarily for personal, family or household purposes."**<br><br>Mo. Ann. Stat. § 407.025. | **Five years.**<br><br>Mo. Ann. Stat. § 516.120. | **Plaintiffs must have suffered an "ascertainable loss of money or property."**<br><br>Mo. Ann. Stat. § 407.025(1).<br><br>**Reliance not required.**<br><br>*State v. AreaCo. Inv. Co.*, 756 S.W.2d 633, 635-36 (Mo. App. 1988). | **"Ascertainable loss" must be "a result of" unlawful acts.**<br><br>Mo. Ann. Stat. § 407.025(1).<br><br>**Injury must be "proximately caused by defendant's actions."**<br><br>*Willard v. Bic Corp.*, 788 F. Supp. 1059, 1070 (W.D. Mo. 1991). | **Omissions are prohibited.**<br><br>Mo. Ann. Stat. § 407.020(1). | **No need to prove intent.**<br><br>*E.g.*, *State ex rel. Nixon v. Beer Nuts*, 29 S.W.3d 828, 837 (Mo. Ct. App. 2000) (the Act eliminates need to prove intent); *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 634 (Mo. Ct. App. 1988) ("It is the defendant's conduct, not his intent, which determines whether a violation has occurred."). | **Actual damages and discretionary punitive damages and attorney's fees.**<br><br>Mo. Ann. State. § 407.025(1). | **Consumers who purchase goods for their business do not have standing to sue under the Act.**<br><br>*Saey v. CompUSA, Inc.*, 174 F.R.D. 448, 450 (E.D. Mo. 1997) (purchaser of computer for his business could not sue under the Act).<br><br>**Specific class action requirements within the Act.**<br><br>Mo. Ann. Stat. § 407.025(3)-(4). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **MONTANA**<br><br>*Unfair Trade Practices and Consumer Protection Act*<br><br>**Mont. Code Ann. § 30-14-101 *et seq.* (2006).** | **Private right of action.**<br><br>Mont. Code Ann. § 30-14-133(1).<br><br>**Class actions cannot recover actual damages.**<br><br>Mont. Code Ann. § 30-14-133(1). | **Two years.**<br><br>Mont. Code Ann. § 27-2-211; *Osterman v. Sears, Roebuck & Co.*, 80 P.3d 435 (Mont. 2003).<br><br>**Statute of limitations tolled by reasonable diligence.**<br><br>*Johnson v. Barrett*, 983 P.2d 925 (Mont. 1999). | **Plaintiff need only show an ascertainable loss.**<br><br>Mont. Code Ann. § 30-14-133(1). | **Reliance probably not required.**<br><br>*See, e.g.*, *Durbin v. Ross*, 916 P.2d 758 (Mont. 1996) (listing reliance as element for fraud but not for CPA violations). | **Undecided.** | **No need to show malice or intent.**<br><br>*T&W Chevrolet v. Darvial*, 641 P.2d 1368, 1371 (Mont. 1982). | **Actual damages or $500, whichever is greater, recoverable by individual; not in class actions.**<br><br>Mont. Code Ann. § 30-14-133(1).<br><br>**Discretionary attorney's fees to prevailing plaintiff.**<br><br>Mont. Code Ann. § 30-14-133(3); *Tripp v. Jeld-Wen, Inc.*, 112 P.3d 1018 (Mont. 2005).<br><br>**Treble damages available.**<br><br>*Plath v. Schonrock*, 64 P.3d 984 (Mont. 2003). | None found. |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **NEBRASKA**<br><br>*Consumer Protection Act (CPA)*<br><br>**Neb. Rev. Stat. §§ 59-1601–1623.**<br><br>*Uniform Deceptive Trade Practices Act (DTPA)*<br><br>**Neb. Rev. Stat. §§ 87-301–306.** | **Under the CPA, unfair or deceptive act must have an impact on the public interest.**<br><br>Neb. Rev. Stat. Ann. §§ 59-1609, 87-303(a).<br><br>*Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136 (Neb. 2000) ("The act is not available to redress a private wrong where the public interest is not affected."). | **For CPA actions, four years after the cause of action accrues.**<br><br>Neb. Rev. Stat. Ann. § 59-1612.<br><br>**For DTPA actions, four years from the date of the purchase of goods.**<br><br>Neb. Rev. Stat. Ann. § 87-303.10; *Meyer Bros. Inc. v. Travelers Ins. Co.*, 250 Neb. 389 (Neb. 1996). | **Plaintiff must be injured in his business or property.**<br><br>Neb. Rev. Stat. § 59-1609. | **"In order to establish an act or practice is deceptive, the FTC must establish that the representations, omissions, or practices likely would mislead consumer, acting reasonably, to their detriment."**<br><br>Neb. Rev. Stat. Ann. §§ 59-1609, 87-303(a). | **"Any provision of Ch. 59 shall follow the construction given to the federal law by the federal courts."**<br><br>Neb. Rev. Stat. Ann. §§ 59-1609, 87-303(a).<br><br>**Plaintiff must prove "that the practice possessed the tendency or capacity to mislead, or created the likelihood of deception."**<br><br>*Raad v. Wal-Mart Stores, Inc.*, 13 F. Supp. 2d 1003, 1014 (D. Neb. 1998). | **No scienter requirement.**<br><br>Neb. Rev. Stat. Ann. § 87-303(a).<br><br>**Plaintiff must rely on the misrepresentation; knowledge by plaintiff of the truth prior to acting will negate a claim.**<br><br>*Raad v. Wal-Mart Stores, Inc.*, 13 F. Supp. 2d 1003, 1016 (D. Neb. 1998). | **CPA allows for recovery of actual damages.**<br><br>Neb. Rev. Stat. Ann. § 59-1609.<br><br>**Court can increase the award to bear a reasonable relation to actual damages which are not susceptible of measurement by ordinary pecuniary standards, but not to exceed $1000.**<br><br>Neb. Rev. Stat. Ann. § 59-1609.<br><br>**DTPA does not allow for recovery of actual damages.**<br><br>*Triple-7, Inc. v. Intervet, Inc.*, 338 F. Supp. 2d 1082 (D. Neb. 2004). | **To be actionable under the Act, "the unfair or deceptive act or practice must have an impact upon the public interest."**<br><br>*Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 141-42 (Neb. 2000).<br><br>**Impact on the public interest can be direct or indirect.**<br><br>*Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 38 (Neb. 2004). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **NEVADA**<br><br>*Deceptive Trade Practices Act*<br><br>**Nev. Rev. Stat. § 598.0903 *et seq.* (2006).** | **Only elderly or disabled have a private right of action under the Act.**<br><br>Nev. Rev. Stat. § 598.0977. | **4 years, accruing from the date facts constituting deceptive trade practice were discovered or should have been discovered.**<br><br>Nev. Rev. Stat. § 11.190(2)(d). | **Claim limited to recovery of "any damages" sustained.**<br><br>Nev. Rev. Stat. § 41.600(3)(a). | **A claim may be brought by or on behalf of "any person who is a victim of consumer fraud."**<br><br>Nev. Rev. Stat. § 41.600(1). | **Deceptive trade practices include "fail[ure] to disclose a material fact in connection with sale or lease of goods."**<br><br>Nev. Rev. Stat. § 598.0923(2). | **Requires defendant knowingly make a false representation or knowingly fail to disclose a material fact.**<br><br>Nev. Rev. Stat. §§ 598.0915, 598.0923(2); *Scaffidi v. United Nissan*, 425 F. Supp. 2d 1172 (D. Nev. 2005) (no cause of action against a car dealer where no evidence of intentional deception). | **Only elderly or disabled may recover actual damages, punitive damages, and attorney's fees.**<br><br>Nev. Rev. Stat. § 598.0977. | **None found.** |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **NEW HAMPSHIRE**<br><br>*N.H. Consumer Protection Act ("CPA")*<br><br>**N.H. Rev. Stat. Ann. § 358-A:1 *et seq.* (2006).** | **Private right of action and class actions allowed.**<br><br>N.H. Rev. Stat. Ann. §§ 358-A:10, 358-A:10-a. | **Three years, but evidence of conduct more than three years earlier may be introduced.**<br><br>N.H. Rev. Stat. Ann. § 358-A: 3. | **Act allows "any person injured" to bring a claim and to bring a class action "if the unlawful act or practice has caused similar injury to numerous other persons."**<br><br>N.H. Rev. Stat. Ann. § 358-A:10-a.<br><br>**The Act "does not require a showing of actual damages for the claimant to be awarded the statutory minimum and attorney's fees."**<br><br>*Preferred Nat'l Ins. Co. v. Docusource, Inc.*, 829 A.2d 1068, 1075 (N.H. 2003). | **Plaintiffs must establish a "causal link" between the unlawful conduct and their injuries.**<br><br>*Mulligan v. Choice Mortgage Corp. USA*, 1998 WL 544431, at *11 (D.N.H. Aug. 11, 1998). | **Material omissions may be actionable.**<br><br>*See State v. Moran*, 861 A.2d 763, 785 (N.H. courts look to FTC Act for guidance); *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988) (omissions are actionable under FTC Act). | **No level of scienter required for actual damages. Damages doubled or trebled for "willful or knowing violations."**<br><br>N.H. Rev. Stat. Ann. § 358-A:10.<br><br>**"The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce."**<br><br>*Barrows v. Boles*, 687 A.2d 979, 986-87 (N.H. 1996) (citation omitted). | **In individual actions, greater of actual damages or $1,000 and attorney's fees; if the violation was "willful or knowing," court shall award between two and three times actual damages.**<br><br>N.H. Rev. Stat. Ann. § 358-A:10.<br><br>**Class action damages limited to actual damages, equitable relief, and discretionary attorney's fees.**<br><br>N.H. Rev. Stat. Ann. § 358-A:10-a. | **Class actions explicitly permitted by the Act.**<br><br>N.H. Rev. Stat. Ann. § 358-A:10-a. |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **NEW JERSEY**<br><br>*Consumer Fraud Act*<br><br>**N.J. Stat. Ann. § 56:8-19** ***et seq.*** **(2005).** | **Private right of action and class actions allowed.**<br><br>N.J. Stat. Ann. § 56:8-19.<br><br>*Weinberg v. Sprint Corp*, 801 A.2d 281 (N.J. 2002). | **Six years.**<br><br>N.J. Stat. Ann. § 2A:14-1.<br><br>*Mirra v. Holland Am. Line*, 331 N.J. Super. 86, 90 (App. Div. 2000). | **Plaintiff must show "ascertainable loss of moneys or property."**<br><br>N.J. Stat. Ann. § 56:8-19.<br><br>**Standing requires a plaintiff to plead a claim for damages that would survive a summary judgment motion.**<br><br>*Weinberg v. Sprint Corp.*, 801 A.2d 281, 283 (N.J. 2002). | **Plaintiff must "prove that the unlawful consumer fraud caused his loss."**<br><br>*Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 464 (N.J. 1994).<br><br>**"But for" test applies for proximate cause determination.**<br><br>*Fink v. Ricoh Corp.*, 839 A.2d 942 (N.J. Super. 2003). | **Material omissions are prohibited.**<br><br>N.J. Stat. Ann. § 56:8-2. | **Defendant's intent is not an element; liability for affirmative misrepresentations requires no knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive; for omissions must show knowledge AND intent.**<br><br>*Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 365 (N.J. 1997). *See also Thiedmann v. Mercedes-Benz USA, Inc.*, 872 A.2d 783, 791 (N.J. 2005). | **Damages are limited to a party's ascertainable loss of money or property."**<br><br>N.J. Stat. Ann. § 56:8-19.<br><br>**No punitive damages, but treble damages are mandatory once plaintiff proves an unlawful practice under the Act and resulting ascertainable loss.**<br><br>N.J. Stat. Ann. § 56:8-19.<br><br>*Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 465 (N.J. 1994). | **Plaintiff must mail a copy of the complaint to the attorney general within 10 days of filing.**<br><br>N.J. Stat. Ann. § 56:8-20. |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **NEW JERSEY (cont'd)** | | | | **Liability under the Act "does not require proof of reliance."**<br><br>*DaBosh v. Mercedes Benz USA, Inc.*, 874 A.2d 1110, 1121 (N.J. Super. Ct. App. Div. 2005); *N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 178 (N.J. Super. Ct. App. Div. 2003). | | | **Attorney's fees and costs available to prevailing plaintiffs.**<br><br>N.J. Stat. Ann. § 56:8-19.<br><br>*BJM Insulation & Constr. Inc. v. Evans*, 287 N.J. Super. 513, 517 (App. Div. 1996) (fees mandatory if plaintiff proves unlawful practice). | |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **NEW MEXICO**<br><br>*Unfair Trade Practices*<br><br>**N.M. Stat. Ann. § 57-12-1 *et seq.* (2005).** | **Private right of action and class actions allowed.**<br><br>N.M. Stat. Ann. § 51-12-10. | **Four years from discovery of violation.**<br><br>N.M. Stat. Ann. § 37-1-4; *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430 (10th Cir. 1996). | **No injury requirement for injunctive relief only.**<br><br>N.M. Stat. Ann. § 57-12-10(A).<br><br>**In a suit for damages, plaintiffs must have suffered a "loss of money or property."**<br><br>N.M. Stat. Ann. § 57-12-10(B).<br><br>**Only named plaintiffs may recover statutory damages of $100 without proving actual damages.**<br><br>N.M. Stat. Ann. § 57-12-10(E). | **Any person who suffers a loss of money or property "as a result of" unlawful acts may bring an action.**<br><br>N.M. Stat. Ann. § 57-12-10(B).<br><br>**Plaintiff must show defendant's violation proximately caused plaintiff damages.**<br><br>*See Uniform Jury Instructions* 13-1707 NMRA (instructing that plaintiffs "may recover damages proximately caused by the deceptions") *Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311 (N.M. 1991). | **Material omissions are prohibited.**<br><br>N.M. Stat. Ann. § 57-122(D)(14).<br><br>**Material facts reasonably necessary to prevent any statements from being misleading must be disclosed.**<br><br>*Smoot v. Physician Life Ins. Co.*, 87 P.3d 545, 549 (N.M. Ct. App. 2003). | **Need not be intentionally made, but defendant must know that representation is false or in exercise of reasonable diligence should have known that representation is false.**<br><br>N.M. Stat. Ann. § 57-12-2(D).<br><br>*Taylor v. United Mgmt., Inc.*, 51 F. Supp. 2d 1212, 1216 (D.N.M. 1999); *Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311 (N.M. 1991).<br><br>**Willful violations allow for treble damages.**<br><br>N.M. Stat. Ann. § 57-12-10(B). | **Greater of actual damages or $100; discretionary treble damages if willful violation.**<br><br>N.M. Stat. Ann. § 57-12-10(B).<br><br>**Mandatory attorney's fees to successful plaintiff; Attorney's fees and costs to defendant if suit was "groundless."**<br><br>N.M. Stat. Ann. § 5-12-10(C).<br><br>**Unnamed class members limited to actual damages.**<br><br>N.M. Stat. Ann. § 57-12-10(E). | **Attorney's fees awarded to defendant where plaintiff's claims are groundless.**<br><br>N.M. Stat. Ann. § 57-12-10(C).<br><br>**"Good faith" defense available.**<br><br>*Hubbard v. Alburquerque Truck Ctr. Ltd.*, 958 P.2d 111, 118-19 (N.M. Ct. App. 1998). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **NEW YORK**<br><br>*Consumer Protection from Deceptive Acts and Practices*<br><br>**N.Y. Gen. Bus. Law §§ 349–350-f-1 (2004).** | **Private right of action and class actions available.**<br><br>N.Y. Gen. Bus. Law § 349(h).<br><br>*Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593 (App. Div. 1998).<br><br>**Plaintiff must show harm to public interest.**<br><br>*U-Neek, Inc. v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 158, 176 (S.D.N.Y. 2001). | **Three years.**<br><br>*Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1082 (N.Y. 2001). | **Plaintiff must prove actual injury but "not necessarily pecuniary harm."**<br><br>*Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000).<br><br>**Plaintiff "must plead facts showing actual injury, not merely the alleged deceptive act."**<br><br>*Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 415 (S.D.N.Y. 2004). | **Plaintiff must have suffered injury "as a result of the deceptive act," but "reliance is not an element" of the Act.**<br><br>*Stutman v. Chem. Bank*, 731 N.E.2d 608, 611-12 (N.Y. 2000); *Pelman ex. rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). | **"Whether a representation or omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances."**<br><br>*Stutman v. Chem. Bank*, 731 N.E.2d 608, 611-12 (N.Y. 2000). | **Intent to defraud is not an element of a claim under the Act.**<br><br>*Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000).<br><br>**Discretionary treble damages for willful or knowing violations.**<br><br>N.Y. Gen. Bus. Law § 349(h). | **Greater of actual damages or $50 in individual action; discretionary treble damages for willful or knowing violations; discretionary attorney's fees to prevailing party.**<br><br>N.Y. Gen. Bus. Law § 349(h); *Teller v. Hayes*, 213 A.D.2d 141, 147 (2d Dept. 1995); *Karlin v. IVF Am.*, 93 N.Y.2d 282, 291 (1999) (characterizing discretionary treble damages as "punitive damages"). | **The deception of a consumer must occur in New York.**<br><br>*Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190 (N.Y. 2002).<br><br>**A "complete defense" exists if the act or practice is "subject to and complies with the rules and regulations of ... the federal trade commission" or other governmental entity of the United States.**<br><br>N.Y. Gen. Bus. Law § 349(d). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **NEW YORK (cont'd)** | | | | | | | **Class recovery limited to actual damages and injunctive relief.**<br><br>*Super Glue Corp. v. Avis Rent A Car Sys., Inc.*, 517 N.Y.S.2d 764, 767 (App. Div. 1987).<br><br>**Reasonable attorney's fess are recoverable by prevailing plaintiff at court's discretion.**<br><br>N.Y. Gen. Bus. Law §§ 349(h), 350-c. | |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **NORTH CAROLINA**<br><br>*Monopolies, Trusts and Consumer Protection*<br><br>**N.C. Gen. Stat. § 75-1 *et seq.* (2005).** | **Private right of action and class actions allowed.**<br><br>N.C. Gen. Stat. § 75-16.<br><br>*Dash v. FirstPlus Home Owner Loan Trust 1996-2*, 248 F. Supp. 2d 489 (M.D.N.C. 2003). | **Four years from the alleged statutory violation.**<br><br>N.C. Gen. Stat. § 75-16.2.<br><br>*Hinson v. United Fin. Servs.*, 123 N.C. App. 469, 475 (1996). | **Actual injuries required.**<br><br>*Wilson v. Blue Ridge Elec. Membership Corp.*, 578 S.E.2d 692, 694 (N.C. Ct. App. 2003). | **Defendant's misrepresentations must have "proximately caused actual injury to plaintiff."**<br><br>*Wilson v. Blue Ridge Elec. Membership Corp.*, 578 S.E.2d 692, 694 (N.C. Ct. App. 2003).<br><br>**"Substantial factor" test applies in proximate cause determination.**<br><br>*Amer. Rockwool, Inc., v. Owens Corning Fiberglass*, 640 F. Supp. 1411, 1444 (E.D.N.C. 1986). | **In determining whether a representation is deceptive, "its effect on the average consumer is considered."**<br><br>*Spartan Leasing Inc. v. Pollard*, 400 S.E.2d 450, 476-482 (N.C. Ct. App. 1991).<br><br>**Material omissions prohibited.**<br><br>*S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 537-38 (4th Cir. 2002). | **"That defendants may have made these misrepresentations negligently and not in good faith, in ignorance of their falsity, and without intent to mislead, affords no defense to an action under [the Act]."**<br><br>*Forbes v. Par Ten Group, Inc.*, 394 S.E.2d 643, 651 (N.C. Ct. App. 1990).<br><br>**No particular scienter requirements.**<br><br>*Excel Staffing Serv., Inc. v. HP Reidsville, Inc.*, 616 S.E.2d 349 (N.C. Ct. App. 2005). | **Actual damages that were proximate result of prohibited conduct.**<br><br>N.C. Gen. Stat. § 76-16.<br><br>*Ellis v. Northern Star Co.*, 388 S.E.2d 127, 131 (N.C. 1990).<br><br>**Mandatory treble damages.**<br><br>N.C. Gen. Stat. § 76-16.<br><br>*Standing v. Midgett*, 850 F. Supp. 396, 402 (E.D.N.C. 1993). | **Prevailing defendant may receive attorney's fees and costs if court deems plaintiffs' suit frivolous.**<br><br>N.C. Gen. Stat. § 75-16. |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **NORTH CAROLINA (cont'd)** | | | | **It is unclear whether reliance is required.**<br><br>*Compare Cullen v. Valley Forge Life Ins.*, 589 S.E.2d 423 (N.C. Ct. App. 2003) (indicating that proof of reliance is not required) *with Tucker v. Boulevard at Piper Glen, LLC*, 564 S.E.2d 248, 251 (N.C. Ct. App. 2002) (stating that "actual reliance on the alleged misrepresentation" was required for proximate causation). | | | **Discretionary attorney's fees upon a finding that defendant's conduct was willful and defendant refused to negotiate settlement.**<br><br>N.C. Gen. Stat. § 75-16.1. | |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **NORTH DAKOTA**<br><br>*Consumer Fraud*<br><br>**N.D. Cent. Code § 51-15-01** ***et seq.*** **(2003).** | **Private right of action and class actions allowed.**<br><br>N.D. Cent. Code § 51-15-09.<br><br>*Hanson v. Acceleration Life Ins. Co.*, 1999 WL 33283345 (D.N.D. July 1, 1999). | **Six years.**<br><br>N.D. Cent. Code § 28-01-16(2). | **Plaintiffs must have suffered a loss of money or property.**<br><br>*N.D. Fair Hous. Council, Inc. v. Haider*, 1999 WL 33283355, at *3 (D.N.D. Mar. 9, 1999).<br><br>**Requires actual injury.**<br><br>*Ziegelmann v. Daimler-Chrysler Corp.*, 649 N.W.2d 556, 559 (2002 N.D. 2002). | **Reliance not required.**<br><br>N.D. Cent. Code § 51-15-02. | **Material omissions actionable.**<br><br>*Hanson v. Acceleration Life Ins. Co.*, 1999 WL 33283345 (D.N.D. July 1, 1999). | **Deceptive act must be made with the "intent that others rely" upon it.**<br><br>N.D. Cent. Code § 51-15-02.<br><br>**"Knowing" conduct may subject defendant to treble damages.**<br><br>N.D. Cent. Code § 51-15-09. | **Actual damages; if conduct was "knowing" treble damages allowed; attorney's fees and costs are mandatory if violation found.**<br><br>N.D. Cent. Code § 51-15-09. | **None found.** |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **OHIO**<br><br>*Ohio Consumer Sales Practices Act*<br><br>**Ohio Rev. Code Ann. § 1345.01 *et seq.* (2006).** | **Private right of action and class actions allowed.**<br><br>Ohio Rev. Code Ann. § 1345.09; *Parker v. I&F Insulation Co.*, 730 N.E.2d 972, 978-79 (Ohio 2000).<br><br>**Only consumers buying personal, family, or household goods have standing.**<br><br>Ohio Rev. Code Ann. § 1345.09.<br><br>**Class actions not allowed for claims based upon the attorney general's opinion or a court's decision and not express violation of Act.**<br><br>Ohio Rev. Code Ann. § 1345.09(B). | **Two years from occurrence or one year after government enforcement action, whichever is later.**<br><br>Ohio Rev. Code Ann. § 1345.10(C).<br><br>**No discovery exception for suits seeking damages.**<br><br>*Weaver v. Armando's, Inc.*, 2003 WL 22071470, at *6 (Ohio Ct. App. Sept. 3, 2003). | **Plaintiff must have suffered some damages or engaged in a transaction to be rescinded.**<br><br>Ohio Rev. Code Ann. § 1345.09(A).<br><br>**Remedies of cancellation of contract and statutory damages do not require actual damages.**<br><br>*New Phila., Inc. v. Sagrilla*, 2002 WL 1467771, at *5 (Ohio Ct. App. June 26, 2002). | **Deceptive act or practice need only be "in connection with" a consumer transaction.**<br><br>Ohio Rev. Code Ann. § 1345.02(A). | **Material omissions are actionable.**<br><br>*See, e.g., Delahunt v. Cytodyne Tech.*, 241 F. Supp. 2d 827, 834 (S.D. Ohio 2003). | **"Intent to deceive is not an element required for a violation of the deceptive-practices portion of the act."**<br><br>*Rose v. Zaring Homes, Inc.*, 702 N.E.2d 952, 956 (Ohio Ct. App. 1997). | **In individual action, actual damages or rescission; statutory damages available.**<br><br>Ohio Rev. Code Ann. § 1345.09(A), (B).<br><br>**If the defendant has pattern of violation, a consumer may recover treble damages.**<br><br>Ohio Rev. Code Ann. § 1345.09(B); *Perkins v. Stapleton Buick-GMC Truck, Inc.*, 2001 WL 669565, at *5 (Ohio Ct. App. June 15, 2001). | **Transaction must involve goods/services for "primarily personal, family, or household" use.**<br><br>Ohio Rev. Code Ann. § 1345.01(A).<br><br>**Practices not expressly listed in the Act may become actionable upon a ruling by the state attorney general or by decision of state court, but no class actions allowed for these claims.**<br><br>Ohio Rev. Code Ann. § 1345.09(B). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| OHIO (cont'd) | | | | | | | **Discretionary Attorney's fees to prevailing party, only if Defendant knew actions violated the law.**<br><br>Ohio Rev. Code Ann. § 1345.09(F).<br><br>*Bierlein v. Alex's Cont'l Inn, Inc.*, 16 Ohio App. 3d 294, (1984). | **Defense if defendant furnished similar merchandise of equal or greater value as a good faith substitute for a previous representation.**<br><br>Ohio Rev. Code Ann. § 1345.02(B)(5). |

| JURISDICTION / LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **OKLAHOMA**<br><br>*Consumer Protection Act*<br><br>**Okla. Stat. Ann. tit. 15, § 751 *et seq.* (2005).** | **Private right of action and class actions allowed.**<br><br>Okla. Stat. Ann. tit. 15, § 761.1(A), (B).<br><br>*Patterson v. Beall*, 19 P.3d 839 (Okla. 2000). | **Three years for damages claims; one year for penal claims.**<br><br>*Brashears v. Sight 'N Sound Appliance Ctrs.*, 981 P.3d 1270, 1273-79 (Okla. 1999). | **Deceptive trade practice is a misrepresentation or omission that "could reasonably be expected to deceive or mislead a person" to that person's detriment.**<br><br>Okla. Stat. Ann. tit. 15, § 752(13).<br><br>*Patterson v. Beall*, 19 P.3d 839, 847 n.12 (Okla. 2000) (plaintiff must have relied on the conduct). | **The challenged practice must have caused the plaintiff's injuries.**<br><br>Okla. Stat. Ann. tit. 15, §§ 753, 761.1(A).<br><br>*Patterson v. Beall*, 19 P.3d 839, 846-47 (Okla. 2000) (consumer must have suffered an injury in fact caused by the challenged practice). | **"Deceptive trade practice" includes "omission ... that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person."**<br><br>Okla. Stat. Ann. tit. 15, § 752(13).<br><br>**Misrepresentation or omission must have "the capacity to deceive the consumer."**<br><br>*Patterson v. Beall*, 19 P.3d 839, 847 n.12 (Okla. 2000). | **Whether knowledge is required depends on the particular provision alleged to have been violated.**<br><br>*Patterson v. Beall*, 19 P.3d 839, 847 n.12 (Okla. 2000).<br><br>*See* Okla. Stat. Ann. tit. 15 § 752(13), (14) (not requiring knowledge); Okla. Stat. Ann. tit. 15, § 753(2)-(5); tit. 78, § 53(5) (requiring knowledge of a false representation). | **Actual damages and reasonable attorney's fees are available. Up to $10,000 in costs is available if the other party asserts a claim or defense in bad faith.**<br><br>Okla. Stat. Ann. tit. 15, § 761.1(A).<br><br>**For individual actions only, if a court finds the unlawful acts "unconscionable" (consistent with circumstances specified by the Act), the court may additionally award plaintiff up to $2,000 per act.**<br><br>Okla. Stat. Ann. Tit. 15, § 761.1(B). | **Unlawful conduct need not implicate a public interest to be actionable.**<br><br>*Patterson v. Beall*, 19 P.3d 839, 847 (Okla. 2000).<br><br>**Court may award attorney's fees to nonprevailing party for bad faith or frivolous claims.**<br><br>Okla. Stat. Ann. tit. 15, § 761.1(A). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **OREGON**<br><br>*Unlawful Trade Practices Act ("UTPA")*<br><br>**Or. Rev. Stat. § 646.605 *et seq.* (2005).** | **Private right of action and class actions allowed.**<br><br>Or. Rev. Stat. § 646.638(1), (4).<br><br>*Weigel v. Ron Tonkin Chevrolet Co.*, 690 P.2d 488 (Or. 1984).<br><br>**Applies to goods obtained primarily for personal, family, or household purposes.**<br><br>Or. Rev. Stat. § 646.605(6).<br><br>*Lamm v. Amfac Mortg. Corp.*, 605 P.2d 730 (Or. Ct. App. 1980). | **One year from discovery of deceptive practice.**<br><br>Or. Rev. Stat. § 646.638(6). | **Must suffer "ascertainable loss of money or property" to recover "actual damages."**<br><br>Or. Rev. Stat. § 646.638(1).<br><br>**Plaintiff is required to plead and prove some actual injury.**<br><br>*Creditors Protective Ass'n v. Britt*, 648 P.2d 414, 416 (Or. Ct. App. 1982). | **Ascertainable loss must be "as a result of willful use or employment" of an unlawful "method, act or practice."**<br><br>Or. Rev. Stat. § 646.638(1).<br><br>**Plaintiff must have "relied in fact" on an affirmative misrepresentation.**<br><br>*Feitler v. Animation Celection, Inc.*, 13 P.3d 1044, 1050 (Or. Ct. App. 2000).<br><br>**Reliance not necessary for omissions.**<br><br>*Sanders v. Francis*, 561 P.2d 1003, 1006 (Or. 1977). | **An unlawful trade practice embraces any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact.**<br><br>Or. Rev. Stat. § 646.608(2). | **While scienter is not required to establish a violation of the UTPA, a plaintiff must prove "willful use" of unlawful practice in order to recover damages.**<br><br>Or. Rev. Stat. § 646.638(1).<br><br>*Raudebaugh v. Action Pest Control*, 650 P.2d 1006, 1009 (Or. Ct. App. 1982).<br><br>**However, "willful violation" means only that the actor should have known the act was unlawful.**<br><br>Or. Rev. Stat. § 646.605(10). | **In individual actions, greater of actual damages or $200; attorney's fees may be awarded to prevailing party. Attorney's fees available in class actions.**<br><br>Or. Rev. Stat. § 646.638(1), (3), (4).<br><br>**Discretionary punitive damages awardable only when jury finds deterrence is necessary and document is aggravated.**<br><br>Or. Rev. Stat. § 646.638(1), (3); *Crooks v. Payless Drug Stores*, 592 P.2d 196 (1979). | **Upon commencement of an action, plaintiff must mail a copy of the complaint to the state attorney general.**<br><br>Or. Rev. Stat. § 646.638(2).<br><br>**Trade practice must have occurred in Oregon to give rise to a claim.**<br><br>*Juliano-Ocampo v. Air Ambulance Network, Inc.*, 2001 U.S. Dist. LEXIS 22173 (D. Or. July 27, 2001). |

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **OREGON** (cont'd) | | | | | | | **Statutory damages recoverable on behalf of class if plaintiffs establish that members suffered an ascertainable loss of money or property as a result of reckless or knowing use by defendant.**<br><br>Or. Rev. Stat. § 646.638(8)(a). | |

54

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **PENNSYLVANIA**<br><br>*Unfair Competition, Acts or Practices*<br><br>**73 Pa. Cons. Stat. § 201-1** ***et seq.*** **(2006).** | **Private right of action and class actions allowed.**<br><br>73 Pa. Cons. Stat. § 201-9.2.<br><br>*Agliori v. Met. Life Ins. Co.*, 879 A.2d 315 (Pa. Super. Ct. 2005). | **Six years.**<br><br>*See* 42 Pa. Cons. Stat. § 5525(8).<br><br>*Drelles v. Mfrs. Life Ins. Co.*, 881 A.2d 822 (Pa. Super. Ct. 2005). | **Must suffer "ascertainable loss of money or property" to recover "actual damages."**<br><br>73 Pa. Cons. Stat. § 201-9.2(a).<br><br>*Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001). | **Every plaintiffs must show "justifiable reliance" to degree required for common-law fraud.**<br><br>*Toy v. Metro. Life, Ins. Co.*, 863 A.2d 1, 11 (Pa. Super. Ct. 2004); *Weinburg v. Sun Co., Inc.*, 777 A.2d 442, 444 (Pa. 2001).<br><br>**Causal connection between unlawful practices and damages required.**<br><br>73 Pa. Cons. Stat. § 201-9.2(a). | **For fraud-based deceptive acts and practices, plaintiff must show all the elements of common-law fraud, including materiality.**<br><br>*Debbs v. Chrysler Corp.*, 810 A.2d 137, 155 (Pa. Super. Ct. 2002); *Prime Meats, Inc. v. Yochim*, 619 A.2d 769, 773 (Pa. Super. Ct. 1993).<br><br>**Material omissions are actionable.**<br><br>*Debbs v. Chrysler Corp.*, 810 A.2d 137, 155 (Pa. Super. Ct. 2002). | **Plaintiff must show all the elements of common-law fraud, including scienter (knowledge of fraud or reckless disregard thereto).**<br><br>*Debbs v. Chrysler Corp.*, 810 A.2d 137, 155 (Pa. Super. Ct. 2002); *Prime Meats, Inc. v. Yochim*, 619 A.2d 769, 773 (Pa. Super. Ct. 1993). | **Actual damages or $100, whichever is greater; discretionary treble damages and attorney's fees.**<br><br>73 Pa. Cons. Stat. § 201-9.2(a).<br><br>**Discretionary punitive damages are recoverable.**<br><br>*Aronson v. Creditrust Corp.*, 7 F. Supp. 2d 589, 594 (W.D. Pa. 1998).<br><br>**Discretionary attorney's fees are recoverable.**<br><br>*In re Bryant*, 111 B.R. 474 (E.D. Pa. 1990) (unfair conduct breaching parties' contract justified attorneys fees). | **Act restricted to those goods and services purchased or leased "primarily for personal, family or household purposes."**<br><br>73 Pa. Cons. Stat. § 201-9.2(a).<br><br>**No right to a jury trial.**<br><br>*Greiner v. Erie Ins. Exchange*, 2000 WL 33711041 (Pa. Ct. Com. Pl. Nov. 13, 2000). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **RHODE ISLAND**<br><br>*Unfair Trade Practices & Consumer Protection Act*<br><br>**R.I. Gen. Laws § 6-13.1-1 *et seq.* (2006).** | **Private right of action and class actions allowed.**<br><br>R.I. Gen. Laws § 6-13.1-5.2(a), (b).<br><br>*Park v. Ford Motor Co.*, 844 A.2d 687, 691-92 (R.I. 2004).<br><br>**Class certification governed by special rules.**<br><br>*Park v. Ford Motor Co.*, 2004 WL 282312, at *2-3 (R.I. Super. Ct. Oct. 7, 2004). | **Ten years.**<br><br>R.I. Gen. Laws § 9-1-13. | **Must suffer "ascertainable loss of money or property" to recover "actual damages."**<br><br>R.I. Gen. Laws § 6-13.1-5.2(a).<br><br>**Must be loss capable of measurement.**<br><br>*Park v. Ford Motor Co.*, 844 A.2d 687, 691-92 (R.I. 2004). | **Ascertainable loss must be "as a result of the use or employment ... of a method, act or practice declared unlawful."**<br><br>R.I. Gen. Laws § 6-13.1-5.2(a). | **Covers material misrepresentations.**<br><br>*Groff v. Am. Online, Inc.*, 1998 WL 307001, at *5 (R.I. Super. Ct. May 27, 1998). | **Undecided.** | **Actual damages or $200, whichever is greater; discretionary punitive damages and attorney's fees.**<br><br>R.I. Gen. Laws § 6-13.1-5.2(a), (d).<br><br>*Park v. Ford Motor Co.*, 844 A.2d 687, 691-92 (R.I. 2004).<br><br>**Must show malice, bad faith, or intent to harm for punitive damages.**<br><br>*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 182 F.R.D. 386, 400 (D.R.I. 1998). | **Limited to purchases or leases of goods or services for personal, family, or household purposes.**<br><br>R.I. Gen. Laws § 6-13.1-5.2(a).<br><br>**Business entities have no private right of action.**<br><br>*ERI v. Max Entertainment v. Streisand*, 690 A.2d 1351, 1354 (R.I. 1997); *Scully Signal Co. v. Joyal*, 881 F. Supp. 727, 745 (D.R.I. 1995). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **SOUTH CAROLINA**<br><br>*Unfair Trade Practices Act*<br><br>**S.C. Code Ann. § 39-5-10, *et seq.* (2006).** | **Private right of action, but no class actions allowed.**<br><br>S.C. Code Ann. § 39-5-140(a). | **Three years after discovery of conduct.**<br><br>S.C. Code Ann. § 39-5-150.<br><br>*Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship*, 502 S.E.2d 184, 188 (S.C. Ct. App. 1998). | **Requires "ascertainable loss of money or property."**<br><br>S.C. code Ann. §§ 39-5-140(a).<br><br>*Omni Outdoor Adver. v. Columbia Outdoor Adver., Inc.*, 974 F.2d 502, 507 (4th Cir. 1992). | **Ascertainable loss must be "as a result of the use or employment ... of an unfair or deceptive method, act or practice."**<br><br>S.C. Code Ann. § 39-5-140(a).<br><br>*Inman v. Ken Yuatt Chrysler Plymouth, Inc.*, 363 S.E.2d 691, 692 (S.C. 1988) (requiring merely "capacity to deceive"). | **Must be material misrepresentations of fact.**<br><br>*Wingard v. Exxon Co., USA*, 819 F. Supp. 497, 506 (D.S.C. 1992); *Clarkson v. Orkin Exterminating Co.*, 761 F.2d 189, 191 (4th Cir. 1985) (puffing not misrepresentation).<br><br>**Omissions are actionable.**<br><br>*Johnson v. Collins Entm't Co.*, 564 S.E.2d 653, 666 (S.C. 2002) (describing omissions as an "inherent misrepresentation"). | **Violation need not be knowing or willful to recover actual damages. Must be willful for treble damages.**<br><br>*Haley Nursery Co. v. Forrest*, 381 S.E.2d 906 (S.C. 1989).<br><br>*Inman v. Ken Yuatt Chrysler Plymouth, Inc.*, 363 S.E.2d 691, 692 (S.C. 1988) (noting that intent to deceive is not required under § 39-5-20). | **Actual damages; discretionary treble damages for willful or knowing violations.**<br><br>S.C. Code Ann. § 39-5-140(a); *Payne v. Holiday Towers, Inc.*, 321 S.E.2d 179 (S.C. Ct. App. 1984).<br><br>**Punitive damages are not permitted.**<br><br>*Tousley v. N. Am. Van Lines*, Inc., 752 F.2d 96, 99 (4th Cir. 1985) (reversing lower court's award of punitive damages under the UTPA). | **An adverse affect on public interest must be proved by "specific facts."**<br><br>*Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 466 (S.C. 2004); *Jeffries v. Phillips*, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994). |

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **SOUTH CAROLINA** (cont'd) | | | | | | | **Attorney's fees awarded to prevailing plaintiff, reasonability determined by six enumerated factors.**<br><br>*Rowel v. Whisnant*, 600 S.E.2d 96, 99 (S.C. Ct. App. 2004). | |

58

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **SOUTH DAKOTA**<br><br>*Deceptive Trade Practices and Consumer Protection Act*<br><br>**S.D. Codified Laws § 37-24-1 *et seq.* (2006).** | **Private right of action and class actions allowed.**<br><br>S.D. Codified Laws § 37-24-31.<br><br>*Wyman v. Terry Schulte Chevrolet, Inc.*, 584 N.W.2d 103, 105 (S.D. 1998). | **Two years after occurrence or discovery of conduct.**<br><br>S.D. Codified Laws § 37-24-31. | **Plaintiff must claim to be "adversely affected" by an unlawful act of practices and have "actual damages."**<br><br>S.D. Codified Laws § 37-24-31.<br><br>**Actual damages synonymous with compensatory damages.**<br><br>*Wyman v. Terry Schulte Chevrolet, Inc.*, 584 N.W.2d 103, 107 (S.D. 1998). | **The Act requires "proof of an intentional misrepresentation or concealment of a fact on which plaintiff relied and that caused an injury to plaintiff."**<br><br>*Nw. Pub. Serv. v. Union Carbide Corp.*, 236 F. Supp. 2d 966, 973-74 (D.S.D. 2002).<br><br>*But see Brooking Mun. Utilities, Inc. v. Amoco Chem. Co.*, 103 F. Supp. 2d 1169 (D.S.D. 2000) (no need to prove that victim has in fact been deceived or damaged). | **Omissions of "material fact" constitute a deceptive act or practice.**<br><br>S.D. Codified Laws § 37-24-6(1). | **A deceptive act/omission must be knowing and intentional.**<br><br>S.D. Codified Laws § 37-24-6(1). | **Actual damages only; no punitive damages.**<br><br>S.D. Codified Laws § 37-24-31.<br><br>*Wyman v. Terry Schulte Chevrolet, Inc.*, 584 N.W.2d 103, 107 (S.D. 1998).<br><br>**Attorney's fees not recoverable.** | **None found.** |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **TENNESSEE**<br><br>*Consumer Protection Act*<br><br>**Tenn. Code Ann. § 47-18-101** ***et seq.*** **(2006).** | **Private right of action and class actions allowed.**<br><br>Tenn. Code Ann. § 47-18-109(a)(1).<br><br>*Menuskin v. Williams*, 145 F.3d 755, 767 (6th Cir. 1998); *Kirksey v. Overton Pub, Inc.*, 804 S.W.2d 68, 73 (Tenn. Ct. App. 1990).<br><br>**Plaintiff must have purchased goods for individual, personal, family, or household purpose.**<br><br>Tenn. Code Ann. § 47-18-103. | **One year after discovery of deceptive act, but not more than five years after conduct.**<br><br>Tenn. Code Ann. § 47-18-110. | **Requires "ascertainable loss of money or property."**<br><br>Tenn. Code Ann. § 47-18-109(a)(1).<br><br>**Limited to actual damages unless willful violation.**<br><br>*Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9, 12 (Tenn. Ct. App. 1992). | **Requires an "ascertainable loss ... as a result of the use or employment ... of an unfair or deceptive act or practice."**<br><br>Tenn. Code Ann. § 47-18-109(a)(1).<br><br>**No reliance requirement, but plaintiffs must show proximate cause of harm.**<br><br>*Harvey v. Ford Motor Credit Co.*, 1999 WL 486894, at *2 (Tenn. Ct. App. July 13, 1999). | **Misrepresentation or omission must be material.**<br><br>*Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997). | **Unfair or deceptive act "need not be willful or knowingly made to recover actual damages"; statute contemplates recovery for negligent acts.**<br><br>*Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W. 2d 9, 12 (Tenn. Ct. App. 1992).<br><br>**Knowledge of falsity required for trebled damages; can be inferred based upon a reasonable person standard.**<br><br>*Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W. 2d 9, 12 (Tenn. Ct. App. 1992). | **Actual damages and attorney's fees; discretionary treble damages for "willful and knowing" violation.**<br><br>Tenn. Code Ann. § 47-18-109(a)(1), (3).<br><br>**Punitive damages not available.**<br><br>*Paty v. Herb Adox Chevrolet Co.*, 756 S.W.2d 697 (Tenn. Ct. App. 1988). | **Damages can be limited to settlement offer.**<br><br>Tenn. Code Ann. § 47-18-109(c)(4).<br><br>**Defendants may recoup attorney's fees and costs from plaintiffs who bring a frivolous action.**<br><br>Tenn. Code Ann. § 47-18-109(e)(2). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **TEXAS**<br><br>*Deceptive Trade Practices Act*<br><br>**Tex. Bus. & Com. Code § 17.41 *et seq.* (2005).** | **Private right of action and class actions allowed.**<br><br>Tex. Bus. & Com. Code § 17.50.<br><br>*Mahoney v. Cupp*, 638 S.W.2d 257, 261 (Tex. App. 1982).<br><br>**Standing requires that individual or entity is a "consumer"—one who seeks or purchases goods or services.**<br><br>Tex. Bus. & Com. Code § 17.50.<br><br>**Definition of "consumer" does not include entities with $25M or more in assets or entities owned/controlled by entity with $25M or more in assets.**<br><br>Tex. Bus. & Com. Code § 17.45(4). | **Two years after occurrence or discovery by reasonable diligence.**<br><br>Tex. Bus. & Com. Code § 17.565.<br><br>*McAdams v. Capital Prods. Corp.*, 810 S.W.2d 290, 292-93 (Tex. App. 1991). | **Must cause "economic damages or damages for mental anguish."**<br><br>Tex. Bus. & Com. Code § 17.50(a). | **Act or practice must be a "producing cause" of damages and "relied on by a consumer to the consumer's detriment"**<br><br>Tex. Bus. & Com. Code § 17.50(a). | **The misrepresentation must be of a material fact.**<br><br>*Church & Dwight Co. v. Huey*, 961 S.W.2d 560, 567 (Tex. App. 1997).<br><br>**Failure to disclose information concerning goods and services known at the time of the transaction is prohibited.**<br><br>Tex. Bus. & Com. Code § 17.45(b)(24).<br><br>*Willowbrook Foods v. Grinnell*, 147 S.W.3d 492 (Tex. App. 2004). | **Knowledge or intent is not an element unless required by a particular subdivision.**<br><br>*Smith v. Herco, Inc.*, 900 S.W.2d 852, 859 (Tex. App. 1995).<br><br>**To recover treble damages, defendant's actions must have been intentional.**<br><br>Tex. Bus. & Com. Code § 17.50(b). | **Actual damages , mental anguish (if intentional); attorney's fees mandatory.**<br><br>Tex. Bus. & Com. Code § 17.50(b), (d); *Gunn Infiniti, Inc. v. O'Bryne*, 996 S.W.2d 854, 860-61 (Tex. 1999).<br><br>**Punitive damages of not more than three times actual damages available for intentional acts.**<br><br>Tex. Bus. & Com. Code § 17.50(b); *Houston Livestock Show v. Hamrick*, 125 S.W.3d 555, 584 (Tex. App. 2003). | **Presuit notice letter by certified mail, including specific allegations and all damages sought, required at least 60 days before the complaint is filed.**<br><br>Tex. Bus. & Com. Code § 17.505.<br><br>**Defendants may recoup attorney's fees and costs from plaintiffs who bring a bad-faith or harassment action.**<br><br>Tex. Bus. & Com. Code § 17.50(c). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **UTAH**<br><br>*Consumer Sales Practices Act*<br><br>**Utah Code Ann. § 13-11-1** ***et seq.*** **(2006).** | **Private right of action allowed.**<br><br>Utah Code Ann. § 13-11-19 *et seq.*<br><br>**Act contains specific Class Action requirements.**<br><br>Utah Code Ann. § 13-11-20.<br><br>**Class actions for damages allowed with only for repeat violations.**<br><br>Utah Code Ann. § 13-11-19(4). | **Two years for a class action.**<br><br>Utah Code Ann. § 13-11-19(8). | **Requires that plaintiff suffer a "loss."**<br><br>Utah Code Ann. § 13-11-19(2).<br><br>**"Loss" should be construed more broadly than "damages."**<br><br>*Andreason v. Felsted*, 137 P.3d 1, 11 (Utah Ct. App. 2006). | **Requires plaintiff suffer loss as a result of violations of the Act.**<br><br>Utah Code Ann. § 13-11-19(2). | **Omissions are likely actionable.**<br><br>*See Wade v. Jobe*, 818 P.2d 1006, 1014-15 (Utah 1991) (holding that the statute should be read consistent with FTC Act); *FTC v. World Travel Vacation Brokers*, 861 F.2d 1020, 1029 (7th Cir. 1988). | **Requires knowing or intentional deceptive act or practice.**<br><br>Utah Code Ann. § 13-11-4(2); *Rawson v. Conover*, 20 P.3d 876, 883 (Utah 2001). | **In individual actions, greater of actual damages or $2,000; discretionary attorney's fees.**<br><br>Utah Code Ann. § 13-11-19(2), (5).<br><br>**In class actions, equitable relief only, unless specific actions of defendant were previously declared unlawful by court or other authority.**<br><br>Utah Code Ann. § 13-11-19(4). | **On commencement of a class action, the representative must serve the State with a copy of the complaint.**<br><br>Utah Code Ann. § 13-11-21(2).<br><br>**Any recovered funds not disseminated to consumers are transferred to the State.**<br><br>Utah Code Ann. § 13-11-19(4)(b).<br><br>**Good faith is an affirmative defense.**<br><br>Utah Code Ann. 13-11-2(6); *Sampson v. Richens*, 770 P.2d 998, 1005 (Utah Ct. App. 1989). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **VERMONT**<br><br>*Consumer Fraud Act*<br><br>**Vt. Stat. Ann. tit. 9, § 2453 *et seq.* (2004).** | **Private right of action and class actions allowed.**<br><br>Vt. Stat. Ann. tit. 9, § 2461(b).<br><br>*Vermont Mobile Home Owners' Ass'n, Inc. v. Lapierre*, 94 F. Supp. 2d 519 (D. Vt. 2000). | **Six years.**<br><br>Vt. Stat. Ann. tit. 12, § 511. | **Suit can be brought by "[a]ny consumer who contracts for goods or services in reliance upon false or fraudulent representations ... or who sustains damages or injury as a result of any false or fraudulent representations."**<br><br>Vt. Stat. Ann. tit. 9, § 2461(b). | **Cause of action available to consumer who "contracts for goods or services in reliance upon false or fraudulent representations ... or who sustains damages or injury as a result of any false or fraudulent representations."**<br><br>Vt. Stat. Ann. tit. 9, § 2461(b).<br><br>**Actual reliance not required; a statement need only be capable of misleading the consumer.**<br><br>*Jordan v. Nissan N. Am.*, 853 A.2d 40, 44 (Vt. 2004). | **The misleading effects must be material based on an objective standard, that is, likely to affect a reasonable consumer's conduct or decision with regard to a product.**<br><br>*Carter v. Gugliuzzi*, 716 A.2d 17, 23 (Vt. 1998). | **No intent or bad faith required.**<br><br>*Winston v. Johnson & Dix Fuel*, 515 A.2d 371, 376 (Vt. 1986); *Poulin v. Ford Motor Co.*, 513 A.2d 1168, 1171 (Vt. 1986).<br><br>**If defendant knows or should know that omission is important, materiality is presumed.**<br><br>*Carter v. Gugliuzzi*, 716 A.2d 17, 23-24 (Vt. 1998). | **Actual damages, attorney's fees, exemplary damages not to exceed three times actual damages.**<br><br>Vt. Stat. Ann. tit. 9, § 2461(b).<br><br>**Attorney's fees for prevailing plaintiff may be mandatory.**<br><br>*Gramatan Home Investors Corp. v. Starling*, 470 A.2d 1157 (Vt. 1983). | **No derivative liability absent direct participation in the unfair or deceptive acts, direct aid to the actor, or a principal/agent relationship.**<br><br>*State v. Stedman*, 547 A.2d 1333, 1335-36 (Vt. 1988). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **VIRGINIA**<br><br>*Consumer Protection Act*<br><br>**Va. Code Ann. § 59.1-195** ***et seq.*** **(2006).** | **Private right of action allowed, but class action prohibited.**<br><br>Va. Code Ann. § 59.1-204(A). | **Two years after the cause of action accrues.**<br><br>Va. Code Ann. § 59.1-204.1(A).<br><br>**Right of action runs from the date of injury and not from the date of discovery unless claim is solely equitable.**<br><br>Va. Code Ann. § 8.01-230. | **Actual loss required to initiate an action.**<br><br>*Gavin v. Koons Buick Pontiac GMC Inc.*, 2002 WL 46759 (4th Cir. Jan. 14, 2002); *Alston v. Crown Auto, Inc.*, 224 F.3d 332 (4th Cir. 2000). | **Requires "loss as the result of a violation" of the Act.**<br><br>Va. Code Ann. § 59.1 – 204(A); *Polk v. Crown Auto, Inc.*, 238 F.3d 541, 543 (4th Cir. 2000); *Alston v. Crown Auto, Inc.*, 224 F.3d 332, 336 (4th Cir. 2000).<br><br>**Reliance element of common-law fraud is necessary to state a claim.**<br><br>*Cooper v. GGGR Investments, LLC*, 334 B.R. 179, 188 (E.D. Va. 2005); *Weiss v. Cassidy Dev. Corp.*, 2003 WL 22519650, at *2 (Va. Cir. Ct. Aug. 18, 2003); *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 717 (Va. 2001). | **"Under Virginia law, a false misrepresentation must be of an existing fact, not a mere expression of an opinion."**<br><br>*Graham v. RRR, LLC*, 202 F. Supp. 2d 483, 491 (E.D. Va. 2002); *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 718 (Va. 2001). | **Intent requirement of common-law fraud applies.**<br><br>*Cooper v. GGGR Investments, LLC*, 334 B.R. 179, 188 (E.D. Va. 2005); *Weiss v. Cassidy Dev. Corp.*, 2003 WL 22519650, at *2 (Va. Cir. Ct. Aug. 18, 2003).<br><br>**Misrepresentation by omission of a material fact requires evidence of a "knowing and deliberate decision" to conceal the fact.**<br><br>*Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 718 (Va. 2001).<br><br>**Bona fide errors or lack of control are defenses.**<br><br>Va. Code Ann. § 59.1-207. | **Greater of actual damages or $500, reasonable attorney's fees, and costs; if the violation was willful, discretionary treble damages or $1,000, whichever is greater.**<br><br>Va. Code Ann. § 59.1-204(A)-(B). | **If a defendant tenders a cure offer, it cannot be liable for attorney's fees or costs unless actual damages exceed the cure offer.**<br><br>Va. Code Ann. § 59.1-204(C).<br><br>**Bona fide error or lack of control is a defense; attorney's fees can be awarded nonetheless.**<br><br>Va. Code Ann. § 59.1-207.<br><br>**Acceptance of cure offer forecloses further actions based on same allegation of fact.**<br><br>Va. Code Ann. § 59.1-204(A). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **WASHINGTON**<br><br>*Unfair Business Practices—Consumer Protection Act*<br><br>**Wash. Rev. Code Ann. § 19.86.010 *et seq.* (2006).** | **Private right of action and class actions available.**<br><br>Wash. Rev. Code Ann. § 19.86.090.<br><br>*Smith v. Behr Process Corp.*, 54 P.3d 665 (Wash. Ct. App. 2002). | **Four years after cause of action accrues.**<br><br>Wash. Rev. Code Ann. § 19.86.120. | **Allows cause of action by "[a]ny person who is injured in his or her business or property by a violation" of the Act.**<br><br>Wash. Rev. Code Ann. § 19.86.090.<br><br>*Nordstrom, Inc. v. Tampourlos*, 733 P.2d 208 (Wash. 1987) (plaintiff must show "injury"); *Girard v. Myers*, 694 P.2d 678, 685 (Wash. Ct. App. 1985). | **A "causal link" must exist "between the unfair or deceptive act and the injury suffered."**<br><br>*Pickett v. Holland Am. Line-Westours, Inc.*, 35 P.3d 351, 360 (Wash. 2001); *Leingang v. Pierce Cty. Med. Bureau*, 930 P.2d 288, 296 (Wash. 1997).<br><br>**Causation established where plaintiff "relied upon a misrepresentation of fact."**<br><br>*Robinson v. Avis Rent-A-Car Sys. Inc.*, 22 P.3d 818, 823 (Wash. Ct. App. 2001). | **The "knowing failure to reveal something of material importance is 'deceptive' within the [Act]."**<br><br>*Robinson v. Avis Rent-A-Car Sys. Inc.*, 22 P.3d 818, 824 (Wash. Ct. App. 2001); *Griffith v. Centex Real Estate*, 969 P.2d 486 (Wash. Ct. App. 1998) (failure to disclose known defect in goods constitutes an unfair trade practice). | **Intent not required "if the action has the capacity to deceive a substantial portion of the purchasing public."**<br><br>*Haner v. Quincy Farm Chems, Inc.*, 649 P.2d 828, 831 (Wash. 1982). | **Actual damages, attorney's fees, discretionary treble damages not to exceed $10,000.**<br><br>Wash. Rev. Code Ann. § 19.86.090. | **Defense if acts or practices complained of have an adverse affect on the public interest or are reasonable in relation to the development and preservation of business.**<br><br>Wash. Rev. Code Ann. § 19.86.920.<br><br>*Leingang v. Pierce County Med. Bureau, Inc.*, 930 P.2d 288, 296 (Wash. 1977). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **WASHINGTON (cont'd)** | | | | **Other cases indicate that a plaintiff need not prove reliance to establish an unfair trade practice.**<br><br>*State v. A.N.W. Seed Corp.*, 802 P.2d 1353 (Wash. 1991); *Washington v. Williams Chrysler Plymouth*, 553 P.2d 423 (Wash. 1976); *Testo v. Russ Dunmire Olds*, 554 P.2d 349 (Wash. Ct. App. 1976). | | | | |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **WEST VIRGINIA**<br><br>*Consumer Credit and Protection Act*<br><br>**W. Va. Code Ann. § 46A-1-101 *et. seq.* (2006).** | **Private right of action and class actions allowed.**<br><br>W. Va. Code Ann. § 46A-6-106(a).<br><br>*In Re W. Va. Rezulin Litig.*, 585 S.E.2d 52, 74 (W. Va. 2003). | **Two years after accrual.**<br><br>W. Va. Code Ann. § 55-2-12.<br><br>**Statute of limitations begins to run when fraud discovered or should have been discovered by reasonable diligence.**<br><br>*Brumbaugh v. Princeton Partners*, 985 F.2d 157, 161-62 (4th Cir. 1993). | **Plaintiff must suffer "ascertainable loss of money" in order to bring a claim.**<br><br>W. Va. Code Ann. § 46A-6-106(a).<br><br>**A consumer is not required to list a specific amount of actual damages.**<br><br>*In Re W. Va. Rezulin Litig.*, 585 S.E.2d 52, 75 (W. Va. 2003). | **"Ascertainable loss" must be "as a result of illegal practices."**<br><br>W. Va. Code Ann. § 46A-6-106(a).<br><br>**Deceptive acts prohibited "whether or not any person has in fact been misled, deceived or damaged thereby."**<br><br>W. Va. Code Ann. § 46A-6-102(7)(M). | **In false advertising claims, the offending misrepresentation must be a "material fact."**<br><br>W. Va. Code Ann. § 46A-6-102(7)(M).<br><br>**Omissions made with intent to deceive are prohibited.**<br><br>W. Va. Code Ann. § 46A-6-102(7)(M). | **In false advertising claims, the offending misrepresentation must be made "with intent that others rely upon" it.**<br><br>W. Va. Code Ann. § 46A-6-102(7)(M). | **Greater of actual damages or $200.**<br><br>W. Va. Code Ann. § 46A-6-106(a).<br><br>**Punitive damages and attorney's fees are not allowed.**<br><br>*Virden v. Altria Group, Inc.*, 304 F. Supp. 2d 832, 850 (N.D. W. Va. 2004). | **Act should not be construed "to prohibit acts or practices which are reasonable in relation to the development and preservation of business."**<br><br>W. Va. Code Ann. § 46A-6-101(2).<br><br>**Must notify defendant of alleged violation and provide 20 days for cure offer.**<br><br>W. Va. Code Ann. § 46A-6-106(b).<br><br>**Limited to purchases or leases of goods or services.**<br><br>W. Va. Code Ann. § 46A-6-106(a). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **WISCONSIN**<br><br>*Deceptive Trade Practices Act*<br><br>**Wis. Stat. Ann. § 100.20 (2006).** | **Private right of action and class actions allowed.**<br><br>Wis Stat. Ann. § 100.18(11)(b)(2).<br><br>*Tietsworth v. Harley-Davidson, Inc.*, 661 N.W.2d 450 (Wis. Ct. App. 2003), *overruled on other grounds by* 677 N.W.2d 233 (Wis. 2004). | **Three years.**<br><br>Wis. Stat. Ann. § 100.18(11)(b)(3).<br><br>**Discovery rule does not apply.**<br><br>*Skrupky v. Elbert*, 526 N.W.2d 264, 273-74 (Wis. Ct. App. 1994). | **A plaintiff must have suffered "pecuniary loss."**<br><br>Wis Stat. Ann. §§ 100.18(11)(b)(2), 100.20(5).<br><br>*Reusch v. Roob*, 610 N.W.2d 168, 176 (Wis. Ct. App. 2000). | **Pecuniary loss must be "because of a violation" of § 100.18.**<br><br>Wis Stat. Ann. § 100.18(11)(b)(2).<br><br>**Plaintiffs must "show a causal connection between the defendants' alleged conduct and any pecuniary loss suffered."**<br><br>*Valente v. Sofamor, S.N.C.*, 48 F. Supp. 2d 862, 874 (E.D. Wis. 1999).<br><br>**Individual reliance required.**<br><br>*Valente v. Sofamor, S.N.C.*, 48 F. Supp. 2d 862, 874 (E.D. Wis. 1999); *State v. Saternus*, 361 N.W.2d 728, 731 (Wis. Ct. App. 1984). | **Representation must be a "statement of fact which can be shown to be false"; puffing is not actionable.**<br><br>*State v. Am. TV & Appliance of Madison, Inc.*, 430 N.W.2d 709, 712 (Wis. 1988).<br><br>**Material omissions prohibited.**<br><br>*Tietsworth v. Harley Davidson, Inc.*, 677 N.W. 2d 233, 237 (Wis. 1999). | **Certain acts or omissions require knowledge of falsity or intentional inducement of the purchase.**<br><br>Wis Stat. Ann. § 100.18(1); *Ricco v. Riva*, 669 N.W.2d 193, 201-03 (Wis. Ct. App. 2003); *Valente v. Sofamor, S.N.C.*, 48 F. Supp. 2d 862, 874 (E.D. Wis. 1999).<br><br>**Strict liability for misrepresentations.**<br><br>*Shephard Invs. Int'l, Inc. v. Verizon Commc'ns, Inc.*, 373 F. Supp. 2d 853, 872 (E.D. Wis. 2005). | **Allows only actual damages, costs and reasonable attorney's fees.**<br><br>Wis Stat. Ann. § 100.18(11)(b)(2); *Sydney v. Badgerland Mobile Homes, Inc.*, 659 N.W.2d 887 (Wis. Ct. App. 2003).<br><br>**Discretionary doubling of pecuniary damages.**<br><br>Wis Stat. Ann. § 100.20(5).<br><br>**Punitive damages are recoverable but plaintiffs cannot get duplicative recovery through Wis Stat. Ann. § 100.20(5).**<br><br>*Seay v. Gardner*, 541 N.W.2d 837 (Wis. Ct. App. 1995). | **Good faith is an affirmative defense.**<br><br>*American Fed. of State v. Brown County*, 432 N.W.2d 571 (Wis. 1988). |

| JURISDICTION/ LEGAL AUTHORITY | PRIVATE RIGHT OF ACTION & CLASS ACTION PROHIBITION | STATUTE OF LIMITATIONS & DISCOVERY RULE | ACTUAL INJURY/ DECEPTION | RELIANCE OR PROXIMATE CAUSATION | AFFIRMATIVE ACTS/ MATERIAL OMISSIONS | SCIENTER & LEVEL OF CULPABILITY | DAMAGES & REMEDIES | OTHER DEFENSES & FEATURES |
|---|---|---|---|---|---|---|---|---|
| **WYOMING**<br><br>*Consumer Protection Act*<br><br>**Wyo. Stat. Ann. § 40-12-101 *et seq.* (2006).** | **Private right of action and class actions allowed.**<br><br>Wyo. Stat. Ann. § 40-12-108.<br><br>**Cause of action only for "[u]ncured unlawful deceptive trade practices."**<br><br>Wyo. Stat. Ann. § 40-12-102(a)(ix).<br><br>**An "uncured" practice is one that remains unresolved after the consumer provides statutory notice to the alleged violator.**<br><br>Wyo. Stat. Ann. § 40-12-102(a)(ix). | **Written notice of the alleged violation must be given to defendant within one year of discovery or two years of occurrence, whichever is first.**<br><br>Wyo. Stat. Ann. § 40-12-109. | **Plaintiff may bring an action for "the damages he has actually suffered."**<br><br>Wyo. Stat. Ann. § 40-12-108(a). | **Damages "actually suffered as a consumer as a result of such unlawful deceptive trade practice."**<br><br>Wyo. Stat. Ann. § 40-12-108(a). | **Undecided.** | **Requires that a defendant "knowingly ... engages in unfair or deceptive acts or practices."**<br><br>Wyo. Stat. Ann. § 40-12-105(a). | **Allows only actual damages and reasonable attorney's fees; any monies recovered in a class action which cannot be restored to consumers within one year after final judgment shall be returned to the defendants.**<br><br>Wyo. Stat. Ann. § 40-12-108(b).<br><br>**May receive attorney's fees under class action only if actual damages found and awarded.**<br><br>Wyo. Stat. Ann. § 40-12-108(b). | **Prefiling demand notice requesting cure required within the earlier of 1 year of discovery or 2 years following the consumer transaction.**<br><br>Wyo. Stat. Ann. §§ 12-109; 40-12-102(a)(ix); 40-12-108(a). |